# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CARLA DAVIS; JALEN DAVIS,

     Plaintiffs - Appellants,

v.

U.S. DEPARTMENT OF JUSTICE;
MERRICK B. GARLAND, U.S. Attorney
General, in his official and individual
capacities; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
XAVIER BECERRA, Secretary of Health
and Human Services, in his official and
individual capacities; DUSTON J.
SLINKARD, Kansas U.S. Attorney, in his
official and individual capacities; ERIC
MELGREN, former Kansas U.S. Attorney,
in his official and individual capacity;
KRIS W. KOBACH, Kansas Attorney
General, in his official and individual
capacity; KANSAS HOMELAND
SECURITY; DAVID WEISHAAR,
Kansas Homeland Security Director and
Adjunct General, in his official and
individual capacity; KANSAS
DEPARTMENT OF HEALTH AND
ENVIRONMENT; JANET STANEK,
KDHE Secretary, in her official and
individual capacity; JAMES MICHAEL
MOSER, M.D., Kansas Department of
Health and Environment Lead Public
Health Physician, in his official and
individual capacity; KANSAS
INSURANCE DEPARTMENT; VICKI
SCHMIDT, Kansas Insurance
Commissioner, in her official and
individual capacity; KANSAS HEALTH
CARE STABILIZATION FUND; CLARK

No. 23-3244
(D.C. No. 6:23-CV-01010-JAR-BGS)
(D. Kan.)

SHULTZ, Executive Director, Kansas Health Care Stabilization Fund, in his official and individual capacity; SEDGWICK COUNTY, KANSAS, BOARD OF COMMISSIONERS, Board of Health; MARC BENNETT, Sedgwick County District Attorney, in his official and individual capacity; CITY OF WICHITA CITY COUNCIL; CENTRAL PLAINS HEALTH CARE PARTNERSHIP; MEDICAL SOCIETY OF SEDGWICK COUNTY; WESLEY MEDICAL CENTER, LLC; THE CHILDREN'S MERCY HOSPITAL; WICHITA CLINIC, P.A., f/k/a Christi Clinic, P.A. n/k/a Ascension Medical Group Via Christi, P.A.; KANSAS UNIVERSITY SCHOOL OF MEDICINE, Wichita, and its Wichita Center for Graduate Medical Education, Inc.; GAROLD O. MINNS, M.D., Dean of KU School of Medicine-Wichita, in his official and individual capacity; STEWART E. DISMUKE, M.D., former Dean of KU School of Medicine-Wichita, in his official and individual capacity; ROBERT KENAGY, M.D., Wichita Clinic Medical Director, in his official and individual capacity; CLYDE WILSON WESBROOK, M.D., in his official and individual capacity; DEE SPADE, M.D., Wichita Clinic, in her official and individual capacity; VIRGIL F. BURRY, M.D., Exe. Medical Director Children's Mercy Hospital, in his official and individual capacity; HEWITT GOODPASTURE, M.D., Medical Society of Sedgwick County, in his official and individual capacity; DAVID GRAINGER, M.D., Central Plains Health Care Partnership/KU School of Medicine OB/GYN Chairman, in his official and individual capacity; TRAVIS STEMBRIDGE, M.D., OB/GYN Former

President of Medical Society of Sedgwick
County, in his official and individual
capacity; GERARD BASSELL, M.D.,
Anesthesiologist, KU School of Medicine
Program Director, in his official and
individual capacity; ANNA F. STORK-
FURY, Former KU Medical Student
OB/GYN, in her official and individual
capacity; BRENDA KALLEMEYN,
Former KU Medical Student OB/GYN, in
her official and individual capacity; TOM
YAO, Former KU Medical Student
Anesthesia, in his official and individual
capacity; GIANFRANCO PEZZINO,
M.D., State of Kansas Epidemiologist, in
his official and individual capacity;
FOULSTON SIEFKIN LLP; KLENDA,
MITCHELL, AUSTERMAN &
ZUERCHER, LLC, a/k/a Klenda
Austerman, LLC; BRANDON WHIPPLE,
Mayor; in his official and individual
capacity; WICHITA CENTER FOR
GRADUATE MEDICAL EDUCATION,
INC.,

     Defendants - Appellees.

---

**ORDER**

---

Before **TYMKOVICH, MATHESON,** and **MCHUGH**, Circuit Judges.

---

This matter is before the court on "Appellant's Petition for Panel Rehearing and
Rehearing En Banc." Upon careful consideration, we direct as follows.

Pursuant to Fed. R. App. P. 40, the petition for panel rehearing is GRANTED IN
PART to the extent of the modifications in the attached revised order and judgment. The

court's August 1, 2024 order and judgment is withdrawn and replaced by the attached revised order and judgment, which shall be filed as of today's date.

Because the panel's decision to partially grant rehearing resulted in only non-substantive changes to the order and judgment that do not affect the outcome of this appeal, Appellants may not file a second or successive rehearing petition. *See* 10th Cir. R. 40.3.

The petition for rehearing en banc and the attached revised order and judgment were transmitted to all non-recused judges of the court who are in regular active service. As no member of the panel and no non-recused judge in regular active service requested that the court be polled, the petition for rehearing en banc is denied. *See* Fed. R. App. P. 35(f).

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

CARLA DAVIS; JALEN DAVIS,

     Plaintiffs - Appellants,

v.

U.S. DEPARTMENT OF JUSTICE;
MERRICK B. GARLAND, U.S. Attorney
General, in his official and individual
capacities; U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES;
XAVIER BECERRA, Secretary of Health
and Human Services, in his official and
individual capacities; DUSTON J.
SLINKARD, Kansas U.S. Attorney, in his
official and individual capacities; ERIC
MELGREN, former Kansas U.S. Attorney,
in his official and individual capacity;
KRIS W. KOBACH, Kansas Attorney
General, in his official and individual
capacity; KANSAS HOMELAND
SECURITY; DAVID WEISHAAR,
Kansas Homeland Security Director and
Adjunct General, in his official and
individual capacity; KANSAS
DEPARTMENT OF HEALTH AND
ENVIRONMENT; JANET STANEK,
KDHE Secretary, in her official and
individual capacity; JAMES MICHAEL
MOSER, M.D., Kansas Department of
Health and Environment Lead Public
Health Physician, in his official and
individual capacity; KANSAS
INSURANCE DEPARTMENT; VICKI
SCHMIDT, Kansas Insurance
Commissioner, in her official and

No. 23-3244
(D.C. No. 6:23-CV-01010-JAR-BGS)
(D. Kan.)

individual capacity; KANSAS HEALTH
CARE STABILIZATION FUND; CLARK
SHULTZ, Executive Director, Kansas
Health Care Stabilization Fund, in his
official and individual capacity;
SEDGWICK COUNTY, KANSAS,
BOARD OF COMMISSIONERS, Board of
Health; MARC BENNETT, Sedgwick
County District Attorney, in his official and
individual capacity; CITY OF WICHITA
CITY COUNCIL; CENTRAL PLAINS
HEALTH CARE PARTNERSHIP;
MEDICAL SOCIETY OF SEDGWICK
COUNTY; WESLEY MEDICAL
CENTER, LLC; THE CHILDREN'S
MERCY HOSPITAL; WICHITA CLINIC,
P.A., f/k/a Christi Clinic, P.A. n/k/a
Ascension Medical Group Via Christi,
P.A.; KANSAS UNIVERSITY SCHOOL
OF MEDICINE, Wichita, and its Wichita
Center for Graduate Medical Education,
Inc.; GAROLD O. MINNS, M.D., Dean of
KU School of Medicine-Wichita, in his
official and individual capacity;
STEWART E. DISMUKE, M.D., former
Dean of KU School of Medicine-Wichita,
in his official and individual capacity;
ROBERT KENAGY, M.D., Wichita Clinic
Medical Director, in his official and
individual capacity; CLYDE WILSON
WESBROOK, M.D., in his official and
individual capacity; DEE SPADE, M.D.,
Wichita Clinic, in her official and
individual capacity; VIRGIL F. BURRY,
M.D., Exe. Medical Director Children's
Mercy Hospital, in his official and
individual capacity; HEWITT
GOODPASTURE, M.D., Medical Society
of Sedgwick County, in his official and
individual capacity; DAVID GRAINGER,
M.D., Central Plains Health Care
Partnership/KU School of Medicine
OB/GYN Chairman, in his official and

2

individual capacity; TRAVIS
STEMBRIDGE, M.D., OB/GYN Former
President of Medical Society of Sedgwick
County, in his official and individual
capacity; GERARD BASSELL, M.D.,
Anesthesiologist, KU School of
Medicine Program Director, in his official
and individual capacity; ANNA F.
STORK-FURY, Former KU Medical
Student OB/GYN, in her official and
individual capacity; BRENDA
KALLEMEYN, Former KU Medical
Student OB/GYN, in her official and
individual capacity; TOM YAO, Former
KU Medical Student Anesthesia, in his
official and individual capacity;
GIANFRANCO PEZZINO, M.D., State of
Kansas Epidemiologist, in his official and
individual capacity; FOULSTON SIEFKIN
LLP; KLENDA, MITCHELL,
AUSTERMAN & ZUERCHER, LLC,
a/k/a Klenda Austerman, LLC;
BRANDON WHIPPLE, Mayor; in his
official and individual capacity; WICHITA
CENTER FOR GRADUATE MEDICAL
EDUCATION, INC.,

    Defendants - Appellees.

_____

**ORDER AND JUDGMENT**[*]

_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

Carla Davis and her son, Jalen Davis, proceeding pro se, filed the underlying lawsuit against 43 defendants. They sought declaratory, injunctive, and monetary relief under 42 U.S.C. §§ 1983 and 1985 for alleged violations of the Fourth, Fifth, and Fourteenth Amendments. The district court denied the Davises' judicial recusal motions, dismissed the action, and denied reconsideration. The Davises filed this pro se appeal.[1] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *Factual Background*[2]

The Davises generally alleged that certain defendants used them as test subjects to research bioterrorism; that some defendants injected or inserted drugs, substances, or devices into their bodies during medical treatment in 2003, 2004, and 2008; and that other defendants were complicit in or refused to investigate or stop these experiments.

In January 2003, Ms. Davis gave birth to Mr. Davis at Wesley Medical Center, LLC ("Wesley") in Wichita, Kansas. Before her scheduled induction, she told her

_____

[1] Because the Davises are pro se, we construe their filings liberally, but we do not act as their advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] This factual history derives from the allegations in the Davises' complaint and the attached exhibits. *See Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011) (noting that we "accept[] as true all well-pleaded factual allegations in the complaint" on an appeal from a motion to dismiss and "may consider not only the complaint, but also the attached exhibits").

health care providers she wanted to deliver her baby at a different hospital.  The complaint alleged, "Without [her] knowledge or consent," she was "forced to go to Wesley," where she was "placed in the hands of indigent and research training programs."  R., vol. 1 at 45.  The complaint alleged that during labor, she "was incapacitated with toxic [doses] of" fentanyl, "raped" when a doctor "penetrated [her] vagina" with gloved hands and an unknown object, "stabbed" with a needle in her lower back by another doctor, "administered toxic doses of antibiotics[] when [she] did not have an infection," and "administered toxic doses of Bupivicaine and other drugs without a medically necessary reason."  *Id.*

The complaint further alleged that in February 2004, Ms. Davis was treated at Wesley for a cardiac issue, and an "unknown device was placed in [her] chest blood vessels without [her] knowledge and consent."  *Id.*  And it alleged that in August 2008, Mr. Davis was treated at another hospital, where "public officials stole" his blood, he was prevented from receiving medical care, and a "U.S. Military Social Worker" attempted to "abduct[]" him.  *Id.* at 46.  The complaint noted that Ms. Davis was accused of neglect, but after an investigation, state officials found the allegation was unsubstantiated.  *See id.*

Some of the Davises' medical records were attached to the complaint.  The Davises alleged that they have been denied access to other records that are in "Confidential" status because "public officials and their cooperators are keeping concealed the unlawful bodily intrusions and the serious injuries resulting from it."

5

*Id.* at 45-46.  They claimed the denial of access to records is "ongoing," making it difficult for them to obtain medical treatment and public benefits.  *Id.* at 46.

## B.  *Procedural Background*

The Davises filed their complaint on January 23, 2023.  R., vol. 1 at 38.  They brought constitutional claims under 42 U.S.C. § 1983 and a conspiracy claim under 42 U.S.C. § 1985.  The 43 defendants included various federal agencies and federal employees, state and municipal agencies and employees, private entities, and private individuals.  One of the defendants, Eric Melgren, was the former United States Attorney for the District of Kansas and is currently the Chief Judge of the United States District Court for the District of Kansas—where the Davises filed their complaint.  President George W. Bush appointed Chief Judge Melgren to the court.

The case was assigned to Judge Robinson, also a President Bush appointee.  Shortly after filing the complaint, the Davises requested that no judge appointed by the Bush administration or any judge with "fiduciary loyalties" to any of the defendants be assigned to the case.  Suppl. R., vol. 1 at 15, 16.[3]  Judge Robinson treated this request as a motion to recuse her under 28 U.S.C. § 455(a), and denied it for failure to allege facts that would suggest that she had "an actual bias or an appearance of bias solely based on" her appointment by President Bush, *id.* at 18, or that she had a "conflict of interest with any of the parties," *id.* at 19.

---

[3] The Davises submitted two filings on the same day making the exact same request.  *See* Suppl. R., vol. 1 at 15, 16.  We treat them here as a single motion.

From February to May 2023, all but one defendant filed motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(5) for insufficient service of process, and/or 12(b)(6) for failure to state a claim. On September 28, 2023, the district court granted 28 motions to dismiss and dismissed the case against all defendants. R., vol. 3 at 427. Depending on the defendant and the claim, the court dismissed based on sovereign immunity and lack of standing; failure to allege state action, personal participation, or facts supporting a municipal liability or conspiracy claim; and failure to meet the statute of limitations. The court concluded the Davises could not prevail on any of the facts alleged in the complaint and found it would be futile to allow them leave to amend. *Id*. at 427-64. The court therefore dismissed the complaint and entered judgment. *Id*. at 465-66.

The next day, September 29, 2023, the Davises moved under 28 U.S.C. § 455(a) and 28 U.S.C. § 136 (which establishes the office of chief judge) to disqualify Chief Judge Melgren from "his administrative position as Chief Judge." R., vol. 3 at 520. They argued it was improper for him to have administrative oversight of a court in which he is a defendant in a lawsuit, and that he was thus "'unable to perform his duties as chief judge.'" *Id.* at 521 (quoting 28 U.S.C. § 136(e), which provides that the most senior active district judge shall serve as chief judge if the chief judge is temporarily unable to perform his duties). Because the case had been dismissed, Judge Robinson denied the motion as moot.

7

The Davises moved to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), and also moved for leave to amend the complaint. The district court denied both motions. This appeal followed.

## II. DISCUSSION

The Davises argue the district court erred by denying their motions seeking disqualification of Judge Robinson and Chief Judge Melgren. They also challenge the dismissal order, arguing that the court's partiality prevented it from properly addressing the merits of their constitutional claims.

### A. *Denial of Motions to Disqualify*

#### 1. **Legal Background**

We review a district court's denial of a motion to disqualify a judge for abuse of discretion. *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006); *Bryce v. Episcopal Church*, 289 F.3d 648, 659 (10th Cir. 2002). "Under this standard, we will not reverse unless the trial court has made an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Wells*, 873 F.3d 1241, 1250 (10th Cir. 2017) (quotations omitted).

The judicial disqualification statute applicable here is 28 U.S.C. § 455(a). It provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See also* Code of Conduct for United States Judges (Code of Conduct), Canon 3(C)(1) (requiring disqualification where the "judge's impartiality might

reasonably be questioned"); Charles Gardner Geyh, *Judicial Disqualification: An Analysis of Federal Law* 17 (2d ed. 2010).

The test under § 455(a) is not whether judges believe they are capable of impartiality, but rather whether a reasonable person might question the judge's impartiality. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993); *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). Similarly, the test is not whether someone could conceivably question a judge's impartiality, but whether a reasonable person, knowing all relevant facts, would harbor doubts. *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004); *Bryce*, 289 F.3d at 659; *Cooley*, 1 F.3d at 993. A judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). Thus, "[t]he recusal statute should not be construed so broadly as to become presumptive or to require recusal based on unsubstantiated suggestions of personal bias or prejudice." *Bryce*, 289 F.3d at 659-60.

The party moving to disqualify a judge is ordinarily assigned the burden of proof. *See Topeka Hous. Auth. v. Johnson*, 404 F.3d 1245, 1247 (10th Cir. 2005) (stating party urging disqualification bears "heavy burden of showing the requisite judicial bias or misconduct"); *Cauthon v. Rogers*, 116 F.3d 1334, 1336 (10th Cir. 1997). Relevant facts must support the moving party's belief that the judge is biased. *See Mendoza*, 468 F.3d at 1262; *Nichols*, 71 F.3d at 352.

This court has held that "[a] motion to recuse under section 455(a) must be timely filed." *Willner v. Univ. of Kan.*, 848 F.2d 1023, 1028 (10th Cir. 1988) (per

curiam) (collecting cases); *see Cooley*, 1 F.3d at 993 (recognizing that a "motion to recuse . . . must be timely filed" (quotations omitted)).  Most circuits require that it be brought "at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification."  *See, e.g.*, *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994).[4]  This requirement guards against a party's withholding "a recusal application as a fall-back position in the event of adverse rulings on pending matters."  *In re IBM Corp.*, 45 F.3d 641, 643 (2d Cir. 1995); *see Smith v. Danyo*, 585 F.2d 83, 86 (3d Cir. 1978).

2. **Application**

    a. *Motion to disqualify based on appointing president or loyalty to a defendant*

The Davises' first motion for recusal consisted of one sentence:  "[I]t is hereby being requested that NO Judge appointed by the Bush Administration be assigned to this case, and NO Judge that has any fiduciary loyalties to the Defendants in this case in any matter due to conflicts of Interests."  Suppl. R., vol. 1 at 15.

By statute, Chief Judge Melgren was disqualified from assignment to this case because he was named as a defendant.  *See* § 455(b)(5)(I) (providing that a judge must disqualify himself if he "[i]s a party to the proceeding"); *see also* Code of Conduct, Canon 3(C)(1)(d)(i) (same).  He did not sit on the case.  Because Judge

---

    [4] *See also* Charles Gardner Geyh, *Judicial Disqualification:  An Analysis of Federal Law* 76-77 (2d ed. 2010); 12 Alan W. Perry & Martin H. Redish, *Moore's Federal Practice* § 63.61 (2019) ("In general, one seeking disqualification must do so at the earliest possible moment after obtaining knowledge of the facts demonstrating the basis for disqualification.").

Robinson had been assigned, she appropriately treated the motion as seeking only her recusal.

### i. Appointing president

This circuit has not addressed whether a judge may be disqualified based solely on which president appointed the judge. Other circuits have rejected challenges to a judge's impartiality based on the appointing administration. *See, e.g.*, *Straw v. United States*, 4 F.4th 1358, 1363 (Fed. Cir. 2021) ("There is no support whatsoever for the contention that a judge can be disqualified based simply on the identity of the President who appointed him."); *MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.*, 138 F.3d 33, 38 (2d Cir. 1998) (holding that appointment by a particular administration is not a ground for questioning a judge's impartiality). The D.C. Circuit denied recusal even when the appointing president was a party. *See In re Exec. Off. of the President*, 215 F.3d 25, 25-26 (D.C. Cir. 2000) (holding that neither the recusal statute nor the Code of Conduct requires a judge's recusal from a case involving the president who appointed him and collecting cases in which Supreme Court Justices participated in cases involving their appointing administrations).

We find this authority persuasive and agree that a judge's appointment by a particular president is not alone a basis for disqualification. We affirm the district court on this issue.

### ii. Loyalty to a defendant

As noted, the Davises' one-sentence motion asked that "no judge with fiduciary loyalties to defendants be assigned to the case." Suppl. R., vol. 1 at 15.

It did not mention a specific defendant, define "fiduciary loyalties," or provide facts establishing "fiduciary loyalties." Judge Robinson found that the Davises "presented no facts to suggest this Court has any fiduciary conflict of interest with any of the parties in this matter." *Id*. at 19. Their motion was therefore insufficient on its face.

Assuming the Davises filed their motion with Chief Judge Melgren's listing as a defendant in mind, we note that the Judicial Conference Committee on Codes of Conduct has stated that when "a judge is a named defendant, the other judges of that court are not necessarily and automatically disqualified." Guide to Judiciary Policy, vol. 2B, ch. 2, Published Advisory Op. No. 102 (2009).[5] Whether it is "appropriate for a judge to handle a matter naming judicial colleagues depends on the surrounding circumstances." *Id.*, Op. No. 103 (2009) (addressing harassing claims against a judge and concluding that when the litigation is patently frivolous, recusal of the assigned judge "would rarely be appropriate" based on "the mere naming of a judicial colleague").[6]

For example, in *Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000), after this court dismissed his previous appeal, the appellant sued, among others, every Tenth Circuit judge, and moved to recuse the panel assigned to his case. The panel, invoking their duty to sit and the rule of necessity, denied the motion, stating that "a judge is qualified to decide a case even if he or she would normally be impeded"

---

[5] https://perma.cc/44AK-24CX.

[6] https://perma.cc/48YU-Q3RH.

from doing so when "the case cannot be heard otherwise." *Id.* (quoting *United States v. Will*, 449 U.S. 200, 213 (1980)); *see also Rusk v. Tymkovich*, 714 F. App'x 913, 914 (10th Cir. 2018) (unpublished) (holding, under duty to sit and rule of necessity, that appellate panel members were not disqualified from hearing appeal in lawsuit against chief judge); *Jones v. Jones*, 820 F. App'x 659, 665-68 (10th Cir. 2020) (unpublished) (upholding rule-of-necessity denial of motion to recuse all district judges where movant asserted no objective basis for recusal).[7]

If naming a district judge as a defendant were sufficient to disqualify Judge Robinson, the entire district court would be disqualified. The circumstances here do not call for that. In their motion, the Davises did not mention either judge by name. They stated no facts, including any basis to impute Chief Judge Melgren's disqualification to Judge Robinson. *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 825-27 (1986) (refusing to impute the conflict of one state supreme court justice to the entire court).

In their complaint, the Davises mentioned Chief Judge Melgren only once and without explanation as to why he and others were named at all.[8] This scattershot

---

[7] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

[8] The complaint alleged:
> Defendant ERIC MELGREN is a former Kansas U.S. Attorney years 2002-2008. He was a partner at the law firm Foulston Sietkin and a United Way of the Plains board member 2002-2003. He is being sued in his official and individual capacity: his principle office at United

approach implicates "the indiscriminate litigant problem," *Ignacio v. Judges of U.S. Court of Appeals for the Ninth Circuit*, 453 F.3d 1160, 1164 (9th Cir. 2006), which in this instance would enable the Davises to exercise "veto power over sitting judges" on the Kansas federal district court by naming any one of them in the complaint, *Switzer*, 198 F.3d at 1258 (quotations omitted). Under these circumstances, Judge Robinson acted within her discretion in declining to recuse.

*  *  *  *

Because the Davises' cursory motion did not present facts to support recusal of Judge Robinson based on her appointment by President Bush or her "fiduciary loyalty" to any of the defendants, and because their complaint indiscriminately named numerous individual defendants, including her judicial colleague, without explanation as to why they were named, we find no abuse of discretion in the denial of the initial recusal motion.

b. *Motion to disqualify Chief Judge Melgren from Chief Judge duties*

The Davises filed their motion to disqualify Chief Judge Melgren from performing his duties as Chief Judge only after the case had been dismissed. No

---

States District Court. 401 N. Market. Wichita. Kansas 67202.
R., vol. 1 at 40. That is the only mention of him. In its memorandum and order dismissing the complaint, the district court noted that the complaint "specifically referenced" only nine of the 43 defendants in the factual allegations. Chief Judge Melgren was not one of them. The court said the individual capacity claims "must be dismissed for failure to allege personal participation." R., vol. 3 at 454.

other motions were pending, and Judge Robinson denied the motion as moot.[9]  About

three weeks later, the Davises filed their Rule 59 motion, again arguing that Chief

Judge Melgren should have been disqualified as Chief Judge.  Judge Robinson

declined to address arguments she had already considered and rejected.  *See Servants*

*of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (explaining that

motions for reconsideration may not be used to "revisit issues already addressed").

   We affirm the denial of the Chief Judge Melgren recusal motion on the

alternative grounds that it was both untimely and insufficient.[10]

   As noted above, a motion to recuse must be filed as soon as the movant learns

of the facts relied upon for disqualification.  *Hinman*, 831 F.2d at 938; *see also*

*Cooley*, 1 F.3d at 993 (recognizing that a "motion to recuse . . . must be timely filed"

(quotations omitted)).  Granting such a motion "many months after an action has

been filed wastes judicial resources and encourages manipulation of the judicial

process." *Willner*, 848 F.2d at 1029.

   The Davises were on notice of Chief Judge Melgren's position on the district

court at least by March 13, 2023, when the motion to dismiss the claims against him

---

[9] The court retained jurisdiction because the time for filing post-judgment motions had not passed.  *See* Fed. R. Civ. P. 59(e) (providing that a motion to alter or amend judgment must be filed within 28 days after entry of judgment); *id.* R. 60(c) (providing that Rule 60(b) motions must be filed within a "reasonable time" after entry of judgment).  The Davises' Rule 59(e) motion for reconsideration raised the issue again, and the court declined to consider it.

[10] We may affirm "on any basis supported by the record."  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).

was filed, because the motion identified his position as Chief Judge. R., vol. 1 at 223. Yet they waited until September 29, 2023—more than six months later and after the case had been dismissed—to request that he be disqualified from serving in his role as Chief Judge. R., vol. 3 at 520. The motion was untimely. *See id.* (holding motion filed ten months after discovery of alleged bias was untimely); *see also Green v. Branson*, 108 F.3d 1296, 1305 (10th Cir. 1997) (concluding recusal motion filed five weeks after magistrate judge issued recommendation reflecting alleged bias was untimely); *Hinman*, 831 F.2d at 938 (holding motion filed three and five months after movant discovered allegedly disqualifying facts was untimely).

As this court has said:

> [Section] 455(a) motions for recusal "must be timely filed." Although this circuit has not attempted to define the precise moment at which a § 455(a) motion to recuse becomes untimely, our precedent requires a party to act promptly once it knows of the facts on which it relies in its motion. A promptly filed motion conserves judicial resources and alleviates the concern that it is motivated by adverse rulings or an attempt to manipulate the judicial process.

*United States v. Pearson*, 203 F.3d 1243, 1276 (10th Cir. 2000) (citations omitted).

The motion also was insufficient. The Davises alleged no facts indicating that Chief Judge Melgren had any involvement with this case. Nothing in the record suggests he performed any administrative responsibilities.[11]

---

[11] Under the District of Kansas local rules, "[t]he chief judge is responsible for . . . the assignment of cases to the judges," D. Kan. R. 40.1, but responsibility for initial case assignments is delegated to the clerk of the court, *see id.* R. 72.1.2(b)

## B. *Dismissal Order*

We review de novo the dismissal of a complaint for lack of jurisdiction or for failure to state a claim. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1169 (10th Cir. 2021) (failure to state a claim); *Guttman v. Khalsa*, 446 F.3d 1027, 1031 (10th Cir. 2006) (lack of jurisdiction).

"Our rules of appeal require appellants to sufficiently raise all issues and arguments on which they desire appellate review in their opening brief." *Clark v. Colbert*, 895 F.3d 1258, 1265 (10th Cir. 2018) (brackets and quotations omitted). "[P]ro se parties [must] follow the same rules of procedure that govern other litigants," including the rule requiring that briefs contain "more than a generalized assertion of error, with citations to supporting authority." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840-41 (10th Cir. 2005) (quotations omitted); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring briefs to explain the reasons for each contention with citations to authorities supporting each argument). "When a pro se litigant fails to comply with that rule, we cannot fill the void by crafting arguments and performing the necessary legal research." *Garrett*, 425 F.3d at 841 (brackets and quotations omitted).

In their briefs, the Davises provide a factual narrative regarding the defendants' alleged actions. They argue that the district court's partiality prevented it from properly addressing the merits of their constitutional claims. But they do not

("The clerk of the court will assign civil cases to a magistrate judge or judge for the . . . hearing and determination of all pretrial . . . motions.").

challenge the district court's grounds for dismissal.  Their factual narrative is not a "substitute for legal argument."  *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015).

The district court's decision explains in detail the bases for its dismissal of the claims against each defendant.  The Davises point to no facts alleged in their complaint or any legal authority that would undermine the district court's reasoning.  *See id.* ("The first task of an appellant is to explain to us why the district court's decision was wrong.").  We thus affirm the district court's dismissal for substantially the same reasons given by the district court.  *See id.* (affirming dismissal of claim where appellant's brief failed to challenge the basis for the district court's ruling); *see also Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (declining to address a district court's reasoning when the appellant's opening brief did not challenge it).

## III. **CONCLUSION**

We affirm the district court's judgment.[12]

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

---

[12] We deny the Davises' motion to supplement the record.  All documents filed in the district court are available for our review.  *See* Fed. R. App. P. 10(a).  The Davises have not shown that supplementation of the record is warranted because their motion does not specify what material items they believe have been omitted from the record.  *See id.* at 10(e)(2).