CLOSED,APPEAL

# U.S. District Court
# DISTRICT OF KANSAS (Wichita)
# CIVIL DOCKET FOR CASE #: <u>6:23−cv−01010−JAR−BGS</u>

| | |
|---|---|
| Davis et al v. United States Department of Justice et al | Date Filed: 01/23/2023 |
| Assigned to: District Judge Julie A. Robinson | Date Terminated: 09/28/2023 |
| Referred to: Magistrate Judge Brooks G. Severson | Jury Demand: Plaintiff |
| Case in other court:  10CCA, 23−03244 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Carla Davis**                                represented by  **Carla Davis**
                                                                901 N. Belmont
                                                                Wichita, KS 67208
                                                                316−691−8804
                                                                Email:
                                                                PRO SE
                                                                *Bar Number:*
                                                                *Bar Status:*

**Plaintiff**

**Jalen Davis**                                represented by  **Jalen Davis**
                                                                901 N. Belmont
                                                                Wichita, KS 67208
                                                                316−691−8804
                                                                Email:
                                                                PRO SE
                                                                *Bar Number:*
                                                                *Bar Status:*

V.

**Defendant**

**United States Department of Justice**        represented by  **Christopher Allman**
                                                                Office of United States Attorney − KCKS
                                                                500 State Avenue, Suite 360
                                                                Kansas City, KS 66101
                                                                913−551−6730
                                                                Fax: 913−551−6541
                                                                Alternative Phone:
                                                                Cell Phone: 9135152824
                                                                Email: <u>Chris.Allman@usdoj.gov</u>
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 14225*
                                                                *Bar Status: Active*

**Defendant**

**Merrick B. Garland**
*U.S. Attorney General, in his official and individual capacities*

represented by **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Defendant**

**United States Department of Health and Human Services**

represented by **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Defendant**

**Xavier Becerra**
*Secretary of Health and Human Services, in his official and individual capacities*

represented by **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Defendant**

**Dustin Slinkard**
*Kansas U.S. Attorney, in his official and individual capacities*

represented by **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Defendant**

**Eric Melgren**
*former Kansas U.S. Attorney, in his official and individual capacity*

represented by **Christopher Allman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14225*
*Bar Status: Active*

**Defendant**

**Kris W. Kobach**
*Kansas Attorney General, in his official and individual capacity*

represented by **Matthew Lee Shoger**
Office of the Kansas Attorney General
Legal Services
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
785−296−2215
Fax: 785−291−3767
Alternative Phone: 316−209−5135
Cell Phone: 316−209−5135
Email: matt.shoger@ag.ks.gov

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Defendant**

**Kansas Homeland Security**                 represented by     **Stanley R. Parker**
Kansas Attorney General – Topeka
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
785–368–8423
Fax: 785–291–3767
Alternative Phone:
Cell Phone: 785–640–2134
Email: stanley.parker@ag.ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Carrie A. Barney**
Kansas Attorney General – Topeka
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612
785–368–6695
Fax: 785–291–3767
Alternative Phone:
Cell Phone:
Email: carrie.barney@ag.ks.gov
 *TERMINATED: 04/12/2023*
*Bar Number: 22872*
*Bar Status: Active*

**Defendant**

**David Weishaar**                           represented by     **Stanley R. Parker**
*Kansas Homeland Security Director and*                        (See above for address)
*Adjunct General, in his official and*                         *LEAD ATTORNEY*
*individual capacity*                                          *ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Carrie A. Barney**
(See above for address)
 *TERMINATED: 04/12/2023*
*Bar Number: 22872*
*Bar Status: Active*

**Defendant**

**Kansas Department of Health and**          represented by     **Katelyn C. Radloff**
**Environment**                                                 1000 SW Jackson
Suite 560

Topeka, KS 66612
785–296–1333
Alternative Phone: 785–296–1333
Cell Phone:
Email: katelyn.radloff@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27430*
*Bar Status: Active*

**Defendant**

**Janet Stanek**                          represented by    **Katelyn C. Radloff**
*KDHE Secretary, in her official and*                      (See above for address)
*individual capacity*                                      *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Number: 27430*
                                                           *Bar Status: Active*

**Defendant**

**James Michael Moser**                   represented by    **Katelyn C. Radloff**
*M.D., Kansas Department of Health and*                    (See above for address)
*Environment Lead Public Health*                           *LEAD ATTORNEY*
*Physician, in his official and individual*                *ATTORNEY TO BE NOTICED*
*capacity*                                                 *Bar Number: 27430*
                                                           *Bar Status: Active*

**Defendant**

**Kansas Insurance Department**           represented by    **Justin Louis McFarland**
                                                           Kansas Insurance Department
                                                           1300 SW Arrowhead Road
                                                           Topeka, KS 66604
                                                           785–633–9975
                                                           Alternative Phone: 785–338–0959
                                                           Cell Phone:
                                                           Email: justin.l.mcfarland@ks.gov
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Number: 24247*
                                                           *Bar Status: Active*

**Defendant**

**Vicki Schmidt**                         represented by    **Justin Louis McFarland**
*Kansas Insurance Commissioner, in her*                    (See above for address)
*official and individual capacity*                         *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*
                                                           *Bar Number: 24247*
                                                           *Bar Status: Active*

**Defendant**

**Kansas Health Care Stabilization Fund**  represented by

**Christopher S. Cole**
Woodard, Hernandez, Roth & Day, LLC
245 N. Waco, Suite 260
Wichita, KS 67202
316–263–4958
Fax: 316–263–0125
Alternative Phone:
Cell Phone:
Email: ccole@woodard–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16343*
*Bar Status: Active*

**Defendant**

**Clark Shultz**
*Executive Director, Kansas Health Care*
*Stabilization Fund, in his official and*
*individual capacity*

represented by **Christopher S. Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16343*
*Bar Status: Active*

**Defendant**

**Sedgwick County, Kansas, Board of**
**Commissioners**
*Board of Health*

represented by **Kevin T. Stamper**
Sedgwick County Counselor's Office
100 N. Broadway, Suite 650
Wichita, KS 67202
316–660–9340
Fax: 316–383–7007
Alternative Phone:
Cell Phone:
Email: Kevin.Stamper@sedgwick.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 18824*
*Bar Status: Active*

**Defendant**

**Marc Bennett**
*Sedgwick County District Attorney, in his*
*official and individual capacity*

represented by **Matthew Lee Shoger**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28151*
*Bar Status: Active*

**Defendant**

**Wichita City Counsel, City of**

represented by **Erik Houghton**
City of Wichita, Law Department
455 N. Main, Suite 13th Floor
Wichita, KS 67202

316–268–4681
Alternative Phone:
Cell Phone:
Email: ehoughton@wichita.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27368*
*Bar Status: Active*

**Defendant**

**Central Plains Health Care**          represented by   **Andrew Foulston**
**Partnership**                                          McDonald Tinker, PA
                                                         300 W. Douglas Avenue, Suite 500
                                                         PO Box 207
                                                         Wichita, KS 67202
                                                         316–263–5851
                                                         Fax: 316–263–4677
                                                         Alternative Phone: 316–737–6015
                                                         Cell Phone: 316–737–6015
                                                         Email: afoulston@mcdonaldtinker.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number: 27688*
                                                         *Bar Status: Active*

                                                         **Katy Olson**
                                                         McDonald Tinker, PA
                                                         300 W. Douglas Avenue, Suite 500
                                                         PO Box 207
                                                         Wichita, KS 67202
                                                         316–263–5851
                                                         Fax: 316–263–4677
                                                         Alternative Phone:
                                                         Cell Phone: 316–308–7882
                                                         Email: kolson@mcdonaldtinker.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number: 25581*
                                                         *Bar Status: Active*

**Defendant**

**Medical Society of Sedgwick County**   represented by   **Andrew Foulston**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Number: 27688*
                                                         *Bar Status: Active*

                                                         **Katy Olson**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number: 25581*
*Bar Status: Active*

**Defendant**

**Wesley Medical Center, LLC**                represented by     **Justen P. Phelps**
                                                                Gibson Watson Marino, LLC
                                                                301 North Main, Suite 1300
                                                                Wichita, KS 67202–4813
                                                                316–264–7321
                                                                Fax: 316–264–8614
                                                                Alternative Phone:
                                                                Cell Phone:
                                                                Email: justen@gwmks.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 22670*
                                                                *Bar Status: Active*

**Defendant**

**Children's Mercy Hospital, The**            represented by     **Barbara K. Christopher**
                                                                Horn, Aylward & Bandy, LLC
                                                                2600 Grand Boulevard, Suite 1100
                                                                Kansas City, MO 64108
                                                                816–421–0700
                                                                Fax: 816–421–0899
                                                                Alternative Phone:
                                                                Cell Phone: 816–305–3040
                                                                Email: bchristopher@hab–law.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 16387*
                                                                *Bar Status: Active*

                                                                **Matthew Klose**
                                                                Horn, Aylward & Bandy, LLC
                                                                2600 Grand Boulevard, Suite 1100
                                                                Kansas City, MO 64108
                                                                816–595–7751
                                                                Alternative Phone:
                                                                Cell Phone:
                                                                Email: mklose@hab–law.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 27360*
                                                                *Bar Status: Active*

**Defendant**

**Wichita Clinic, P.A.**                       represented by     **Mackenzie Maki Baxter**
*formerly known as*                                             Hite, Fanning & Honeyman, LLP
Christi Clinic P.A.                                             100 North Broadway, Suite 950

*now known as*
Ascension Medical Group Via Christi,
P.A.

Wichita, KS 67202–2209
316–265–7741
Fax: 316–267–7803
Alternative Phone:
Cell Phone:
Email: baxter@hitefanning.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27909*
*Bar Status: Active*

**Defendant**

**Kansas University School of Medicine**
*Wichita, and it's Wichita Center for*
*Graduate Medical Education, Inc*

represented by **Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Carrie A. Barney**
(See above for address)
 *TERMINATED: 04/12/2023*
*Bar Number: 22872*
*Bar Status: Active*

**Defendant**

**Garold O. Minns**
*M.D., Dean of KU School of*
*Medicine–Wichita, in his official and*
*individual capacity*

represented by **Stanley R. Parker**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10971*
*Bar Status: Active*

**Carrie A. Barney**
(See above for address)
 *TERMINATED: 04/12/2023*
*Bar Number: 22872*
*Bar Status: Active*

**Defendant**

**Stewart E. Dismuke**
*M.D., former Dean of KU School of*
*Medicine–Wichita, in his official and*
*individual capacity*

represented by **Christopher S. Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16343*
*Bar Status: Active*

**Defendant**

**Robert Kenagy**
*M.D., Wichita Clinic Medical Director, in*

represented by **Mackenzie Maki Baxter**
(See above for address)

*his official and individual capacity*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 27909*
*Bar Status: Active*

**Cameron Scott Bernard**
Foulston Siefkin LLP – OP
7500 College Blvd., Suite 1400
Overland Park, KS 66210
913–253–2150
Fax: 913–498–2101
Alternative Phone:
Cell Phone: 316–477–0092
Email: cbernard@foulston.com
*TERMINATED: 03/10/2023*
*Bar Number: 28228*
*Bar Status: Active*

**Susan L. Mauch**
Goodell, Stratton, Edmonds & Palmer,
LLP – Topeka
515 South Kansas Avenue
Topeka, KS 66603–3999
785–233–0593
Fax: 785–233–8870
Alternative Phone:
Cell Phone:
Email: slmauch@gseplaw.com
*TERMINATED: 03/10/2023*
*Bar Number: 15295*
*Bar Status: Active*

**Defendant**

**Clyde Wilson Wesbrook**
*M.D., in his official and individual*
*capacity*

represented by **Christopher S. Cole**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 16343*
*Bar Status: Active*

**Defendant**

**Dee Spade**
*M.D., Wichita Clinic, in her official and*
*individual capacity*

represented by **Steven C. Day**
Woodard, Hernandez, Roth & Day, LLC
245 N. Waco, Suite 260
Wichita, KS 67202
316–263–4958 ext 302
Fax: 316–263–0125
Alternative Phone:
Cell Phone:
Email: scday@woodard–law.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*
*Bar Number: 09755*
*Bar Status: Active*

**Defendant**

**Virgil F. Burry**                                        represented by   **Barbara K. Christopher**
*M.D., Exe. Medical Director Children's*                                   (See above for address)
*Mercy Hospital, in his official and*                                      *LEAD ATTORNEY*
*individual capacity*                                                      *ATTORNEY TO BE NOTICED*
                                                                           *Bar Number: 16387*
                                                                           *Bar Status: Active*

                                                                           **Matthew Klose**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*
                                                                           *Bar Number: 27360*
                                                                           *Bar Status: Active*

**Defendant**

**Hewitt Goodpasture**                                     represented by   **Andrew Foulston**
*M.D., Medical Society of Sedgwick*                                        (See above for address)
*County, in his official and individual*                                  *LEAD ATTORNEY*
*capacity*                                                                 *ATTORNEY TO BE NOTICED*
                                                                           *Bar Number: 27688*
                                                                           *Bar Status: Active*

                                                                           **Katy Olson**
                                                                           (See above for address)
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*
                                                                           *Bar Number: 25581*
                                                                           *Bar Status: Active*

**Defendant**

**David Grainger**                                         represented by   **Ruslan Ivanov**
*M.D., Central Plains Health Care*                                         8510 E. 29th Street N, Apt. 2202
*Partnership/KU School of Medicine*                                        Wichita, KS 67226
*OB/GYN Chairman, in his official and*                                     915–979–2403
*individual capacity*                                                      Alternative Phone: 785–766–1449
                                                                           Cell Phone:
                                                                           Email: rdivanov@martinpringle.com
                                                                           *LEAD ATTORNEY*
                                                                           *ATTORNEY TO BE NOTICED*
                                                                           *Bar Number: 26902*
                                                                           *Bar Status: Active*

                                                                           **Samantha M. H. Woods**
                                                                           Martin Pringle Oliver Wallace & Bauer,
                                                                           LLP – Wichita
                                                                           645 East Douglas, Suite 100

Wichita, KS 67202
316–265–9311
Alternative Phone:
Cell Phone:
Email: smwoods@martinpringle.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25929*
*Bar Status: Active*

**Defendant**

**Travis Stembridge**
*M.D., OB/GYN Former President of*
*Medical Society of Sedgwick County, in*
*his official and individual capacity*

represented by **Ruslan Ivanov**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 26902*
*Bar Status: Active*

**Samantha M. H. Woods**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 25929*
*Bar Status: Active*

**Defendant**

**Gerard Bassell**
*M.D., Anesthesiologist, KU School of*
*Medicine Program Director, in his*
*official and individual capacity*

represented by **Jay F. Fowler**
Foulston Siefkin LLP – Wichita
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206–4466
316–291–9541
Alternative Phone: 3162107436
Cell Phone: 3162107436
Email: jfowler@foulston.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 10727*
*Bar Status: Active*

**Defendant**

**Anna F. Stork–Fury**
*Former KU Medical Student OB/GYN, in*
*her official and individual capacity*

represented by **Brian L. White**
Hinkle Law Firm LLC
1617 N. Waterfront Parkway, Suite 400
Wichita, KS 67206–6639
316–660–6200
Fax: 316–660–6024
Alternative Phone:
Cell Phone:
Email: bwhite@hinklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Bar Number: 20767*
*Bar Status: Active*

**Mark R. Maloney**
Hinkle Law Firm LLC
1617 N. Waterfront Parkway, Suite 400
Wichita, KS 67206–6639
316–267–2000
Fax: 316–630–8466
Alternative Phone: 316–660–6171
Cell Phone: 316–734–4238
Email: mmaloney@hinklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 14134*
*Bar Status: Active*

**Rebecca Bergkamp**
Hinkle Law Firm LLC
1617 N. Waterfront Parkway, Suite 400
Wichita, KS 67206–6639
316–618–3016
Alternative Phone:
Cell Phone:
Email: rbergkamp@hinklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 28239*
*Bar Status: Active*

**Defendant**

**Brenda Kallemeyn**                          represented by    **Christopher S. Cole**
*Former KU Medical Student OB/GYN, in*                          (See above for address)
*her official and individual capacity*                          *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 16343*
                                                                *Bar Status: Active*

**Defendant**

**Tom Yao**
*Former KU Medical Student Anesthesia,*
*in his official and individual capacity*

**Defendant**

**Gianfranco Pezzino**                        represented by    **Katelyn C. Radloff**
*M.D., State of Kansas Epidemiologist, in*                      (See above for address)
*his official and individual capacity*                          *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*
                                                                *Bar Number: 27430*
                                                                *Bar Status: Active*

**Defendant**

**Foulston Siefkin L.L.P.**                          represented by   **Jeffery A. Jordan**
                                                                     Foulston Siefkin LLP – Wichita
                                                                     1551 N. Waterfront Parkway, Suite 100
                                                                     Wichita, KS 67206–4466
                                                                     316–291–9513
                                                                     Fax: 316–267–6345
                                                                     Alternative Phone:
                                                                     Cell Phone: 316–207–8547
                                                                     Email: jjordan@foulston.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Bar Number: 12574*
                                                                     *Bar Status: Active*

**Defendant**

**Klenda Mitchell Austerman Zuercher**              represented by   **Christopher A. McElgunn**
**L.L.C.**                                                           Klenda Austerman LLC – Wichita
*also known as*                                                      301 North Main, Suite 1600
Klenda Austerman L.L.C.                                              Wichita, KS 67202
                                                                     316–267–0331
                                                                     Fax: 316–267–0333
                                                                     Alternative Phone: 316–290–4621
                                                                     Cell Phone: 316–371–6182
                                                                     Email: cmcelgunn@klendalaw.com
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Bar Number: 13359*
                                                                     *Bar Status: Active*

**Defendant**

**Brandon Whipple**                                 represented by   **Erik Houghton**
*Mayor; in his official and individual*                             (See above for address)
*capacity*                                                           *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Bar Number: 27368*
                                                                     *Bar Status: Active*

**Defendant**

**Wichita Center for Graduate Medical**            represented by   **Christopher S. Cole**
**Education, Inc.**                                                  (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*
                                                                     *Bar Number: 16343*
                                                                     *Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 01/23/2023 | 1 | COMPLAINT with trial location of Wichita, filed by Jalen Davis, Carla Davis. (Attachments: # 1 Exhibits) (jk) (Entered: 01/24/2023) |
|---|---|---|
| 01/23/2023 | 2 | CIVIL COVER SHEET re 1 Complaint by Plaintiffs Carla Davis, Jalen Davis. (jk) (Entered: 01/24/2023) |
| 01/23/2023 | | FILING FEE PAID: in the amount of $402, receipt number 600001240. (jk) (Entered: 01/24/2023) |
| 01/23/2023 | | NOTICE OF JUDGE ASSIGNMENT: Case assigned to District Judge Julie A. Robinson and Magistrate Judge Gwynne E. Birzer for all proceedings. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)<br><br>**NOTICE OF MAGISTRATE JUDGE AVAILABILITY: A United States magistrate judge is available to conduct all proceedings in this civil action if all parties voluntarily consent. Information & consent forms are available at http://www.uscourts.gov/forms/civil-forms/notice-consent-and-reference-civil-action-magistrate-judge** (jk) (Entered: 01/24/2023) |
| 01/25/2023 | 3 | NOTICE OF TELEPHONE NUMBER CORRECTION by Carla Davis. (sz) (Entered: 01/26/2023) |
| 01/25/2023 | 4 | NOTICE OF TELEPHONE NUMBER CORRECTION by Jalen Davis. (sz) (Entered: 01/26/2023) |
| 01/25/2023 | 5 | MOTION REGARDING JUDGE ASSIGNMENT by Plaintiff Carla Davis. (sz) (Entered: 01/26/2023) |
| 01/25/2023 | 6 | MOTION REGARDING JUDGE ASSIGNMENT by Plaintiff Jalen Davis. (sz) (Entered: 01/26/2023) |
| 01/25/2023 | 7 | SUPPLEMENT to 1 Complaint by Plaintiffs Carla Davis, Jalen Davis. (sz) (Entered: 01/26/2023) |
| 01/25/2023 | 8 | EXHIBIT(S) IN SUPPORT of 1 Complaint by Plaintiff Carla Davis. (sz) (Entered: 01/26/2023) |
| 01/26/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: MOTIONS for Order (ECF Nos. 5 and 6 These motions will be resolved by the District Judge.(spa)** (Entered: 01/26/2023) |
| 01/26/2023 | | Summons Issued as to United States Department of Health and Human Services, United States Department of Justice, U.S. Attorney and U.S. Attorney General (issued to Pro Se Plaintiff for service) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to Plaintiff for service with complaint. (sz) (Entered: 01/26/2023) |
| 01/26/2023 | | SUMMONS ISSUED as to Gerard Bassell, Xavier Becerra, Marc Bennett, Virgil F. Burry, Central Plains Hea Care Partnership, Children's Mercy Hospital, The, Stewart E. Dismuke, Foulston Siefkin L.L.P., Merrick B. Garland, Hewitt Goodpasture, David Grainger, Brenda Kallemeyn, Kansas Department of Health and Environment, Kansas Health Care Stabilization Fund, Kansas Homeland Security, Kansas Insurance Departme Kansas University School of Medicine, Robert Kenagy, Klenda Mitchell Austerman Zuercher L.L.C., Kris W. Kobach, Medical Society of Sedgwick County, Eric Melgren, Garold O. Minns, James Michael Moser, Gianfranco Pezzino, Vicki Schmidt, Sedgwick County, Kansas, Board of Commissioners, Clark Shultz, Dustin Slinkard, Dee Spade, Janet Stanek, Travis Stembridge, Anna F. Stork–Fury, David Weishaar, Clyde Wilson Wesbrook, Wesley Medical Center, LLC, Brandon Whipple, Wichita Center for Graduate Medical Education, Inc., Wichita City Counsel, City of, Wichita Clinic, P.A., Tom Yao. (issued to Returned to Pro Se Plaintiff for service) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to Plaintiff for service with complaint.. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry (sz) (Entered: 01/26/2023) |
| 01/30/2023 | 9 | ORDER REASSIGNING CASE: Case reassigned to Magistrate Judge Kenneth G. Gale for all further proceedings. Magistrate Judge Gwynne E. Birzer no longer assigned to case. Signed by Magistrate Judge Gwynne E. Birzer on 1/30/23. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(ala) (Entered: 01/30/2023) |
| 01/30/2023 | | |

| | | |
|---|---|---|
| | | NOTICE Re Pro Se Mailing. Docket Entry 9 , Order Reassigning Case, mailed to Jalen Davis and Carla Davis 901 N. Belmont Wichita, KS 67208 on 1/30/2023 by regular mail. (ala) (Entered: 01/30/2023) |
| 01/30/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 6 MOTION for Order, 5 MOTION for Order. The motion will be resolved by the District Judge. (df)** (Entered: 01/30/2023) |
| 02/09/2023 | | ALIAS SUMMONS ISSUED as to Gerard Bassell, Stewart E. Dismuke, Hewitt Goodpasture, David Grainger, Brenda Kallemeyn, Kansas University School of Medicine, Garold O. Minns, Travis Stembridge, Anna F. Stork–Fury, Tom Yao. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided the pro se plaintiff for service with the complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mam) (Entered: 02/09/2023) |
| 02/09/2023 | | ALIAS SUMMONS ISSUED as to James Michael Moser, Gianfranco Pezzino. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided to the pro se plaintiff for service with the complaint. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (mam) (Entered: 02/09/2023) |
| 02/09/2023 | 10 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Insurance Department served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/09/2023 | 11 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Vicki Schmidt served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/09/2023 | 12 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Health Care Stabilization Fund served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/09/2023 | 13 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Clark Shultz served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/09/2023 | 14 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Wichita City Counsel, City of served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/09/2023 | 15 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Brandon Whip served on 1/30/2023, answer due 2/21/2023. (jk) (Entered: 02/09/2023) |
| 02/10/2023 | 16 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Clark Shultz. (Cole, Christopher) (Entered: 02/10/2023) |
| 02/10/2023 | 17 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Kansas Health Care Stabilization Fund. (Cole, Christopher) (Entered: 02/10/2023) |
| 02/10/2023 | 18 | CLERKS ORDER EXTENDING TIME until 3/06/2023 for Defendant Kansas Health Care Stabilization Fund to answer or otherwise plead. Signed by deputy clerk on 2/10/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/10/2023) |
| 02/10/2023 | 19 | CLERKS ORDER EXTENDING TIME until 3/06/2023 for Defendant Clark Shultz to answer or otherwise plead. Signed by deputy clerk on 2/10/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/10/2023) |
| 02/10/2023 | 20 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kris W. Kobach served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 21 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Homeland Security (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 22 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon David Weishaar (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: |

| | | |
|---|---|---|
| | | 02/13/2023) |
| 02/10/2023 | 23 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Department of Health and Environment (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023 (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 24 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Janet Stanek (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023 |
| 02/10/2023 | 25 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon James Michael Mc (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 26 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Insurance Department (through Kris Kobach Kansas Attorney General) served on 1/31/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 27 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Vicki Schmidt (through Kris Kobach Kansas Attorney General) served 1/31/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 28 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas Health Car Stabilization Fund (through Kris Kobach Kansas Attorney General) served 1/31/2023. (jk) (Entered: 02/13/202 |
| 02/10/2023 | 29 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Clark Shultz (throu Kris Kobach Kansas Attorney General) served 1/31/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 30 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Kansas University School of Medicine (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/20 (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 31 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Garold O. Minns (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 32 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Stewart E. Dismuk (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 33 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Virgil F. Burry (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 34 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Hewitt Goodpastu (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 35 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon David Grainger (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 36 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Travis Stembridge (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 37 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Gerard Bassell (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |

| 02/10/2023 | 38 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Anna F. Stork–Fu (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 39 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Brenda Kallemeyn (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/10/2023 | 40 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Tom Yao (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023 |
| 02/10/2023 | 41 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Gianfranco Pezzin (through Kris Kobach Kansas Attorney General) served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/13/2023) |
| 02/13/2023 | 42 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Gerard Bassell ser 2/10/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 43 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Robert Kenagy served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 44 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Virgil F. Burry served on 1/31/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 45 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Children's Mercy Hospital, The served on 1/31/2023, answer due 2/21/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 46 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Merrick B. Garland served on 2/9/2023, answer due 3/2/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 47 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Xavier Becerra served on 2/9/2023, answer due 3/2/2023. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 48 | Summons Returned Executed –– served by UPS Ground on 2/9/2023 on United States Attorney General for United States Department of Health and Human Services. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 49 | Summons Returned Executed –– served by UPS Ground on 2/9/2023 on United States Attorney General for E Melgren. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 50 | Summons Returned Executed –– served by UPS Ground on 2/9/2023 on United States Attorney General for United States Department of Justice. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 51 | Summons Returned Executed –– served by UPS Ground on 2/9/2023 on United States Attorney General for Xavier Becerra. (jk) (Entered: 02/14/2023) |
| 02/13/2023 | 52 | Summons Returned Executed –– served by UPS Ground on 2/9/2023 on United States Attorney General for Dustin Slinkard. (jk) (Entered: 02/14/2023) |
| 02/14/2023 | 53 | ENTRY OF APPEARANCE by Susan L. Mauch on behalf of Robert Kenagy (Mauch, Susan) (Entered: 02/14/2023) |
| 02/14/2023 | 54 | ENTRY OF APPEARANCE by Cameron Scott Bernard on behalf of Robert Kenagy (Bernard, Cameron) (Entered: 02/14/2023) |
| 02/14/2023 | 55 | CLERKS ORDER EXTENDING TIME until 3/07/2023 for Defendant Robert Kenagy to answer or otherwise plead. Signed by deputy clerk on 2/14/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont Wichita, KS 67208 by regular mail. (jk) (Entered: 02/14/2023) |

| 02/16/2023 | 56 | ENTRY OF APPEARANCE by Erik Houghton on behalf of Wichita City Counsel, City of. (Houghton, Erik) (Entered: 02/16/2023) |
| 02/16/2023 | 57 | ENTRY OF APPEARANCE by Erik Houghton on behalf of Brandon Whipple (Houghton, Erik) (Entered: 02/16/2023) |
| 02/16/2023 | 58 | CLERKS ORDER EXTENDING TIME until 3/06/2023 for Defendant Wichita City Counsel, City of to answer or otherwise plead. Signed by deputy clerk on 2/16/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/16/2023) |
| 02/16/2023 | 59 | CLERKS ORDER EXTENDING TIME until 3/06/2023 for Defendant Brandon Whipple to answer or otherwise plead. Signed by deputy clerk on 2/16/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/16/2023) |
| 02/21/2023 | 60 | ENTRY OF APPEARANCE by Katelyn C. Radloff on behalf of Kansas Department of Health and Environment (Radloff, Katelyn) (Entered: 02/21/2023) |
| 02/21/2023 | 61 | ENTRY OF APPEARANCE by Katelyn C. Radloff on behalf of Janet Stanek. (Radloff, Katelyn) (Entered: 02/21/2023) |
| 02/21/2023 | 62 | CLERKS ORDER EXTENDING TIME until 3/7/2023 for Defendant Kansas Department of Health and Environment to answer or otherwise plead. Signed by deputy clerk on 2/21/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 02/21/2023) |
| 02/21/2023 | 63 | CLERKS ORDER EXTENDING TIME until 3/7/2023 for Defendant Janet Stanek to answer or otherwise plead. Signed by deputy clerk on 2/21/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 02/21/2023) |
| 02/21/2023 | 64 | ENTRY OF APPEARANCE by Justin Louis McFarland on behalf of Kansas Insurance Department, Vicki Schmidt. (McFarland, Justin) (Entered: 02/21/2023) |
| 02/21/2023 | 65 | CLERKS ORDER EXTENDING TIME until 3/7/2023 for Defendant Hewitt Goodpasture to answer or otherwise plead. Signed by deputy clerk on 2/21/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 02/21/2023) |
| 02/21/2023 | 66 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR INVOLUNTARY DISMISSAL WITH PREJUDICE FOR FAILURE TO PROSECUTE by Defendants Virgil F. Burry, Children's Mercy Hospital, The. (Christopher, Barbara) (Entered: 02/21/2023) |
| 02/21/2023 | 67 | CORPORATE DISCLOSURE STATEMENT by Children's Mercy Hospital, The identifying None as corporate parent. (Christopher, Barbara) (Entered: 02/21/2023) |
| 02/21/2023 | 68 | DESIGNATION OF PLACE OF TRIAL filed by Defendants Virgil F. Burry, Children's Mercy Hospital, The trial to be held in Kansas City. (Christopher, Barbara) (Entered: 02/21/2023) |
| 02/21/2023 | 69 | ENTRY OF APPEARANCE by Barbara K. Christopher on behalf of Virgil F. Burry, Children's Mercy Hospital, The. (Christopher, Barbara) (Entered: 02/21/2023) |
| 02/21/2023 | 70 | ORDER denying 5 Motion to Recuse; denying 6 Motion to Recuse. Signed by District Judge Julie A. Robinson on 2/21/2023. Mailed to pro se party Carla Davis, Jalen Davis by regular mail. (ca) (Entered: 02/21/2023) |
| 02/21/2023 | 71 | CLERKS ORDER EXTENDING TIME until 3/07/2023 for Defendants Vicki Schmidt, Kansas Insurance Department to answer or otherwise plead. Signed by deputy clerk on 2/21/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 72 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon David Weishaar served on 2/15/2023. (jk) (Entered: 02/21/2023) |

| 02/21/2023 | 73 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Janet Stanek serve on 2/15/2023. (jk) (Entered: 02/21/2023) |
|---|---|---|
| 02/21/2023 | 74 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon James Michael Mo served on 2/15/2023. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 75 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Gianfranco Pezzin served on 2/15/2023. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 76 | SUMMONS RETURNED UNEXECUTED by Jalen Davis, Carla Davis as to Tom Yao. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 77 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Brenda Kallemeyn served on 2/16/2023. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 78 | Summons Returned Executed –– Eric Melgren served by UPS Ground on 2/13/2023. (jk) (Entered: 02/21/202 |
| 02/21/2023 | 79 | Summons Returned Executed –– Merrick B. Garland served by UPS Ground on 2/14/2023 to United States Attorney. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 80 | Summons Returned Executed –– Dustin Slinkard United States Attorney served by UPS Ground on 2/14/2023 answer due 4/17/2023. (jk) (Entered: 02/21/2023) |
| 02/21/2023 | 81 | ENTRY OF APPEARANCE by Carrie A. Barney on behalf of Kansas Homeland Security, Kansas University School of Medicine, Garold O. Minns, David Weishaar. (Barney, Carrie) (Entered: 02/21/2023) |
| 02/21/2023 | 82 | ENTRY OF APPEARANCE by Matthew Lee Shoger on behalf of Kris W. Kobach. (Shoger, Matthew) (Enter 02/21/2023) |
| 02/21/2023 | 83 | Summons Returned Executed –– United States Attorney served by UPS Ground on 2/14/2023 for United State Department of Justice, answer due 4/17/2023. (jk) (Entered: 02/22/2023) |
| 02/21/2023 | 84 | Summons Returned Executed –– United States Attorney served by UPS Ground on 2/14/2023 for United State Department of Health and Human Services, answer due 4/17/2023. (jk) (Entered: 02/22/2023) |
| 02/21/2023 | 85 | Summons Returned Executed –– United States Attorney served by UPS Ground on 2/14/2023 for Xavier Becerra. (jk) (Entered: 02/22/2023) |
| 02/21/2023 | 86 | Summons Returned Executed –– United States Attorney served by UPS Ground on 2/14/2023 for Eric Melgre answer due 4/17/2023. (jk) (Entered: 02/22/2023) |
| 02/21/2023 | 87 | CLERKS ORDER EXTENDING TIME until 3/07/2023 for Defendants Garold O. Minns, Kansas Homeland Security, Kansas University School of Medicine, David Weishaar to answer or otherwise plead. Signed by dep clerk on 2/21/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/22/2023) |
| 02/21/2023 | 88 | CLERKS ORDER EXTENDING TIME until 3/07/2023 for Defendant Kris W. Kobach to answer or otherwise plead. Signed by deputy clerk on 2/21/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 02/22/2023) |
| 02/23/2023 | 89 | ENTRY OF APPEARANCE by Katy Elizabeth Tompkins on behalf of Hewitt Goodpasture. (Tompkins, Katy (Entered: 02/23/2023) |
| 02/23/2023 | 90 | ENTRY OF APPEARANCE by Andrew Foulston on behalf of Hewitt Goodpasture. (Foulston, Andrew) (Entered: 02/23/2023) |
| 03/02/2023 | 91 | ENTRY OF APPEARANCE by Katelyn C. Radloff on behalf of Gianfranco Pezzino. (Radloff, Katelyn) (Entered: 03/02/2023) |

| 03/03/2023 | 92 | MOTION for Order to Designate Wichita as Place of Trial, by Plaintiffs Carla Davis, Jalen Davis. (ca) (Entere 03/03/2023) |
| 03/03/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 92 MOTION for Order. The motion will resolved by the District Judge. (tl)** (Entered: 03/03/2023) |
| 03/03/2023 | 93 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdictio Response deadline 3/24/2023) by Defendants Xavier Becerra, Merrick B. Garland, Eric Melgren, Dustin Slinkard, United States Department of Health and Human Services, United States Department of Justice (Allm Christopher) (Entered: 03/03/2023) |
| 03/03/2023 | 94 | MEMORANDUM IN SUPPORT of 93 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction by Defendants Xavier Becerra, Merrick B. Garland, Eric Melgre Dustin Slinkard, United States Department of Health and Human Services, United States Department of Justice(Allman, Christopher) (Entered: 03/03/2023) |
| 03/03/2023 | 95 | ENTRY OF APPEARANCE by Christopher A. McElgunn on behalf of Klenda Mitchell Austerman Zurcher L.L.C. (McElgunn, Christopher) (Entered: 03/03/2023) |
| 03/06/2023 | 96 | MOTION to Dismiss by Defendant Wichita City Counsel, City of (Houghton, Erik) (Entered: 03/06/2023) |
| 03/06/2023 | 97 | MEMORANDUM IN SUPPORT of 96 MOTION to Dismiss by Defendant Wichita City Counsel, City of(Houghton, Erik) (Entered: 03/06/2023) |
| 03/06/2023 | 98 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brandon Whipple (Houghton, Erik) (Entered: 03/06/2023) |
| 03/06/2023 | 99 | MEMORANDUM IN SUPPORT of 98 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brandon Whipple(Houghton, Erik) (Entered: 03/06/2023) |
| 03/06/2023 | 100 | AMENDED MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STA A CLAIM ( Response deadline 3/27/2023) by Defendants Xavier Becerra, Merrick B. Garland, Eric Melgren, Dustin Slinkard, United States Department of Health and Human Services, United States Department of Justice (Allman, Christopher) (Entered: 03/06/2023) |
| 03/06/2023 | 101 | MEMORANDUM IN SUPPORT of 100 Amended MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Xavier Becerra, Merrick B. Garland, Eric Melgren, Dustin Slinkard, United States Department of Health and Human Services, United States Department Justice(Allman, Christopher) (Entered: 03/06/2023) |
| 03/06/2023 | 102 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or in the Alternative to Dismiss Due to Expiration of the Statute of Limitations* by Defendants Kansas Health Care Stabilization Fund, Clark Shultz (Attachments: # 1 Exhibit 1)(Cole, Christopher) (Entered: 03/06/2023) |
| 03/07/2023 | 103 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response deadline 3/28/2023) by Defendants Kansas Insurance Department, Vicki Schmidt (McFarland, Justin (Entered: 03/07/2023) |
| 03/07/2023 | 104 | ORDER finding as moot 93 Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Jurisdiction. The original motion to dismiss is moot in light of the Federal Defendants' Amended Motion to Dismiss 100 filed on March 6, 2023. Signed by District Judge Julie A. Robinson on 3/7/2023. Mailed to pro se party Carla Davis & Jalen Davis, 901 N. Belmont, Wichita, KS 67208 by regular mail (This is a TEXT ENTR ONLY. There is no .pdf document associated with this entry.) (ams) (Entered: 03/07/2023) |
| 03/07/2023 | 105 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdictio Response deadline 3/28/2023) by Defendants Kansas Department of Health and Environment, Gianfranco Pezzino, Janet Stanek (Radloff, Katelyn) (Entered: 03/07/2023) |

| | | |
|---|---|---|
| 03/07/2023 | 106 | MEMORANDUM IN SUPPORT of 105 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction by Defendants Kansas Department of Health and Environment, Gianfranco Pezzino, Janet Stanek(Radloff, Katelyn) (Entered: 03/07/2023) |
| 03/07/2023 | 107 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Brenda Kallemeyn. (Cole, Christopher) (Entered: 03/07/2023) |
| 03/07/2023 | 108 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Wichita Center for Graduate Medical Education, Inc.. (Cole, Christopher) (Entered: 03/07/2023) |
| 03/07/2023 | 109 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction Response deadline 3/28/2023 by Defendants Robert Kenagy, Wichita Clinic, P.A. (Baxter, Mackenzie) (Entered: 03/07/2023) |
| 03/07/2023 | 110 | MEMORANDUM IN SUPPORT of 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction by Defendants Robert Kenagy, Wichita Clinic, P.A.(Baxter, Mackenzie) (Entered: 03/07/2023) |
| 03/07/2023 | 111 | MOTION to Dismiss by Defendant Kris W. Kobach (Shoger, Matthew) (Entered: 03/07/2023) |
| 03/07/2023 | 112 | MEMORANDUM IN SUPPORT of 111 MOTION to Dismiss by Defendant Kris W. Kobach(Shoger, Matthew) (Entered: 03/07/2023) |
| 03/07/2023 | 113 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response deadline 3/28/2023 by Defendants Kansas University School of Medicine, Garold O. Minns (Barney, Carrie) (Entered: 03/07/2023) |
| 03/07/2023 | 114 | MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim* by Defendants Kansas Homeland Security, David Weishaar (Barney, Carrie) (Entered: 03/07/2023) |
| 03/07/2023 | 115 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Hewitt Goodpasture (Foulston, Andrew) (Entered: 03/07/2023) |
| 03/07/2023 | 116 | MEMORANDUM IN SUPPORT of 115 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Hewitt Goodpasture(Foulston, Andrew) (Entered: 03/07/2023) |
| 03/07/2023 | 119 | CLERKS ORDER EXTENDING TIME until 3/23/2023 for Defendant Brenda Kallemeyn to answer or otherwise plead. Signed by deputy clerk on 3/07/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 03/08/2023) |
| 03/07/2023 | 120 | CLERKS ORDER EXTENDING TIME until 4/10/2023 for Defendant Wichita Center for Graduate Medical Education, Inc. to answer or otherwise plead. Signed by deputy clerk on 3/07/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 03/08/2023 |
| 03/08/2023 | 117 | MEMORANDUM IN SUPPORT of 113 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Kansas University School of Medicine, Garold O. Minns(Barney, Carrie) (Entered: 03/08/2023) |
| 03/08/2023 | 118 | ENTRY OF APPEARANCE by Mackenzie Maki Baxter on behalf of Robert Kenagy, Wichita Clinic, P.A.. (Baxter, Mackenzie) (Entered: 03/08/2023) |
| 03/08/2023 | 121 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Clyde Wilson Wesbrook served on 3/3/2023, answer due 3/24/2023. (jk) (Entered: 03/08/2023) |
| 03/08/2023 | 122 | RETURN OF SERVICE filed by Plaintiffs Carla Davis, Jalen Davis upon Gianfranco Pezzino served on 3/03/2023. (jk) (Entered: 03/08/2023) |
| 03/08/2023 | 123 | |

| | | |
|---|---|---|
| | | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Wesley Medical Center, LLC served on 3/3/2023, answer due 3/24/2023. (jk) (Entered: 03/08/2023) |
| 03/08/2023 | 124 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Wichita Clinic, P.A. served on 3/3/2023, answer due 3/24/2023. (jk) (Entered: 03/08/2023) |
| 03/08/2023 | 125 | RETURN OF SERVICE filed by Plaintiffs Carla Davis, Jalen Davis upon Virgil F. Burry served on 3/03/2023 (jk) (Entered: 03/08/2023) |
| 03/08/2023 | 126 | NOTICE OF SERVICE by Robert Kenagy, Wichita Clinic, P.A. of file–stamped copy of their Motion to Dismiss and Memorandum in Support of Motion to Dismiss *to Plaintiffs Pro se* (Baxter, Mackenzie) (Entered: 03/08/2023) |
| 03/08/2023 | 127 | PLAINTIFFS' REQUEST NOT TO SERVE ALL DEFENDANTS FILED PAPERS by Plaintiffs Carla Davis, Jalen Davis. (sz) (Entered: 03/09/2023) |
| 03/08/2023 | 128 | MOTION for Extension of Time to File Response as to 66 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, In the Alternative, Motion for Involuntary Dismissal With Prejudice for Failure to Prosecute* by Plaintiffs Carla Davis, Jalen Davis. (sz) (Entered: 03/09/2023) |
| 03/09/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 128 MOTION for Extension of Time to File Response as to 66 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, In the Alternative, Motion for Involuntary Dismissal With Prejudice for Failure to Prosecute*. The motion will be resolved by District Judge. (tl) (Entered: 03/09/2023)** |
| 03/10/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 127 MOTION for Order. The motion will be resolved by the District Judge.(df) (Entered: 03/10/2023)** |
| 03/10/2023 | 129 | AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Kansas Homeland Security, David Weishaar. (Barney, Carrie) (Entered: 03/10/2023) |
| 03/10/2023 | 130 | MEMORANDUM IN SUPPORT of 129 Amended MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Kansas Homeland Security, David Weishaar(Barney, Carrie) (Entered: 03/10/2023) |
| 03/10/2023 | 131 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Cameron S. Bernard as to Robert Kenagy (Bernard, Cameron) (Entered: 03/10/2023) |
| 03/10/2023 | 132 | NOTICE OF WITHDRAWAL OF APPEARANCE by attorney Susan L. Mauch as to Robert Kenagy (Mauch, Susan) (Entered: 03/10/2023) |
| 03/13/2023 | 133 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *In Their Individual Capacities* ( Response deadline 4/3/2023) by Defendants Eric Melgren, Dustin Slinkard (Allman, Christopher) (Entered: 03/13/2023) |
| 03/13/2023 | 134 | MEMORANDUM IN SUPPORT of 133 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *In Their Individual Capacities* by Defendants Eric Melgren, Dustin Slinkard(Allman, Christopher) (Entered: 03/13/2023) |
| 03/13/2023 | 135 | ENTRY OF APPEARANCE by Brian L. White on behalf of Anna F. Stork–Fury. (White, Brian) (Entered: 03/13/2023) |
| 03/13/2023 | 136 | ENTRY OF APPEARANCE by Mark R. Maloney on behalf of Anna F. Stork–Fury. (Maloney, Mark) (Entered: 03/13/2023) |
| 03/13/2023 | 137 | ENTRY OF APPEARANCE by Rebecca Bergkamp on behalf of Anna F. Stork–Fury. (Bergkamp, Rebecca) (Entered: 03/13/2023) |
| 03/15/2023 | 138 | |

| | | |
|---|---|---|
| | | ENTRY OF APPEARANCE by Justen P. Phelps on behalf of Wesley Medical Center, LLC (Phelps, Justen) (Entered: 03/15/2023) |
| 03/15/2023 | 139 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Marc Bennett served on 3/2/2023, answer due 3/23/2023 (also served by UPS Ground on 3/11/2023). (jk) (Entered: 03/16/20 |
| 03/15/2023 | 140 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Central Plains Health Care Partnership served on 3/2/2023, answer due 3/23/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 141 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Foulston Siefkin L.L.P. served on 3/10/2023, answer due 3/31/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 142 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Hewitt Goodpasture on 3/06/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 143 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon David Grainge served on 3/06/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 144 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Klenda Mitche Austerman Zuercher L.L.C. served on 3/2/2023, answer due 3/23/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 145 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Medical Socie of Sedgwick County served on 3/2/2023, answer due 3/23/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 146 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Garold O. Minns served on 3/13/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 147 | ALIAS SUMMONS RETURNED UNEXECUTED by Jalen Davis, Carla Davis as to James Michael Moser. ( (Entered: 03/16/2023) |
| 03/15/2023 | 148 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Sedgwick County, Kansas, Board of Commissioners served on 3/2/2023, answer due 3/23/2023. (jk) (Entered: 03/16/202 |
| 03/15/2023 | 149 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Dee Spade ser on 3/2/2023, answer due 3/23/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 150 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Travis Stembridge served on 3/06/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 151 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Anna F. Stork–Fury served on 3/02/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 152 | SUMMONS RETURNED EXECUTED –– Personal Service by Jalen Davis, Carla Davis upon Wichita Center for Graduate Medical Education, Inc. served on 3/06/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 153 | ALIAS SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Tom Yao served on 3/14/2023. (jk) (Entered: 03/16/2023) |
| 03/15/2023 | 154 | MOTION for Extension of Time to File Response to present and future defendant's motions to dismiss and answers to complaint filed between February 21, 2023 through April 21, 2023 and as to 100 AMENDED MOTION to Dismiss for Lack of Jurisdiction/MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 111 MOTION to Dismiss, 129 AMENDED MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, MOTION to Dismiss for Lack of Jurisdiction/MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM 98 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 96 MOTION to Dismiss, 102 MOTION T DISMISS FOR FAILURE TO STATE A CLAIM *or in the Alternative to Dismiss Due to Expiration of the Statute of Limitations*, 113 MOTION to Dismiss for Lack of Jurisdiction/MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 105 MOTION TO DISMISS FOR FAILURE TO STATE A |

| | | |
|---|---|---|
| | | CLAIM/MOTION to Dismiss for Lack of Jurisdiction, 115 MOTION TO DISMISS FOR FAILURE TO STAT A CLAIM, 66 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, In the Alternative, Motion f Involuntary Dismissal With Prejudice for Failure to Prosecute*, 133 MOTION to Dismiss for Lack of Jurisdiction/MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM In Their Individual Capacities, 1( MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM/MOTION to Dismiss for Lack of Jurisdiction Plaintiffs Carla Davis, Jalen Davis. (jal) Modified links on 3/17/2023. (kao) (Entered: 03/16/2023) |
| 03/15/2023 | 156 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Stewart E. Dismuk served on 3/08/2023. (jk) (Entered: 03/16/2023) |
| 03/16/2023 | 155 | ENTRY OF APPEARANCE by Steven C. Day on behalf of Dee Spade. (Day, Steven) (Entered: 03/16/2023) |
| 03/16/2023 | 157 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Dee Spade to answer or otherwise plead Signed by deputy clerk on 3/16/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 03/16/2023) |
| 03/16/2023 | 158 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Klenda Mitchell Austerman Zuercher L.L.C. to answer or otherwise plead. Signed by deputy clerk on 3/16/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 03/16/2023) |
| 03/16/2023 | 159 | ENTRY OF APPEARANCE by Jeffery A. Jordan on behalf of Foulston Siefkin L.L.P.. (Jordan, Jeffery) (Entered: 03/16/2023) |
| 03/16/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 154 MOTION for Extension of Time to I Response as to 100 Amended MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOI FAILURE TO STATE A CLAIM , 129 Amended MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , [1. The motion will be resolved by the District Judge. (df) (Entered: 03/16/2023)** |
| 03/20/2023 | 160 | MEMORANDUM AND ORDER granting in part 127 Plaintiffs' Motion to Not Serve All Defendants Filed Papers; granted as to papers responsive to the motions to dismiss. Granting 128 MOTION for Extension of Tin to File Response. Granting in part and denying in part 154 Motion for Extension of Time to Respond as to all other pending motions to dismiss. Response deadline 5/15/2023, Reply deadline 6/12/2023 for all currently pending motions to dismiss 66 , 96 , 98 , 100 , 102 , 103 , 105 , 109 , 111 , 113 , 114 , 115 , 129 , 133 . Plaintifi must file a new motion for extension of time if they seek additional time to respond to any motion filed after March 20, 2023. Signed by District Judge Julie A. Robinson on 3/20/2023. Mailed to pro se party Carla Davis Jalen Davis by regular mail. (ca) (Entered: 03/20/2023) |
| 03/20/2023 | 161 | CLERKS ORDER EXTENDING TIME until 4/14/2023 for Defendant Foulston Siefkin L.L.P. to answer or otherwise plead. Signed by deputy clerk on 3/20/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Davis 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 03/20/2023) |
| 03/20/2023 | 162 | ENTRY OF APPEARANCE by Katy Elizabeth Tompkins on behalf of Central Plains Health Care Partnership (Tompkins, Katy) (Entered: 03/20/2023) |
| 03/20/2023 | 163 | ENTRY OF APPEARANCE by Katy Elizabeth Tompkins on behalf of Medical Society of Sedgwick County. (Tompkins, Katy) (Entered: 03/20/2023) |
| 03/20/2023 | 164 | ENTRY OF APPEARANCE by Andrew Foulston on behalf of Central Plains Health Care Partnership. (Foulst Andrew) (Entered: 03/20/2023) |
| 03/20/2023 | 165 | ENTRY OF APPEARANCE by Andrew Foulston on behalf of Medical Society of Sedgwick County. (Foulsto Andrew) (Entered: 03/20/2023) |
| 03/21/2023 | 166 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Central Plains Health Care Partnership t answer or otherwise plead. Signed by deputy clerk on 3/21/2023. Mailed to pro se parties Carla Davis and Jale Davis by regular mail. (jsh) (Entered: 03/21/2023) |

| 03/21/2023 | 167 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Medical Society of Sedgwick County to answer or otherwise plead. Signed by deputy clerk on 3/21/2023. Mailed to pro se parties Carla Davis and Jale Davis by regular mail. (jsh) (Entered: 03/21/2023) |
|---|---|---|
| 03/21/2023 | 168 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brenda Kallemeyn (Cole, Christopher) (Entered: 03/21/2023) |
| 03/21/2023 | 169 | MEMORANDUM IN SUPPORT of 168 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Brenda Kallemeyn (Attachments: # 1 Exhibit 1)(Cole, Christopher) (Entered: 03/21/2023) |
| 03/22/2023 | 170 | CLERKS ORDER EXTENDING TIME until 4/07/2023 for Defendant Wesley Medical Center, LLC to answer or otherwise plead. Signed by deputy clerk on 3/22/2023. Mailed to pro se Plaintiffs Carla Davis and Jalen Dav at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 03/22/2023) |
| 03/23/2023 | 171 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Anna F. Stork–Fury to answer or otherw plead. Signed by deputy clerk on 3/23/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular ma (jsh) (Entered: 03/23/2023) |
| 03/23/2023 | 172 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Stewart E. Dismuke. (Cole, Christopher) (Entered: 03/23/2023) |
| 03/23/2023 | 173 | ENTRY OF APPEARANCE by Kevin T. Stamper on behalf of Sedgwick County, Kansas, Board of Commissioners (Stamper, Kevin) (Entered: 03/23/2023) |
| 03/23/2023 | 174 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *and Memorandum in Support Thereof* by Defendant Sedgwick County, Kansas, Board of Commissioners (Stamper, Kevin) (Entered: 03/23/2023) |
| 03/23/2023 | 175 | ENTRY OF APPEARANCE by Matthew Lee Shoger on behalf of Marc Bennett (Shoger, Matthew) (Entered: 03/23/2023) |
| 03/24/2023 | 176 | CLERKS ORDER EXTENDING TIME until 4/10/2023 for Defendant David Grainger to answer or otherwise plead. Signed by deputy clerk on 3/23/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular ma (jsh) (Entered: 03/24/2023) |
| 03/24/2023 | 177 | CLERKS ORDER EXTENDING TIME until 4/10/2023 for Defendant Travis Stembridge to answer or otherw plead. Signed by deputy clerk on 3/23/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular ma (jsh) (Entered: 03/24/2023) |
| 03/24/2023 | 178 | CLERKS ORDER EXTENDING TIME until 4/6/2023 for Defendant Marc Bennett to answer or otherwise ple Signed by deputy clerk on 3/23/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 03/24/2023) |
| 03/24/2023 | 179 | CLERKS ORDER EXTENDING TIME until 4/12/2023 for Defendant Stewart E. Dismuke to answer or otherwise plead. Signed by deputy clerk on 3/23/2023. Mailed to pro se party Carla Davis and Jalen Davis by regular mail. (jsh) (Entered: 03/24/2023) |
| 03/27/2023 | 180 | MOTION for Leave to File Excess Pages by Defendant David Grainger. (Woods, Samantha) (Entered: 03/27/2023) |
| 03/27/2023 | 181 | MOTION for Leave to File Excess Pages by Defendant Travis Stembridge. (Woods, Samantha) (Entered: 03/27/2023) |
| 03/27/2023 | | **MOTION REFERRALS to Magistrate Judge REMOVED as to: 180 MOTION for Leave to File Excess Pages and 181 MOTION for Leave to File Excess Pages. The motions will be resolved by the District Judge. (df)** (Entered: 03/27/2023) |
| 03/28/2023 | 182 | |

| | | |
|---|---|---|
| | | ORDER granting <u>180</u> Defendant David Grainger M.D.'s Motion for Leave to File Excess Pages; granting <u>181</u> Defendant Travis Stembridge M.D.'s Motion for Leave to File Excess Pages. Defendants Grainger's and Stembridge's forthcoming briefs in support of their motions to dismiss shall not exceed twenty (20) pages in length. Signed by District Judge Julie A. Robinson on 3/28/2023.Mailed to pro se party Carla and Jalen Davis 901 N. Belmont Wichita, KS 67208 by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 03/28/2023) |
| 04/03/2023 | <u>183</u> | MOTION to Dismiss by Defendant Marc Bennett (Shoger, Matthew) (Entered: 04/03/2023) |
| 04/03/2023 | <u>184</u> | MEMORANDUM IN SUPPORT of <u>183</u> MOTION to Dismiss by Defendant Marc Bennett(Shoger, Matthew) (Entered: 04/03/2023) |
| 04/04/2023 | <u>185</u> | MOTION to Dismiss by Defendant David Grainger (Woods, Samantha) (Entered: 04/04/2023) |
| 04/04/2023 | <u>186</u> | MEMORANDUM IN SUPPORT of <u>185</u> MOTION to Dismiss by Defendant David Grainger(Woods, Samantha) (Entered: 04/04/2023) |
| 04/04/2023 | <u>187</u> | MOTION to Dismiss by Defendant Travis Stembridge (Woods, Samantha) (Entered: 04/04/2023) |
| 04/04/2023 | <u>188</u> | MEMORANDUM IN SUPPORT of <u>187</u> MOTION to Dismiss by Defendant Travis Stembridge(Woods, Samantha) (Entered: 04/04/2023) |
| 04/05/2023 | <u>189</u> | DESIGNATION OF PLACE OF TRIAL filed by Defendants David Grainger, Travis Stembridge – trial to be held in Wichita. (Woods, Samantha) (Entered: 04/05/2023) |
| 04/05/2023 | <u>190</u> | ENTRY OF APPEARANCE by Samantha M. H. Woods on behalf of David Grainger, Travis Stembridge. (Woods, Samantha) (Entered: 04/05/2023) |
| 04/05/2023 | <u>191</u> | ENTRY OF APPEARANCE by Ruslan Ivanov on behalf of David Grainger, Travis Stembridge. (Ivanov, Ruslan) (Entered: 04/05/2023) |
| 04/05/2023 | <u>192</u> | MOTION to Dismiss by Defendant Dee Spade (Day, Steven) (Entered: 04/05/2023) |
| 04/05/2023 | <u>193</u> | MEMORANDUM IN SUPPORT of <u>192</u> MOTION to Dismiss by Defendant Dee Spade (Attachments: # <u>1</u> Exhibit 1)(Day, Steven) Modified to correct exhibit text on 4/7/2023 (kmc). (Entered: 04/05/2023) |
| 04/05/2023 | <u>194</u> | MOTION to Dismiss by Defendant Anna F. Stork–Fury (White, Brian) (Entered: 04/05/2023) |
| 04/05/2023 | <u>195</u> | MEMORANDUM IN SUPPORT of <u>194</u> MOTION to Dismiss by Defendant Anna F. Stork–Fury (Attachments: # <u>1</u> Exhibit)(White, Brian) (Entered: 04/05/2023) |
| 04/05/2023 | <u>196</u> | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Klenda Mitchell Austerman Zuercher L.L.C. (McElgunn, Christopher) (Entered: 04/05/2023) |
| 04/05/2023 | <u>197</u> | MEMORANDUM IN SUPPORT of <u>196</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Klenda Mitchell Austerman Zuercher L.L.C.(McElgunn, Christopher) (Entered: 04/05/2023) |
| 04/05/2023 | | SUMMONS ISSUED as to Wichita Clinic, P.A. (now known as Ascension Medical Group Via Christi, P.A.) (addressed to Ascension) ( Returned to plaintiff for service). Notice, Consent, and Reference of a Civil Action a Magistrate Judge Form provided to Plaintiff for service with complaint. Copy of nef mailed to pro se Plaintiff Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (jk) (Entered: 04/06/2023) |
| 04/06/2023 | <u>198</u> | MOTION to Dismiss by Defendants Central Plains Health Care Partnership, Medical Society of Sedgwick County (Foulston, Andrew) (Entered: 04/06/2023) |
| 04/06/2023 | <u>199</u> | MEMORANDUM IN SUPPORT of <u>198</u> MOTION to Dismiss by Defendants Central Plains Health Care Partnership, Medical Society of Sedgwick County(Foulston, Andrew) (Entered: 04/06/2023) |

| 04/07/2023 | 200 | MOTION to Dismiss *Wesley Medical Center* by Defendant Wesley Medical Center, LLC (Phelps, Justen) (Entered: 04/07/2023) |
|---|---|---|
| 04/07/2023 | 201 | MEMORANDUM IN SUPPORT of 200 MOTION to Dismiss *Wesley Medical Center* by Defendant Wesley Medical Center, LLC(Phelps, Justen) (Entered: 04/07/2023) |
| 04/10/2023 | 202 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Stewart E. Dismuke (Cole, Christopher) (Entered: 04/10/2023) |
| 04/10/2023 | 203 | MEMORANDUM IN SUPPORT of 202 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Stewart E. Dismuke (Attachments: # 1 Exhibit 1)(Cole, Christopher) Modified to correct exhibit text on 4/12/2023 (kmc). (Entered: 04/10/2023) |
| 04/10/2023 | 204 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Wichita Center for Graduate Medical Education, Inc. (Cole, Christopher) (Entered: 04/10/2023) |
| 04/10/2023 | 205 | MEMORANDUM IN SUPPORT of 204 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Wichita Center for Graduate Medical Education, Inc. (Attachments: # 1 Exhibit 1)(Cole, Christophe Modified to correct exhibit text on 4/12/2023 (kmc). (Entered: 04/10/2023) |
| 04/12/2023 | 206 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Foulston Siefkin L.L.P. (Jordar Jeffery) (Entered: 04/12/2023) |
| 04/12/2023 | 207 | MEMORANDUM IN SUPPORT of 206 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Foulston Siefkin L.L.P.(Jordan, Jeffery) (Entered: 04/12/2023) |
| 04/12/2023 | 208 | WITHDRAWAL OF COUNSEL by Carrie A. Barney and ENTRY OF APPEARANCE OF SUBSTITUTED COUNSEL by Stanley R. Parker on behalf of Kansas Homeland Security, Kansas University School of Medici Garold O. Minns, David Weishaar (Parker, Stanley) (Entered: 04/12/2023) |
| 04/13/2023 | 209 | BRIEFING ORDER. The Court sets the following deadlines for all motions to dismiss filed between March 2( 2023 and today – 168 , 174 , 183 , 185 , 187 , 192 , 194 , 196 , 198 , 200 , 202 , 204 , and 206 . Response deadl 5/30/2023. Reply deadline 6/27/2023. Signed by District Judge Julie A. Robinson on 4/13/2023. Mailed to pro parties Carla Davis and Jalen Davis by regular mail. (kas) (Entered: 04/13/2023) |
| 04/17/2023 | 210 | SUMMONS RETURNED EXECUTED –– UPS Ground by Jalen Davis, Carla Davis upon Wichita Clinic, P.A (addressed to Ascension), served on 4/06/2023. (jk) (Entered: 04/17/2023) |
| 04/17/2023 | 211 | RETURN OF SERVICE of subpoena executed upon Kansas Board of Healing Arts on 4/12/2023 service by U (ca) (Entered: 04/17/2023) |
| 04/17/2023 | 212 | NOTICE OF INTENT TO ISSUE SUBPOENA by Carla Davis, Jalen Davis upon FedEx Ship Center. (ca) (Entered: 04/17/2023) |
| 04/18/2023 | 213 | MOTION for Extension of Time to File Response as to Motions to Dismiss – 168 , 174 , 183 , 185 , 187 , 192 194 , 196 , 198 , 200 , 202 , 204 , and 206 by Plaintiffs Carla Davis, Jalen Davis (kas) (Entered: 04/18/2023) |
| 04/19/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 213 MOTION for Extension of Time to I Response as to 196 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 202 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 187 MOTION to Dismiss, 204 MOTION TO DISMIS The motion will be resolved by the District Judge. (df)** (Entered: 04/19/2023) |
| 04/19/2023 | 214 | ENTRY OF APPEARANCE by Christopher S. Cole on behalf of Clyde Wilson Wesbrook. (Cole, Christopher (Entered: 04/19/2023) |
| 04/19/2023 | 215 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Clyde Wilson Wesbrook (Cole, Christopher) (Entered: 04/19/2023) |

| 04/19/2023 | 216 | MEMORANDUM IN SUPPORT of 215 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Clyde Wilson Wesbrook (Attachments: # 1 Exhibit 1)(Cole, Christopher) (Entered: 04/19/2023) |
| 04/21/2023 | 217 | ORDER granting 213 MOTION for Extension of Time to File Response as to MOTIONS TO DISMISS 168 , 174 , 183 , 185 , 187 , 192 , 194 , 196 , 198 , 200 , 202 , 204 , 206 & 215 . Response deadline 6/30/2023; Reply deadline 7/28/2023. Signed by District Judge Julie A. Robinson on 4/21/23. Mailed to pro se parties by regular mail. (msb) Modified to add that document was mailed to plaintiffs on 4/26/2023 (kmc). (Entered: 04/21/2023) |
| 04/24/2023 | 218 | SUMMONS RETURNED EXECUTED –– FedEx by Jalen Davis, Carla Davis upon Clyde Wilson Wesbrook served on 4/04/2023. (jk) (Entered: 04/24/2023) |
| 04/24/2023 | 219 | RETURN OF SERVICE of subpoena filed by Plaintiffs Carla Davis, Jalen Davis executed upon FedEx Shippi Center on 4/18/2023 by UPS Ground. (jk) (Entered: 04/24/2023) |
| 04/27/2023 | 220 | MOTION for Extension of Time to File responses as to 66 , 96 , 98 , 100 , 102 , 103 , 105 , 109 , 111 , 113 , 11 115 , 129 & 133 Motions to Dismiss by Plaintiffs Carla Davis, Jalen Davis. (msb) (Entered: 04/28/2023) |
| 04/28/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 220 MOTION for Extension of Time to F response as to 100 Amended MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 129 Amended MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. The motion will be resolved by the District Judge. (df) (Entered: 04/28/2023)** |
| 05/01/2023 | 221 | ORDER granting 220 Plaintiffs' MOTION for Extension of Time to File responses to the following Motions to Dismiss: Docs. 66, 96, 98, 100, 102, 103, 105, 109, 111, 113, 114, 115, 129, and 133. The Court finds good ca to grant Plaintiffs one final extension of their response deadline until 5/30/2023. No further extensions of this deadline will be granted. Signed by District Judge Julie A. Robinson on 5/1/2023. The Clerk shall mail this Or to pro se parties Carla and Jalen Davis at 901 N. Belmont Wichita, KS 67208 by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 05/01/2023) |
| 05/02/2023 | 222 | ORDER TO SHOW CAUSE. As described in the attached Order, the Court orders Plaintiffs to show cause in writing within three (3) weeks of receipt of this Order, why the Court should not recommend to the District Co that the claims against Defendants Yao, Moser, and Bassell be dismissed, without prejudice, pursuant to Fed.R.Civ.P. 4(e) and (m) and all applicable state laws. Signed by Magistrate Judge Kenneth G. Gale on 5/2/23.Mailed to pro se party Carla Davis & Jalen Davis by certified mail. (df) (Entered: 05/02/2023) |
| 05/02/2023 | | NOTICE Re: Pro Se Mailing. Document 222 Order to Show Cause,, mailed to Carla Davis & Jalen Davis on 5/2/2023 by certified mail ; Certified Tracking Number 70190700000059274858. (cc) (Entered: 05/02/2023) |
| 05/08/2023 | 223 | CERTIFIED MAIL RECEIPT returned re 222 Order to Show Cause addressed to Carla Davis and Jalen Davis (kas) (Entered: 05/08/2023) |
| 05/09/2023 | 224 | NOTICE OF INTENT TO ISSUE SUBPOENA by Carla Davis, Jalen Davis. Subpoena to be issued to: UPS Store. (ca) (Entered: 05/09/2023) |
| 05/09/2023 | 225 | MOTION for Extension of Time to File Response to 215 Motion to Dismiss for Failure to State a Claim, 222 Order to Show Cause, by Plaintiffs Carla Davis, Jalen Davis (referred to Magistrate Judge Kenneth G. Gale) (c (Entered: 05/09/2023) |
| 05/09/2023 | 226 | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re 224 Notice of Intent to Issue Subpoena, 225 MOTION for Extension of Time to File Response. (ca) (Entered: 05/09/2023) |
| 05/10/2023 | 227 | ORDER granting in part and finding as moot in part 225 MOTION for Extension of Time to File Response as 222 Order to Show Cause and to File Response as to Defendant Westbrook's 215 MOTION TO DISMISS FO FAILURE TO STATE A CLAIM. For good cause shown, the Court extends Plaintiffs' deadline to respond to t 222 Order to Show Cause until and including 7/17/2023. Plaintiffs' request to extend the deadline to respond to Defendant Westbrook's 215 Motion to Dismiss is, however, moot. The District Court previously issued an Ord |

| | | |
|---|---|---|
| | | 217 that extended the deadline for Plaintiffs to respond to certain motions to dismiss, including the motion filed by Defendant Westbrook; that deadline has already been reset for 6/30/23, making Plaintiffs' request moot. Signed by Magistrate Judge Kenneth G. Gale on 5/10/23. Mailed to pro se party Carla Davis & Jalen Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (df) (Entered: 05/10/2023) |
| 05/10/2023 | | NOTICE Re: Pro Se Mailing. Document 227 Order on Motion for Extension of Time to File Response/Reply mailed to Carla Davis & Jalen Davis on 5/10/2023 by regular mail. (cc) (Entered: 05/10/2023) |
| 05/10/2023 | 228 | MOTION for Service by Plaintiffs Carla Davis, Jalen Davis (Document titled "Plaintiffs' Request For Clerk To Send By Ordinary Mail Service To Re–Serve A Second Summons and Complaint To Defendant James Michael Moser M.D." (referred to Magistrate Judge Kenneth G. Gale) (sz) (Entered: 05/10/2023) |
| 05/10/2023 | 229 | REMINDER NOTICE TO ASCENSION ORGANIZATION by Carla Davis, Jalen Davis. (sz) (Entered: 05/10/2023) |
| 05/10/2023 | 230 | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re 228 MOTION for Service. (sz) (Entered: 05/10/2023) |
| 05/10/2023 | 231 | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re 229 Notice (Other). (sz) (Entered: 05/10/2023) |
| 05/10/2023 | 232 | ORDER granting 228 Request for Service by Mail. The Clerk is directed to send a copy of the Summons and Complaint to Defendant James Moser by ordinary U.S. mail at 697 Woodledge Dr., Akron, OH 44313–5913. Signed by Magistrate Judge Kenneth G. Gale on 5/10/23. Mailed to pro se parties Carla Davis & Jalen Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (df) (Entered: 05/10/2023) |
| 05/10/2023 | | NOTICE Re: Pro Se Mailing. Document 232 Order on Motion for Service, mailed to Carla Davis & Jalen Davis on 5/10/2023 by regular mail. (cc) (Entered: 05/10/2023) |
| 05/10/2023 | 233 | RESPONSE to 229 Notice (Other) by Defendant Wichita Clinic, P.A.. (Baxter, Mackenzie) (Entered: 05/10/2023) |
| 05/11/2023 | | Alias Summons Issued as to James Michael Moser. Notice, Consent, and Reference of a Civil Action to a Magistrate Judge Form provided for service with complaint. Per Order 232 the Alias Summons and Complaint were mailed to James Michael Moser at 697 Woodledge Dr., Akron, OH 44313–5913 by regular mail. Copy of NEF mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry) (jk) (Entered: 05/11/2023) |
| 05/15/2023 | 234 | NOTICE OF INTENT TO ISSUE SUBPOENA upon Tom Yao M.D. by Carla Davis, Jalen Davis (msb) (Entered: 05/15/2023) |
| 05/15/2023 | 235 | CERTIFICATE OF SERVICE of 234 Notice of Intent to Issue Subpoena (msb) (Entered: 05/15/2023) |
| 05/25/2023 | 236 | ENTRY OF APPEARANCE by Katelyn C. Radloff on behalf of James Michael Moser. (Radloff, Katelyn) (Entered: 05/25/2023) |
| 05/25/2023 | 237 | MOTION to Dismiss for Lack of Jurisdiction , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Response deadline 6/15/2023) by Defendant James Michael Moser (Radloff, Katelyn) (Entered: 05/25/2023) |
| 05/25/2023 | 238 | MEMORANDUM IN SUPPORT of 237 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant James Michael Moser(Radloff, Katelyn) (Entered: 05/25/2023) |
| 05/30/2023 | 239 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis: Re 66 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or, In the Alternative, Motion for Involuntary Dismissal With Prejudice for* |

| | | |
|---|---|---|
| | | *Failure to Prosecute* (Attachment: # 1 Exhibits A–J)(msb) Corrected file date on 5/31/2023 (msb). (Entered: 05/31/2023) |
| 05/30/2023 | 240 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 96 MOTION to Dismiss and 9_ MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # 1 Exhibits A–D)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 241 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 100 Amended MOTION to Dismiss for Lack of Jurisdiction and MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; 133 MOTION to Dismiss for Lack of Jurisdiction and MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *In Their Individual Capacities* (Attachment: # 1 Exhibits A–C)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 242 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 115 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachment: # 1 Exhibits A & B)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 243 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 105 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and MOTION to Dismiss for Lack of Jurisdiction (Attachment: # 1 Exhibits A–F)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 244 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 111 MOTION to Dismiss (Attachment: # 1 Exhibits A & B)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 245 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 102 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *or in the Alternative to Dismiss Due to Expiration of the Statute of Limitations* (Attachment: # 1 Exhibits A & B)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 246 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 114 MOTION to Dismiss for Lack of Jurisdiction *and Failure to State a Claim* & 129 Amended MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Attachment: # 1 Exhibits A & B)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 247 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 103 MOTION to Dismiss for Lack of Jurisdiction and MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachment: # 1 Exhibits A–I)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 248 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 113 MOTION to Dismiss for Lack of Jurisdiction and MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachment: # 1 Exhibits A–F)(msb) (Entered: 05/31/2023) |
| 05/30/2023 | 249 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis. Re 109 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM & MOTION to Dismiss for Lack of Jurisdiction (Attachment: # 1 Exhibits A–E)(msb) (Entered: 05/31/2023) |
| 06/02/2023 | 250 | NOTICE TO THE COURT REGARDING SERVICE by Carla Davis, Jalen Davis re 237 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . (sz) (Entered: 06/02/2023) |
| 06/05/2023 | 251 | MOTION for Extension of Time to File Response as to 237 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Plaintiffs Carla Davis, Jalen Davis. (ca) (Entered: 06/05/2023) |
| 06/05/2023 | 252 | RETURN OF SERVICE of subpoena(s) filed by Plaintiffs Carla Davis, Jalen Davis executed upon Gerard Bassell on 5/18/2023 by UPS. (ca) (Entered: 06/05/2023) |
| 06/05/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 251 MOTION for Extension of Time to F Response as to 237 MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILUR TO STATE A CLAIM. The motion will be resolved by the District Judge.**(df) (Entered: 06/05/2023) |

| | | |
|---|---|---|
| 06/05/2023 | 253 | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re 251 Motion for Extension of Time to File Response as to 237 Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). (mam) (Entered: 06/05/2023) |
| 06/05/2023 | 254 | NOTICE OF INTENT TO ISSUE AMENDED SUBPOENA by Carla Davis, Jalen Davis. Amended Subpoena be issued to Send and Receive Mail Printing and More. (mam) (Entered: 06/05/2023) |
| 06/05/2023 | 255 | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re 254 Amended Notice of Intent to Issue Subpoen (mam) (Entered: 06/05/2023) |
| 06/06/2023 | 256 | ORDER granting for good cause shown 251 MOTION for Extension of Time to File Response as to 237 MOTION to Dismiss for Lack of Jurisdiction; MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM Plaintiffs' response deadline is extended to 7/31/2023. Signed by District Judge Julie A. Robinson on 6/6/2023.The Clerk is directed to mail to pro se parties Carla and Jalen Davis, 901 N. Belmont Wichita, KS 67208 by regular mail. (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ams) (Entered: 06/06/2023) |
| 06/09/2023 | 257 | REPLY TO RESPONSE TO MOTION by Defendants Xavier Becerra, Merrick B. Garland, Eric Melgren, Du Slinkard, United States Department of Health and Human Services, United States Department of Justice re: 10 Motion to Dismiss/Lack of Jurisdiction,, Motion to Dismiss for Failure to State a Claim, 133 Motion to Dismiss/Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim (Allman, Christopher) (Entered: 06/09/2023) |
| 06/09/2023 | 258 | MOTION for Leave to File Excess Pages by Defendants Virgil F. Burry, Children's Mercy Hospital, The (Christopher, Barbara) (Entered: 06/09/2023) |
| 06/12/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 258 MOTION for Leave to File Excess Pages. The motion will be resolved by the District Judge. (df)** (Entered: 06/12/2023) |
| 06/12/2023 | 259 | ORDER granting for good cause shown 258 Motion for Leave to File Excess Pages. Defendants The Children' Mercy Hospital and Virgil F. Burry, M.D. may file a reply brief not to exceed ten (10) pages in length. Signed District Judge Julie A. Robinson on 6/12/2023.The Clerk is directed to mail this Order to pro se parties Carla Davis & Jalen Davis, 901 N. Belmont, Wichita, KS 67208 by regular mail (This is a TEXT ENTRY ONLY. There is no .pdf document associated with this entry.) (ams) (Entered: 06/12/2023) |
| 06/12/2023 | 260 | REPLY TO RESPONSE TO MOTION by Defendants Brandon Whipple, Wichita City Counsel, City of re: 98 Motion to Dismiss for Failure to State a Claim, 96 Motion to Dismiss (Houghton, Erik) (Entered: 06/12/2023) |
| 06/14/2023 | 261 | REPLY TO RESPONSE TO MOTION by Defendants Virgil F. Burry, Children's Mercy Hospital, The re: 66 Motion to Dismiss for Failure to State a Claim (Christopher, Barbara) (Entered: 06/14/2023) |
| 06/16/2023 | 262 | REPLY TO RESPONSE TO MOTION by Defendant Kris W. Kobach re: 111 Motion to Dismiss (Shoger, Matthew) (Entered: 06/16/2023) |
| 06/26/2023 | 263 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 168 Motion to Dismiss for Failu to State a Claim. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (mam) (Entered: 06/26/2023) |
| 06/26/2023 | 264 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 194 Motion to Dismiss. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhi G, # 8 Exhibit H) (mam) (Entered: 06/27/2023) |
| 06/26/2023 | 265 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 196 Motion to Dismiss for Failu to State a Claim. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (mam) (Entered: 06/27/2023) |
| 06/26/2023 | 266 | |

| | | |
|---|---|---|
| | | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 198 Motion to Dismiss. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhi G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N) (mam) (Entered: 06/27/2023) |
| 06/26/2023 | 267 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 174 MOTION TO DISMISS FC FAILURE TO STATE A CLAIM *and Memorandum in Support Thereof* (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G, # 8 H, # 9 I, # 10 J, # 11 K, # 12 L, # 13 M, # 14 N, # 15 O, # 16 P, # 17 Q, # 18 R, # 19 S)(sz) (Entered: 06/27/2023) |
| 06/26/2023 | 268 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 215 Motion to Dismiss for Failu to State a Claim. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (mam) (Entered: 06/27/2023) |
| 06/26/2023 | 269 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 187 MOTION to Dismiss (Attachments: # 1 A, # 2 B, # 3 c, # 4 d, # 5 E, # 6 F, # 7 G, # 8 H, # 9 I)(sz) (Entered: 06/27/2023) |
| 06/26/2023 | 270 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 183 MOTION to Dismiss (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G, # 8 H, # 9 I, # 10 J, # 11 K, # 12 L, # 13 M, # 14 N)(sz) (Entered: 06/27/2023) |
| 06/26/2023 | 271 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 206 Motion to Dismiss for Failu to State a Claim. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhib M) (mam) (Entered: 06/27/2023) |
| 06/26/2023 | 273 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 185 MOTION to Dismiss (Attachments: # 1 A, # 2 B, # 3 C, # 4 D, # 5 E, # 6 F, # 7 G, # 8 H, # 9 I, # 10 J)(sz) (Entered: 06/27/2023) |
| 06/26/2023 | 274 | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re 200 Motion to Dismiss. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhi G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L) (mam) (Entered: 06/27/2023) |
| 06/27/2023 | 272 | REPLY TO RESPONSE TO MOTION by Defendants Kansas Health Care Stabilization Fund, Clark Shultz re 102 Motion to Dismiss for Failure to State a Claim, (Attachments: # 1 Exhibit)(Cole, Christopher) (Entered: 06/27/2023) |
| 06/27/2023 | 275 | REPLY TO RESPONSE TO MOTION by Defendants Kansas University School of Medicine, Garold O. Minr re: 113 Motion to Dismiss/Lack of Jurisdiction, Motion to Dismiss for Failure to State a Claim (Parker, Stanley (Entered: 06/27/2023) |
| 06/27/2023 | 276 | REPLY TO RESPONSE TO MOTION by Defendants Kansas Homeland Security, David Weishaar re: 129 Motion to Dismiss for Failure to State a Claim (Parker, Stanley) (Entered: 06/27/2023) |
| 06/27/2023 | 277 | REPLY TO RESPONSE TO MOTION by Defendant Hewitt Goodpasture re: 115 Motion to Dismiss for Failu to State a Claim (Foulston, Andrew) (Entered: 06/27/2023) |
| 07/03/2023 | 278 | RESPONSE re 222 Order to Show Cause by Plaintiffs Jalen Davis, Carla Davis. (kmc) (Entered: 07/03/2023) |
| 07/03/2023 | 279 | MOTION for Leave (titled: Plaintiffs' Motion for Leave and Affidavits in Support of Motion) by Plaintiffs Car Davis, Jalen Davis. (kmc) (Entered: 07/03/2023) |
| 07/05/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 279 MOTION for Leave. The motion wil be resolved by the District Judge. (df) (Entered: 07/05/2023)** |
| 07/05/2023 | 280 | RESPONSE by Defendants Stewart E. Dismuke, Dee Spade, Wichita Center for Graduate Medical Education, Inc. re 279 Motion for Leave (Cole, Christopher) (Entered: 07/05/2023) |

| 07/06/2023 | 281 | ORDER granting <u>279</u> Motion for Leave to File. Plaintiffs move for leave to file responses to certain motions to dismiss out of time on the basis that they do not have these filings in their personal case file. The Court acknowledges Defendants' response and certificates of service demonstrating that they placed their motions to dismiss in the U.S. Mail at the time of filing. Nonetheless, they do not oppose allowing Plaintiffs to respond past the deadline. Therefore, Plaintiffs may file responses out of time to the motions to dismiss filed by Defendants Dee Spade (Doc. 192), Stewart Dismuke (Doc. 202), and Wichita Center for Graduate Medical Education, Inc. (Doc. 204). Plaintiffs' response(s) to these motions to dismiss shall be filed by July 17, 2023. Signed by District Judge Julie A. Robinson on 7/6/2023.The Clerk shall mail this Order to pro se parties Carla and Jalen Davis, 9 N. Belmont, Wichita, KS 67208 by regular mail (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ams) (Entered: 07/06/2023) |
| 07/06/2023 | | NOTICE Re Pro Se Mailing: Document 281 mailed to Carla Davis, Jalen Davis on 7/6/2023 by regular mail. ( (Entered: 07/06/2023) |
| 07/06/2023 | | **Set/Reset Deadlines as to <u>204</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , <u>192</u> MOTION to Dismiss , <u>202</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . Response deadline 7/17/2023.(ca)** (Entered: 07/06/2023) |
| 07/11/2023 | <u>282</u> | REPLY TO RESPONSE TO MOTION by Defendant Sedgwick County, Kansas, Board of Commissioners re: <u>174</u> Motion to Dismiss for Failure to State a Claim (Stamper, Kevin) (Entered: 07/11/2023) |
| 07/12/2023 | <u>283</u> | REPLY TO RESPONSE TO MOTION by Defendant Travis Stembridge re: <u>187</u> Motion to Dismiss (Woods, Samantha) (Entered: 07/12/2023) |
| 07/12/2023 | <u>284</u> | REPLY TO RESPONSE TO MOTION by Defendant David Grainger re: <u>185</u> Motion to Dismiss (Woods, Samantha) (Entered: 07/12/2023) |
| 07/13/2023 | <u>285</u> | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re <u>204</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u></u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M). (sz) (Entered: 07/14/2023) |
| 07/13/2023 | <u>286</u> | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re <u>237</u> MOTION to Dismiss for Lack of Jurisdiction MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # <u>1</u> Exhibit A, # <u></u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L).(sz) (Entered: 07/14/2023) |
| 07/13/2023 | <u>287</u> | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re <u>202</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u></u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O, # <u>16</u> Exhibit P).(sz) (Entered: 07/14/2023) |
| 07/13/2023 | <u>288</u> | MEMORANDUM IN OPPOSITION by Plaintiffs Carla Davis, Jalen Davis re <u>192</u> MOTION to Dismiss (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I). (sz) (Entered: 07/14/2023) |
| 07/18/2023 | 289 | ORDER re <u>278</u> Response to Order to show Cause filed by Jalen Davis, Carla Davis. The Court is in receipt of Plaintiffs' response to the <u>222</u> Order to Show Cause. The Court accepts Plaintiffs' response as sufficient for purposes of the Show Cause Order, without prejudice to right of Defendants to challenge the adequacy of servi Signed by Magistrate Judge Kenneth G. Gale on 7/18/23. Mailed to pro se party Carla Davis, Jalen Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (df) (Entered: 07/18/2023) |
| 07/18/2023 | | NOTICE Re: Pro Se Mailing. Document 289 Order, mailed to Carla Davis & Jalen Davis on 7/18/2023 by regu mail. (cc) (Entered: 07/18/2023) |

| 07/20/2023 | 290 | PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY TO BOARD OF COUNTY COMMISSIONER OF SEDGWICK COUNTY'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS RE 174 . (Attachments: # 1 Surreply)(sz) (Entered: 07/21/2023) |
|---|---|---|
| 07/21/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 290 MOTION for Leave to file Surreply. The motion will be resolved by the District Judge. (df)** (Entered: 07/21/2023) |
| 07/24/2023 | 291 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Rule 12 and 4* by Defendant Gerar Bassell (Fowler, Jay) (Entered: 07/24/2023) |
| 07/24/2023 | 292 | MEMORANDUM IN SUPPORT of 291 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Pursuant to Rule 12 and 4* by Defendant Gerard Bassell (Attachments: # 1 Ex. A)(Fowler, Jay) (Entered: 07/24/2023) |
| 07/25/2023 | 293 | REPLY TO RESPONSE TO MOTION by Defendant Anna F. Stork–Fury re: 194 Motion to Dismiss (White, Brian) (Entered: 07/25/2023) |
| 07/28/2023 | 294 | REPLY TO RESPONSE TO MOTION by Defendant Wesley Medical Center, LLC re: 200 Motion to Dismiss (Phelps, Justen) (Entered: 07/28/2023) |
| 07/28/2023 | 295 | REPLY TO RESPONSE TO MOTION by Defendant Foulston Siefkin L.L.P. re: 206 Motion to Dismiss for Failure to State a Claim (Jordan, Jeffery) (Entered: 07/28/2023) |
| 07/28/2023 | 296 | REPLY TO RESPONSE TO MOTION by Defendant Stewart E. Dismuke re: 202 Motion to Dismiss for Failu to State a Claim (Cole, Christopher) (Entered: 07/28/2023) |
| 07/28/2023 | 297 | REPLY TO RESPONSE TO MOTION by Defendant Brenda Kallemeyn re: 168 Motion to Dismiss for Failure State a Claim (Cole, Christopher) (Entered: 07/28/2023) |
| 07/28/2023 | 298 | REPLY TO RESPONSE TO MOTION by Defendant Clyde Wilson Wesbrook re: 215 Motion to Dismiss for Failure to State a Claim (Cole, Christopher) (Entered: 07/28/2023) |
| 07/28/2023 | 299 | REPLY TO RESPONSE TO MOTION by Defendant WICHITA CENTER FOR GRADUATE MEDICAL EDUCATION,' re: 204 Motion to Dismiss for Failure to State a Claim (Attachments: # 1 Exhibit)(Cole, Christopher) Modified on 7/28/2023 to change name of Defendant filed on behalf of (sz). (Entered: 07/28/2023 |
| 07/28/2023 | 300 | REPLY TO RESPONSE TO MOTION by Defendant Dee Spade re: 192 Motion to Dismiss (Day, Steven) (Entered: 07/28/2023) |
| 07/28/2023 | 301 | REPLY TO RESPONSE TO MOTION by Defendant Marc Bennett re: 183 Motion to Dismiss (Shoger, Matthew) (Entered: 07/28/2023) |
| 07/28/2023 | 302 | REPLY TO RESPONSE TO MOTION by Defendant Klenda Mitchell Austerman Zuercher L.L.C. re: 196 Motion to Dismiss for Failure to State a Claim (McElgunn, Christopher) (Entered: 07/28/2023) |
| 07/28/2023 | 303 | REPLY TO RESPONSE TO MOTION by Defendants Central Plains Health Care Partnership, Medical Societ of Sedgwick County re: 198 Motion to Dismiss (Foulston, Andrew) (Entered: 07/28/2023) |
| 08/08/2023 | 304 | RESPONSE by Plaintiffs Carla Davis, Jalen Davis: Re 291 Motion to Dismiss for Failure to State a Claim (Attachments: # 1 Exhibit A – Case Opinion: Mid–Continent Anethesiology v. Bassell, # 2 Exhibit B – Gerar M. Bassell, MD KSBHA License & Registration Profile Search, # 3 Exhibit C – Text Order (Doc. 289), # 4 Exhibit D – Executive Order 02–02, # 5 Exhibit E – Transcript Excerpt of Committee Hearing as to Amendm Bill H.R. 3448, # 6 Exhibit F – Wichita Clinic P.A. Medical Worksheet, # 7 Exhibit G – Drug Toxicity of Pregnant Victim by Wesley Medical Center, # 8 Exhibit H – Drug Toxicity of Pregnant Victim by Wesley Medical Center, # 9 Exhibit I – Pediatric ECG Analysis on 12/11/06, # 10 Exhibit J – Wesley Medical Center Admission Sheet for Newborn, # 11 Exhibit K – Article in Clinical Reports – Psychogenic Cardiac Arrest duri Extensive Sympathetic Blockade, # 12 Exhibit L – Roster of KaMMCO Claims Committee, # 13 Exhibit M – |

| | | |
|---|---|---|
| | | Billing Papers, # 14 Exhibit N – Second Amended Petition in Case No. 03–1510 Sedgwick County District Court, # 15 Exhibit O – Doctor George Tiller's Obituary, # 16 Exhibit P – Article in The Baltimore Sun, # 17 Exhibit Q – Transcript Excerpt of Hearing Held 3/20/07 Before Committee of the Judiciary House of Reprsentatives, # 18 Exhibit R – KaMMCO Claim Report Form)(msb) (Entered: 08/08/2023) |
| 08/14/2023 | 305 | MOTION / REQUEST for Oral Argument by Plaintiffs Carla Davis, Jalen Davis. (mam) (Entered: 08/14/2023 |
| 08/15/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 305 MOTION for Hearing. The motion w be resolved by the District Judge.(df)** (Entered: 08/15/2023) |
| 08/16/2023 | 306 | MOTION Titled: Plaintiff's Request to Vacate Referral to Magistrate Judge by Plaintiffs Carla Davis, Jalen Davis. (ca) (Entered: 08/16/2023) |
| 08/16/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 306 MOTION Plaintiff's Request to Vac Referral to Magistrate Judge. The motion will be resolved by the District Judge. (df)** (Entered: 08/16/202 |
| 08/21/2023 | 307 | MINUTE ORDER REASSIGNING CASE. Case reassigned to Honorable Brooks G. Severson for all further proceedings. Magistrate Judge Kenneth G. Gale no longer assigned to case. Signed by deputy clerk on 8/21/23 Mailed to pro se parties by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.)(kao) (Entered: 08/21/2023) |
| 08/28/2023 | 308 | RESPONSE (titled: Plaintiffs' Dispute of Minute Order Reassigning Case to a Magistrate Judge Doc #307) by Plaintiffs Jalen Davis, Carla Davis re 307 Reassigning Case. (kmc) (Entered: 08/28/2023) |
| 09/28/2023 | 309 | MEMORANDUM AND ORDER – Defendants' Motions to Dismiss (Docs. 66, 96, 98, 100, 102, 103, 105, 109 111, 113, 115, 129, 133, 168, 174, 183, 185, 187, 192, 194, 196, 198, 200, 202, 204, 206, 215, 237, 291) are granted and this case is hereby dismissed in its entirety. Plaintiffs' Motion for Oral Argument (Doc. 305), is denied, and Plaintiffs' Motion for Leave to file a Surreply (Doc. 290) to the Sedgwick County Board of County Commissioner's Motion to Dismiss is granted. Plaintiffs' Motion for Designation of Place of Trial (Doc. 92), Plaintiffs' Request to Vacate Referral to Magistrate Judge (Doc. 306), and Defendants Kansas Homeland Securi and David Weishaar's Motion to Dismiss (Doc. 114) are moot. See order for details. Signed by District Judge Julie A. Robinson on 9/28/2023. Mailed to pro se party Carla Davis, Jalen Davis by regular mail. (heo) (Entere 09/28/2023) |
| 09/28/2023 | 310 | JUDGMENT. Signed by deputy clerk on 9/28/2023. Mailed to pro se party Carla Davis, Jalen Davis by regula mail. (heo) (Entered: 09/28/2023) |
| 09/29/2023 | 311 | PETITION TO DISQUALIFY HONORABLE ERIC MELGREN AS THE CHIEF JUDGE FOR UNITED STATES DISTRICT COURTS FOR THE DISTRICT OF KANSAS by Plaintiffs Carla Davis, Jalen Davis. (sz (Entered: 09/29/2023) |
| 10/02/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: 311 MOTION to Disqualify Judge. The motion will be resolved by the District Judge. (df)** (Entered: 10/02/2023) |
| 10/03/2023 | 312 | MOTION for extension of time to respond to 309 Memorandum and Order and 310 Judgment, by Plaintiffs Ca Davis, Jalen Davis. (referred to Magistrate Judge Brooks G. Severson) (ca) (Entered: 10/03/2023) |
| 10/03/2023 | 313 | SURREPLY by Plaintiffs Carla Davis, Jalen Davis re 174 MOTION TO DISMISS FOR FAILURE TO STAT A CLAIM and Memorandum in Support Thereof. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(ca) (Entered: 10/03/2023) |
| 10/03/2023 | 314 | ORDER finding as moot 311 Motion to Disqualify. This case has been dismissed, therefore the Court finds the motion to Disqualify moot. Signed by District Judge Julie A. Robinson on 10/3/23. Mailed to pro se party Carl Davis and Jalen Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 10/03/2023) |
| 10/03/2023 | 315 | |

| | | ORDER finding as moot <u>312</u> Motion for Extension of Time to File. There is no response to the Court's Memorandum and Order of Dismissal or Judgment that is provided for or permitted under the Federal or Local Rules. Therefore, Plaintiffs' motion for extension of time to respond to those documents is moot. Signed by District Judge Julie A. Robinson on 10/3/23. Mailed to pro se party Carla Davis and Jalen Davis by regular ma (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (ss) (Entered: 10/03/2023) |
|---|---|---|
| 10/25/2023 | <u>316</u> | MOTION for Reconsideration (Titled: Plaintiff's Motion to Alter or Amend the Court's Decision to Dismiss Plaintiffs' Case in it's Entirety and the Clerk's Judgment Order and Rule on Issues of Law) re <u>309</u> Memorandur and Order, <u>310</u> Judgment by Plaintiffs Carla Davis, Jalen Davis. (Attachments: # <u>1</u> Exhibit) (ca) Modified on 10/27/2023 to correct the file date. (mam) (Additional attachment added on 12/1/2023: # <u>2</u> Complete version o Exhibit) (jk). Modified on 12/1/2023 to add re−scanned exhibit; original exhibit attached to entry was missing page and has been blocked from public view. (jk) (Entered: 10/26/2023) |
| 10/26/2023 | | **MOTION REFERRAL to Magistrate Judge REMOVED as to: <u>316</u> MOTION for Reconsideration re 31 Judgment, <u>309</u> Order on Motion to Dismiss for Failure to State a Claim, Order on Motion to Dismiss/La of Jurisdiction. The motion will be resolved by the District Judge.(df)** (Entered: 10/26/2023) |
| 11/21/2023 | <u>317</u> | NOTICE OF APPEAL as to <u>310</u> Judgment, <u>309</u> Order on Motion to Dismiss for Failure to State a Claim, Orde on Motion to Dismiss/Lack of Jurisdiction, by Plaintiffs Carla Davis, Jalen Davis. Filing fee $ 505 paid, receip #600003395. (ca) (Entered: 11/21/2023) |
| 11/21/2023 | <u>318</u> | CERTIFICATE OF SERVICE by Carla Davis, Jalen Davis re <u>317</u> Notice of Appeal. (ca) (Entered: 11/21/202 |
| 11/21/2023 | <u>319</u> | PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re <u>317</u> Notice of Appeal. (Attachments: # <u>1</u> Preliminary Packet)(ca) (Entered: 11/21/2023) |
| 11/21/2023 | <u>320</u> | APPEAL DOCKETED in 10CCA on 11/21/2023 and assigned Appeal No. 23−3244 re <u>317</u> Notice of Appeal filed by Jalen Davis, Carla Davis. (mam) (Entered: 11/22/2023) |
| 11/28/2023 | <u>321</u> | ORDER of 10CCA as to <u>317</u> Notice of Appeal. This appeal is abated. When the dispositive order is entered by the district court, the clerk of the district court is directed to supplement the preliminary record in accordance with 10th Cir. R. 3.2(B). All current deadlines in the case are vacated. (Appeal No. 23−3244) (mam) (Entered: 11/28/2023) |
| 12/01/2023 | <u>322</u> | DOCKET ANNOTATION: Docket Annotation re <u>316</u> : Due to a scanning error the final page of 316−1 was n attached to the original filing. The complete attachment has been added to the entry and is attached to this annotation for noticing purposes only. Copy mailed to pro se Plaintiffs Carla Davis and Jalen Davis at 901 N. Belmont, Wichita, KS 67208 by regular mail. (jk) (Entered: 12/01/2023) |
| 12/04/2023 | <u>323</u> | Plaintiff's MOTION to Retain Record on Appeal in District Court by Plaintiffs Carla Davis, Jalen Davis. (refer to Magistrate Judge Brooks G. Severson) (kas) (Entered: 12/04/2023) |
| 12/04/2023 | 324 | ORDER finding as moot <u>323</u> Motion for Order. On 11/28, the Tenth Circuit entered an order abating Plaintiffs appeal due to the pending motion to alter or amend judgment that was timely filed. Signed by Magistrate Judge Brooks G. Severson on 12/4/23. Mailed to pro se party Carla & Jalen Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (df) (Entered: 12/04/2023) |
| 12/14/2023 | <u>325</u> | MEMORANDUM AND ORDER denying <u>316</u> MOTION for Reconsideration filed by Jalen Davis and Carla Davis. Signed by District Judge Julie A. Robinson on 12/14/2023. Mailed to pro se parties Carla Davis and Jale Davis by regular mail. (kas) (Entered: 12/14/2023) |
| 12/18/2023 | <u>326</u> | SUPPLEMENTAL PRELIMINARY RECORD ON APPEAL transmitted to 10CCA re <u>317</u> Notice of Appeal. (Appeal No. 23−3244) (Attachments: # <u>1</u> Supplemental Preliminary Record) Mailed to pro se parties Carla Da and Jalen Davis by regular mail. (mam) (Entered: 12/18/2023) |

| 12/18/2023 | 327 | (DISREGARD, filed in error.) –– ORDER of 10CCA as to 317 Notice of Appeal. The notice of appeal will no[...] become effective until the district court enters an order disposing of the motion. See Fed. R. App. P. 4(a)(4)(B)[...] Accordingly, this appeal is abated. When the dispositive order is entered by the district court, the clerk of the[...] district court is directed to supplement the preliminary record in accordance with 10th Cir. 3.2(B). All curre[...] deadlines in the case are vacated. (Appeal No. 23–3244) (mam) Modified on 12/18/2023, filed in error. (mam)[...] (Entered: 12/18/2023) |
| 12/18/2023 | | DOCKET ANNOTATION re 327 : Disregard, filed in error. Mailed to pro se parties Carla Davis and Jalen Da[...] by regular mail. (mam) (Entered: 12/18/2023) |
| 12/20/2023 | 328 | ORDER of 10CCA as to 317 Notice of Appeal. The abatement of this appeal is lifted. (Appeal No. 23–3244)[...] (mam) (Entered: 12/20/2023) |
| 12/26/2023 | 329 | OBJECTIONS to 325 Memorandum and Order by Carla Davis and Jalen Davis. (kas) (Entered: 12/26/2023) |

**FILED**
U.S. District Court
District of Kansas

JAN 2 3 2023

Clerk, U.S. District Court
By _____ Deputy Clerk

**CARLA DAVIS**
**JALEN DAVIS**
**901 N. Belmont**
**Wichita, Kansas 67208**
**Telephone: (316) 691-8804**
**Email: cardav01292021@yahoo.com**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**CARLA DAVIS**, indv.

**JALEN DAVIS**, indv.

Plaintiffs,                                    **Jury Demanded**

v.

**U.S. DEPARTMENT OF JUSTICE; MERRICK B.**
**GARLAND**-U.S. ATTORNEY GENERAL; **U.S. DEPT.**
**OF HEALTH and HUMAN SERVICES;  XAVIER**
**BECERRA, SECRETARY of HEALTH and HUMAN**
**SERVICES; DUSTON SLINKARD**-KANSAS U.S.
ATTORNEY: **ERIC MELGREN, FORMER KANSAS**
**U.S. ATTORNEY; KRIS W. KOBACH**, KANSAS
ATTORNEY GENERAL; **KANSAS HOMELAND**
**SECURITY; DAVID WEISHAAR, ADJUTANT**
**GENERAL; KANSAS DEPARTMENT OF HEALTH**
**AND ENVIRONMENT; JANET STANEK**. KDHE
SECRETARY; **JAMES MICHAEL MOSER m.d.,**
**KANSAS DEPARTMENT OF HEALTH AND**
**ENVIRONMENT LEAD PUBLIC HEALTH PHYSICIAN;**
**VICKI SCHMIDT**, KANSAS INSURANCE COMMISSIONER:
**KANSAS HEALTH CARE STABILIZATION FUND;**
**CLARK SHULTZ, EXECUTIVE DIRECTOR**-KANSAS
HEALTH CARE STABILIZATION FUND: **SEDGWICK**
**COUNTY COMMISSIONERS -BOARD OF HEALTH:**
**MARC BENNETT- SEDGWICK COUNTY DISTRICT**
**ATTORNEY; CITY OF WICHITA CITY COUNSEL;**
**CENTRAL PLAINS HEALTH CARE PARTNERSHIP;**
**MEDICAL SOCIETY OF SEDGWICK COUNTY; WESLEY**
**MEDICAL CENTER, LLC; THE CHILDREN'S MERCY**

**CASE**

NO. 6:23-cv-1010-
JAR-GEB

1-10

**HOSPITAL; WICHITA CLINIC P.A. ( Name changes: Christi Clinic P.A., NOW: ASCENSION MEDICAL GROUP VIA CHRISTI, P.A.); KANSAS UNIVERSITY SCHOOL OF ) MEDICINE-WICHITA and it's WICHITA CENTER FOR GRADUATE MEDICAL EDUCATION, INC; GAROLD O. MINNS m.d., DEAN OF KU SCHOOL OD MEDICINE-WICHITA; STEWART E. DISMUKE m.d.,  FORMER DEAN OF KU SCHOOL OF MEDICINE-WICHITA; ROBERT KENAGY m.d., WICHITA CLINIC MEDICAL DIRECTOR; CLYDE WILSON WESBROOK m.d.; DEE SPADE m.d., WICHTIAL CLINIC; VIRGIL F. BURRY m.d., EXE. MEDICAL DIRECTOR-CHILDREN'S MERCY HOSPITAL; HEWITT GOODPASTURE m.d.,  MEDICAL SOCIETY OF SEDG. COUNTY; DAVID GRAINGER m.d., CENTRAL PLAINS HEALTH CARE PARTNERSHIP/ KU SCHOOL OF MEDICICINE OB/GYN CHAIRMAN; TRAVIS STEMBRIDGE m.d.OB/GYN-FORMER PRESIDENT OF MEDICAL SOCIETY OF SEDGWICK COUNTY;GERARD BASSELL m.d. Anesthesiologist, KU SCHOOL OF MEDICINE PROGRAM DIRECTOR; ANNA F. STORK-FURY, FORMER KU MEDICAL STUDENT-OB/GYN; BRENDA KALLEMEYN-FORMER KU MEDICAL STUDENT-OB/GYN; TOM YAO- FORMER KU MEDICAL STUDENT-ANESTHESIA; GIANFRANCO PEZZINO m.d.-STATE OF KANSAS EPIDEMIOLOGIST;FOULSTON SIEFKIN L.L.P.; KLENDA MITCHELL AUSTERMAN ZUERCHER L.L.C. (KLENDA  AUSTERMAN L.L.C.)**

### CIVIL COMPLAINT FOR INJUNCTIVE AND DELARATORY RELIEF WITH POSSIBLE MONEY DAMAGES FOR CONSTITUTIONAL VIOLATIONS

### <u>PARTIES</u>

1.      Plaintiff CARLA DAVIS is a resident of Kansas with the address of 901 N. Belmont, Wichita, Kansas 67208

2.      Plaintiff JALEN DAVIS is a resident of Kansas with the address of 901 N. Belmont, Wichita Kansas 67208

3.       Defendant U.S DEPARTMENT OF JUSTICE is a federal agency formed under federal law with its principle office at 950 Pennsylvania NW, Washington, DC 20530.

2 -10

4.      Defendant MERRICK B. GARLAND is the U.S. Attorney General and is sued in his official and individual capacities with his principle office at 950 Pennsylvania NW, Washington, DC.

5.      Defendant U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES is a federal agency formed under federal law with its principle office at 200 Independence Ave., S.W. Washington, D.C. 20201

6.      Defendant XAVIER BECERRA is the U.S. Secretary of HHS and is sued in his official and individual capacities with his principle office at 200 Independence Ave., S.W. Washington, D.C. 20201.

7.      Defendant DUSTIN SLINKARD is the Kansas U.S. Attorney and is sued in his official and individual capacities with his principle office at 500 State Avenue, suite 360; Kansas City, Kansas 66101

8.      Defendant ERIC MELGREN is a former Kansas U.S. Attorney years 2002-2008. He was a partner at the law firm Foulston Siefkin and a United Way of the Plains board member 2002-2003. He is being sued in his official and individual capacity; his principle office at United States District Court, 401 N. Market, Wichita, Kansas 67202

9.      Defendant KRIS KOBACH is the Kansas Attorney General. He is also a former Counsel to former U.S. Attorney General John Ashcroft during bioterrorism preparedness. He is being sued in his official and individual capacity; his principle address at 120 SW 10th Ave, 2nd Floor, Topeka, Kansas 66612-2215

10.     Defendant KANSAS HOMELAND SECURITY is a state agency formed under state law with its principle office at 2800 SW Topeka Blvd., Topeka, Kansas 66611

11.     Defendant DAVID WEISHAAR is Kansas Homeland Security Director and Kansas Adjunct General he is sued in his official and individual capacity with his principle office at 2800 SW Topeka Blvd., Topeka Kansas 66611

12.     Defendant KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT is a state agency formed under state law with its principle office at 1000 SW Jackson Street, Topeka, Kansas 66612

13.     Defendant JANET STANEK is Secretary of KDHE and she is sued in her official and individual capacity with her principle office at 1000 SW Jackson Street, Topeka, Kansas 66612

14.     Defendant JAMES MICHAEL MOSER m.d. (pediatrics) 2002-2003 State of Kansas lead physician of public health. Executive Director of Kansas Health Preparedness and Response to Bioterrorism program/ Chairman of Kansas Bioterrorism Coordinating Counsel sued in his official and individual capacity with his principle address KDHE Division of health 1000 SW Jackson, # 300, Topeka, Kansas 66612

3 – 10

15. Defendant KANSAS INSURANCE DEPARTMENT is a state agency formed under state law with its principle office at 1300 SW Arrowhead Rd.,Topeka, Kansas 66604

16. Defendant VICKI SCHMIDT is Kansas Insurance Commissioner and she is sued in her official and individual capacity with her principle office at 1300 SW Arrowhead Rd., Topeka, Kansas 66604

17. Defendant KANSAS HEALTH CARE STABILIZATION FUND is a Public health department in Topeka, Kansas with its principle office at 300 SW 8th AVE. 2ND Floor, Topeka, Kansas 66603

18. Defendant CLARK SHULTZ is Executive Director of the Kansas Health Care Stabilization Fund being sued in official and individual capacity with the principle office at 300 SW 8th Avenue, 2nd Floor, Topeka Kansas 66603

19. Defendant SEDGWICK COUNTY COMMISSIONERS is the Governing Body of Sedgwick County and Board of Health being sued in their official and individual capacity with its principle office at 100 N. Broadway Street, Suit 660, Wichita, Kansas 67202

20. Defendant MARC BENNETT is Sedgwick County District Attorney being sued in his official and individual capacity with the principle office at 535 N. Main St., Wichita, Kansas 67203

21. Defendant CITY OF WICHITA CITY COUNCIL is local city government in Wichita, Kansas with DR. BRANDON WHIPPLE as Mayor being sued in their official and individual capacities with the principle office at City Hall, 455 N. Main, Wichita, Kansas 67202

22. Defendant CENTRAL PLAINS HEALTH CARE PARTNERSHIP an affiliate of MEDICAL SOCIETY OF SEDGWICK COUNTY are non-profit organizations with indigent programs serving indigent individuals, supporting health education programs, and research studies. Its members being sued in official and individual capacity. Both organizations has the principle office at 1102 N. Hillside, Wichita, Kansas 67211

23. Defendant WESLEY MEDICAL CENTER is a public hospital housing indigent programs and KU School of Medicine teaching Programs with the Resident Agent: C T Corporation System, 112 SW 7th Street, Suit 3C, Topeka, Kansas 66603

24. Defendant THE CHILDREN'S MERCY HOSPITAL is a public hospital in Kansas City, Missouri, that does business in the State of Kansas with the Resident Agent: Registered Agent Kansas, LTD, 7300 West 110th Street, Suit 150, Overland Park, Kansas 66210

25. Defendant WICHITA CLINIC P.A.(Name changes: Via Christi Clinic, P.A., NOW: ASCENSION MEDICAL GROUP VIA CHRISTI, P.A.) the largest multi-specialty physician practice clinic group in Kansas with the Resident Agent: Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, Kansas 66614

26. Defendants KANSAS UNIVERSITY SCHOOL OF MEDICINE-WICHITA a government agency and its non-profit corporation WICHITA CENTER FOR GRADUATE

4-10

MEDICAL EDUCATION, INC  both with the principle business address 1010 N. Kansas, Wichita, Kansas 67214

27.     Defendant GAROLD O. MINNS is the current Dean of KU School of Medicine- Wichita he is sued in his official and individual capacity with the principle address 1010 N. Kansas, Wichita, Kansas 67214

28.     Defendant STEWART E. DISMUKE m.d. 2002-2003 Dean-KU School Of Medicine- Wichita, Board of Directors for Wichita Center for Graduate Medical Education, Board of Directors for United way of the Plains. He is sued in his official and individual capacity with the principle address 1010 N. Kansas, Wichita, Kansas 67214

29.     Defendant ROBERT KENAGY m.d. (pediatrics) served as Wichita Clinic P.A. Medical Director and Stock Holder; at the same time while serving on the board of directors for Central Plains Health Care Partnership. He is sued in his official and individual capacity. He serves  on the Kansas Hospital Association Board of Directors representing Stormont Vail Health with the principle address 1500 Southwest Tenth Avenue, Topeka, Kansas 66604

 30.     Defendant CLYDE WILSON WESBROOK m.d. (OB/GYN) a Wichita Clinic P.A. Stock Holder had a contract with plaintiffs for medical services starting August of year 2002.  He is sued in his official and individual capacity with the principle address 702 E. 9th Street, Winfield, Kansas 67156

31.     Defendant DEE SPADE d.o. ( pediatrics) a Wichita Clinic P.A. Stockholder with hospital privileges at Kansas City, Mo. Children's Mercy Hospital. She had a contract with plaintiffs for medical services starting January 23, 2003. She is sued in her official and individual capacity with the principle address 4723 E. Douglas Ave. Wichita, Kansas 67218

32.     Defendant VIRGIL F. BURRY m.d. (Infectious Disease) Executive Medical Director/Vice president of Children's Mercy Hospital years 2007-2008. He is sued in his official and individual capacity with the principle address Children's Mercy Hospital, 2401 Gillham Rd., Kansas City, Mo. 64108

33.     Defendant HEWITT GOODPASTURE m.d. (Infectious disease) 2002-2003 President of Medical Society of Sedgwick County during terrorism. He is sued in his official and individual capacity with the principle address 9213 E. Wilson Estates, Wichita, Kansas 67206

34.     Defendant DAVID GRAINGER m.d.( reproductive endocrinology) 2002-2003 served on board of directors for Central Plains Health Care Partnership with Robert Kenegy m.d., at the same time as serving as Associate Vice Chairman for KU School of Medicine OB/GYN Residency Program. He is being sued in his official and individual capacity with the principle address 9300 E. 29th Street North, suit 102, Wichita, Kansas 67226

35.     Defendant TRAVIS STEMBRIDGE m.d. (OB/GYN) 2003- KU School of Medicine Ob/GYN Program Director. Kansas Health Care Stabilization Fund Board of Governers, Medical Society of Sedgwick County Board of Directors, being sued in his official and individual



capacity with the principle address 9401 Indian creek Prkwy Suite 13, Overland Park, Kansas 66210

36.    Defendant GERARD BASSELL m.d. (anesthesiology) 2003 KU School of Medicine Anesthesia Program Director he is being sued in his official and individual capacity with the principle address: 213 N. Stephanie street , Suite G, #348, Henderson Nevada 89074

37.    Defendant ANNA F. STORK-FURY 2003 Medical Student at KU School of Medicine-Wichita  Ob/GYN Program is being sued in her official and individual capacity with the principle address 3233 E. 2nd Street, Wichita, Kansas 67208

38.    Defendant BRENDA KALLEMEYN- 2003 Medical Student at KU School  of Medicine-Wichita Ob/ GYN Program is being sued in her official and individual capacity with the principle address McGreevy Clinic, 1200 S. 7th Ave, Sioux Falls, SD 57104

39.    Defendant TOM YAO- 2003 Medical Student at KU School Of Medicine- Wichita Anesthesia Program is being sued in his official and individual capacity with the principle address 17130 Van Buren Blvd # 311, Riverside, CA 92504-5905

40.    Defendant GIANFRANCO PEZZINO m.d. 2002-2003 State of Kansas Epidemiologist is being sued in his official and individual capacity with the principle address 2115 SW 10TH Ave, Topeka, Kansas 66604

41.    Defendant FOULSTON SIEFKIN LAW FIRM attorneys conducts business with most of the listed defendants, and is being sued in their official and individual capacity with the principle address Commerce Bank Center 1551 N. Waterfront, Wichita, Kansas, Suite 100, Wichita, Kansas 67206

42.    Defendant Klenda Mitchell Austerman Zuercher Law Firm ( Now: Klenda Austerman) attorneys conducts business with some of the listed defendants and is being sued in their official and individual capacity with the principle address 301 N. Main, Suite 1600, Wichita, Kansas 67202


## JURISDICTION AND VENUE

43.    This case is brought pursuant to  42 U.S.C 1983 and  42 U.S.C 1985 seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of Fourth, Fifth, and Fourteen Amendments of the United States Constitution

44.    This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C 1331, as this case involves federal questions:  28 U.S.C. 1343, which authorizes federal courts to hear civil rights cases.

45.    Venue is proper for this Court as most of the Defendants live or has conducted business in and or committed constitutional violations in the district of Kansas.

## STATEMENT OF FACTS



46.     After 9/11 the Bush administration took steps to protect the nation from terrorism and the State of Kansas received federal funding to create Bioterrorism Hospital Preparedness and Coordinating Council.

47.     Donald F. Hag en, University of Kansas Medical Center spoke on "Planning For Response To T errorism during September 1, 2002. Hagen, D.F. (2002). Planning for Response to Bioterrorism. *Merrill Series on The Research Mission of Public Universities*, 75-77. https://doi.org/10.17161/merrill.2002.8063

48.     On June 12, 2022 The Honorable President George Bush signed  H.R.3448-Public Health Security and Bioterrorism Preparedness and Response Act of 2002, and it became **Public Law No: 107-188**.

49.     Tennessee Senator William Frist stated to the President (Honorable George Bush) at the senate congressional hearing on Public Health Security and Bioterrorism Preparedness and Response Act of 2001; Congressional record Vol. 147, No. 178 (Senate- December 20, 2001). " **Since the effectiveness of vaccines, drugs, and therapeutics for many biological agents and toxins often** may not **ethically be tested in humans, this crucial legislation ensures that the FDA will finalize by a date certain its rule regarding the approval of new priority countermeasures on the basis of animal data."**

50.     Public Law 107-188- June 12, 2002 Subtitle D outlines Criminal Penalties Regarding certain Biological Agents and Toxins

51.     On July 17, 2002 Sedg. County Commissioners made an agreement with KU School of Medicine to provide infectious disease control consultative program.

52.     On July 31, 2002 Sedgwick County Commissioners approved a contract with KDHE providing implementation of bioterrorism planning and preparedness.

53.     Dr. Doren Fredrickson served as Sedgwick County Health Officer from 2002-2008 until his death. He "used both epidemiology and pediatric skills for primary care research, health services research, and **maternal and child public health research**." See *Doren Fredrickson Commitment to public health award nomination form* on Sedgwick County website.

54.     On August 20, 2002 at U.S.Congress public official discussed "How effectively is the federal government assisting state and local governments in preparing for a biological, chemical or nuclear attack? Kansas Senator Pat Roberts has promoted research in this area and the USDA recently provided a $ 3 million grant for the establishment of a National agriculture Biosecurity center at Kansas State University. Researchers from Texas A & M university and Purdue University will combine efforts…."

55.     Consumer Carla Davis had private pay health insurance with Blue Cross Blue Shield of Maryland then later Blue Cross Blue Shield of Kansas.

56.     On August 20, 2002 Carla Davis was pregnant with her in utero child Jalen Davis and made a health services contract with Wichita Clinic P.A. for OG/GYN care with Clyde Wilson Wesbrook M.D.. because she had a trust him as he had delivered a previous child of Carla Davis.



57.     On October 18, 2002 Carla Davis made health care choices for herself that did not get fulfilled, and there has been ongoing violations of the rights of herself and her the in utero child, now an adult by the name of Jalen Davis.

## CLAIM FOR RELIEF

### First Claim

**Bodily intrusion without Due Process in violation of the Fourth, Fifth, and 14th Amendments**

58.     The plaintiffs incorporates herein the factual allegations set for the in the prior paragraphs.

59.     The Fourth Amendment of the U.S. Constitution  affords individuals the right  to be secure in their persons, …papers, and effects against unreasonable searches.

60.     On October 18, 2022, the pregnant Carla Davis told her contracted health care providers Wichita Clinic P.A. and stock holder Clyde Wilson Wesbrook, " Wants to deliver at St Joe." Meaning St Joseph Hospital in Wichita Kansas.

61.     Without my knowledge and consent on December 10, 2002, Wichita Clinic allocated my health care services to "Deliver at Wesley medical Center" I was forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for  January 23, 2003.

62.     When I arrived at Wesley medical Center I did not know that I was placed in the hands of indigent and research training programs.

63.     On January 23, 2003, my in-utero child and I was incapacitated with toxic does of the drug Fentanyl.

64.     I was raped when Anna Stork-Furry after I was incapacitated, penetrated my vagina without a necessary medical reason. Her hands were pre-gloved when she came into the room, and her hand were cupped holding something in it. I was unable to question what was in her hand due to the incapacitation. Later was treated for infectious diseases of my entire body.

65.      Tom Yao, stabbed me deeply in my lower back with a needle, causing severe pain.

66.     My medical billing shows that my in-utero child and  I was administered toxic doses of antibiotics, when I did not have an infection. I was administed toxic doses of Bupivicaine and other drugs without a medically necessary reason.

67.     I suffered serious injuries as a result of the bodily intrusions.

68.      On February 4, 2004 at Wesley Medical Center an unknown device was placed in my chest blood vessels with my knowledge and consent.

67. The public officials refused to give my child  Jalen Davis and I results od Diagnostic test and our medical records are in an ongoing Confidential status, with the ability too use our health information for any reason.



68.    We are being denied effective medical treatment, the inability to use our medical records for evidence in making auto accident injury claims and making social security benefits.

69. The public officials and their cooperators are keeping concealed the unlawful bodily intrusions and the serious injuries resulting from it.

70.    The public officials stole the blood of Jalen Davis at Children's mercy Hospital during August 2008, and prevent Jalen Davis from receiving medical treatment and attempted abduction of the child by a U.S. Military Social Worker- Michael Dustin ( Korea)

71.    The mother Carla Davis was falsely accused of child abuse , was investigated and found innocent. The public officials need to be investigated also, because Carla Davis did not harm here child.

72.    The Defendants violated the Constitution and the violations are ongoing due to the fact that medical records are in a CONFIDENTIAL status, denying plaintiffs access and use for life as a human being.

73.    The Defendant's actions were willful and Defendants showed a reckless disregard for the sanctity of the life of Carla Davis and her in-utero human child.

74. Due process of the Fifth and Fourteenth Amendment guarantees plaintiffs a full blown fair hearing of this matter, and the right to access of their personal health information, and the right to use their health information to make insurance claims and be approved for social security benefits.


## **PRAYER FOR RELIEF**

        WHEREFORE, the plaintiffs pray that the Court enter judgement against DEFENDANTS and, further grant the following relief:

A.  Declare the Defendant's violations of the U.S. Constitution were willful.

B.  Award Plaintiffs damages suffered by reason of Defendant's willful violations.

C.  Award Plaintiffs complete access of their medical records, and all the agents that were intruded in their bodies.

D.  Grant such other and further relief as may be just and proper together with the costs of this law suit.


## **JURY DEMAND**

The plaintiffs hereby demands a jury trial under federal Rule of Civil Procedure.

Date: January 23, 2023    I want trial to be in Sedg, Co :, Wichta, KS
                          9 - 10

JAN. 23, 2023        Jan 23, 202

Respectfully submitted,

Carla Davis and Jalen Davis

901 N. Belmont, Wichita, Kansas, 67208

316-691-8803 telephone

Email: cardav01292021@ yahoo.com

Attachment (14) pages of exhibits

10-10

DAVIS, JALEN ████ SEX: M
DOB: ████

MR# ████  LAB ORDER PLACED: ____

DATE: ____ TIME: ____ INITIALS: ____

**Denied Disclosure**

8071-176 MR 04/03

**Children's Mercy**
HOSPITALS & CLINICS
www.childrens-mercy.org

You recently requested information from The Children's Mercy Hospital.

☐ 1. The request was denied ☐ in part or ☐ in whole by the Medical Records Department, and is not appropriate for review to reconsider access to information, due to the following reason(s):

    ☐ a. The information you requested is not a part of the legal medical record and is not available for disclosure.

    ☐ b. The information you requested was compiled in reasonable anticipation for use in civil, criminal, or administrative action proceedings and is not appropriate for disclosure.

    ☐ c. The patient is an inmate, and access to the information would jeopardize the health, safety, security, custody, or rehabilitation of the individual or other inmates, or the safety of an officer, employee, or other person at the correctional institution responsible for transporting the inmate.

    ☐ d. An agreement was documented to temporarily deny access to the information while the patient is part of a research project that includes treatment for as long as the research is in progress.

    ☐ e. The patient's information is protected by the federal Privacy Act regarding drug and alcohol, psychiatric, and HIV records, or is protected by state laws regarding access to information for minors.

    ☐ f. The protected health information was obtained under a promise of confidentiality from someone other than a healthcare provider, and access to the requested information would likely reveal the source of information.

☒ 2. The request was denied ☐ in part or ☒ in whole by a licensed healthcare professional, but may be appropriate for review to reconsider access to information, due to the following reason(s):

    ☐ a. Access to the information requested is likely to endanger the life or physical safety of the patient or another person.

    ☐ b. Access to the information may cause substantial harm to a person identified in the record unless the person identified is a healthcare provider.

    ☒ c. The request is made by the patient or patient's personal representative, and access to the information is likely to cause substantial harm to the individual or another person.

Type of information withheld includes (e.g. demographics, progress notes, social work notes):      Date

*ALL  INFO. IN  MENCAL RECORD.*     __/__/__   __/__/__   __/__/__

The individual or legal representative to whom access was denied:     Relationship

*CARLA & DARRELL DAVIS*      *PARENTS*

Requests to reconsider access to information withheld by a licensed healthcare professional must be submitted in writing to:

    Medical Records Director — *Jill Harrelson*
    The Children's Mercy Hospital
    2401 Gillham Road
    Kansas City, MO 64108

The designated reviewer will provide written notice of final determination to the requestor.

_____    *Physician*    *8/14/08*
Signature of Healthcare Professional     Title      Date

8071-176 MR 04/03  Denied Disclosure     *1-14*



DAVIS,JALEN
MR#: _____   02/14/08   1658
PCP: MOURNING,KATHLEEN, MD   FPC
DOB: _____   5Y 0M   SEX:M
MCDKFHP

**Children's Mercy**
HOSPITALS & CLINICS

**General Pediatrics
Patient Instructions**

7121-011 MR 02/07

---

**Pediatric Care Center (PCC)**
2nd Floor Research Building/Outpatient Center
2401 Gillham Road
Kansas City, Missouri  64108
(816) 234-3080

---

Your child was seen today by _____.

The following instructions are being given to help you care for your child.
**If you have questions, or your child's condition worsens, call the Nurse Information Line at (816) 234-3188.**

**Diagnosis:** _____

☐ **Special Instructions**

*If medication is prescribed, give exactly as directed.*

Infectious Disease Clinic /
Diagnostic Clinic :   983 — 6325

☐ Your child may return to daycare/school on _____/_____/_____.
☐ X-rays will be reviewed by a radiologist.  An official report will be ready in approximately 24–48 hours.
**FOLLOW-UP:**
☐ Your child needs to have lab tests done today.  Go to: _____
  Laboratory results will be ready in 48 hours or _____ days.
☐ Stop at the front desk (or call back) to schedule your next appointment.
  Return to PCC in _____ to see _____
  Reason: ☐ Well Child Care  ☐ Follow-Up  ☐ Other_____
☐ Call _____ Clinic at (_____) _____-_____ to schedule an appointment.
  Reason: _____
☐ Call _____ Clinic to schedule an appointment for _____
  Reason: _____

| Allergy Clinic | 234-1600 | ENT Clinic | 234-3040 | Neurology | 234-3490 | Pulmonary Clinic | 234-3066 |
|---|---|---|---|---|---|---|---|
| Cardiology Clinic | 234-3880 | Eye Clinic | 234-3046 | Nutrition | 234-3468 | Renal Clinic | 234-3030 |
| Dental Clinic | 234-3257 | GI Clinic | 234-3066 | Orthopedic Clinic | 234-3075 | Surgery Clinic | 234-3020 |
| Dermatology Clinic | 234-3020 | Hearing & Speech | 234-3677 | Physical/Occupational Therapy | 234-3380 | Teen Clinic | 234-3050 |

Provider Signature: _____   Date: 2/14/08   Time: _____ hours

7121-011 MR 02/07   General Pediatrics Instructions

2-14

Vol. Orig. – Medical Record
Copy – Patient, Parent, or Legal Guardian

# WESLEY MEDICAL CENTER
550 N. Hillside / Wichita, KS 67214 4976

LAST OUTPATIENT VISIT DATE:
LAST INPATIENT VISIT DATE.

| | | |
|---|---|---|
| ACCOUNT #: | ADMIT SOURCE : | ADMIT DATE/TIME : 01/23/03 1921 |
| ROOM/BED : 2201-A | LOCATION/SERVICE: 2WH   NB | FINANCIAL CLASS : BLUE CROSS |
| TYPE : INPATIENT | ROOM PREFERENCE : B | PRIORITY : NEWBORN |
| | | MEDICAL RECORD #: |

**PATIENT**

| | | | |
|---|---|---|---|
| NAME : DAVIS,BOY | DATE OF BIRTH : 01/23/03 | AGE : 00M |
| STREET : | SEX : M | RACE : B |
| STREET : | SOCIAL SECURITY # : 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 | CONFIDENTIAL: |
| CITY/STATE/ZIP : WICHITA, KS        USA | MARITAL STATUS : SINGLE | X-RAY # : |
| HOME PHONE : | RELIGION : | |

**PATIENT EMPLOYER**

**PERSON TO NOTIFY**          RELATIONSHIP: FATHER

| | |
|---|---|
| NAME : MINOR/CHILD | NAME : |
| STREET : NA | STREET : |
| CITY/STATE/ZIP : NA,XX 99999 | CITY/STATE/ZIP : WICHITA, KS        USA |
| PHONE : 999-999-9999          OCCUPATION : | PHONE :          WORK PHONE : |

**GUARANTOR**          RELATIONSHIP: MOTHER

**NEXT OF KIN**          RELATIONSHIP: MOTHER

| | |
|---|---|
| NAME : | NAME : DAVIS,CARLA |
| STREET : | STREET : |
| CITY/STATE/ZIP : WICHITA, KS        USA | CITY/STATE/ZIP : WICHITA, KS        USA |
| PHONE :          SOCIAL SECURITY #: | PHONE :          WORK PHONE : 999-999-9999 |

**GUARANTOR EMPLOYER**

**OCCURRENCE INFORMATION**
ACCIDENT DATE/TIME:

| | |
|---|---|
| NAME : | JOB RELATED : |
| STREET : NA | |
| CITY/STATE/ZIP : NA,XX 99999 | |
| PHONE : 999-999-9999          OCCUPATION : | DATE OF ONSET : 01/23/03 |

**INSURANCE**          POLICY NUMBER          GROUP NUMBER          AUTHORIZATION          SUBSCRIBER

BLUE CROSS MARYLAND

| | |
|---|---|
| **ADMIT PHYSICIAN** Spade,Dee A  DO          SPADDEA | **ATTEND PHYSICIAN** Spade,Dee A  DO          SPADDEA |
| REASON FOR VISIT: | **REFER PHYSICIAN** |
| COMMENT : NEWBORN | LATEX SENSITIVITY:          USER: WADM.SLF |

ADMITTING DIAGNOSIS: *Term singleton male          vag. del.*

PRINCIPAL DIAGNOSIS (REASON FOR ADMISSION AFTER STUDY): *Term singleton male          vag del.*

OTHER DIAGNOSIS (COMPLICATIONS AND/OR COMORBIDITIES):

...RTIAL
...RELEASE

*Weapons
of
MassDestructive*

PRINCIPAL PROCEDURE (USUALLY THE ONE MOST RELATED TO PRINCIPAL Dx) : *Circumcision*

OTHER PROCEDURES:

CCI:

CONSULTANTS:

| | | | |
|---|---|---|---|
| DISCHARGE DATE: 1/25/03 | PATIENT DAYS: 2 | DRG: 391 | ACCT #: |
| ATTENDING PHYSICIAN SIGNATURE: *(Spade)* | DATE SIGNED: 1/25/03 | | UNIT #: |

ADT DT: 012303

DAVIS,BOY

WR101(R2/98)          INPATIENT RECORD          MNUR.JLM3   WITTEN,JANICE L.   01/23/03 2116

3-14



## WESLEY MEDICAL CENTER
550 N. Hillside / Wichita, KS 67214-4976

| | | |
|---|---|---|
| | LAST OUTPATIENT VISIT DATE: 11/27/05 ER | |
| | LAST INPATIENT VISIT DATE: 01/23/03 | |

| | |
|---|---|
| ACCOUNT #: | ADMIT SOURCE : EMERGENCY ROOM |
| ROOM/BED : | LOCATION/SERVICE: EDS |
| TYPE : | ROOM PREFERENCE : |

ADMIT DATE/TIME : 12/10/05 0700
FINANCIAL CLASS : BLUE CROSS
PRIORITY : EMERGENCY
MEDICAL RECORD #:

12/10/05  0700

**PATIENT**
NAME : DAVIS, CARLA
STREET
STREET
CITY/STATE/ZIP: WICHITA, KS              USA
HOME PHONE :

**PATIENT**
DATE OF BIRTH :                         AGE :
SEX : F                                 RACE : B
MARITAL STATUS :                        CONFIDENTIAL:
RELIGION :
X-RAY #:

**PATIENT EMPLOYER**
NAME :
STREET :
CITY/STATE/ZIP: WICHITA, KS
PHONE :         OCCUPATION :

**PERSON TO NOTIFY**      RELATIONSHIP: PATIENT
NAME : PT,STS NONE
STREET :
CITY/STATE/ZIP: ,KS 99999              USA
PHONE :          WORK PHONE :

**GUARANTOR**
NAME : DAVIS, CARLA      RELATIONSHIP: PATIENT
STREET :
CITY/STATE/ZIP: WICHITA, KS            USA
PHONE :

**NEXT OF KIN**                  RELATIONSHIP:
NAME :
STREET :
CITY/STATE/ZIP: WICHITA, KS            USA
PHONE :          WORK PHONE :

**GUARANTOR EMPLOYER**
NAME :
STREET :
CITY/STATE/ZIP:
PHONE :         OCCUPATION :

**OCCURRENCE INFORMATION**
RESERV TAKEN DATE :
ACCIDENT DATE/TIME:
JOB RELATED :
DATE OF ONSET : 12/09/05

**INSURANCE                POLICY NUMBER        GROUP NUMBER    AUTHORIZATION    SUBSCRIBER**
BLUE CROSS CHOICE CARE                                                         DAVIS, CARLA

**ED PHYSICIAN** Staats, Rodney M  MD    ESPASTAAT
REASON FOR VISIT: COUGHING UP BLOOD/CHEST PAIN/DIZZY
COMMENT

**FAMILY PHYSICIAN** Klingman, Diane D  MD    KLINDID
ANIMAL BITE?:     ARRIVAL MODE: WALK IN    USER: WADM.KLV

CONFIDENTIAL
NOT FOR RE-RELEASE

CCI:

| CODING | ANALYSIS | CANCER REGIS. |
|---|---|---|

ACCT #:

UNIT #:

ADM DT: 121005

DAVIS, CARLA

MR102(R2/98)            **EMERGENCY DEPT RECORD**    WADM.KLV  VSETRCKA, KENDRA  12/10/05  0802

4-14

02/10/2005 14:15 FAX 8160974          DR FRANCISCO                + VMED EFAX                    ☒009/012
To: Dan A. Francisco, M.D.        From: Wesley Medical Center        Page 1 of 1



**WESLEY**
Medical Center

**INVASIVE CARDIOVASCULAR
REPORT**

Page: 1

**NAME:**                       Davis, Carla

**ADMISSION DATE:**             02/04/2005
**DOP:**                        02/04/2005

**INDICATIONS:**
1.   Chest pain.
2.   Abnormal noninvasive testing.

**PROCEDURES:**
1.   Left heart catheterization.
2.   Left ventriculogram.
3.   Coronary arteriogram.
4.   An intravascular device was placed.

*NO consent*
*Unknown Device Placed*
*Weapon of Mass Destruction*

**DESCRIPTION OF PROCEDURE:**
The patient was brought to the catheterization laboratory where the right groin was prepped and draped in the usual manner. The right femoral artery was percutaneously entered and a pigtail catheter was inserted percutaneously and used to perform the left ventriculogram without problems. At this point, the catheter was exchanged for a 6-French left Judkins catheter whereupon views of the left coronary artery were obtained via power-injected contrast in the left anterior oblique and right anterior oblique positions without problems. Ultimately a right Judkins catheter was used to catheterize the right coronary artery and similar views were obtained of this vessel. All catheters were then removed and hemostasis was assured. The patient was returned to the ward in good condition.

**HEMODYNAMIC DATA:**
The left ventricular pressure is 123 with no aortic valve gradient. The aorta pressure is 125/64.

**LEFT VENTRICULOGRAM:**
The left ventricular systolic function was normal. There was ventricular ectopy during the contraction-injection. However, the left ventricular ejection fraction is estimated to be greater than 60%.

**CORONARIES:**
The coronaries were large calibered, right dominant, and normal. There was no calcification of luminal plaquing. There were no flow-restricting lesions.

**IMPRESSION:**
1.   Normal coronary arteries.
2.   Normal left ventricular systolic function.

**COMMENTS:**
I will check the right groin in 5-7 days. We will review her previous testing and determine whether we need to do a VQ lung scan, gastrointestinal evaluation, etc. She also complains of some right calf discomfort that I doubt is significant and further doubt that it could represent renal occlusion disease although it was considered.

Dan A. Francisco, M.D.
DAF/bjs/D: 02/04/2005
962170/001657064
cc:    Dan A. Francisco, M.D.

Pt. Name: Davis, Carla          BD:                    MR#:
Adm. Date: 02/04/2005           Pt. Type: S             RM#:
Bill #:                         **INVASIVE CARDIOVASCULAR REPORT**   Wesley Medical Center
                                Send To: Dan A. Francisco, M.D. DRAFT COPY

                                                        FEB 1 0 2005

                                2×6    5-14              **SS**

State of Kansas
Department of Social & Rehabilitation Services
Children and Family Services

**NOTICE OF DEPARTMENT FINDINGS**
Family Reports

CFS 2012
July 2004
Page 1 of 2

| Date of Mailing: | 9 / 18 / 08 | SRS Office: | WICHITA SERVICE CENTER |
|---|---|---|---|

| TO: | | FROM: | Kena Battle, LBSW |
|---|---|---|---|
| | | TELEPHONE #: | 316 337 6392 |
| ADDRESS: Street/P.O. Box | Carla and ▮▮▮▮▮▮ Wichita, KS ▮ | ADDRESS: Street/P.O. Box | 230 E William |
| City | State  KS | City  Wichita | State  KANSAS |
| ZIP | | ZIP  67201 | |

The Kansas Department of Social And Rehabilitation Services has completed its investigation and have made the following decisions:

| Child's name | Allegation | Finding | Alleged perpetrator or Substantiated Perpetrator |
|---|---|---|---|
| Jalen Davis | Physical neglect | Unsubstantiated | Carla Davis |
| | | | |

*Substantiated Perpetrators have the opportunity to appeal agency findings. See reverse side.

| Services Recommended | X | NO | | YES | Recommended services listed |
|---|---|---|---|---|---|

**Basis of Decision:** The allegation does not, by clear and convincing evidence, meet the definition of physical neglect as defined by the KSAR 30-46-10."Neglect means any act or omission resulting in harm to a child or presenting a likelihood of harm if the act or omission is not due solely to the lack of financial means of a child's parent or other custodian. This term may include the following: Failure to provide the child with food, clothing, or shelter necessary to sustain the life or health of the child."

CFS 2010

Distribution:   An ☐ in the box indicates persons receiving a copy of this notice.          ☒ File

| x | Parents/Care giver of child | ☒ | Alleged Perpetrator | ☐ | Child |
|---|---|---|---|---|---|
| ☐ | Contractor providing services | ☐ | Director of Facility | ☐ | Child Placing Agency of foster home |

**KANSAS**
DEPARTMENT OF SOCIAL
AND REHABILITATION SERVICES

**Michael "Mick" Dustin, MSW**
*Special Investigator*
Children and Family Services

K.C. Metro Region; Kansas City Service Center
400 State Ave., P.O. Box 171248; Kansas City, KS 66117-0248
(913) 279-7687 • Fax: (913) 279-7460
Michael.Dustin@srs.ks.gov

*[handwritten: False Child Abuse Against Mother]*

*[handwritten: 6-14]*

Vol. I  053

54

620 - 5361
279 - 7336 Matt
2 79 73

316 - 648 - 3827
316 - 337 - 6392
Denise Fleming

— Kim Lipond
816 - 458 - 4545

Dr. Morning - left to
Mom not willing to
do that -

If you keep kid for night
also car petition

Aug PPC - Call Dispatch
316 - 337 -
K - Penn Ballie

# This
Note
was
dropped
by
Michael
E.
Destin
at
Children's
Mercy
Hosptl
During
August
2008

# Attempted Abduction
of Child through
a False Court Petition
Request.

7 - 14

DEC-18-... 12:58   ...ITH CLINIC OBG...   316 689 972...   P.04

① *Post Op B Surg at 3d conf*
② *Deliver WMC Hosp.*

# WICHITA CLINIC, P.A.

Insurance *BC/BS*
PreCert # *None Required*
PCP *Westry*

Name *Davis Carla*   Hosp. *Wesley St Joseph*   Office No. **498-649-3**

**G3 P2 30**

| | SUBSEQUENT PRENATAL VISITS | |
|---|---|---|

LMP: *4-?- 02 (7)*
EDC: *1-12-03*
SUNO DATES: *1-9-03*

| Date | Headache | Dizziness | Edema | Nausea & Vomiting | Bleeding | Blood Pressure | Weight | Ht. of Fundus | Position & Presentation | Fetal Heart | Albumin | Sugar | Ketones | Weeks | Hgb./Hct. | Fetal Movement | Rx and Remarks | Return Initials |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/20/02 | 0 | 0 | + | 0 | 0 | 112/68 | 246 | 21 | | 150 | | | | 19 | 123 ⊕ | | *Menses monthly* | |
| 9/17/02 | 0 | 0 | + | 0 | 0 | 100/62 | 251 | 28 | | 150 N | N | | | 28 | | ⊕ | *Sono OK* | |
| 10-17-02 | 0 | 0 | + | 0 | 0 | 118/82 | 250 | 32 | | 47 N | N | | | 30 | 164 | | *works past time - Home care* | |
| 11/5/02 | 0 | 0 | ✓ | + | 0 | 114/68 | 250 | 34 | | 159 N | N | | | 30 | | | *Cx- Ferg Screen -2 wks* | |
| 11/19/02 | 0 | 0 | 0 | 0 | 0 | 112/60 | 252 | 36 | | 140 N | N | | | 32 | | | *Cx- long, closed* | |
| 12/3/02 | 0 | 0 | 0 | 0 | 0 | 114/64 | 255 | 36 | | 154 N | N | | | 34 | | + | *Cont. Weekly visits* | |
| 12/10/02 | 0 | 0 | 0 | 0 | 0 | 116/66 | 254 | 37 | | 146 | | | | 36 | | + | *Deliver at WMC Hoss* | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | |

*① Unlawful Conservation Application*

| Date | Progress Notes & Consultation | Date | Progress Notes & Consultation |
|---|---|---|---|
| 8/30/02 | *No probs to date except Rt. lig. pain. Sono - N/O anomalies On PM* | | *② Violation of Rights* |
| | *18 doct 1 hr BS screen - 124 mg* | | |
| | *Wants to deliver at Se.95* | | |
| | *Dr Spade - Red.* | | |
| | *19 Nov Ferg Screen collected* | | |
| 11/26/02 | *22 Nov ⊕ strep - repeat at 36 wks* | | |
| | *② Yeast - Rx Terozol 3d* | | |
| | *T.C. to pt. on cult. results T.C. Batons 651-2703 Terozol 3 vag cream H app HS x 3 curyd Nurses R* | | |
| 12/10 | *Discussed 8 MI (F/U). Repeat strep cult ~ 36 wks* | | |

Date *8-20-02*   Signed *(signature)*

G-185  Rev. 1/82   1° *(illegible)*   (Original to hospital at approximately 38 weeks.)

Appellate Case: 23-3244   Document: 010110975418   Date Filed: 12/28/2023   Page: 56



WESLEY MEDICAL CENTER        BILLING DATE    PAGE 2   00323
P O BOX 403101                 01/28/03
ATLANTA, GA 30384-3101
800-783-6941

GUARANTOR NO:
PATIENT:
DAVIS CARLA

ADMITTED      DISCHARGED
01/23/03      01/25/03

| DATE OF SERVICE | BATCH REF | DEPT | F S | PROC | NDC/CPT-4/ HCPCS | QTY | SERVICE DESCRIPTION | CHARGES |
|---|---|---|---|---|---|---|---|---|
| 012303 | 23B567 | 0712 | | 013062 | 338011704 | 1 | LR 1000ML | 175.18 |
| 012303 | 23B463 | 0712 | | 025678 | 11 | 1 | DENZO 002CB 90T SOLUN | 207.05 |
| | | | | | | | SUBTOTAL : | 1261.17 |
| **259-DRUGS-OTHER** | | | | | | | | |
| 012303 | 24B633 | 0712 | | 006889 | 78005406 | 1 | METHYLERGON 0.2MG TAB | 11.68- |
| 012303 | 24B622 | 0712 | | 006889 | 78005406 | 1 | METHYLERGON 0.2MG TAB | 11.68 |
| 012303 | 23B587 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 33.54 |
| 012403 | 24B622 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012403 | 24B672 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012403 | 24B726 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012403 | 24B758 | 0712 | | 006489 | 63739008901 | 1 | DOCUSATE NA 100MG CAP | 10.71 |
| 012403 | 24B622 | 0712 | | 007103 | 904505960 | 1 | WITCH HAZEL PADS 40'S | 6.87 |
| 012403 | 24B622 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 33.54 |
| 012403 | 24B671 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| 012403 | 24B674 | 0712 | | 009910 | 63481062375 | 1 | PERCOLET TABLET | 16.77 |
| 012403 | 24B700 | 0712 | | 009910 | 63481062375 | 1 | PERCOLET TABLET | 16.77 |
| 012403 | 24B727 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| 012403 | 24B758 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| 012503 | 25B775 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012503 | 25B802 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012503 | 25B786 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21- |
| 012503 | 25B775 | 0712 | | 005104 | 904518761 | 1 | IBUPROFEN 800MG TABLET | 11.21 |
| 012503 | 25B775 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| 012503 | 25B782 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| 012503 | 25B804 | 0712 | | 009910 | 63481062375 | 2 | PERCOLET TABLET | 17.94 |
| | | | | | | | SUBTOTAL : | 281.89 |
| **270-MED-SUR SUPPLIES** | | | | | | | | |
| 012303 | 23B599 | 0754 | | 000442 | | 1 | OXYGEN IN RR DR. | 61.00 |
| 012403 | 24B723 | 0718 | | 002023 | | 1 | PADS OB LG   PKG/12 | 10.00 |
| 012403 | 24B723 | 0718 | | 002172 | | 1 | SANITARY    PANTY LG | 8.00 |
| | | | | | | | SUBTOTAL : | 79.00 |
| **272-STERILE SUPPLY** | | | | | | | | |
| 012303 | 23B533 | 0718 | | 001152 | | 1 | CATH INTRA UTERINE FOU | 274.00 |
| 012303 | 23B533 | 0718 | | 001534 | | 1 | KIT I.V.   START MED | 20.00 |
| 012303 | 23B533 | 0718 | | 002349 | | 2 | TR CATH STR   URETHRAL | 50.00 |
| 012303 | 24B723 | 0718 | | 002349 | | 1 | TR CATH STR   URETHRAL | 25.00 |
| 012303 | 24B723 | 0718 | | 015866 | | 1 | TR CONTINUE   EPIDURAL | 133.00 |
| 012303 | 23B533 | 0718 | | 039758 | | 1 | CATH ACCUV 18X1 1/4 | 11.00 |
| 012303 | 23B533 | 0718 | | 039758 | | 1 | CATH ACCUV 18X1 1/4 | 11.00 |

THANK YOU FOR CHOOSING US FOR YOUR HEALTHCARE NEEDS.
BENEFITS ASSIGNED - TAX ID# 621762545

9-14

```
                    WESLEY MEDICAL CENTER       BILLING DATE    PAGE    3       00323
                    PO BOX 403101               01/29/03
UARANTOR NO:        ATLANTA, GA 30384-3101
ATIENT:             800-783-6941
AVIS CARLA                                      ADMITTED    DISCHARGED
                                                01/23/03    01/25/03
```

| ATE OF SERVICE | BATCH REF | DEPT | F S | PROC | NDC/CPT-4/ HCPCS | QTY | SERVICE DESCRIPTION | CHARGES |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | SUBTOTAL: | 524.00 |
| **301-LAB-CHEMISTRY** | | | | | | | | |
| 12303 | 23B585 | 0776 | | 017410 | 82803 | 1 | BG WITH CALC O2 SAT CO | 148.00 |
| 12303 | 23B585 | 0776 | | 017410 | 82803 | 1 | BG WITH CALC O2 SAT CO | 148.00 |
| | | | | | | | SUBTOTAL: | 296.00 |
| **305-LAB-HEMATOLOGY** | | | | | | | | |
| 12303 | 23B501 | 0776 | | 004135 | 85025 | 1 | CBC PLATELET AUTO DIFF | 94.00 |
| | | | | | | | SUBTOTAL: | 94.00 |
| **636-DRUGS-DETAIL CODE** | | | | | | | | |
| 12303 | 23B510 | 0712 | | 008130 | J3010 | 1 | FENTANYL 2ML INJECTION | 73.73 |
| 12303 | 23B510 | 0712 | | 008130 | J3010 | 1 | FENTANYL 2ML INJECTION | 73.73 |
| 12303 | 23B535 | 0712 | | 008130 | J3010 | 1 | FENTANYL 2ML INJECTION | 73.73 |
| | | | | | | | SUBTOTAL: | 221.19 |
| **720-DELIVEROOM-LABOR** | | | | | | | | |
| 12303 | 23B599 | 0708 | | 018636 | | 1 | AFTER CARE 2 (0-6 HR) | 679.00 |
| | | | | | | | SUBTOTAL: | 679.00 |
| **721-LABOR** | | | | | | | | |
| 12303 | 23B599 | 0708 | | 018631 | | 1 | BEFORE CARE 2 (7-18 HR | 1253.00 |
| | | | | | | | SUBTOTAL: | 1253.00 |
| **722-DELIVERY ROOM** | | | | | | | | |
| 12303 | 23B599 | 0708 | | 018642 | | 1 | VAGINAL DELIVERY | 2571.00 |
| | | | | | | | SUBTOTAL: | 2571.00 |

```
                            TOTAL ANCILLARY CHARGES        8155.29

                                TOTAL CHARGES             9696.29
                                     PAYMENTS                  .00
                                  ADJUSTMENTS                  .00
                                      BALANCE             9696.29
```

HANK YOU FOR CHOOSING US FOR YOUR HEALTHCARE NEEDS.
ENEFITS ASSIGNED - TAX ID# 621762545

*Drug Toxicity of Pregnant Victim*

10-14



WESLEY MEDICAL CENTER BILLING INVOICE   12/26/2023
P O BOX 403101                           01/28/03
ATLANTA, GA 30384-3101
800-783-6941

GUARANTOR NO.:
PATIENT:
DAVIS CARLA BROCHEY

ADMITTED   DISCHARGED
01/23/03   01/25/03

BILL TO:
    DAVIS CARLA                    INPATIENT                      FC=13
                                   ADMIT THRU DISCHARGE CLAIM
    WICHITA          KS

| DATE OF SERVICE | ATT PHYS | FC | ROOM | AC | SERV CODE | REV CODE | DEPT | ROOM AND CARE | CHARGES |
|---|---|---|---|---|---|---|---|---|---|
| 01/23/03 | 699 | 13 | 32011 | S | OB | 122 | 0708 | 1 DAYS AT  763.00 | 763.00 |
| 01/24/03 | 699 | 13 | 33121 | P | OB | 110 | 0660 | 1 DAYS AT  778.00 | 778.00 |
|  |  |  |  |  |  |  |  | TOTAL ROOM AND CARE | 1,541.00 |

| DATE OF SERVICE | BATCH REF | DEPT | F S | PROC | NDC/CPT-4/ HCPCS | QTY SERVICE DESCRIPTION | CHARGES |
|---|---|---|---|---|---|---|---|
| **250-PHARMACY** |  |  |  |  |  |  |  |
| 012303 | 24B622 | 0712 |  | 006888 | 78005303 | 1 METHYLERGON 0.2MG INJ | 68.37 |
| 012303 | 23B510 | 0712 |  | 007192 | 15740520 | 1 AMPICILLIN 2GM/NS 100M | 113.35 |
| 012303 | 23B535 | 0712 |  | 009545 | 15740420 | 1 AMPICILLIN 1GM INJECTI | 65.98 |
| 012303 | 23B587 | 0712 |  | 009545 | 15740420 | 1 AMPICILLIN 1GM INJECTI | 65.98 |
| 012303 | 23B510 | 0712 |  | 011124 | 74115902 | 1 BUPIV 0.25% 50ML SYRIN | 81.07 |
| 012303 | 23B510 | 0712 |  | 011191 | 74115902 | 1 BUPIV 0.125% 50ML SYR | 80.77 |
| 012303 | 23B535 | 0712 |  | 011191 | 74115902 | 1 BUPIV 0.125% 50ML SYR | 80.77 |
| 012303 | 23B587 | 0712 |  | 011191 | 74115902 | 1 BUPIV 0.125% 50ML SYR | 80.77 |
| 012303 | 23B510 | 0712 |  | 011272 | 74428202 | 1 LIDOCAINE 2% 10ML SYRI | 64.27 |
| 012303 | 23B567 | 0712 |  | 011272 | 74428202 | 1 LIDOCAINE 2% 10ML SYRI | 64.27 |
| 012303 | 23B587 | 0712 |  | 011272 | 74428202 | 1 LIDOCAINE 2% 10ML SYRI | 64.27 |
| 012303 | 23B463 | 0712 |  | 026496 | 186027613 | 1 LIDOCAINE 1% 2 ML VIAL | 65.17 |
|  |  |  |  |  |  | SUBTOTAL: | 895.04 |
| **258-IV SOLUTIONS** |  |  |  |  |  |  |  |
| 012303 | 23B591 | 0712 |  | 011041 | 11 | 1 D5LR/PIT 20UN 1000 ML | 212.54- |
| 012303 | 23B510 | 0712 |  | 011041 | 11 | 1 D5LR/PIT 20UN 1000 ML | 212.54 |
| 012303 | 23B463 | 0712 |  | 013037 | 338012504 | 1 D5LR 1000ML | 176.70 |
| 012303 | 23B567 | 0712 |  | 013037 | 338012504 | 1 D5LR 1000ML | 176.70 |
| 012303 | 23B463 | 0712 |  | 013062 | 338011704 | 1 LR 1000ML | 175.18 |
| 012303 | 23B510 | 0712 |  | 013062 | 338011704 | 1 LR 1000ML | 175.18 |
| 012303 | 23B511 | 0712 |  | 013062 | 338011704 | 1 LR 1000ML | 175.18 |

THANK YOU FOR CHOOSING US FOR YOUR HEALTHCARE NEEDS.
BENEFITS ASSIGNED - TAX ID# 621762545

Vol. I 058

PRIMARY CARE ASSOCIATES, LLC
620 N. Carriage Parkway
Wichita, Kansas 67208
Phone: (316) 684-2851
Fax: (316) 683-5239

Physician: Paul Davis, MD                    Exam Date: 01-28-2003

NAME:   DAVIS, CARLA                         X-Ray #:
DOB:

**CHEST X-RAY:**
Indication:

No prior films for comparison were available at the time of this reading.

PA and lateral projections of the lung fields reveal the diaphragms to be of normal contour. Some blunting of the gutters is noted, which may represent minimal fluid. Cardiac enlargement is noted. No mediastinal widening is seen. The lung fields demonstrate satisfactory expansion but do demonstrate evidence of mild pulmonary congestion. No soft, active pulmonary infiltrates were seen. The bony thorax appears to be normal.

CONCLUSION:
1.  Cardiomegaly with mild pulmonary congestion along with perhaps a small amount of fluid involving the lung gutters.

Leonard W. Borland DO

Leonard Borland, DO
Great Plains Imaging, LLC

D: 01-30-2003  T: 01-30-2003 - ld

12-14

Appellate Case: 23-3244   Document: 010110975418   Date Filed: 12/28/2023   Page: 60



Tissue;
5-6 inch organism
expelled from uterus

Tissue
expelled from
uterus

2009 12 05



2011 02 25

Tissue;

2007 05 03

Tissue;
4-5 inch organism
expelled from uterus

2011 02 23

Tissue;
6 inch organism expelled from uterus

2013 04 29

In The United States District Court
For The District of Kansas

FILED
U.S. District Court
District of Kansas

JAN 25

Clerk, U.S. District Court
By _____ Deputy Clerk

Carla Davis, Indv
Jalen Davis, Indv
        Plaintiffs

CASE #
6:23-CV-1010
JAR-GEB

V.

US Dept. of Justice, et AL

Mechanical and Grammer Errors
in COMPLAINT

Corrections are as Follows:

# 48 is meant to read: "On June 12, 2002 . . . . . "

# 67 is meant to read: . . . . . "WITHOUT her
the plaintiff's Carla Davis, knowledge and
Consent." (Exhibit Pg. 5)

# 67 is meant to read: "...WITHOUT the
ability to use our health information
for any reason."

* Correct telephone numer is 316-691-8804

Carla Davis, Carla —        Jan. 25, 2023
Jalen Davis   Jalen Davis      Jan, 25, 2023
901 N. Belmont
Wichta. KS. 67208
316-691-8804
email Cardsvol292021@ychoo com

Vol. I 062



*File As Exhibit to COMPLAINT

JAN 25 2023

Clerk, U.S. District Court
By ___ Deputy Clerk

# WESLEY MEDICAL CENTER
550 N. Hillside / Wichita, KS 67214-4976

LAST OUTPATIENT VISIT DATE: 01/18/97  CLI
LAST INPATIENT VISIT DATE:

ACCOUNT #: ___    ADMIT SOURCE : PHYSICIAN REFERRAL
ROOM/BED :        LOCATION/SERVICE: O2T
TYPE    : SDC     ROOM PREFERENCE :

ADMIT DATE/TIME : 02/04/05
FINANCIAL CLASS : BLUE CROSS
PRIORITY        : ELECTIVE
MEDICAL RECORD #: W08823-90-66

## PATIENT
NAME  : DAVIS, CARLA
STREET :
STREET :
CITY/STATE/ZIP: WICHITA, KS        USA
HOME PHONE :

## PATIENT
DATE OF BIRTH :          AGE :
SEX           : F        RACE : B
MARITAL STATUS :         CONFIDENTIAL:
RELIGION      :          X-RAY #:

## PATIENT EMPLOYER
NAME  :
STREET : NA
CITY/STATE/ZIP: NA, XX 99999
PHONE : 999-999-9999    OCCUPATION :

## PERSON TO NOTIFY          RELATIONSHIP: FATHER
NAME  : TARLETON, DAN/ANNIE
STREET :
CITY/STATE/ZIP: WICHITA, KS        USA
PHONE :          WORK PHONE :

Parents

## GUARANTOR          RELATIONSHIP: PATIENT
NAME  : DAVIS, CARLA
STREET :
CITY/STATE/ZIP: WICHITA, KS        USA
PHONE :

## NEXT OF KIN          RELATIONSHIP:
NAME  :
STREET :
CITY/STATE/ZIP:          USA
PHONE :          WORK PHONE :

## GUARANTOR EMPLOYER
NAME  :
STREET : NA
CITY/STATE/ZIP: NA, XX 99999
PHONE : 999-999-9999    OCCUPATION :

## OCCURRENCE INFORMATION
RESERV TAKEN DATE : 01/28/05
ACCIDENT DATE/TIME:
JOB RELATED       :
DATE OF ONSET     : 01/28/05

## INSURANCE          POLICY NUMBER          GROUP NUMBER          AUTHORIZATION          SUBSCRIBER
BLUE CROSS CHOICE CARE          NPR SDC          DAVIS, CARLA

## ADMIT PHYSICIAN
REASON FOR VISIT: CHEST PAIN
COMMENT    : HEART CATH 0900

## ATTEND PHYSICIAN Francisco, Dan A  MD    FRANDAA
REFER PHYSICIAN
LATEX SENSITIVITY: Y          USER:

| DATE | ITEMS | QTY | DATE | ITEMS | QTY | DATE | ITEMS | QTY | DATE | | ITEMS | QTY | DATE | ITEMS | QTY |
|------|-------|-----|------|-------|-----|------|-------|-----|------|--|-------|-----|------|-------|-----|
| | | | | | | | | | CONFIDENTIAL | | | | | | |
| | | | | | | | | | NOT FOR RE-RELEASE | | | | | | |

PROCEDURES / PHYSICIAN ORDERS / PROGRESS NOTES:          CCI:

ASSEMBLY | CODING | ANALYSIS | FINAL CHECK | CA

Cardiac catheterization - see procedure note

Weapon of Mass Destruction

ACCT #
UNIT #
ADM DT: 020405
DAVIS, CARLA

DIAGNOSIS: Chest Pain; Abnormal MPI     CONDITION ON DISCHARGE: Stable

DATE:     TIME:     ☒ DISMISSED  |PHYSICIAN SIGNATURE:     |STAFF SIGNATURE:
                    ☐ ADMITTED

MR141(R2/98)     Feb. 2  January 25, 2023    OUTPATIENT RECORD  Cardiac app  WBUS.MAR  ROMERO, MICHELLE  02/03/05  Q941

CARLA DAVIS
901 N. Belmont
Wichita, KS. 67208

Telephone No.
316-691-8809

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CARLA DAVIS, and | ) | |
| JALEN DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 6:23-CV-1010-JAR-GEB |
| | ) | |
| CHILDREN'S MERCY HOSPITAL, | ) | |
| and VIRGIL F. BURRY, M.D., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT FOR
FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, MOTION FOR
INVOLUNTARY DISMISSAL WITH PREJUDICE FOR FAILURE TO PROSECUTE**

**COME NOW**, the Defendants, The Children's Mercy Hospital and Virgil F. Burry, M.D.
(hereinafter "Defendants"), by and through undersigned counsel, and moves the Court for an Order
dismissing Plaintiffs Carla Davis and Jalen Davis's Civil Complaint with prejudice. In support,
Defendants state as follows:

**I.    Introduction**

Even construing the allegations in Plaintiffs' Civil Complaint in their favor, Plaintiffs'
Complaint fails to state a claim upon which relief can be granted. Likewise, Plaintiffs' claims
against these Defendants are barred by the requisite statute of limitations in Kansas. Because these
issues are wholly incurable, Defendants respectfully request that this Court dismiss Plaintiffs'
Complaint with prejudice.

**II.    Argument**

    *i.    Failure to State a Claim*

In order to state a claim, a "complaint must contain sufficient factual matter, accepted as
true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A "formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

Plaintiffs' Complaint contains only a scintilla of allegations against these Defendants, but these allegations, even when construed liberally in their favor, still fail to state a claim. Plaintiffs' Complaint, most notably, does not include a single count against any of the forty (40) named Defendants. [ECF 1]. Because of that, the Court must parse the language in Paragraphs 46 through 74 to see if a plausible claim is stated therein.

For purposes of clarity, it appears that Plaintiffs allege:

1.  Carla Davis discovered that she was pregnant in August of 2002 with Jalen Davis and received health care and treatment at the Wichita Clinic, P.A. [ECF 1, ¶ 56].

2.  That in January of 2003, Ms. Davis arrived at Wesley Medical Center for a scheduled induction. During the scheduled induction at Wesley Medical Center, Ms. Davis was provided fentanyl and antibiotics. She was then allegedly raped by Ms. Stork-Fury and stabbed with a needle by Mr. Yao. [ECF 1, ¶¶ 60, 61, 64, 65, 66].

3.  That on February 4, 2004, an unknown device was then placed in Ms. Davis' chest/blood vessels at Wesley Medical Center. [ECF 1, ¶ 68].

4.  That following this care at Wesley Medical Center, Ms. Davis requested diagnostic results and medical records from Wesley Medical Center and was not provided a copy of the same. [ECF 1, ¶ sic 69].

5.  That both Plaintiffs were subsequently denied effective medical treatment [in spite of Ms. Davis never receiving care and treatment at Children's Mercy Hospital] and access to their medical records when making both social security benefits and auto accident claims. [ECF 1, ¶ sic 70].

6.  That public officials in August of 2008 stole the blood of Jalen Davis at Children's Mercy Hospital, prevented him from receiving medical treatment, and subsequently attempted to abduct him. [ECF 1, ¶ sic 72].

7.  That Carla Davis was falsely accused of child abuse. [ECF 1, ¶ sic 73].

8. That the Defendants violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 and they are entitled to due process under the Fifth and Fourteenth Amendment and entitled to access of their personal health information and the right to use said information to make insurance claims. [ECF 1, ¶ sic 76].

9. As a result of the Defendants alleged violation of the U.S Constitution, Claimants are entitled to damages and complete access of their medical records.  [ECF 1, ¶¶ 63, 70].

As best as can be discerned by the undersigned, Plaintiffs are attempting to state a cause of action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 for alleged constitutional violations against non-state actors Children's Mercy Hospital and Dr. Burry by alleging that they failed to proffer Jalen Davis' medical records when requested. [ECF 1, ¶¶ sic 70, 74].[1] Their injury being the inability to pursue certain unidentified automobile accident insurance claims/social security benefits. On its face, such allegations lack merit and/or are insufficiently pled to pursue a claim against these Defendants. For these reasons, Plaintiffs' Complaint should be dismissed.

### A.  Claims Under 42 U.S.C. § 1983 are Limited to State Actors

Plaintiffs' allegations that these Defendants violated their Fourth, Fifth, and Fourteenth Amendment rights fail to state a claim under 42 U.S.C. § 1983 upon which relief can be granted, as neither The Children's Mercy Hospital nor Dr. Burry can be considered state or governmental actors. It is a well-established principal that 42 U.S.C. § 1983 claims are only available when there is an alleged deprivation of constitutional rights by persons acting under color of state law.

"The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage." *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982), the United States Supreme Court held

---

[1] The remaining allegations noted in paragraph 70 of the Complaint concerning the stealing of blood, prevention of medical treatment, and attempted child abduction appear to be directed to unnamed public officials, not Children's Mercy Hospital employees. [ECF 1, ¶¶ sic 70].

3

the action under color of state law necessary to establish a § 1983 suit is equivalent to the "state action" necessary to establish a violation of the Fourteenth Amendment. Under the state action doctrine, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Id.* at 937.

This "fair attribution" test has two elements: "a state policy and a state actor." *Janny v. Gamez*, 8 F.4th 883, 918 (10th Cir. 2021) (internal citation omitted). To satisfy the former, "the [constitutional] deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937. To satisfy the latter, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," either "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* These elements "collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions," but "diverge when the constitutional claim is directed against a party without such apparent authority, i.e., against a private party." *Id.*

The Plaintiffs' Complaint fails to demonstrate or factually plead, in any way, how either The Children's Mercy Hospital or Dr. Burry can be considered state actors. Instead, the Complaint contains only a single conclusory statement concerning The Children's Mercy Hospital by alleging that "public officials stole the blood of Jalen Davis at Children's Mercy Hospital …" [ECF 1, ¶ sic 72]. More is required as set forth in *Ashcroft.* Even if construed broadly and given all benefit of the doubt, Plaintiffs' Complaint fails to show or even suggest that the Defendants deprived either Plaintiff, Carla or Jalen Davis, of any constitutional right while operating under color of state law.

4

Accordingly, the Court must dismiss The Children's Mercy Hospital and Dr. Burry from the lawsuit with prejudice.

> **B.  Plaintiffs' Claim Under 42 U.S.C. § 1985(3) Fails to State a Plausible Cause Action.**

While not formally pled, Plaintiffs' Complaint appears to invoke the protections set forth under 42 U.S.C. § 1985(3). To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom. See *Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004)(unpublished); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). "Conclusory allegations that the defendants acted in concert or conspired, without specific factual allegations to support such assertions, are insufficient to state a claim under § 1985(3)." *Martinez v. Martinez,* No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at * 12 (D.N.M. Mar. 30, 2010). Even if this Court were to afford Plaintiffs some leeway in their drafting of a complaint, Plaintiffs still fail to plead a cognizable claim under 42 U.S.C. § 1985(3).

As a threshold matter, 42 U.S.C. § 1985(3) does not create an independent cause of action. *Gallegos v. Jicarilla Apache Nation*, 97 F.App'x806, 813 (10th Cir. 2003). "Instead, a plaintiff must "point to independent substantive rights enforceable in the federal courts" to serve as a predicate violation." *Id.*, citing *Wheeler v. Swimmer*, 858 F.2d 259, 261 (10th Cir. 1987). The Supreme Court has held that 1985(3) requires the conspirators' actions be motivated by an "intent to deprive their victims of the equal protections of the laws," which "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the conspiratorial action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, (1971); see also, *Campbell v. Amax Coal Co.*, 610 F.2d 701, 702 (10th Cir. 1979) ("[I]n the absence of allegations

of class based or racial discriminatory animus, the complaint fails to state a claim under §

1985.").

The Tenth Circuit has stated that § 1985(3) is intended "to provide redress for victims of

conspiracies impelled by a commingling of racial and political motives." *Brown v. Reardon*, 770

F.2d 896, 907 (10th Cir. 1985). "[I]n the absence of allegations of class based or racial

discriminatory animus, the Tenth Circuit has consistently held that § 1985(3) claims should be

dismissed. By way of example, the Tenth Circuit in *Paris v. Sw. Bell Tel. Co*., 94 F. App'x at 815

held that the plaintiff's hostile-work-environment claim failed, because she did not show racial

discriminatory animus on the part of the alleged conspirators. *Id.* Plaintiffs simply fail to state

any allegation of class or racial discriminatory animus.

To succeed on a § 1985 claim, a plaintiff must prove a conspiracy. See *Dixon v. City of

Lawton, Okla*., 898 F.2d 1443, 1447 (10th Cir. 1990). To state a valid claim for conspiracy, "a

plaintiff must allege specific facts showing an agreement and concerted action amongst the

defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing

conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments

are insufficient; the pleadings must specifically present facts tending to show agreement and

concerted action." *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983)(discussing

conspiracy under § 1983).

Most notably, the Tenth Circuit has held that it is error to "precondition consideration of

a plaintiff's § 1985(3) claim upon the finding of § 1983 liability." *Dixon*, 898 F.2d at 1447 (10th

Cir. 1990). Further,

> [a]lthough neither § 1983 nor § 1985(3) create any substantive rights, a § 1983
> claim generally describes a substantive violation of a right secured by the
> Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy

of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws.

*Id.*

Plaintiffs' Complaint cannot be reasonably construed to set forth the necessary facts to move forward with a § 1985(3) claim against Defendants The Children's Mercy Hospital and Dr. Burry. First, Plaintiffs fail to plead any facts suggestive of a conspiracy enacted and/or furthered by these Defendants. At most, conclusory allegations are made concerning an alleged conspiracy; however, that would be given Plaintiffs' Complaint the most liberal of interpretations. Second, there is no allegation that these Defendants' actions were of a discriminatory animus towards individuals of a specific class or race. In the absence of these required factual allegations, Plaintiffs' Complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1985.

Accordingly, the Court must dismiss The Children's Mercy Hospital and Dr. Burry from the lawsuit with prejudice.

ii.     *In the Alternative, Motion For Involuntary Dismissal With Prejudice for Failure to Prosecute Within the Applicable Statute of Limitations.*

Plaintiffs' allegations as stated in their Complaint are barred by the applicable statute of limitations. In Kansas, a cause of action is not commenced until filing and service. *Davila v. Vanderberg*, 4 Kan. App. 2d 586, 588 (1980). Pursuant to K.S.A. § 60-513(a)(7), actions arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract, must be brought within two (2) years. With regard to minors, said actions must be brought within two (2) years after they reach the age of eighteen (18). Pursuant to K.S.A. § 60-241, if a Plaintiff fails to prosecute or comply with K.S.A. Chapter 60, the Defendant may move to dismiss the action or any claim against it. Kansas case law has long held that the primary

responsibility for prosecution of a case lies ultimately on the plaintiff. *Coutts v. Crider*, 219 Kan. 692, 549 P.2d 1019 (1976).

Of equal import, Kansas Courts have long recognized that orders of dismissal for want of prosecution rest in the judicial discretion of the district courts in order that they may control their dockets, eliminate procrastination and delay, and expedite the orderly flow of business, subject, however, to statutory notice requirements; such orders will not be reversed on appeal in the absence of a clear showing of abuse of judicial discretion. *Namelo v. Broyles*, 103 P.3d 486, 33 Kan.App.2d 349, rev. denied (2004).

Plaintiff Carla Davis was not now, or at any material time to this cause of action as set forth by the Complaint, a patient of these Defendants. Carla Davis's "allegations" against the Defendants (*i.e.*, healthcare providers) could only arise out of their purported failure to render professional services. Because Carla Davis does not assert any claim concerning a failure to render services by these Defendants for the purported timeframe noted in the Complaint (*i.e., 2002 to 2008*), her claims against the Defendants are barred by the statute of limitations under K.S.A. § 60-513(a)(7) and should be dismissed pursuant to K.S.A. § 60-241.

Given that any claim Carla Davis sought to bring on her own behalf against these Defendants has since long since expired, to the extent she had a cognizable claim, the primary responsibility for prosecution of this action against these Defendants fell on Jalen Davis. As set forth in the Complaint, Jalen Davis's alleged claims appear limited to the interactions with the Defendants in August of 2008. [ECF 1, ¶¶ 63, sic 72]. Because Jalen Davis reached the age of majority on January 23, 2021, (DOB: January 23, 2003) the statute of limitations began to run on any claims that he intended to bring on January 23, 2021. (*i.e.*, when he reached the age of 18).

While Defendants concede that the cause of action was filed on January 23, 2023, the filing of the lawsuit is not the dispositive issue in this case – it is when the Defendants were served. As set forth in the Court's file, Defendants were not served with a copy of the Complaint until January 31, 2023. By statute, January 31, 2023, is (8) days after the required date that Defendants were to be served with any complaint containing the allegations set forth in the Complaint. Consequently, Jalen Davis has failed to timely prosecute his claims against the Defendants as they are barred in whole or part by the statute of limitations under K.S.A. § 60-513(a)(7) and should be dismissed pursuant to K.S.A. § 60-241.

### III.   Conclusion

Wherefore, for the foregoing reasons, Defendants The Children's Mercy Hospital and Virgil F. Burry, M.D., respectfully request the Court dismiss them from the lawsuit with prejudice or dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

*/s/ BK Christopher*
BK Christopher                KS #16387
Matthew R. Klose              KS# 27360
HORN AYLWARD & BANDY LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Ph: (816) 421-0700
Fax: (816) 421-0899
bchristopher@hab-law.com
mklose@hab-law.com
**ATTORNEYS FOR DEFENDANTS
CHILDREN'S MERCY HOSPITAL
AND VIRGIL F. BURRY, M.D.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of February 2023, a copy of the above and foregoing document was filed in the court's electronic filing system notifying all parties and counsel of record and was sent to the following individuals in the manner prescribed below:

**VIA U.S. MAIL & E-MAIL**
Carla Davis and Jalen Davis
901 N. Belmont
Wichita, Kansas 67208
Email: cardav01292021@yahoo.com

/s/BK Christopher
ATTORNEY

**FILED**
U.S. District Court
District of Kansas

MAR 0 3 2023

Clerk, U.S. District Court
By _____ Deputy Clerk

**CARLA DAVIS**
**JALEN DAVIS**
**901 N. Belmont**
**Wichita, Kansas 67208**
**Telephone: (316) 691-8804**
**Email: carday01292021@yahoo.com**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CARLA DAVIS, indv.** | ) |
| **JALEN DAVIS, indv.** | ) |
| **Plaintiffs** | ) **Case No. 6:23-CV-1010-JAR-GEB** |
| **v.** | ) |
| **U.S. Dept. of Justice, et al** | ) |
| **Defendants** | ) |
| | ) |

## PLAINTIFF'S MOTION FOR DESIGNATION OF PLACE OF TRIAL IN RESPONSE TO DEFENDANTS -THE CHILDREN'S MERCY AND VIRGIL F. BURRY'S REQUEST FOR DESIGNATION OF TRIAL

Pursuant to D. Kansas Rule 40.2 plaintiffs Carla Davis and Jalen Davis individually request permission to have this matter be tried in Wichita, Kansas specifically.

### STATEMENT

Plaintiffs makes this request as follows:

1. Jalen Davis and Carla Davis resides in Wichita, Kansas. The plaintiff's choice only receives little deference or weight when the plaintiff does not reside in his or her chosen forum. *Menefee v. Zepick*, No.09-1217-JWL, 2009 WL 1313236, at *1 (D. Kan. May 12, 2009) first citing *Spires v. Hosp. Corp of Am.,* No. 06-2137-JWL, 2006 WL 1642701 at *2 (D. Kan. June 8, 2006 and then citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction subsection 3848 (3d ed 2007) *Benson v. Hawker Beechcraft Corp.*, No. 07-2171-JWL 2007 WL 1834919, at *2 (D. Kan. June 26, 2007) (collecting cases). The plaintiff's choice of forum should rarely be disturbed. *Gulf Oil Corp. v. Gilbert* , 330 U.S. 501, 508, 67 S. Ct 839, 843, 91 L. Ed. 1055, 1062 (1947).

2. The *ongoing* significant events and violations of rights giving rise to this action started in Wichita, Kansas at formerly called the Wichita Clinic P.A. (Now Ascension Medical Group


1 – 5

Via Christi P.A.)  and Wesley Medical Center LLC, then then violations of rights branched out to the Kansas City area when Carla Davis sought independent medical help for Jalen Davis as a minor child at Children's Mercy Hospital in Kansas City, Mo. during the tenure of Virgil F. Burry as Medical Director, to which, Children's Mercy joined the violation of rights of the case. 28 U.S.C. 1391 (b) (2). " A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  The witnesses to this case also resides in Wichita, Kansas. If the case is tried in Kansas City plaintiffs will not be able to compel its witnesses to attend the trial and give testimony.  "Certainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury, or most litigants,"  states the U.S. Supreme Court in *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 511, 67 S. Ct. at 844, 91 L. Ed. At 1064. It would be more convenient for witnesses to testify in Wichita, Kansas and greater availability of compulsory process for unwilling witnesses, also it would involve far less expense in obtaining the attendance of witnesses.

3. The Children's Mercy Hospital has ongoing contact with Wichita Kansas because it owns and conducts business in Wichita Kansas as Children's Mercy- Wichita LLC, Address:  32 43 E. Murdock Street, Suite 201; Wichita, Kansas 67208; owning 5% or more of capital. Wesley Children's Hospital- located inside defendant Wesley Medical Center LLC, is part of Children's Mercy, and Children's Mercy Hospital employs physicians residing in Wichita such as defendant Dee Spade M.D.-Endocrinologist. The Children's Mercy Hospital is deemed to reside in Wichita, Kansas pursuant to 28 U.S.C. 1391(d).

Having the trial in Kansas City will place a burden on plaintiffs both physically and financially as both plaintiff's were involved in a non-fault auto accident May 19, 2022 that caused non-reparable structural damage to the vehicle that totaled the car and caused injuries to the plaintiffs. Plaintiff's have not been compensated for the property damage to the car and does not have transportation to travel to Kansas City. For venue purposes, a corporation is a resident of any district in which it is incorporated, licensed to do business, or is doing business. *First Security Bank Of  Utah v. Aetna Casualty and Surety Co.,* 541 F. 2d 869, 872 (Tenth Cir. 1976). Venue in Wichita, Kansas is proper in this case and the circumstances of the case is strongly in favor of plaintiffs' choice of forum. The plaintiffs *did not* file this case *In Forma Pauperis*, and is responsible for expenses associated with this case; therefore plaintiffs' request to have trial in Wichita, Kansas where plaintiffs live, will make the trial of this case easier, expeditious and less inexpensive to plaintiffs who are paying out of pocket. Based on the foregoing consideration of the circumstances of this case, the convenience of plaintiffs, convenience of witnesses, and the interest of justice; Wichita Kansas is the correct venue. *Gulf Oil Corp. v. Gilbert, supra,*330 U.S. at 508, 67 S. Ct. at 843, 91 L. Ed at 1062.

2-5

Plaintiffs pray the Court designates Wichita, Kansas as the place of trial.

Respectfully Submitted,

*Jalen Davis*   03/03/2023

Jalen Davis

03/03/2023

Carla Davis

901 N. Belmont

Wichita, Kansas 67208

316-691-8804

cardav01292021@yahoo.com

NOTE:*Email is not for serving pleadings

**PLAINTIFFS**

3-5

## CERTIFICATE OF SERVICE

I hereby certify that on this _____3rd____ day of ___March_____ 2023, a copy of the above and foregoing document was placed in the U.S. postal mail to the following who have served plaintiffs an entry of appearance in the case on or before the above date:


BK Christopher and Matthew Close

HORN AYLWARD & BANDY LLC

2600 Grand Boulevard, Suite 1100

Kansas City, Missouri   64108

*Defendants: The Children's Mercy Hospital and Virgil F. Burry*


Katelyn Radloff

KDHE

1000 SW Jackson, Suite 560

Topeka, Kansas 66612

*Defendants: Janet Stanek and KDHE*


Justin L. McFarland-Kansas Insurance Dept.

1300 SW Arrowhead Road

Topeka, Kansas 66604

*Defendants: Vicki Schmidt and Kansas Insurance Dept.*


Susan L. Mauch and Cameron S. Bernard

GOODELL STRATTON EDMONDS & PALMER LLP

515 South Kansas Avenue

Topeka, Kansas 66603

*Defendant: Robert Kenagy M.D.*

4-5

Eric S. Houghton-Deputy City Attorney

455 North Main, 13th Floor

Wichita, Kansas 67202

*Defendants: Wichita City Council and Brandon Whipple*


Chris S. Cole

WOODARD HERNANDEZ ROTH & DAY. LLC

245 N. Waco, Suite 260

P.O. Box 127

Wichita, Kansas 67201-0127

*Defendants: Clark Shultz  and the Kansas Health Care Stabilization Fund*

03/03/2023

Carla Davis


Jalen Davis 03/03/2023

Jalen Davis

5-5

JENNIFER L. MAGAÑA
City Attorney
ERIK S. HOUGHTON, #27368
Deputy City Attorney
City Hall - 13th Floor
455 North Main
Wichita, Kansas 67202
(316) 268-4681
(316) 858-7777 (FAX)
ehoughton@wichita.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS, | ) | |
| JALEN DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:23-cv-01010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE; | ) | |
| MERRICK B. GARLAND; U.S. DEPT. OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| XAVIER BECERRA; DUSTIN SLINKARD; | ) | |
| ERIC MELGREN; KRIS W. KOBACH; | ) | |
| KANSAS HOMELAND SECURITY; | ) | |
| DAVID WEISHAAR; KANSAS | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| ENVIRONMENT; JANET STANEK; JAMES | ) | |
| MICHAEL MOSER; KANSAS INSURANCE | ) | |
| DEPARTMENT; VICKI SCHMIDT; KANSAS | ) | |
| HEALTH CARE STABILIZATION FUND; | ) | |
| CLARK SHULTZ; SEDGWICK COUNTY | ) | |
| BOARD OF COMMISSIONERS; | ) | |
| MARC BENNETT; | ) | |
| CITY OF WICHITA CITY COUNCIL; | ) | |
| CENTRAL PLAINS HEALTH | ) | |
| CARE PARTNERSHIP; MEDICAL SOCIETY | ) | |
| OF SEDGWICK COUNTY; WESLEY | ) | |
| MEDICAL CENTER, LLC; | ) | |
| THE CHILDREN'S MERCY HOSPITAL; | ) | |
| WICHITA CLINIC, P.A.; | ) | |
| KANSAS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE; GAROLD O. MINNS; | ) | |

STEWART E. DISMUKE;                          )
ROBERT KENAGY; CLYDE WILSON                  )
WESBROOK; DEE SPADE; VIRGIL F.               )
BURRY; HEWITT GOODPASTURE;                   )
DAVID GRAINGER; TRAVIS                       )
STEMBRIDGE; GERARD BASSELL;                  )
ANNA F. STORK-FURY; BRENDA                   )
KALLEMEYN; TOM YAO; GIANFRANCO               )
PEZZINO; FOULSTON SIEFKIN, L.L.P.;           )
KLENDA, MITCHELL, AUSTERMAN,                 )
ZUERCHER, L.L.C.; BRANDON WHIPPLE;           )
WICHITA CENTER FOR GRADUATE                  )
MEDICAL EDUCATION, INC.,                     )
                                             )
_____Defendants._____ __)

## DEFENDANT CITY OF WICHITA CITY COUNCIL'S
## MOTION TO DISMISS

COMES NOW, Defendant City of Wichita City Council, and moves to dismiss Plaintiffs'

Complaint pursuant to Fed. R. Civ. P. 17(b) for the lack of capacity for the Wichita City Council

to be sued.

Respectfully submitted,


/s Erik S. Houghton_____
Erik S. Houghton, #27368
Deputy City Attorney
City Hall – 13th Floor
455 N. Main
Wichita, KS  67202
(316) 268-4681
Fax:  (316) 858-7777
Email:  ehoughton@wichita.gov
*Attorney for Defendant Wichita City Council*

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2023, I presented the a true and correct copy of the foregoing DEFENDANT CITY OF WICHITA CITY COUNCIL'S MOTION TO DISMISS to the clerk of the court for filing and uploading to the CM/ECF system, which will send a notice of electronic filing to the following:

Any Party or Counsel who has entered an appearance

I further certify that a true and correct copy of the above and foregoing DEFENDANT CITY OF WICHITA CITY COUNCIL'S MOTION TO DISMISS was deposited in the United States mail, postage prepaid, on the 6th day of March, 2023, and properly addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

_/s/ Erik S. Houghton_____
Erik S. Houghton

JENNIFER L. MAGAÑA
City Attorney
ERIK S. HOUGHTON, #27368
Deputy City Attorney
City Hall - 13th Floor
455 North Main
Wichita, Kansas 67202
(316) 268-4681
(316) 858-7777 (FAX)
ehoughton@wichita.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS, | ) | |
| JALEN DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:23-cv-01010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE; | ) | |
| MERRICK B. GARLAND; U.S. DEPT. OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| XAVIER BECERRA; DUSTIN SLINKARD; | ) | |
| ERIC MELGREN; KRIS W. KOBACH; | ) | |
| KANSAS HOMELAND SECURITY; | ) | |
| DAVID WEISHAAR; KANSAS | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| ENVIRONMENT; JANET STANEK; JAMES | ) | |
| MICHAEL MOSER; KANSAS INSURANCE | ) | |
| DEPARTMENT; VICKI SCHMIDT; KANSAS | ) | |
| HEALTH CARE STABILIZATION FUND; | ) | |
| CLARK SHULTZ; SEDGWICK COUNTY | ) | |
| BOARD OF COMMISSIONERS; | ) | |
| MARC BENNETT; | ) | |
| CITY OF WICHITA CITY COUNCIL; | ) | |
| CENTRAL PLAINS HEALTH | ) | |
| CARE PARTNERSHIP; MEDICAL SOCIETY | ) | |
| OF SEDGWICK COUNTY; WESLEY | ) | |
| MEDICAL CENTER, LLC; | ) | |
| THE CHILDREN'S MERCY HOSPITAL; | ) | |
| WICHITA CLINIC, P.A.; | ) | |
| KANSAS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE; GAROLD O. MINNS; | ) | |

STEWART E. DISMUKE;                        )
ROBERT KENAGY; CLYDE WILSON               )
WESBROOK; DEE SPADE; VIRGIL F.            )
BURRY; HEWITT GOODPASTURE;                )
DAVID GRAINGER; TRAVIS                    )
STEMBRIDGE; GERARD BASSELL;               )
ANNA F. STORK-FURY; BRENDA                )
KALLEMEYN; TOM YAO; GIANFRANCO            )
PEZZINO; FOULSTON SIEFKIN, L.L.P.;        )
KLENDA, MITCHELL, AUSTERMAN,              )
ZUERCHER, L.L.C.; BRANDON WHIPPLE;        )
WICHITA CENTER FOR GRADUATE               )
MEDICAL EDUCATION, INC.,                  )
                                          )
_____Defendants._____ _ )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANT CITY OF WICHITA CITY COUNCIL

COMES NOW, Defendant City of Wichita City Council and submits this memorandum in support of its motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 17(b), for the lack of capacity for the City of Wichita City Council to be sued as an entity.

### NATURE OF THE MATTER BEFORE THE COURT

*Pro se* plaintiffs Carla Davis and Jalen Davis filed their Complaint in this action on January 23, 2023. Plaintiffs name City of Wichita City Council as a defendant, along with several other U.S. government entities and persons, state of Kansas government entities and persons, and private entities and persons.

Plaintiffs have brought this against the defendants pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985. However, Plaintiffs' Complaint does not allege any specific factual allegations against Defendant City of Wichita City Council. The only mention of Defendant City of Wichita City Council in the Plaintiffs' Complaint is in the Plaintiffs' listing of the parties: "Defendant CITY OF WICHITA CITY COUNCIL is a local city government in Wichita, Kansas with DR.

BRANDON WHIPPLE as Mayor being sued in their official and individual capacities with the principle office at City Hall, 455 N. Main, Wichita, Kansas 67202." Complaint, Dkt. 1, ¶21.

## STATEMENT OF FACTS

1.      Plaintiffs' Complaint relies upon events that allegedly occurred relating to Plaintiff Carla Davis' pregnancy in 2002, and when she gave birth to Plaintiff Jalen Davis on January 23, 2003.  Complaint, Dkt. 1, ¶¶56-67.  Plaintiff Carla Davis further alleges an unknown device was placed in her chest blood vessels at Wesley Medical Center on February 4, 2004.  Complaint, Dkt. 1, ¶68.  Plaintiffs' Complaint also alleges that "public officials" denied plaintiffs access to their medical records, and stole the blood of Plaintiff Jalen Davis in August 2008.  Complaint, Dkt. 1, ¶¶67-70.

## ISSUES PRESENTED

The issues presented are whether Plaintiff's Complaint should be dismissed in its entirety against the Defendant City of Wichita City Council (hereinafter "Wichita City Council") because:

1.      The Wichita City Council is not a legal entity capable of being sued.

## ARGUMENT AND AUTHORITIES

**I.      The Wichita City Council is not a legal entity capable of being sued under Fed. R. Civ. P. 17(b).**

Under Fed. R. Civ. P. 17(b), the capacity of a governmental entity to be sued in the U.S. District Court is governed by the laws of the state where the court is located.  While the issue of determining the capacity of a city council to be sued as a separate entity has not been addressed in this Court, the U.S. District Court for the Northern District of Illinois analyzed this issue in *Bonilla v. City Council of City of Chicago*, 809 F.Supp. 590 (N.D. Ill. 1992). In *Bonilla*, the Court, citing to the treatise, Wright, Miller, & Kane, *Federal Practice and Procedure: Civil,* (West Publishing, 2d ed. 1990), held: "'[a]lthough a municipal corporation and the individual members of its city

council may have capacity to sue and be sued, the council itself may not be a legal entity for purposes of Rule 17(b).' Wright, Miller & Kane, supra, at § 1562, pg. 454." *Bonilla* at 600. Additionally, the *Bonilla* Court determined that "[i]n fact, absent a specific statutory authorization, a city council is not a suable entity. *Id*.

In reaching its conclusion that a city council is not a suable entity, the *Bonilla* Court noted other U.S. District Court cases from Illinois, Florida, and Massachusetts: "*Mayes v. Elrod*, 470 F.Supp. 1188, 1192 (N.D. Ill 1979) (Cook County Board of Commissioners is not a suable entity, even though by express statute, Cook County itself is); *Fairbanks v. Bradenton Beach*, 733 F. Supp. 1447, 1450 (M.D. Fla. 1989) (City Council of Bradenton Beach, Florida is not a legal entity capable of being sued); *Latino Political Action Committee, Inc. v. Boston*, 581 F.Supp. 478, 484 (D.Mass. 1984) (City Council lacks legal identity apart from City of Boston and therefore is not a suable entity in redistricting challenge)." *Bonilla* at 600-601.

Additionally, the law of the state of Kansas supports this analysis by the U.S. District courts in *Bonilla* and the other U.S. District Court cases from Illinois, Florida, and Massachusetts. Specifically, K.S.A. §12-101 confirms the constitution of the state of Kansas establishing that each city being a body corporate and politic, may sue and be sued. The Kansas statutes also establish the "governing body" of a city to include the mayor and council under K.S.A. §12-104. Finally, K.S.A. §75-6102(d)(1)(A) establishes that council members are "employees" of a city. There is no specific statutory authorization in the state of Kansas establishing a city council as a separate legal entity with capacity to be sued.

While the laws of the state of Kansas set out the capacity for a city to sue and be sued, and establishes a city council, consisting of employees of the city, as the "governing body" of a city, Kansas law does not provide a specific statutory basis establishing a city council as a separate legal

entity capable of being sued.  Therefore, based on the analysis set out in *Bonilla* and in the Illinois,

Florida, and Massachusetts U.S. Districts Courts, pursuant to Fed. R. Civ. P. 17(b) and Kansas

law, the Defendant Wichita City Council lacks capacity to be sued as a separate entity.

## CONCLUSION

WHEREFORE, premises considered, Defendant City of Wichita City Council prays the

Court grant its Motion to Dismiss, and enter an Order dismissing the Plaintiffs' claims against

Defendant Wichita City Council and for such other and further relief as the Court deems just, fair

and equitable.

Respectfully submitted,


/s Erik S. Houghton
Erik S. Houghton, #27368
Deputy City Attorney
City Hall – 13th Floor
455 N. Main
Wichita, KS  67202
(316) 268-4681
Fax:  (316) 858-7777
Email:  ehoughton@wichita.gov
*Attorney for Defendant Wichita City Council*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of March, 2023, I presented the a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT CITY OF WICHITA CITY COUNCIL to the clerk of the court for filing and uploading to the CM/ECF system, which will send a notice of electronic filing to the following:

Any Party or Counsel who has entered an appearance

I further certify that a true and correct copy of the above and foregoing MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT CITY OF WICHITA CITY COUNCIL was deposited in the United States mail, postage prepaid, on the 6th day of March, 2023, and properly addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

_/s/ Erik S. Houghton_____
Erik S. Houghton

JENNIFER L. MAGAÑA
City Attorney
ERIK S. HOUGHTON, #27368
Deputy City Attorney
City Hall - 13th Floor
455 North Main
Wichita, Kansas 67202
(316) 268-4681
(316) 858-7777 (FAX)
ehoughton@wichita.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS, | ) | |
| JALEN DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:23-cv-01010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE; | ) | |
| MERRICK B. GARLAND; U.S. DEPT. OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| XAVIER BECERRA; DUSTIN SLINKARD; | ) | |
| ERIC MELGREN; KRIS W. KOBACH; | ) | |
| KANSAS HOMELAND SECURITY; | ) | |
| DAVID WEISHAAR; KANSAS | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| ENVIRONMENT; JANET STANEK; JAMES | ) | |
| MICHAEL MOSER; KANSAS INSURANCE | ) | |
| DEPARTMENT; VICKI SCHMIDT; KANSAS | ) | |
| HEALTH CARE STABILIZATION FUND; | ) | |
| CLARK SHULTZ; SEDGWICK COUNTY | ) | |
| BOARD OF COMMISSIONERS; | ) | |
| MARC BENNETT; | ) | |
| CITY OF WICHITA CITY COUNCIL; | ) | |
| CENTRAL PLAINS HEALTH | ) | |
| CARE PARTNERSHIP; MEDICAL SOCIETY | ) | |
| OF SEDGWICK COUNTY; WESLEY | ) | |
| MEDICAL CENTER, LLC; | ) | |
| THE CHILDREN'S MERCY HOSPITAL; | ) | |
| WICHITA CLINIC, P.A.; | ) | |
| KANSAS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE; GAROLD O. MINNS; | ) | |

| | |
|---|---|
| STEWART E. DISMUKE; | ) |
| ROBERT KENAGY; CLYDE WILSON | ) |
| WESBROOK; DEE SPADE; VIRGIL F. | ) |
| BURRY; HEWITT GOODPASTURE; | ) |
| DAVID GRAINGER; TRAVIS | ) |
| STEMBRIDGE; GERARD BASSELL; | ) |
| ANNA F. STORK-FURY; BRENDA | ) |
| KALLEMEYN; TOM YAO; GIANFRANCO | ) |
| PEZZINO; FOULSTON SIEFKIN, L.L.P.; | ) |
| KLENDA, MITCHELL, AUSTERMAN, | ) |
| ZUERCHER, L.L.C.; BRANDON WHIPPLE; | ) |
| WICHITA CENTER FOR GRADUATE | ) |
| MEDICAL EDUCATION, INC., | ) |
| | ) |
| Defendants. _ | ) |

## **DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS**

COMES NOW, Defendant Brandon Whipple, and moves the Court to dismiss Plaintiffs'

Complaint against him pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject-matter

jurisdiction and failure to state a claim upon which relief can be granted.

Respectfully submitted,


/s Erik S. Houghton
Erik S. Houghton, #27368
Deputy City Attorney
City Hall – 13th Floor
455 N. Main
Wichita, KS  67202
(316) 268-4681
Fax:  (316) 858-7777
Email:  ehoughton@wichita.gov
*Attorney for Defendant Brandon Whipple*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2023, I presented the a true and correct copy of the foregoing DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS to the clerk of the court for filing and uploading to the CM/ECF system, which will send a notice of electronic filing to the following:

Any Party or Counsel who has entered an appearance

I further certify that a true and correct copy of the above and foregoing DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS was deposited in the United States mail, postage prepaid, on the 6th day of March, 2023, and properly addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

_/s/ Erik S. Houghton_____
Erik S. Houghton

JENNIFER L. MAGAÑA
City Attorney
ERIK S. HOUGHTON, #27368
Deputy City Attorney
City Hall - 13th Floor
455 North Main
Wichita, Kansas 67202
(316) 268-4681
(316) 858-7777 (FAX)
ehoughton@wichita.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS, | ) | |
| JALEN DAVIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 6:23-cv-01010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE; | ) | |
| MERRICK B. GARLAND; U.S. DEPT. OF | ) | |
| HEALTH AND HUMAN SERVICES; | ) | |
| XAVIER BECERRA; DUSTIN SLINKARD; | ) | |
| ERIC MELGREN; KRIS W. KOBACH; | ) | |
| KANSAS HOMELAND SECURITY; | ) | |
| DAVID WEISHAAR; KANSAS | ) | |
| DEPARTMENT OF HEALTH AND | ) | |
| ENVIRONMENT; JANET STANEK; JAMES | ) | |
| MICHAEL MOSER; KANSAS INSURANCE | ) | |
| DEPARTMENT; VICKI SCHMIDT; KANSAS | ) | |
| HEALTH CARE STABILIZATION FUND; | ) | |
| CLARK SHULTZ; SEDGWICK COUNTY | ) | |
| BOARD OF COMMISSIONERS; | ) | |
| MARC BENNETT; | ) | |
| CITY OF WICHITA CITY COUNCIL; | ) | |
| CENTRAL PLAINS HEALTH | ) | |
| CARE PARTNERSHIP; MEDICAL SOCIETY | ) | |
| OF SEDGWICK COUNTY; WESLEY | ) | |
| MEDICAL CENTER, LLC; | ) | |
| THE CHILDREN'S MERCY HOSPITAL; | ) | |
| WICHITA CLINIC, P.A.; | ) | |
| KANSAS UNIVERSITY SCHOOL OF | ) | |
| MEDICINE; GAROLD O. MINNS; | ) | |

1

STEWART E. DISMUKE;                          )
ROBERT KENAGY; CLYDE WILSON                  )
WESBROOK; DEE SPADE; VIRGIL F.               )
BURRY; HEWITT GOODPASTURE;                   )
DAVID GRAINGER; TRAVIS                       )
STEMBRIDGE; GERARD BASSELL;                  )
ANNA F. STORK-FURY; BRENDA                   )
KALLEMEYN; TOM YAO; GIANFRANCO               )
PEZZINO; FOULSTON SIEFKIN, L.L.P.;           )
KLENDA, MITCHELL, AUSTERMAN,                 )
ZUERCHER, L.L.C.; BRANDON WHIPPLE;           )
WICHITA CENTER FOR GRADUATE                  )
MEDICAL EDUCATION, INC.,                     )
                                             )
_____Defendants._____ )

### MEMORANDUM IN SUPPORT OF DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS

COMES NOW, Defendant Brandon Whipple and submits this memorandum in support of his motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

### NATURE OF THE MATTER BEFORE THE COURT

*Pro se* plaintiffs Carla Davis and Jalen Davis filed their Complaint in this action on January 23, 2023. Plaintiffs name Brandon Whipple as a defendant, along with several other U.S. government entities and persons, state of Kansas government entities and persons, and private entities and persons.

Plaintiffs have brought this against the defendants pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985. However, Plaintiffs' Complaint does not allege any specific factual allegations against Defendant Brandon Whipple. The only mention of Defendant Brandon Whipple in the Plaintiffs' Complaint is in the Plaintiffs' listing of the parties: "Defendant CITY OF WICHITA CITY COUNCIL is a local city government in Wichita, Kansas with DR. BRANDON WHIPPLE

as Mayor being sued in their official and individual capacities with the principle office at City

Hall, 455 N. Main, Wichita, Kansas 67202." Complaint, Dkt. 1, ¶21.

## STATEMENT OF FACTS

1.      Plaintiffs' Complaint relies upon events that allegedly occurred relating to Plaintiff

Carla Davis' pregnancy in 2002, and when she gave birth to Plaintiff Jalen Davis on January 23,

2003.  Complaint, Dkt. 1, ¶¶56-67.  Plaintiff Carla Davis further alleges an unknown device was

placed in her chest blood vessels at Wesley Medical Center on February 4, 2004.  Complaint, Dkt.

1, ¶68.  Plaintiffs' Complaint also alleges that "public officials" denied plaintiffs access to their

medical records, and stole the blood of Plaintiff Jalen Davis in August 2008.  Complaint, Dkt. 1,

¶¶67-70.

## STATEMENT OF ISSUES

The issues presented are whether Plaintiffs' Complaint should be dismissed in its entirety

against Defendant Brandon Whipple because:

1.      The Court lacks subject-matter jurisdiction.

2.      Defendant Brandon Whipple is entitled to qualified immunity.

3.      Plaintiffs fail to state a claim against Defendant Brandon Whipple pursuant to 42

U.S.C. 1983.

4.      Plaintiffs fail to state a claim against Defendant Brandon Whipple pursuant to 42.

U.S.C. 1985.

## ARGUMENT AND AUTHORITIES

1. **Standard of Review Under Fed. R. Civ. P. 12(b)(6)**.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all

well-pleaded factual allegations and views them in the light most favorable to the non-moving

party to determine whether they plausibly give rise to an entitlement of relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679(2009).  The pleading standard arising from the decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal* (coined the *Twiqbal* standard), requires that a complaint plead facts sufficient to show that the claims have substantive plausibility.

*Twiqbal* emphasizes the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions, which instead must be supported by facts.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face.  *Iqbal*, at 679-80; *Twombly*, 550 U.S. at 555.  When determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 679.

A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  *Iqbal*, 556 U.S. at 678. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Fed. R. Civ. P. 8 depends on the type of case.  *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008)

Plaintiffs' Complaint should be dismissed for their failure to comply with Rule (8)(2).  Rule (8)(2) requires a plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Complaint must allege sufficient facts to make it clear who did what to whom.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  Complaints in which plaintiffs assert that their rights "were violated" or that defendants "infringed" on his rights are insufficient.  *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013).  A plaintiff must specify actions taken by particular defendants in order to establish a § 1983 claim.  *Pahls* at 1210.

4

2. **The Plaintiffs' Complaint must be dismissed as the Court lacks subject matter jurisdiction.**

Federal courts have subject-matter jurisdiction only over cases in which the plaintiff satisfies the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Federal courts have no jurisdiction over cases in which the plaintiff lacks standing to bring the complaint. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Standing has three components. First, plaintiffs must show that they have suffered an injury-in-fact that is both concrete in nature and particularized to them. *Allen v. Wright*, 468 U.S. 737, 755 (1984). Second, the injury must be fairly traceable to defendants' conduct. *Allen* at 757. Third, the injury must be redressable—relief "must be 'likely' to follow from a favorable decision." *Id.* Plaintiff has the burden to show that he has Art. III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Here, Plaintiffs have failed to meet the second component under *Allen*. Specifically, there are no allegations in Plaintiffs' Complaint alleging that the injuries complained of by the Plaintiffs are traceable to conduct by Defendant Brandon Whipple. Therefore, Plaintiffs have failed to meet their burden to show that they have Art. III standing, and Plaintiffs' Complaint against Defendant Brandon Whipple should be dismissed.

3. **Defendant Brandon Whipple is entitled to qualified immunity**.

Qualified immunity shields public officials from civil liability so long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). Qualified immunity shields a government official from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2077 (2011). When the defense of

5

qualified immunity is raised, the onus is on the plaintiff to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015).

To demonstrate the infringement of a clearly established right, one must either direct the court to "an on-point Supreme Court or published Tenth Circuit decision" or demonstrate that "the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) (quoting *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010)).   The case or cases must then allow us to conclude that "every 'reasonable official would have understood what he is doing violates [a clearly established] right." *al-Kidd* at 2078 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).   The qualified immunity analysis involves a standard akin to a "sliding scale": "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.   *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).   In all events, however, it remains necessary for the plaintiff to demonstrate that "every reasonable official would have understood" that what he did violated the law.   *al-Kidd* at 2078.

If the Plaintiff fails to satisfy either part of the inquiry, the Court must grant qualified immunity.   *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017).   In this instant case, the Plaintiffs' Complaint fails to demonstrate any specific action by Defendant Brandon Whipple, as Mayor of the City of Wichita, that violated a constitutional right asserted by the Plaintiffs.   Therefore, Defendant Brandon Whipple is entitled to qualified immunity and Plaintiffs' Complaint against him should be dismissed.

6

4. **Plaintiffs fail to state a claim against Defendant Brandon Whipple pursuant to 42 U.S.C. 1983.**

To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff and what specific legal right the plaintiff believes the defendant violated. *Nasious v. Two Unknown B.I.CE. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Tenth Circuit has consistently held that individual liability under §1983 must be based on personal involvement in the alleged constitutional violation. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Additionally, §1983 does not allow a Plaintiff to hold an individual government official liable under a theory of *respondeat superior. Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010).

Here, Plaintiffs' Complaint does not include any factual allegations explaining the specific actions by Defendant Brandon Whipple, and how such actions harmed the plaintiffs. Absent specific factual allegations that Defendant Brandon Whipple engaged in specific personal conduct against Plaintiffs, the Plaintiffs' Complaint fails against Defendant Brandon Whipple and should be dismissed.

5. **Plaintiffs fail to state a claim against Defendant Brandon Whipple pursuant to 42. U.S.C. 1985**.

Plaintiffs also allege in their Complaint that their case is brought pursuant to 42 U.S.C. §1985. However, Plaintiffs fail to allege the necessary elements of a conspiracy under 42 U.S.C. §1985. The four elements of a claim under 42 U.S.C. §1985 are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); and *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971).

Further, to state a claim pursuant to 42 U.S.C. §1985, a plaintiff must allege a racial or class based invidious discriminatory animus against the defendant.  See *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) and *Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1429-30 (8th Cir. 1986).  The intended victim of the conspiracy must be a victim not because of any personal malice the contributors have toward him, but because of his membership in or affiliation with a particular protected class.  *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 850 (1983).

Plaintiffs have failed to alleged that they are members of any protected class, or that any actions by Defendant Brandon Whipple were taken based on Plaintiffs' membership in or affiliation with a particular protected class.  Without any facts or allegations that the Plaintiffs are members of a protected class, their 42 U.S.C. § 1985 claim fails as a matter of law.  *See Home Quest Mortgage LLC v. American Family Mutual Ins.*, 340 F. Supp. 2d 1177 (2004) and *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

Secondly, Plaintiffs have failed to establish the existence of a conspiracy.  An allegation of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy:  agreement and concerted action.  *Crabtree By & Through Crabtree v. Muchmore,* 904 F.2d 1475, 1476 (10th Cir. 1990) and *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir. 1983).  Mere conclusory allegations of a conspiracy with no supporting factual averments are insufficient to state a claim under Section 1985(3).  *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) and *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983).

Plaintiffs' Complaint has no factual allegations which allege any conspiracy on behalf of Defendant Brandon Whipple to violate Plaintiffs' constitutional rights.  Therefore, Plaintiffs' fail

to state a claim against Defendant Brandon Whipple pursuant to 42 U.S.C. §1985, and Plaintiffs'

Complaint against Defendant Brandon Whipple should be dismissed.

## CONCLUSION

WHEREFORE, premises considered, Defendant Brandon Whipple prays the Court grant

his Motion to Dismiss and enter an Order dismissing the Plaintiffs' claims with prejudice and for

such other and further relief as the Court deems just, fair and equitable.

Respectfully submitted,


/s Erik S. Houghton
Erik S. Houghton, #27368
Deputy City Attorney
City Hall – 13th Floor
455 N. Main
Wichita, KS  67202
(316) 268-4681
Fax:  (316) 858-7777
Email:  ehoughton@wichita.gov
*Attorney for Defendant Brandon Whipple*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of March, 2023, I presented the a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS to the clerk of the court for filing and uploading to the CM/ECF system, which will send a notice of electronic filing to the following:

Any Party or Counsel who has entered an appearance

I further certify that a true and correct copy of the above and foregoing MEMORANDUM IN SUPPORT OF DEFENDANT BRANDON WHIPPLE'S MOTION TO DISMISS was deposited in the United States mail, postage prepaid, on the 6th day of March, 2023, and properly addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

_/s/ Erik S. Houghton_____
Erik S. Houghton

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

     Plaintiffs,

vs.            Case No. 6:23-cv-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al.,

     Defendants.

**FEDERAL DEFENDANTS' AMENDED[1] MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)**

The United States (hereinafter the Federal Defendants), on behalf of the United States

Department of Justice; U.S. Attorney General Merrick B. Garland only in his official capacity;

U.S. Department of Health and Human Services; Xavier Becerra, Secretary of Health and Human

Services only in his official capacity; Duston Slinkard, United States Attorney for the District of

Kansas only in his official capacity; and U.S. District Court Judge Eric Melgren, as former United

States Attorney for the District of Kansas only in his official capacity; through counsel Christopher

Allman, Assistant United States Attorney for the District of Kansas, file this motion to dismiss

all of the Plaintiffs' claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to

state a plausible claim under Rule 12(b)(6).  In support of this motion, the Federal Defendants

submit an Amended Memorandum in Support of their Motion to Dismiss which is hereby

---

[1]  The Federal Defendants file this Amended Motion to Dismiss to make clear that at this time counsel for the United States does not have authority from the Department of Justice to represent U.S. Attorney General Merrick B, Garland; Xavier Becerra, Secretary of Health and Human Services; Duston Slinkard, United States Attorney for the District of Kansas, or U.S. District Court Judge Eric Melgren, as former United States Attorney for the District of Kansas in their individual capacities.  Consequently, this Amended Motion only seeks dismissal of the Plaintiffs' claims against the USDOJ, HHS, and the named federal defendants in their official capacities only.  Counsel apologizes for his error.

incorporated into and made a part of this Motion by reference.

Respectfully submitted,

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S.Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorney for the Federal Defendants

CERTIFICATE OF SERVICE

I certify that on March 6, 2023, this document was electronically filed with the Clerk of
the Court by using the CM/ECF system and a paper copy was sent to the Plaintiffs by U.S. mail
addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                Plaintiffs,

vs.                                        Case No. 6:23-cv-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al.,

                Defendants.

### AMENDED[1] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

      The United States (hereinafter the Federal Defendants), on behalf of the United States

Department of Justice; U.S. Attorney General Merrick B. Garland only in his official capacity;

U.S. Department of Health and Human Services; Xavier Becerra, Secretary of Health and Human

Services only in his official capacity; Duston Slinkard, United States Attorney for the District of

Kansas only in his official capacity; and U.S. District Court Judge Eric Melgren, as former United

States Attorney for the District of Kansas only in his official capacity; through counsel Christopher

Allman, Assistant United States Attorney for the District of Kansas, file this motion to dismiss

all of the Plaintiffs' claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to

state a plausible claim under Rule 12(b)(6).

---

[1] The Federal Defendants file this Amended Memorandum in Support of their Motion to Dismiss to make clear that at this time counsel for the United States does not have authority from the Department of Justice under 28 C.F.R. § 50.15 to represent U.S. Attorney General Merrick B. Garland; Xavier Becerra, Secretary of Health and Human Services; Duston Slinkard, United States Attorney for the District of Kansas, and U.S. District Court Judge Eric Melgren, as former United States Attorney for the District of Kansas in their individual capacities. Consequently, this Amended Memorandum in support the Amended Motion to dismiss only seeks dismissal of the Plaintiffs' claims against the USDOJ, HHS, and the named federal defendants in their official capacities only.

**Overview**

On January 23, 2023, *pro se* Plaintiffs commenced this action against the United States Department of Justice, Department of Health and Human Services, and four officers or employees of the United States—U.S. Attorney General Merrick B. Garland, Secretary of Health and Human Services Xavier Becerra, United States Attorney for the District of Kansas Duston Slinkard, and U.S. District Court Judge Eric Melgren, formerly United States Attorney for the District of Kansas. Plaintiffs also name numerous other non-federal persons or entities as defendants.

Plaintiffs allege that this action is brought "pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution." *Compl*. 1, ¶ 43.

Plaintiffs begin their factual allegations by stating that after September 11, 2001, the State of Kansas received federal funding to create a Bioterrorism Hospital Preparedness and Coordinating Council. *Id.* at ¶ 46. After citing a number of events in 2002 pertaining to bioterrorism and health laws, Plaintiff Carla Davis alleges that on October 18, 2002, she made health care choices for herself that did not get fulfilled, resulting in a violation of her rights as well as the rights of her unborn son, Plaintiff Jalen Davis. *Id.* at ¶ 57. From there she relates being mistreated by hospital personnel to include being administered toxic doses of drugs, rape, and stabbing with a needle. *Id.* at ¶ 63-67. Then in 2008, "public officials" stole the blood of Jalen Davis at Children's Mercy Hospital and prevented him from receiving medical treatment. *Id.* at ¶ 70. In addition, she was falsely accused of child abuse and denied access to her and Jalen Davis' medical records and is still being denied access to medical records. *Id.* at ¶ 71-72. Plaintiffs seek monetary damages for these actions and access to their medical records.

### Legal Standards

**A.      Rule 12(b)(1) Standards**

"Federal courts are courts of limited jurisdiction." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). This Court's jurisdiction is established by the Constitution and acts of Congress. *See United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982), and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, *id.* at 701–02."). "Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (*quoting United States v. Sherwood*, 312 U.S. 584, 586 (1941).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint based on lack of jurisdiction over the subject matter of the complaint. *See Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1324 (10th Cir. 2002). When determining subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations, and has wide discretion to review outside documents. *Id.*; *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). This Court may dismiss a claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) by assuming either all well-pleaded facts are true or where facts underlying subject matter jurisdiction are challenged, the Court has discretion to allow affidavits and other documents to resolve jurisdictional facts. *Holt*, 46 F.3d at 1002-03. When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v. United States*, 235 F.3d 1249,

1255 (10th Cir. 2000).  The Court does not defer to allegations in the complaint that constitute

legal questions, because those issues are within the purview of the Court.  *Id.* at 1257.

"[T]he court has an independent obligation to satisfy itself that subject matter jurisdiction

is proper."  *Coffman v. CHS Gas & Oil*, No. 18-4031-DDC-GEB, 2018 WL 3616948, at *3 (D.

Kan. July 30, 2018), *appeal dismissed*, No. 18-3168, 2018 WL 7223064 (10th Cir. Nov. 27, 2018)

(*citing Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).  The court "must

dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

lacking."  *Id. (citing Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th

Cir. 1991); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks

subject-matter jurisdiction, the court must dismiss the action.").  The burden of establishing subject

matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.,* 495

F.2d 906, 909 (10th Cir. 1974).

### B.  Rule 12(b)(6) Standards

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs must set forth

a complaint that contains "a short and plain statement of the claim showing that the pleader is

entitled to relief," and that is "*plausible on its face.*" *See Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007) (emphasis added). A plaintiff's complaint must include more than labels, legal

conclusions, and formulaic recitations of the cause of action's elements. *Id.* at 545.

The facts pled must provide more than a speculative chance of the right to relief. *Id.*

Furthermore, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).  Facial plausibility is found "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

### C.    Pro Se Litigant Standards

Plaintiffs are proceeding pro se in this case. "[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted).  In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Additionally, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil Procedure. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'") (*quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *see also Drake v. City*

*of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded

pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence

of any discussion of those issues""). Nor is the court to "supply additional factual allegations to

round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir.

1997).

<u>Analysis</u>

I.   **PLAINTIFFS' CLAIMS AGAINST THE FEDERAL DEFENDANTS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1)**

   A.   **Plaintiffs' Claims Are So Completely Devoid of Merit That The Court Lacks Subject Matter Jurisdiction To Consider Them**

   Plaintiffs' claims against the Federal Defendants are so insubstantial, implausible, remote

in time that this court lacks subject matter jurisdiction to consider them.  *See Olsen v. Aebersold*,

71 F. App'x 7, 9 (10th Cir. 2003) (courts lack jurisdiction "when the claim is so insubstantial,

implausible, foreclosed by prior decisions, . . . or otherwise completely devoid of merit as not to

involve a federal controversy" (quotation omitted)); *Frank v. Bush*, No. 09-4146-RDR, 2010 WL

1408405, at *2-3, 7 (D. Kan. Apr. 2, 2010) (dismissing, as insubstantial, action under FISA and

the Patriot Act alleging that former state legislator and other officials unlawfully surveilled

plaintiff and "use[d] a 'steroid cocktail' to try and cause [the] death" of plaintiff's spouse, stating

"[c]laims presenting bizarre conspiracy theories or describing fantastic government manipulations

exemplify matters which may be dismissed . . . for lack of subject matter jurisdiction") (collecting

similar cases), *aff'd*, 391 F. App'x 745 (10th Cir. 2010); *Thibeaux v. Cain*, 448 F. App'x 863, 864

(10th Cir. 2012) (affirming dismissal of Section 1983 action alleging secret surveillance of

plaintiff, stating "a finding of factual frivolousness is appropriate when the facts alleged rise to the

level of the irrational or the wholly incredible" (quotation omitted)); *Tarshik v. Kansas*, 327 F.

App'x 56, 57 (10th Cir. 2009) (affirming dismissal of "insubstantial" action alleging that defendants participated in an "organized crime syndicate which has repeatedly tried to poison him and caused him a variety of injuries").

### B.   Plaintiffs' Claims Against the Federal Defendants are Barred by Sovereign Immunity

"Federal courts are courts of limited jurisdiction."  *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). This Court's jurisdiction is established by the Constitution and acts of Congress.  *See United States v. Hardage*, 58 F.3d 569, 574 (10th Cir.1995) ("Federal courts have limited jurisdiction, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982), and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, *id.* at 701–02.").  "Sovereign immunity is jurisdictional in nature.  Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (*quoting United States v. Sherwood*, 312 U.S. 584, 586 (1941).  A court "must dismiss [a]cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) *(citing Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

To the extent that Plaintiffs assert constitutional tort claims against the United States, its agencies, and its employees in their official capacity, those claims must be dismissed for lack of subject matter jurisdiction. Constitutional tort claims against the United States or its officers in their official capacity are barred by sovereign immunity unless specifically waived by the United

States. *F.D.I.C.*, at 477-78 ; *Kentucky v. Graham*, 473 U.S. 159, 165–68 (1985) (a suit against an individual acting in an official capacity is properly treated as a suit against the state itself and is barred under the Eleventh Amendment); *Fay v. United States*, 389 F. App'x 802, 804 (10th Cir. 2010) (claims against the United States under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), are barred by sovereign immunity.). The United States has not waived sovereign immunity for causes of action brought under 42 U.S.C. §§ 1983 and 1985. *Robles v. Amarr Garage Doors*, No. 11-2707-JAR-DJW, 2012 WL 2359423, at *6 (D. Kan. June 20, 2012). Plaintiffs' complaint fails to identify a federal statute that allows them to assert any claim against the United States, its agencies or employees acting in their official capacities.

To the extent Plaintiffs' claims are construed as *Bivens*[2] claims against Attorney General Garland, Secretary Becerra, USA Slinkard, or former USA and now Chief Judge Melgren, in their official capacity for the alleged violations of Plaintiffs' constitutional rights, such claims are also barred by additional well-established principles of sovereign immunity. *See Kelly v. Wilson*, 426 F. App'x 629, 633 (10th Cir. 2011) ("And, finally, sovereign immunity bars a *Bivens*-type action against a United States agent in his or her official capacity." (*citing Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) ("There is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity. Instead, any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States.")); *Hudson v. Cahill*, No. 15-CV-2319-JAR, 2015 WL 6738714, at *3 (D. Kan. Nov. 4, 2015) ("Finally, to the extent that Plaintiff's complaint may be construed

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (authorizing a suit for damages against federal officials whose actions violated an individual's constitutional rights, even though Congress had not expressly authorized such suits).

to assert a *Bivens* claim against the United States, the U.S. Marshals Service, or Deputy U.S. Marshals acting in their official capacity, that claim is also barred by sovereign immunity.") (footnote/citations omitted); *Davenport v. U.S. Dep't of Treasury,* No. 14-2527, 2015 WL 1346847, at *3 (D. Kan. Mar. 25, 2015) ("To the extent plaintiff asserts a *Bivens* or constitutional tort claim against the United States, that claim is also barred by sovereign immunity." (*citing Greenlee v. U.S. Postal Serv.*, No. 05–2509 JWL, 2006 WL 2460645, at *1 (D. Kan. Aug. 23, 2006)).[3]

> **C.     If Construed as Damages Claims Brought Under the Federal Tort Claims Act (FTCA), Plaintiffs' Claims are Barred by Sovereign Immunity**
>
> *1.     Only the United States is a Proper Defendant Under the FTCA*

While difficult to discern from the Complaint, if Plaintiffs intend to allege state law tort claims against any of the Federal Defendants, Plaintiffs have failed to name the United States as a party—dooming their claims to dismissal.  "The United States is the only proper defendant in an FTCA action."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001).

> As an initial matter, we, like the district court, note that Smith asserted his FTCA claim against all the named defendants.  "The United States is the only proper defendant in an FTCA action." *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001).  Thus, the district court correctly dismissed Smith's FTCA claims against every defendant except the United States on the ground that those defendants were not proper parties.

*Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).  *See Wilson v. U.S. Marshals Serv.*, 17-3224-SAC, 2018 WL 4681638, at *5 (D. Kan. Sept. 28, 2018) (same).

> The FTCA allows a plaintiff to assert a claim for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the United States. 28 U.S.C. § 1346(b)(1). The FTCA "provides the exclusive remedy for tort actions

---

[3] From the docket, it appears to the United States that service has not been perfected under Federal Rules of Civil Procedure Rule 4(e)(3) for the federal defendants as sued in their individual capacities.

against the federal government, its agencies, and employees." *Wexler v. Merit Sys. Prot. Bd.*, 1993 WL 53548 *2 (10th Cir. 2/17/1993). Only the United States, however, is a proper defendant in a lawsuit under the Federal Tort Claims Act. Plaintiff names the Department of Justice as a defendant. "[F]ailure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." *Id.* (citing *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) and *Vernell v. U.S. Postal Service*, 819 F.2d 108, 110 (5th Cir. 1987)); *see also Ngiendo v. Social Security Administration*, 547 Fed. Appx. 913, 914 (10th Cir. 2013); *Hudson v. Cahill*, 2015 WL 6738714 *2 (D. Kan. 11/4/2015); *Davenport v. U.S. Dept. of Treasury*, 2015 WL 1346847 *1 (D. Kan. 3/25/2015).

*Jones v. Dep't of Justice*, No. 16-3173-SAC-DJW, 2016 WL 11551058, at *2 (D. Kan. Oct. 19, 2016). Consequently, any purported state law tort claim, liberally construed as FTCA claims, against the named federal defendants must be dismissed for lack of subject matter jurisdiction. *See Leavenworth Cty., Kansas, Bd. of Commissioners v. Lewis*, No. 19-02664-EFM-TJJ, 2020 WL 1659864, at *3 (D. Kan. Apr. 3, 2020) ("It is well-established, however, that only the United States is a proper defendant in a lawsuit under the FTCA. Indeed, the 'failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction.' Accordingly, Lewis' claims under the FTCA against May and Medina must be dismissed for lack of subject matter jurisdiction.") (footnotes/citations omitted).

    2.    *Plaintiffs' Failure to Exhaust Administrative Remedies Under the FTCA Before Filing Claims Against the Defendants in Federal District Court Deprives this Court of Subject Matter Jurisdiction Over Those Claims*

If Plaintiffs' Complaint is liberally construed to assert FTCA claims, the Plaintiffs did not exhaust administrative remedies under the FTCA prior to commencing this suit. The Plaintiffs' Complaint does not allege administrative exhaustion, and as the parties asserting claims in federal court, bear the burden of establishing subject matter jurisdiction. *Se Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing . . . jurisdiction, of course, remains on the party asserting it.").

The United States, as a sovereign, "is immune from suit except as it consents to be sued" and "the terms of its consent to be sued in any court define the court's jurisdiction to entertain the action." *Three-M Enterprises, Inc. v. United States*, 548 F.2d 293, 294-95 (10th Cir. 1977) (*citing United States v. Sherwood*, 312 U.S. 584, 586 (1941)).   Under the FTCA—and subject to a number of exceptions—persons claiming injuries for the negligence of the United States may seek compensatory damages.  *See* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.").

"The Federal Tort Claims Act provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies."  *McNeil v. United States*, 508 U.S. 106, 107 (1993) (*quoting* 28 U.S.C. § 2675(a)).  Consequently, Plaintiffs' unexhausted tort claims, construed liberally as FTCA claims, against the Federal Defendants must be dismissed for lack of subject matter jurisdiction.

Finally, even if Plaintiffs named the proper defendant—the United States—and can demonstrate that they exhausted their administrative remedies under the FTCA before filing this suit, Plaintiffs' claims against the Federal Defendants are also time-barred by the applicable two-year statute of limitations.  Plaintiffs' physical injuries are alleged to have occurred between January, 2003, and August, 2008. *Compl.* at ¶¶ 63-67, 70.  To avoid the statute of limitations Plaintiffs needed to file their complaint no later than August 2010.  Their complaint was filed January 23, 2023, well beyond the limitations period.

"[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless

action is begun within six months after the date of mailing, by certified or registered mail, of

notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

> Though the statute of limitations is an affirmative defense, it may be "raised and resolved in the Rule 12(b) context" when "the critical dates appear[ ] plainly on the face" of a complaint because "the defense [also] appears plainly on the face of the complaint." *Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan*, 13 F.3d 405, 1993 WL 482951, at *1 (10th Cir.1993) (*quoting Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965)); *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016). But, this is true only when the dates that appear plainly in the complaint "make [it] clear that the right to be sued upon has been extinguished." *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).

*Neighbors v. Kansas*, No. 16-CV-04023-DDC-KGS, 2017 WL 402167, at *7 (D. Kan.

Jan. 30, 2017).

## Conclusion

Plaintiffs' claims against the Federal Defendants should be dismissed for lack of

subject matter jurisdiction or failure to state a plausible claim that is not barred by

sovereign immunity. Even if construed as FTCA claims, Plaintiffs have failed to name

the proper party, the United States, and have failed to administratively exhaust their

grievances or timely file their claims.

Respectfully submitted,

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S.Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorney for the Federal Defendants

CERTIFICATE OF SERVICE

I certify that on March 6, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system and a paper copy was sent to the Plaintiffs by U.S. mail addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CARLA DAVIS and | ) |
| JALEN DAVIS, | ) |
|       **Plaintiffs,** | ) |
| vs. | )   **Case No. 6:23-CV-1010-JAR-KGG** |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, et al | ) |
|       **Defendants.** | ) |

<u>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR IN THE ALTERNATIVE, MOTION TO DISMISS DUE TO EXPIRATION OF THE STATUTE OF LIMITATIONS**</u>

**COME NOW,** the Defendants, Kansas Health Care Stabilization Fund and Clark Shultz, in both his individual and official capacities, and hereby move the Court, pursuant to Rule 12(b)(6),for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendants state as follows:

**INTRODUCTION**

Plaintiffs' Complaint identifies forty defendants.  These defendants include a variety of federal, state, county and municipal agencies and officials.  In addition, numerous health care providers and two law firms are named as defendants.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes an approximately one page of "Statement of Facts."  As best as can be discerned, Plaintiffs allege federal funding of efforts to protect the nation from bioterrorism and enactment of legislation on that subject, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth the involvement of various events related to these bioterrorism preparedness activities.  Finally, Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was pregnant in 2002 with her son Jalen Davis, that

which she received pre-natal care from an obstetrician and medical clinic in Wichita, and finally that Carla Davis made health care choices for herself that did not get fulfilled (Complaint at para. 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments." In this section of the Complaint, paragraphs 58 through 74, Plaintiffs appear to assert complaints regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002 and birth in January, 2003. The Complaint also asserts complaints regarding a cardiac catheterization in of Carla Davis in February, 2004, and complaints of a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to obtain health care, their ability make social security benefit claims, and in prosecuting an auto accident injury claim. Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008, that Carla Davis was falsely accused of child abuse, but found innocent, and of an attempted abduction of Jalen by a social worker. The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs (Complaint at para. 72, 73).

## ARGUMENTS AND AUTHORITIES

These Defendants are entitled to dismissal of Plaintiffs' claims with prejudice. First, Plaintiffs' Complaint fails to state a claim upon which relief can be granted. In this regard, the Complaint is devoid of any allegations of involvement by these Defendants in any of the pleaded facts or in the claim of constitutional violations. Second, as a result of the lack of specific

allegations and implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court. And third, the Complaint reveals on its face that the statute of limitations on any purported claims against these Defendants has long ago expired.

**I.      Plaintiffs' Complaint Fails to State A Claim Upon Which Relief Can Be Granted.**

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court. *Id.* at 1257.

Plaintiffs are proceeding pro se. "[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted). In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). However, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant. *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir.

1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that is "*plausible on its face*." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements. *Id*. at 545. To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

**A.     There Are Insufficient Allegations in Plaintiffs' Complaint to State A Claim Against These Defendants.**

Plaintiffs Complaint fails to meet the above-stated standards.  There is an utter and complete lack of any allegation of conduct by either the Kansas Health Care Stabilization Fund or Clark Shultz in the Plaintiffs' Complaint, beyond identifying them as defendants.  There are no allegations indicating that they were in any way involved in any of the events described in the statements of fact in Plaintiffs' complaint.  Similarly, there are no allegations in the Claim for Relief portion of their Complaint indicating any involvement by these Defendants in any of the purported constitutional violations.  Simply put, beyond having been identified among the many defendants in the suit, neither the Health Care Stabilization Fund nor Clark Shultz are ever again mentioned in the Complaint.  As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief against these Defendants.  This is true not only as to the Fund and Clark Shultz in his official capacity, but as to any claims against Mr. Shultz in his individual capacity as well.

As to the individual capacity claims, Defendants note that Plaintiffs purport to assert claims against essentially every natural defendant in both their official and individual capacities.  As is true with their complaint generally, Plaintiffs make no specific allegations to support claims against anyone individually.  Certainly that is true as to the claims against Mr. Schultz.  It appears clear that the identification by Plaintiffs of every individual defendant in both official and individual capacities is perfunctory, capricious and without any factual basis.   Any such claims against Mr. Schultz individually must also be dismissed due to failure to state a claim.

In its consideration of the failure by Plaintiffs to state a claim against these Defendants, the Court should note that Plaintiffs incorrectly describe the Kansas Health Care Stabilization Fund as a public health department.  It is not.  The Kansas Health Care Stabilization Fund was

created by the enactment of K.S.A. 40-3403 "for the purposes of paying damages for personal injury or death arising out of the rendering or failure to render professional services by a healthcare provider,…" K.S.A. 40-3403(a). It acts in the nature of a liability insurer. Notably, the statute creating the Fund is found in Chapter 40 of the Kansas Statutes, which is titled "Insurance." The Fund itself is not a healthcare provider, as defined in the act. See K.S.A. 40-3401(f).

To the extent the complaint in this action involves allegations related to Plaintiffs' healthcare and/or issues pertaining to release of Plaintiffs' medical records, there is no basis to infer that these defendants had, or could have had, any involvement in those matters. There is no allegation in the complaint that these Defendants provided health care to Plaintiffs, and no allegation that these Defendants possess any medical records or other health care information of these Plaintiffs. Certainly, there is no allegation that Plaintiffs have ever requested medical records from these Defendants, or that such a request (futile as it might be) was refused. There is clearly no basis to infer the existence of any plausible claim against these defendants from the allegations in the complaint.

Plaintiffs' complaint should therefore be dismissed as to these Defendants for failure to state a claim upon which relief can be granted.

### B.     Plaintiffs' Claims Are So Completely Devoid of Merit That The Court Lacks Subject Matter Jurisdiction To Consider Them.

Plaintiffs' claims against these Defendants are so implausible that this court lacks subject matter jurisdiction to consider them. Notably, claims against a state are generally prohibited in federal courts pursuant to the Eleventh Amendment. "Though the text of the Amendment does not expressly so provide, the Supreme Court has interpreted the Amendment to apply to federal question suits against a State brought in federal court by the State's own citizens." *Ellis v. Univ.*

*of Kansas Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998).  This immunity is not without exceptions, which may include waiver of immunity by the state, or specific federal legislation abrogating immunity.  *See generally, Id.* at 1195-96.  However, Plaintiffs' complaint fails entirely to even allege any basis to avoid the immunity protections of the Eleventh Amendment as to these Defendants.

Of course, the burden of establishing subject-matter jurisdiction in on the plaintiff.  Here, Plaintiffs' have failed to present sufficient allegations in their Complaint to allow this court to find existence of subject matter jurisdiction.  First, as discussed above, there is a complete absence of factual allegations of any action on the part of these defendants.  Beyond that, there is no allegation that the State of Kansas has authorized the claims herein (whatever we surmise them to be) to be brought in this court, or that Congress has federally abrogated immunity of the State for the claims in this case.  Combined with the absence of any specific action purported to have been taken under color of state law, and the over-all implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 94), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories.  (See Doc. 94 at 6-7).  The allegations in the present complaint are of just such a nature, and other Courts have dismissed such actions for lack of subject matter jurisdiction.  The circumstances of the Plaintiffs' complaint in this action urges the same result.

## II.  Plaintiffs' Complaint Demonstrates That Any Claims Which Plaintiffs Attempt To Assert Are Barred By Expiration of the Statutes Of Limitations.

Even if Plaintiffs were able to state claims against these Defendants, Plaintiffs' claims are plainly time-barred.  While the complaint lacks clarity in many respects, it does reflect the timing

of the events from which Plaintiffs' lawsuit arises.  And, it is clear that more than a decade has passed since those events occurred.

Plaintiffs' purported constitutional claims are subject to a two year statute of limitations. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal injury actions to his claims), *aff'd in part, dismissed in part sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019).  The same is true for Plaintiffs' 1985 claims.  *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert claims arising out of their health care, such claims are also subject to a two year limitations period.  See K.S.A. 60-513(a)(7)(establishing a two years limitations period on actions arising out of the rendering or failure to render professional services).  These Defendants are not health care providers, but Plaintiffs' complaint incorrectly describes the Fund as a public health agency.  And, while Plaintiffs' complaint includes no factual allegation that these Defendants had any involvement in their health care, the complaint certainly does include factual allegations involving health care provided to Plaintiffs.  Thus, to the extent Plaintiffs' claims against these defendants arise out of professional services by health care providers, such claims are clearly subject to a two year limitations period.

As discussed at pages 1-2 of this motion, the medical events alleged by Plaintiffs occurred from roughly 2002 to 2008.  This action was filed in January, 2023, clearly well beyond the applicable limitations period.  Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the statute of limitations on his claim has also clearly expired.

K.S.A. 60-515(a) provides as follows:

> If any person entitled to bring an action, other than for the recovery of real
> property or a penalty or a forfeiture, at the time the cause of action accrued
> or at any time during the period the statute of limitations is running, is less
> than 18 years of age. . ., such person shall be entitled to bring such action
> within one year after the person's disability is removed, except that no
> such actions shall be commenced by or on behalf of any person under the
> disability more than 8 years after the time of the act giving rise to the
> cause of action.

K.S.A. 60-515(a).  Plaintiffs' claims are barred by the provisions of K.S.A. 60-515(a), which

prohibits any action commenced "more than 8 years after the time of the act giving rise to the

cause of action," notwithstanding any disability arising from Jalen Davis's status as a minor.

Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from

2002 to 2008, considerably more than 8 years prior to the filing of Complaint in this case.  As

such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the

applicable statute of limitations.

Application of K.S.A. 60-515(a) bars Jalen Davis's claims on anther basis as well.

According to Wesley Medical Center records attached as exhibits to the Plaintiffs' Complaint,

Jalen Davis was born January 23, 2003.  As such, he reached the age of majority on January 23,

2021.  To the extent that any viable claim remained at the time he reached the age of majority, he

had one year from that date in which to bring the claim pursuant to K.S.A. 60-515(a).  The

Complaint in this action was filed January 23, 2023, a full two years after Jalen Davis reached

the age of majority.

If there were any question of the timing of the events complained of in this action, one

need only look to a prior lawsuit filed by Carla Davis in 2012.  The petition in that auto accident

lawsuit was filed July 25, 2012.  (Exhibit 1, Petition in Sedgwick County, Kansas case number

12 CV 2597).  As it is a matter of public record, this Court may take judicial notice of it.   As can be seen at pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the complaint in the present action, including that in 2003 she experienced a deep stabbing into her spine, that multiple toxic agents were administered without her knowledge, that as a result she experienced medical conditions due to unsafe medical procedures, and that social security benefits had been denied to her in 2006.  (Exhibit 1 at 3-4).  She further alleged in the 2012 petition, related to those conditions which pre-existed her auto accident, that she had hidden injuries that were never communicated to her.  (Id at 5).  Clearly, not only did the events related in Plaintiffs' complaint occur more than a decade ago, but they were known to Mrs. Davis prior to 2012.

In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations.   As such, permitting Plaintiffs' claims against these defendants would be futile, and a waste of judicial resources.

## CONCLUSION

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed with prejudice as to these Defendants.  Moreover, the Complaint itself reveals that any purported claims by Plaintiffs against these Defendants is barred by expiration of the applicable limitations period, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and

allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).

Defendants respectfully pray that their motion be granted, and they be dismissed from this action with prejudice.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:   316/ 263-0125
ccole@woodard-law.com
*Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                          cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*

/s/ Chris S. Cole
Chris S. Cole, #16343
*Attorneys for Defendants*

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP DOCKET NO.

2012 JUL 25  A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

### IN THE EIGHTEENTH JUDICIAL DISTRICT
### DISTRICT COURT, SEDGWICK COUNTY, KANSAS
### CIVIL DEPARTMENT

CARLA B. DAVIS,          )
      Plaintiff,          )
vs.                      )   Case No.:
                  )   12CV2597
LISA KRISTAN,            )
      Defendant,          )
_____)

PURSUANT TO K.S.A. CHAPTER 60

### PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
### INDEX SHEET, AND EXHIBITS

     COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

    1.     That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

    2.     That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

    3.     This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

    4.     On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

    5.     At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



**EXHIBIT**

**1**

Vol. I  128

128

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6.   Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

7.   Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8.   There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

9   Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

10   Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

11.   Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12.   Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13.   Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14.   Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

COUNT 1

15.   Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.     Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.     Operated vehicle in a negligent manner by inattentive driving. The Code

of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver

whose vehicle, because of his driving error or *negligent inattention,* collides with another

vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in

violation of this section. (Exhibits E2-E3)

18.     Failed to keep a proper outlook. Defendant was distracted doing other

things while driving, which may become known at the time of trial, that caused a

porcelain plate to slide under Defendant's brake, causing a car accident.

19.     Failed to maintain control of vehicle.

20.     Failed to secure items in her vehicle.

21.     Failed to use due care in the safety of others.

Damages

22.     Plaintiff's significant and frail medical history made her more susceptible

to injuries than a person in good health. Defendant's negligence caused an exacerbation

(an increase in the severity of a disease or any of its signs or symptoms) of her pre-

existing musculoskeletal injuries as supported by the medical records attached to this

pleading.

a.     On January 23, 2003, through no fault of her own, and without her

knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in

her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

       b.     Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

     23.    Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

     24.    Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

*Petition- Page 4-14*

25.     Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.     Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.     Plaintiff did not use as needed assistive devices prior to accident.

28.     Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

      a.     August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken. Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment. Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

b.      Plaintiff's injuries and pain became more severe. August 9, 2010-

Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,

reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:

Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,

neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to

pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction

and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to

non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-

back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.

Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and

inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in

resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic

Therapies were discontinued due to chiropractic therapies causing a worsening of

Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented

in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical        846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical      739.4- Segmental Dysf. Sacrococcygeal

## REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff to Dr.  Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati refused to see Plaintiff as a new patient due to medical records showing that her injuries were from a personal injury case. (Exhibit M2)

    c.    September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

    d.    In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

## PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

## SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations in Vocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011- Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.
>
> 723.1-Cervicalgia
>
> 724.2-Lumbago
>
> 847.0-Sprain/Strain Cervical

29.    Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.     Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.     Plaintiff has an Associate Degree as a Registered Nurse since the year

2001with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health

Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.     Due to pre-existing injuries plaintiff entered occupational retraining in

2009 in order to obtain suitable employment, transitioning from performing skilled

nursing patient care, to management skills. (Exhibits S1-S12)

32.     During 2009 Plaintiff returned to college, and was participating in gainful

activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.     Prior to accident Plaintiff was working as a home care attendant, assisting

the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.     Plaintiff completed a degree in Organizational Management & Leadership

Program at Friend's University July 2010, and was enrolled at Wichita State University

in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the

accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.     A significant lifestyle change has occurred in Plaintiff's life since the

accident. Necessary activities of daily living such as dressing, bathing, squatting to use

toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain,

fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has

painful impingements throughout the spine. Joints in her neck and extremities makes

painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels

to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping

gait has caused much embarrassment to her. She is limited in her personal dress options,

such as inability to wear high heel shoes as previous. Special foot wear is required to

manage spinal pain. Sleep disturbances due to severe pain and frequent position changes

has caused much suffering.

36.     Plaintiff's injuries has made her dependant on family members to perform

household chores she previously could perform and assisting her with getting out of bed.

Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and

uses assistive devices as she needs for support to prevent falls with activities that require

extensive time and length, since the accident.

37.     Electrical shock pain, numbness, and weakness in Plaintiff's legs causes

her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest

muscle pain, persistent headaches, and dizzy episodes have become more frequent and

worse since the accident. Her family has to perform physical therapy exercises on her

daily, and throughout the day, to help her cope with severe pain in her occipital head

region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on

bed rest.

38.     Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating

pain and increased inflammatory pain to back of head, neck and lower back areas, edema,

decreased range of motion, and limitation of mobility

39.     Plaintiff is restricted in participating in hobbies she enjoys such as

shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21 2015

*Petition -Page 13-14*

CERTIFICATE OF SERVICE

I hereby certify that on the 24ᵗʰ day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:


Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.


Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

Carla B. Davis

*PETITION- Page 14-14*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and )
JALEN DAVIS )
        Plaintiffs )
         )
        v. )  6:23-CV-1010-JAR-KGG
         )
U.S DEPARTMENT OF JUSTICE, et al., )
         )
        Defendants )

### DEFENDANTS KANSAS INSURANCE DEPARTMENT'S AND VICKI SCHMIDT'S MOTION TO DISMISS

Defendants Kansas Insurance Department and Vicki Schmidt, in her capacity as Kansas Insurance Commissioner and in her individual capacity (collectively the "Insurance Defendants"), hereby move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for an order dismissing the Plaintiffs' Complaint (Doc. 1). In support, the Insurance Defendants show the Court:

### INTRODUCTION

The Insurance Defendants, presumably like many of the other scores of defendants, have no transactional or occurrence connection to the Plaintiffs. None of the facts in the Complaint, except for identifying the Insurance Defendants in Paragraphs 15 and 16, pertain to the Insurance Defendants. Given the Plaintiff's extensive and unsuccessful history of litigation against a plethora of government officials, past and present, as set forth in the other Defendants' motions to dismiss and memoranda in support, *see e.g.,* Docs. 93, 94, 96, 97, 98, 100, 101, and 102, and given the clearly deficient pleading in this case, the Court should promptly and resolutely dismiss the incoherent and implausible Complaint with prejudice for failure to state a claim and for lack of subject matter jurisdiction.

1

## ARGUMENT AND AUTHORITY

**The Court lacks subject matter jurisdiction because the Insurance Defendants are cloaked with immunity pursuant to the Eleventh Amendment.**

The Court lacks subject matter jurisdiction because the Plaintiffs' claims against the Insurance Defendants are barred by the Eleventh Amendment.

"The [E]leventh [A]mendment generally bars lawsuits in federal court seeking damages against states as well as against state agencies, departments, and employees acting in their official capacity." *Bishop v. John Doe 1*, 902 F.2d 809, 810 (10th Cir. 1990) (citing *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 684 (1982)). "[O]nce effectively asserted[,] [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000). Because it is a jurisdictional bar, Eleventh Amendment immunity is appropriately asserted under Rule 12(b)(1). *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) ("[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court."); *see also Winter v. Mansfield*, No. 19-3236-HLT-TJJ, 2021 WL 4354617, at *2 (D. Kan. Aug. 27, 2021) (citing *Ruiz*, 299 F.3d at 1180; then citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

The Kansas Commissioner of Insurance is an officer of the State of Kansas. *See* K.S.A. § 40-102 *et seq.*; *see also Hamrick v. Farmer All. Mut. Ins. Co.*, No. 03-4202-JAR, 2004 WL 955273, at *7 (D. Kan. Apr. 27, 2004) (finding that the Court lacked jurisdiction over an official capacity suit against the Kansas Commissioner of Insurance due to Eleventh Amendment immunity).

Furthermore, the Eleventh Amendment "protects not only states, but also state agencies and state officials sued in their official capacities." *Winter v. Mansfield*, No. 19-3236-HLT-TJJ, 2021 WL 4354617, at *2 (D. Kan. Aug. 27, 2021) (citing *Kentucky v. Graham*, 473 U.S. 159, 169

2

(1985)); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Graham*, 473 U.S. at 165–66 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).

Because Plaintiffs bring suit against the Kansas Insurance Department and Vicki Schmidt in her official capacity as the Kansas Commissioner of Insurance, the Eleventh Amendment bars Plaintiffs' suit. Thus, the Court should find that jurisdiction is lacking and dismiss the suit.

**Plaintiffs' Complaint should be dismissed because there are insufficient allegations in the Complaint to state a claim against the Insurance Defendants.**

The standards governing a motion to dismiss pursuant to Rule 12(b)(6) are well known. The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

> The complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff. If matters outside the pleadings are considered by the court, the Rule 12(b)(6) motion is treated as a motion for summary judgment and disposed of pursuant to Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."

*Hall v. Bellmon,* 935 F.2d 1106, 1109–10 (10th Cir. 1991)(citations omitted).

Further, as the United State Supreme Court has stated in the oft-cited case of *Ashcroft v. Iqbal*:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

3

face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

556 U.S. 662, 67, 129 S. Ct. 1937, 1949 (2009)(citations omitted).

Ultimately, the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

The Plaintiffs' Complaint has no reasonable likelihood of mustering factual support for their incoherent claims. Plaintiffs have not alleged any facts particular to the Insurance Defendants that give rise to any plausible claim. Further, it is patently obvious that Plaintiffs' could allege any set of facts that would show they are entitled to relief against the Insurance Defendants. Rather, it should be clear, from the face of the Complaint, that the Insurance Defendants were merely added because they are government entities. No set of facts pertaining to the Insurance Defendants has – or ever could be – pled to show the Insurance Defendants have ever been involved with the outrageously spurious claims of unconstitutional conduct that happened to the Plaintiffs more than two decades ago.

Further, any plausibility of a successful claim against the Insurance Defendants is entirely negated by their being time-barred and flawed due to the doctrine of qualified immunity. If Plaintiffs' claims have any chance of success, the Plaintiffs must show that it was sufficiently clear that every reasonable official would have understood that what the official was doing violates some right. Here, the Insurance Defendants aren't even sufficiently clear on what they are alleged to

have done. Plaintiffs cannot show the Insurance Defendants violated any clearly established statutory or constitutional right. Thus, the Complaint should be dismissed.

## CONCLUSION

The Plaintiffs' claims against the Insurance Defendants should be dismissed. The Court lacks subject matter jurisdiction and the Plaintiffs have failed to state a claim upon which relief can be granted. The Insurance Defendants respectfully request the Court enter an order dismissing them from the Plaintiffs' frivolous lawsuit.

Respectfully Submitted,

*/s/ Justin L. McFarland*
Justin L. McFarland #24247
Kansas Insurance Department
1300 SW Arrowhead Road
Topeka, Kansas 66604
T: (785) 296-7847
F: (785) 291-3673
justin.l.mcfarland@ks.gov
*Attorney for Defendants*
*Vicki Schmidt and Kansas Insurance*
*Department*

5

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2023, a true and correct copy of the above and foregoing was filed with the Clerk of Court via CM/ECF which will send notification of such filing to the counsel and parties of record.

And a copy was sent via U.S. Mail, first-class postage prepaid to the following:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS 67208
cardav01292021@yahoo.com
**Plaintiffs Pro Se**

*/s/ Justin L. McFarland*

Justin L. McFarland #24247
Counsel for Defendants Vicki Schmidt and
Kansas Insurance Department

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CARLA DAVIS and )
JALEN DAVIS )
          Plaintiffs, )
    )
v. )      6:23-CV-1010-JAR-KGG
    )
U.S. DEPARTMENT OF JUSTICE, et al, )
    )
          Defendants. )

## **MOTION TO DISMISS**
## **PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6).**

COME NOW, the Defendants, Kansas Department of Health and Environment (hereinafter "KDHE"), Janet Stanek, Secretary of KDHE, in her individual and official capacity, and Gianfranco Pezzino, MD, in his individual and official capacity, by and through counsel, Katelyn Radloff, file this motion to file this motion to dismiss all of the Plaintiffs' claims for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a plausible claim under Rule 12(b)(6). In support of this motion, the Defendants submit a Memorandum in Support of their Motion to Dismiss which is hereby incorporated into and made a part of this Motion by reference.

Respectfully submitted,

*/s/ Katelyn Radloff* _____
Katelyn Radloff, #27430
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, Kansas 66612
Tel: (785) 296-0088
Fax: (785) 559-4272
Katelyn.Radloff@ks.gov
***Attorney for the Kansas Department of Health
and Environment, Secretary Stanek, and Dr.
Gianfranco Pezzino.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March, 2023 a true and correct copy of the above and foregoing was filed with the Clerk of Court via CM/ECF which will send notification of such filing to the following:

Any Party or Counsel who has entered an appearance; and

And a copy was sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

Jalen Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS and | ) | |
| JALEN DAVIS | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 6:23-CV-1010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>

COME NOW, the Defendants, Kansas Department of Health and Environment (hereinafter "KDHE"), Janet Stanek, Secretary of KDHE, in her individual and official capacity, and Gianfranco Pezzino, MD, in his individual and official capacity, and submits their memorandum in support of their motion to dismiss all of Plaintiffs' claims against Defendants, pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim.

## <u>OVERVIEW</u>

On January 23, 2023, Plaintiffs Carla Davis and Jalen Davis filed a Complaint against KDHE, a state Agency in Kansas, Secretary Stanek, Dr. Pezzino, and numerous other government agencies, individuals, and entities. Plaintiffs allege in their Complaint that Plaintiffs' action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985. Plaintiffs state in their Complaint that they are "seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution." Compl. 1, ¶ 43. Plaintiffs fail to allege any facts indicating KDHE, Secretary Stanek, or Dr. Pezzino harmed Plaintiffs. Indeed, Plaintiffs' only factual allegation against KDHE is limited to "[o]n July 31, 2022 Sedgwick County Commissioners approved a

contract with KDHE providing implementation of bioterrorism planning and preparedness." *Id.* at ¶ 51. Plaintiffs make no factual allegations against Secretary Stanek or Dr. Pezzino and the only mentions of Secretary Stanek and Dr. Pezzino are in Plaintiffs' listing of the parties.

Plaintiffs begin their factual allegations by recounting events occurring after September 11, 2001 related to Bioterrorism Preparedness, including alleging that "[o]n July 31, 2022 Sedgwick County Commissioners approved a contract with KDHE providing implementation of bioterrorism planning and preparedness." *Id.* Plaintiff Carla Davis then alleges on August 20, 2022 she was "pregnant with her in utero child Jalen Davis and made a health services contract with Wichita Clinic P.A. for OG/GYN care with Clyde Wilson Wesbrook M.D." *Id.* at ¶ 56. Plaintiff Carla Davis further alleges on October 18, 2022, "Carla Davis made health care choices for herself that did not get fulfilled, and there has been ongoing violations of the rights of herself and her the in utero child, now an adult by the name of Jalen Davis." *Id.* at ¶ 57. Plaintiffs then make a series of allegations related to Plaintiff Carla Davis' pregnancy and subsequent delivery at Wesley Medical Center. *Id.* at ¶ 60-67. Plaintiff Carla Davis further alleges an unknown device was placed in her chest blood vessels at Wesley Medical Center on February 4, 2004. *Id.* at ¶ 68. Plaintiff Carla Davis then alleges in 2008, "public officials stole the blood of Jalen Davis at Children's mercy Hospital and prevent him from receiving medical treatment." *Id.* at ¶ 70. Plaintiffs then allege that Plaintiff Carla Davis was falsely accused of child abuse and denied access to her and Jalen Davis' medical records. *Id.* at ¶ 71-72.

## ARGUMENT AND AUTHORITIES

**I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1)**

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### A.    *Plaintiffs' Claims Are So Completely Devoid of Merit That This Court Lacks Subject Matter Jurisdiction To Consider Them.*

Plaintiffs' claims are so insubstantial, implausible, remote in time that this court lacks subject matter jurisdiction to consider them.  *See Olsen v. Aebersold,* 71 F. App'x 7, 9 (10th Cir. 2003).   In their Amended Memorandum in Support of their Motion to Dismiss, the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases for lack of jurisdiction where allegations were deemed to be implausible, frivolous, or insubstantial. (*See* Doc. 101 at 6-7). The allegations in the present complaint are of just such a nature and accordingly Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction.

**B.** **This Court lacks Subject Matter jurisdiction as the Kansas Department of Health and Environment and state officials are immune from suit under the Eleventh Amendment.**

Defendants KDHE, Secretary Stanek, and Dr. Pezzino assert that the court lacks subject matter jurisdiction over the claims asserted by the Plaintiffs because they are immune from suit under the Eleventh Amendment.  The "Eleventh Amendment immunity's primary purpose is to accord states the respect owed them as joint sovereigns," by granting immunity to nonconsenting states to suits in federal court. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). "Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Id.* (citations omitted).

Three exceptions exist to a state's sovereign immunity:

First, a party may sue a state in federal court notwithstanding the Eleventh Amendment if the state consents to suit. *Id.* at 1286. Second, a party may sue a state if Congress has abrogated the state's sovereign immunity in a clear and unequivocal manner pursuant to a valid exercise of its power. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Finally, under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a party may sue individual state officers in federal court in their official capacity for prospective injunctive relief. *See Hill,* 478 F.3d at 1255–56.

*Smith v. Kansas*, 574 F. Supp. 2d 1217, 1219-20 (D. Kan. 2008).

Here, the State of Kansas has not waived immunity, and the "Supreme Court has previously held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195–96 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979)). Thus, Eleventh Amendment immunity bars Plaintiffs' 42 U.S.C. §§ 1983 and 1985 claims against Defendant KDHE as KDHE is an Agency of the State of Kansas.  *See id.* (holding that Eleventh Amendment immunity barred plaintiffs' §§ 1981, 1983, and 1985 claims "against Kansas and its state agencies in the federal

courts").

The Eleventh Amendment also bars Plaintiffs' claims for money damages against state agencies. *Id.* at 1196. As Defendant KDHE is an arm of the State of Kansas, which has not waived its Eleventh Amendment immunity for suits brought pursuant to 42 U.S.C. §§ 1983 and 1985, the claims cited by Plaintiff in the Complaint for relief with respect to 42 U.S.C. §§ 1983 and 1985 money damages cannot proceed. *See Bock Associates v. Chronister*, 951 F. Supp. 969 (D. Kan. 1996) (holding that Eleventh Amendment barred federal district court from hearing § 1983 suit against Secretary of Kansas SRS).

Eleventh Amendment immunity applies to Secretary Stanek and Dr. Pezzino when sued in their official capacities, as "a suit against a state official in his or her official capacity … is no different than a suit against the State itself." *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services*, 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Further Plaintiffs' complaint fails to seek proper prospective injunctive relief against Defendant Secretary Stanek, Secretary of the KDHE, or Dr. Pezzino because the Complaint alleges no actions on their part, and certainly none that are unconstitutional such as to invoke *Ex parte Young*. Therefore, Secretary Stanek and Dr. Pezzino are entitled to dismissal of the claims asserted against them in their official capacities based on Eleventh Amendment Immunity.

This Court lacks subject matter jurisdiction as KDHE, Secretary Stanek, and Dr. Pezzino are immune from suit under the Eleventh Amendment. Accordingly, Plaintiffs' Complaint against KDHE should be dismissed for lack of subject matter jurisdiction.

## II.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs must set forth a complaint that contains a short and plain statement of the claim showing that the pleader is entitled to relief.  Further, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Additionally, a Complaint must allege sufficient facts to make it clear who did what to whom. To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff and what specific legal right the plaintiff believes the defendant violated. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  Complaints in which plaintiffs assert that their rights "were violated" or that defendants "infringed" on his rights are insufficient. *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2008).

In considering a motion to dismiss, a court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of the truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 557). Therefore,

6

allegations which are "no more than conclusions are not entitled to an assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 557).  Although the court must assume that the complaint's factual allegations are true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal* at 678. "The tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

        **A.**     **Plaintiffs fail to state a claim against KDHE.**

Plaintiffs have failed to meet the standards set forth in the Federal Rules of Civil Procedure. Plaintiffs' assert no specific claims against KDHE and the only mention of KDHE in Plaintiffs' complaint is to a purported contract between KDHE and Sedgwick County.  Plaintiffs make no further allegations or discernible connections between the alleged contract and how Plaintiffs' claim their rights were infringed upon.  Without sufficient facts to make clear as to who did what to who or any discernible, specific claims against KDHE, the complaint against KDHE should be dismissed.  Accordingly, Plaintiffs' Complaint against KDHE should be dismissed for their failure to state a plausible claim against KDHE.

        **B.**     **Plaintiffs fail to state a claim against Secretary Janet Stanek and Dr. Gianfranco Pezzino.**

Plaintiffs' complaint contains no allegations of conduct by either Secretary Stanek or Dr. Pezzino in the Plaintiffs' Complaint in their official or individual capacities, beyond identifying them as defendants. Indeed, are no allegations indicating that they were in any way involved in any of the events described in the statements of fact in Plaintiffs' complaint. Similarly, there are no allegations in the Claim for Relief portion of their Complaint indicating any involvement by

either of these Defendants in any of the purported constitutional violations. Beyond having been identified among the many defendants in the suit, neither Secretary Stanek or Dr. Pezzino are mentioned again in the Complaint in either their official or individual capacity. Plaintiffs have failed to state a claim against Secretary Stanek and Dr. Pezzino in both their official and individual capacities. Any such claims against Secretary Stanek and Dr. Pezzino individually must also be dismissed due to failure to state a claim.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' purported claims in their Complaint that allegedly relate to the actions of KDHE, Secretary Stanek, and Dr. Pezzino are barred by the statute of limitations.  The 42 U.S.C. §§ 1983 and 1985 claims asserted by Plaintiffs are subject to a two-year statute of limitations. *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

## <u>CONCLUSION</u>

As Plaintiffs' Complaint fails to demonstrate subject matter jurisdiction in this court and fails to state a claim upon which relief can be granted, it should be dismissed with prejudice as to these Defendants. Moreover, the Complaint is barred by the statutes of limitations.

Respectfully submitted,

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, Kansas 66612
Tel: (785) 296-0088
Fax: (785) 559-4272
Katelyn.Radloff@ks.gov
***Attorney for the Kansas Department of Health and Environment, Secretary Stanek, and Dr. Gianfranco Pezzino.***

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March, 2023 a true and correct copy of the above and foregoing was filed with the Clerk of Court via CM/ECF which will send notification of such filing to the following:

Any Party or Counsel who has entered an appearance; and

And a copy was sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

Jalen Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS, indv.
JALEN DAVIS, indv.

        Plaintiffs,

    vs.

WICHITA CLINIC P.A. ( Name changes:
Christi Clinic P.A., NOW: ASCENSION
MEDICAL GROUP VIA CHRISTI, P.A.);
ROBERT KENAGY M.D., WICHITA
CLINIC MEDICAL DIRECTOR; et. al.

        Defendants.

Case No.  6:23-CV-1010-JAR-GEB

### DEFENDANTS WICHITA CLINIC P.A. AND ROBERT KENAGY, M.D.'S
### MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1), Defendants Wichita

Clinic, PA., and Robert Kenagy, M.D., by and through their counsel, Mackenzie M. Baxter of

Hite, Fanning & Honeyman L.L.P., respectfully move for dismissal of plaintiffs' claims for

failure to state a claim and lack of subject matter jurisdiction upon which relief can be granted.

The foundation for this motion is contained in the Memorandum entitled "Defendants Wichita

Clinic, PA, and Robert Kenagy, M.D.'s Memorandum in Support of Motion to Dismiss."

*/s/ Mackenzie M. Baxter*
Mackenzie M. Baxter, #27909
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: baxter@hitefanning.com
*Attorneys for Wichita Clinic PA and*
*Robert Kenagy, M.D.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 7th day of March, 2023, I electronically filed the foregoing

Motion to Dismiss with the clerk of the court by using the CM/ECF system which will send a

notice of electronic filing to all counsel of record.

*/s/Mackenzie M. Baxter*_____
Mackenzie M. Baxter #27909

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS, et al.

                  Plaintiffs,

   vs.

U.S. DEPARTMENT OF JUSTICE; et. al.,

                  Defendants.

Case No.  6:23-CV-1010-JAR-GEB

### DEFENDANTS WICHITA CLINIC P.A. AND ROBERT KENAGY, M.D.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Wichita Clinic P.A. and Robert Kenagy, M.D. by and through counsel, Mackenzie M. Baxter of Hite, Fanning & Honeyman L.L.P., submit this Memorandum in Support of their Motion to Dismiss. Defendants request the Court dismiss this action with prejudice based on the lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and the failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## I.   ALLEGATIONS OF PLAINTIFFS

Plaintiffs Carla and Jalen Davis, proceeding pro se, filed suit against 40 named defendants, including Wichita Clinic P.A. and Dr. Robert Kenagy. Plaintiffs allege the Court has jurisdiction "pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985 seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution." DOC 1, ¶ 43. However, plaintiffs have failed to properly plead facts or claims against Wichita Clinic, P.A. or Dr. Kenagy involving events approximately 20 years ago, clearly time barred by statutes of limitations and wholly incurable.

Plaintiffs references to Wichita Clinic, P.A. within the Complaints state:

> Defendant WICHITA CLINIC P.A.(Name changes: Via Christi Clinic, P.A., NOW: ASCENSION MEDICAL GROUP VIA CHRISTI, P.A.) the largest multi-specialty physician practice clinic group in Kansas with the Resident Agent Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, Kansas 66614
>
> On August 20, 2002, Carla Davis was pregnant with her in utero child Jalen Davis and made a health services contract with Wichita Clinic P.A. for OG/GYN care with Clyde Wilson Wesbrook M.D., because she had a trust him as he had delivered a previous child of Carla Davis.
>
> On October 18, 2022, the pregnant Carla Davis told her contracted health care providers Wichita Clinic P.A. and stock holder Clyde Wilson Wesbrook, "Wants to deliver at St Joe." Meaning St Joseph Hospital in Wichita Kansas.
>
> Without my knowledge and consent on December 10, 2002, Wichita Clinic allocated my health care services to "Deliver at Wesley medical Center" I was forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for January 23, 2003.

*Id.* at ¶ 25, 56, 60, and 61.

Plaintiffs only reference to Dr. Kenagy within the Complaint states:

> Defendant ROBERT KENAGY m.d. (pediatrics) served as Wichita Clinic P.A. Medical Director and Stock Holder; at the same time while serving on the board of directors for Central Plains Health Care Partnership. He is sued in his official and individual capacity. He serves on the Kansas Hospital Association Board of Directors representing Stormont Vail Health with the principle address 1500 Southwest Tenth Avenue, Topeka, Kansas 66604.

*Id.* at ¶ 29.

Plaintiffs allege that after 9/11/2001, the State of Kansas received federal funding to create a Bioterrorism Hospital Preparedness and Coordinating Council. *Id.* at ¶ 46. After citing events in 2002 pertaining to bioterrorism and health laws, plaintiffs allege that on October 18, 2002, Ms. Davis wanted to deliver her child at St. Joseph, "but without my [Ms. Davis'] knowledge and consent on December 10, 2002, Wichita Clinic allocated my health care services

to 'Deliver at Wesley [M]edical Center.'" *Id.* at ¶ 60-61. Plaintiffs claim Ms. Davis was forced to deliver at Wesley "under the disguise of a scheduled induction of labor..." *Id.* Plaintiffs' allege Ms. Davis was given toxic doses of drugs, raped, and stabbed with a needle at Wesley on January 23, 2003. *Id.* at ¶ 63-67. Allegations describe public officials stealing the blood of Jalen Davis at Children's Mercy Hospital and prevention of medical treatment in 2008. *Id.* at ¶ 70. Plaintiff claim Ms. Davis was falsely accused of child abuse and allegedly denied access to medical records due to the records being "in a CONFIDENTIAL status." *Id.* at ¶ 71-72.

## II.   ARGUMENTS AND AUTHORITIES

### A.   Standard for a Fed. R. Civ. P. 12(b)(1) dismissal for lack of subject matter jurisdiction

Fed. R. Civ. P. 12(b)(1) provides that a court may dismiss a complaint based on lack of jurisdiction over the subject matter of the complaint. See *Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1324 (10th Cir. 2002). When determining subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations, and has wide discretion to review outside documents. *Id.*; see *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).

"[T]he court has an independent obligation to satisfy itself that subject matter jurisdiction is proper." *Coffman v. CHS Gas & Oil*, No. 18-4031-DDC-GEB, 2018 WL 3616948, at *3 (D. Kan. July 30, 2018), appeal dismissed, No. 18-3168, 2018 WL 7223064 (10th Cir. Nov. 27, 2018). The court "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Penteco Corp. Ltd. P'ship v. Union Gas Sys.,*

*Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

### B.    Standard for a Fed. R. Civ. P. 12(b)(6) dismissal for failure to state a claim

Despite the leniency afforded to plaintiffs, the Court cannot "take on the responsibility of serving as his attorney in constructing his arguments" or assuming facts not included in the records presented." See *Mays v. Wyandotte County Sheriff's Dep't*, 219 F. App'x 794, 796 (10th Cir. 2011)). Plaintiffs "must allege sufficient facts to state a claim which is plausible—<u>rather than merely conceivable</u>—on its face." *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. Jan. 22, 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). Pursuant to Fed. R. Civ. P. 8(a)(2) a complaint must provide a "short and plain statement of the claims showing that the pleader is entitled to relief." Additionally, the complaint must state more than "labels and conclusions" and "[f]actual allegations must be enough to raise a right to relief beyond the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

Plaintiffs proceeded pro se and thus their pleadings must be construed liberally. DOC 70, Page 1, Footnote 2 (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, plaintiffs still bear the burden to allege "sufficient facts on which a recognized legal claim could be based" *Id*. The Court cannot "take on the responsibility of serving as [their] attorney in constructing arguments and searching the record." *Mays v. Wyandotte County Sheriff's Dep't*, 2010 WL 6032763, at *2 (10th Cir. 2011) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). Fed. R. Civ. P. 8 "demands more than naked assertions." *Cohen v. Delong*, 369 F. App'x 953, 957 (10th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## III.   ANALYSIS

### A.   Plaintiffs' claims against Wichita Clinic, P.A. and Dr. Kenagy should be dismissed due to the lack of subject matter jurisdiction

Plaintiffs' claims against Wichita Clinic, P.A. and Dr. Kenagy are so unidentifiable, insubstantial, and implausible that this Court lacks subject matter jurisdiction to consider them. Plaintiffs' complaint offers no basis or specificity for any claim against Wichita Clinic, P.A. or Dr. Kenagy, in either his official or individual capacity as "Wichita Clinic Medical Director" (as stated in the caption of the lawsuit), for events so remote in time that they are plainly time-barred. See *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003) (courts lack jurisdiction "when the claim is so insubstantial, implausible, foreclosed by prior decisions... or otherwise completely devoid of merit as not to involve a federal controversy"); *Frank v. Bush*, No. 09-4146-RDR, 2010 WL 1408405, at *2-3, 7 (D. Kan. Apr. 2, 2010) (dismissing, as insubstantial, action under FISA and the Patriot Act alleging that former state legislator and other officials unlawfully surveilled plaintiff and "use[d] a 'steroid cocktail' to try and cause [the] death" of plaintiff's spouse, stating "[c]laims presenting bizarre conspiracy theories or describing fantastic government manipulations exemplify matters which may be dismissed... for lack of subject matter jurisdiction") (collecting similar cases), aff'd, 391 F. App'x 745 (10th Cir. 2010); *Thibeaux v. Cain*, 448 F. App'x 863, 864 (10th Cir. 2012). Plaintiffs' Complaint attempts to imply without any factual support that Wichita Clinic, P.A. and Dr. Kenagy were somehow involved in plaintiffs' bizarre collusion theories and government manipulations - such should be dismissed.

**B.      Plaintiffs' claims against Wichita Clinic, P.A. and Dr. Kenagy should be dismissed due to the failure to state a claim for which relief may be granted**

The plaintiffs' Complaint's Statement of Facts, Claim for Relief, Prayer for Relief, and multiple medical records attached to the Complaint do not explain Wichita Clinic, P.A.'s involvement or state facts supporting a legal claim. See DOC 1, pages 9-31. The plaintiffs' Complaint's Statement of Facts, Claim for Relief, Prayer for Relief, and multiple medical records attached to the Complaint do not even identify Dr. Kenagy, let alone state facts supporting a legal claim against him. *Id.* Plaintiffs' Complaint is insufficient and fails to meet plaintiffs' burden to allege "sufficient facts on which a recognized legal claim could be based." Here, plaintiffs make conclusory allegations about interactions at various facilities, many years ago, without any basis in law as to a colorable claim for redress against Wichita Clinic, P.A. or Dr. Kenagy. Plaintiffs have failed to state what, when, where, why, or how Wichita Clinic, P.A. or Dr. Kenagy were involved in any of the plaintiffs' allegations. Even when construed liberally in their favor, plaintiffs have failed to state with any plausibility a claim or specific facts against Wichita Clinic P.A. or Dr. Kenagy.

**1.      Plaintiffs' claims under 42 U.S.C. 1983 and 42 U.S.C. 1985 are inapplicable to any allegations concerning Wichita Clinic P.A. or Dr. Kenagy**

As best as can be discerned by the undersigned, plaintiffs are attempting to state a cause of action under 42 U.S.C. 1983 and 42 U.S.C. 1985 for alleged constitutional violations by all defendants.[1] These claims fail for multiple legal reasons. "It is not enough to simply refer to a

---

[1] Although it has not been properly claimed, plead, or specified against Wichita Clinic P.A., to the extent plaintiffs' claims could imply a HIPAA or HITECH violation related to failing to proffer records, the Court lacks subject matter jurisdiction. Federal courts have consistently held that there is no private right of action under HIPAA and HITECH. *Freier v. Colorado*, 804 F. App'x 890, 891 (10th Cir. 2020)( "We have previously concluded that HIPAA does not confer a private right of action."); *Wilkerson v. Shinseki*,

federal statute to establish subject-matter jurisdiction." *Haywood v. Kansas*, No. 21-2329-JWB, 2022 U.S. Dist. LEXIS 180980, at *9 (D. Kan. Oct. 3, 2022) (citing See *Blume v. L.A. Superior Courts*, 731 Fed. Appx. 829, 830 (10th Cir. 2018)).

In the context of these causes of action, "[t]o constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). "[T]o state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe County Justice Center*, 492 F.3d 1158, 1163 (10th Cir. 2007). Alleging an inadvertent failure to provide adequate medical care is not enough. *Hurd v. McBryde*, No. 09-CV-03222, 2010 U.S. Dist. LEXIS 111905, 2010 WL 4180645, at *3 (D. Kan. Oct. 20, 2010). Further, the Tenth Circuit has stated that § 1985(3) is intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives." *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985). "[I]n the absence of allegations of class based or racial discriminatory animus, the Tenth Circuit has consistently held that § 1985(3) claims should be dismissed." *Id.*

Plaintiffs have not alleged facts to show any relationship between Wichita Clinic, P.A. or Dr. Kenagy and any State provided privilege or right. There is nothing plead about what or how

---

606 F.3d 1256, 1269 n.4 (10th Cir. 2010); *Link v. Lawrence Mem'l Hosp.*, No. 22-cv-2111-EFM, 2022 U.S. Dist. LEXIS 191052, at *12 (D. Kan. Oct. 19, 2022).

Wichita Clinic, P.A. or Dr. Kenagy were responsible for any of the plaintiffs' claims, any role as a state actors, or any conduct or personal participation in any alleged violations. Plaintiffs have failed to set forth facts alleging that Wichita Clinic, P.A. or Dr. Kenagy were acting under color of state law. Plaintiffs failed to plead any facts suggestive of a conspiracy enacted and/or furthered by Wichita Clinic, P.A. or Dr. Kenagy. Plaintiffs also failed to state any allegation of class or racial discriminatory animus by Wichita Clinic, P.A. or Dr. Kenagy.

### 2. Plaintiffs' claims against Wichita Clinic, P.A. or Dr. Kenagy are barred by the statutes of limitations

Plaintiffs' claims are time-barred because Plaintiffs filed and served the defendants in 2023 for actions allegedly connected to Wichita Clinic, P.A. or Dr. Kenagy in December 2002. In Kansas, a cause of action is not commenced until filing and service. *Davila v. Vanderberg*, 4 Kan. App. 2d 586, 588 (1980). Pursuant to K.S.A. § 60-513(a)(7), actions arising out of the rendering of or failure to render professional services by a health care provider, not arising on contract, must be brought within two (2) years. See also *Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) ("Because plaintiff's § 1983 claims arose in Kansas, the court applies Kansas's two-year statute of limitations for personal injury actions to his claims. See Kan. Stat. Ann. § 60–513(a)(4)."), aff'd in part, dismissed in part sub nom. *Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019). The same is true for plaintiffs' 1985 claims. See *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

Kansas Courts have long recognized that orders of dismissal for want of prosecution rest in the judicial discretion of the district courts in order that they may control their dockets, eliminate procrastination and delay, and expedite the orderly flow of business, subject, however,

to statutory notice requirements; such orders will not be reversed on appeal in the absence of a clear showing of abuse of judicial discretion. *Namelo v. Broyles*, 103 P.3d 486, 33 Kan.App.2d 349, rev. denied (2004).

Because plaintiff Ms. Davis' "allegations" against Wichita Clinic, P.A. and Dr. Kenagy allegedly occurred in December 2002, the applicable two-year statute of limitations has clearly expired for any of plaintiffs' claims under K.S.A. 60-513. See DOC 1, ¶ 25, 29, 56, 60, and 61. The Complaint failed to state any allegations involving Wichita Clinic, P.A. and/or Dr. Kenagy and plaintiff Jalen Davis. Because the claims against the Wichita Clinic, P.A. and/or Dr. Kenagy are clearly barred by the statute of limitations under K.S.A. 60-513, by multiple years, such should be dismissed pursuant to K.S.A. 60-241.

## IV.   CONCLUSION

Defendants request that the Court dismiss this action with prejudice. Although dismissals under Fed. R. Civ. P. 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a Court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991). Defendants request that the Court dismiss this action with prejudice based on plaintiffs' lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Further, plaintiffs' claims are barred by the applicable statute of limitations, and permitting the case to proceed would be futile.

*/s/ Mackenzie M. Baxter*
Mackenzie M. Baxter, #27909
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, KS 67202-2209
Telephone: (316) 265-7741
Facsimile: (316) 267-7803
E-mail: baxter@hitefanning.com
*Attorneys for Wichita Clinic PA and*
*Robert Kenagy, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2023, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system which will send a notice of electronic

filing to all counsel of record.

*/s/ Mackenzie M. Baxter*
Mackenzie M. Baxter, #27909

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CARLA DAVIS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-1010-JAR-KGG** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MOTION TO DISMISS

Defendant Kris Kobach respectfully requests, through Assistant Attorney General

Matthew L. Shoger, that this Court dismiss all claims against him pursuant to Fed. R. Civ. P.

12(b)(1), (b)(5), and (b)(6). A memorandum in support is filed with this motion.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendant Kris Kobach*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of March, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which sent electronic notice to counsel of record, with copies also sent to Plaintiffs by means of first-class mail, postage prepaid, addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

/s/ Matthew L. Shoger
Matthew L. Shoger
Assistant Attorney General

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CARLA DAVIS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )          **Case No. 23-1010-JAR-KGG** |
| | ) |
| **U.S. DEPARTMENT OF JUSTICE,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF DEFENDANT KOBACH'S MOTION TO DISMISS

In accordance with D. Kan. Rule 7.1(a), Defendant Kris Kobach submits this memorandum, through Assistant Attorney General Matthew L. Shoger, in support of his motion under Fed. R. Civ. P. 12(b)(1), (b)(5), and (b)(6). Kobach respectfully requests that this motion be granted and this action be dismissed, and states the following in support.

### NATURE OF THE CASE

Plaintiffs Carla and Jalen Davis bring § 1983 and § 1985 claims, alleging past and ongoing violations of unspecified constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. 1 at ¶ 43.) The Plaintiffs appear to be attempting to allege a conspiracy to use Plaintiffs without their consent as test subjects to research bioterrorism by injecting or inserting into Carla Davis's body various drugs, substances, or devices between 2002 and 2004 (Doc. 1 at ¶¶ 46-68(1))[1], some of which allegedly occurred while Jalen Davis was *in utero* in Carla Davis's womb (Doc. 1 at ¶¶ 56-57, 63). Plaintiffs refer to this as "Bodily intrusion without Due Process." (Doc. 1 at 8.) Based on the exhibits Plaintiffs provide, they apparently believe "weapons of mass destruction" were involved somehow. (Doc. 1-1 at 3-5.)

The Plaintiffs allege an ongoing refusal by unspecified "public officials" to provide Plaintiffs

_____

[1] Plaintiffs include two paragraphs 67 and 68. The "(1)" is meant here to indicate the first paragraph 68.

with their medical records. (Doc. 1 at ¶¶ 67(2)-69, 72, 74.) The Plaintiffs further allege that unspecified "public officials" stole Jalen Davis's blood in August 2008 and prevented Jalen Davis from receiving unspecified medical treatment at an unspecified time. (Doc. 1 at ¶ 70.) The Plaintiffs allege that a U.S. Military Social Worker named Michael Dustin (who is not named as a defendant in this lawsuit) attempted to abduct Jalen Davis at an unspecified time, possibly in Korea. (Doc. 1 at ¶ 70.) The Plaintiffs allege that Carla Davis was falsely accused by unspecified persons of child abuse at an unspecified time, which Plaintiffs insist means that unspecified "public officials" need to be investigated by unspecified investigators. (Doc. 1 at ¶ 71.) Plaintiffs make conclusory statements that unspecified actions by unspecified defendants while Jalen Davis was *in utero* were "willful" and "showed a reckless disregard for the sanctity of the life of Carla Davis and" Jalen Davis (Doc. 1 at 9, especially ¶ 73.)

Plaintiff brought this lawsuit on January 23, 2023, requesting a declaratory judgment, monetary damages of an unspecified amount, an injunction to provide Plaintiffs with their medical records, and the costs of this action. (Doc. 1 at 9.) Plaintiffs name a plethora of defendants (Doc. 1 at 1-2 and ¶¶ 1-42), including Defendant Kris Kobach in his individual and official capacities, apparently both as Kansas Attorney General and as "former Counsel to former U.S. Attorney John Ashcroft during bioterrorism preparedness."[2] (Doc. 1 at ¶ 9.) The only address provided for Kobach is the address of the Kansas Attorney General's office[3] (Doc. 1 at ¶ 9) and he was served by return receipt delivery at that address with the summons and complaint on January 31, 2023 (Doc. 20). The record does not show any other service on Kobach.

---

[2] This appears to refer to when Kobach previously served in the U.S. Department of Justice under U.S. Attorney General John Ashcroft as Counsel to the Attorney General. *See* About Kan. Att'y Gen. Kris W. Kobach, https://ag.ks.gov/about-the-office/ag-kris-kobach (last visited Mar. 7, 2023). The Court can take judicial notice of this information. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

[3] *See* Kan. Att'y Gen. website, https://ag.ks.gov/home (address located at the bottom of the page) (last visited Mar. 7, 2023). *See also O'Toole*, 499 F.3d at 1225.

2

Plaintiffs' claims against Kobach should be dismissed for lack of subject-matter jurisdiction due to lack of a substantial federal claim, due to Eleventh Amendment immunity, and due to lack of constitutional standing. Kobach has not been properly served in his individual or official federal capacities. To the extent the Court has jurisdiction, it should dismiss Plaintiffs' claims for lack of sufficient service and for failure to state a claim because of untimeliness, lack of personal participation, and qualified immunity.

## QUESTIONS PRESENTED

I.  Does the Court lack federal question jurisdiction over this case when no substantial federal claim has actually been raised?

II. As a matter of law, does the Eleventh Amendment bar Plaintiffs' claims against Kobach in his official capacity for monetary damages and for declaratory relief?

III. Do Plaintiffs lack constitutional standing to bring their claims when they fail to allege causation and when it would be impossible for Kobach to fulfill the requested injunction and therefore it would not redress any of the Plaintiffs' alleged injuries?

IV. Are Plaintiffs' claims against Kobach in his individual capacity properly before this Court when he was not lawfully served as an individual?

V.  Are Plaintiffs' claims against Kobach in his official federal capacity properly before this Court when he was not lawfully served as a federal officer?

VI. Should Plaintiffs' claims against Kobach in his individual and official federal capacities be dismissed for insufficient service when these claims also fail to state a claim upon which relief can be granted?

VII. Is Kobach entitled to dismissal of Plaintiffs' claims when they are untimely and barred by the applicable statutes of limitations and repose?

VIII. Is Kobach entitled to dismissal of Plaintiffs' claims when Plaintiffs fail to state the requisite personal participation of Kobach?

IX.     Is Kobach entitled to qualified immunity when Plaintiffs have not shown that his actions as

alleged violated clearly established law?

## ARGUMENTS AND AUTHORITIES

### Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for

lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only

that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir.

2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiffs, as the

parties invoking the Court's jurisdiction, bear the burden of showing its existence. *Id.* "A court lacking

jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in

which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur.*

*Co.*, 906 F.3d 926, 931 (10th Cir. 2018). A federal court must generally "satisfy itself of its jurisdiction

over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526

U.S. 574, 583 (1999).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) can take the

form of either a facial attack, looking only to the factual allegations of the complaint, or a factual

attack, presenting evidence to challenge the court's jurisdiction. *Muscogee (Creek) Nation v. Okla. Tax*

*Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). For a facial attack, the same standards apply to the

motion as are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action. *Id.*;

*see also Garling v. EPA*, 849 F.3d 1289, 1293 & n.3 (10th Cir. 2017) ("the trial court must apply a

standard patterned on Rule 12(b)(6)"). To the extent a factual attack is made, the Court is not required

to assume the truth of the complaint's factual allegations for purposes of resolving the jurisdictional

issue, but "may consider materials outside the complaint to resolve disputed jurisdictional facts."

*Williams v. United States*, 780 F. App'x 657, 660 (10th Cir. 2019); *see also Baker v. USD 229 Blue*

*Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (saying that resolving disputed jurisdictional facts only

converts the motion to a summary judgment motion if "resolution of the jurisdictional question is

intertwined with the merits").

### Standard on Motion to Dismiss for Insufficient Service of Process

As this Court has previously summarized:

A Rule 12(b)(5) motion challenges the mode or lack of delivery of a summons and
complaint. Objections to the sufficiency of process must be specific and point out in
what manner the plaintiff has failed to satisfy the service provision utilized. When a
defendant challenges the sufficiency of service of process, the burden of proof is on the
plaintiff to show the adequacy of service. A pro se party is not relieved of her obligation
to comply with the service of process requirements under Fed. R. Civ. P. 4.

*Lewis v. Wyandotte/Leavenworth Area on Aging*, No. 10-2109-JWL, 2010 WL 2735563, at *2 (D.

Kan. July 9, 2010) (citations omitted). In federal court, a party does not waive the defense of

insufficient service of process by joining it with other arguments or by presenting evidence on the

merits of the case. *Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 1556250, at *3 (D.

Kan. Apr. 10, 2019). Accordingly, special limited appearances are not required. *Id.*

### Standard on Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss – or a facial attack under 12(b)(1), as mentioned above –

a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*,

561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim

for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also*

*Brownback v. King*, 141 S. Ct. 740, 749 (2021) ("a plaintiff must plausibly allege all jurisdictional

elements"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Garling*, 849 F.3d at 1293 & n.3 (applying *Twombly* and

*Iqbal* to a facial attack on subject-matter jurisdiction under Rule 12(b)(1)).

The court need not accept as true those allegations that state only legal conclusions. *Iqbal*, 556

U.S. at 678. Under this standard, a plaintiff's claim must cross the line from "conceivable to

plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.* at 840-41.

**I.** **Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction due to lack of a substantial federal claim, Eleventh Amendment immunity, and lack of constitutional standing.**

    **A.** **The lack of a substantial federal claim means no federal question has actually been raised, so this Court lacks subject-matter jurisdiction over this case.**

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that defendants invaded nor allege facts showing that defendants acted

under color of state law, then the purported § 1983 claim does not support the district court's exercise

of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on

racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d

746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the

purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x

482, 483 (5th Cir. 2019).

Here, plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that

defendants invaded nor allege facts showing that defendants acted under color of state law, so the

purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit.

Plaintiffs also purport to bring a § 1985 claim. Plaintiffs do not allege that an officer was prevented

from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)),

so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their

§ 1985 claim. But Plaintiffs do not allege a motive based on racial or class-based discrimination, so the

purported § 1985(3) claim fails to provide a basis for federal jurisdiction.

**B. The Eleventh Amendment bars Plaintiffs' claims against Kobach in his official capacity for monetary damages and for declaratory relief.**

Even if § 1983 claims could be brought against Kobach in his official capacity, Eleventh

Amendment immunity would bar the suit. "The Eleventh Amendment bars suits in federal court

against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*,

928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). "This

immunity extends to arms of the state and to state officials who are sued for damages in their official

capacity." *Id.* Because of the presumption that statutes do not abrogate this immunity, state agencies do

not even count as "persons" amenable to suit under § 1983, and neither do state officials sued in their

official capacities for monetary damages or declaratory relief. *See Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 & n.10 (1989). Eleventh Amendment immunity similarly bars § 1985 claims.

*Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) (citing *Will*, 491 U.S. 58).

A narrow exception to Eleventh Amendment immunity allows a plaintiff to seek prospective injunctive relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). But the Eleventh Amendment bars claims for "retrospective declaratory relief" against state officials. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004). "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams*, 928 F.3d at 1212.

Here, Plaintiffs' appear to request prospective injunctive relief against unspecified defendants when they request access to medical records (Doc. 1 at 9), and this particular remedy may be exempt from Eleventh Amendment immunity. But Plaintiffs also request monetary damages (Doc. 1 at 9), which are barred by the Eleventh Amendment as asserted against Kobach in his official capacity. Plaintiffs further request a declaratory judgment stating that Kobach violated their constitutional rights. (Doc. 1 at 9.) To the extent such a declaratory judgment stands as an independent remedy apart from Plaintiffs' requested injunctive relief, it is barred by the Eleventh Amendment. Therefore, Plaintiffs' claims against Kobach in his official capacity for monetary damages and for declaratory relief should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

**C. Plaintiffs lack constitutional standing for their claims against Kobach because of lack of causation and lack of redressability.**

As the Supreme Court has explained, "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies.' We have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of three requirements: injury in fact, causation, and redressability. *Id.* at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence."

8

*Id.* at 103.

1. *Lack of causation for all of Plaintiffs' claims*

For the second prong of the standing inquiry, causation, "there must be a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* Here, aside from being named in the caption and generically described in paragraph 9 of the complaint, Kobach is not mentioned anywhere else in the complaint. Plaintiffs do not complain of any conduct by Kobach, much less conduct that could be fairly traced and connected to Plaintiffs' injury. Therefore, Plaintiffs lack constitutional standing to bring any claims against Kobach because they have not plausibly alleged causation by Kobach.

2. *Lack of redressability for the requested injunction*

For the third prong of the standing inquiry, redressability, the relief sought must serve to either reimburse the plaintiff for losses or to eliminate lingering effects of losses. *See id.* at 105-06. "Relief that does not remedy the injury suffered" does not count. *Id.* at 107. And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). A party may lack standing to bring an injunction even when the party has standing to bring claims for other kinds of relief. *See City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

Here, the Plaintiffs request that the Court issue an injunction for unspecified defendants to provide them with their medical records. Plaintiffs have not plausibly alleged that Kobach has access to Plaintiffs' medical records or that he has any authority to produce their medical records or to cause others to produce them. Plaintiffs have also not alleged any facts from which such an inference could be drawn. So an injunction against Kobach to provide their medical records would be pointless, impossible to fulfill, and would not actually redress any alleged injuries. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("the court . . . will not be blind to evidence that compliance [with a court order] is . . . factually impossible"). Therefore, the Plaintiffs lack constitutional standing to request

such an injunction against Kobach because it fails the redressability prong of the standing inquiry.

II.    **To the extent the Court has jurisdiction, Plaintiffs' claims against Kobach in his individual and federal capacities should be dismissed for lack of proper service.**

A.   **Individual capacity claims require service on a defendant as an individual.**

"Without personal service in accordance with Rule 4(e), the district court is without jurisdiction to render a personal judgment against a defendant." *Scherer v. United States*, 241 F. Supp. 2d 1270, 1281 (D. Kan. 2003), *aff'd*, 78 F. App'x 687, 690 (10th Cir. 2003). Even if service is properly made on a defendant in his official capacity, service can be improper on that defendant in his individual capacity, requiring dismissal of the individual capacity claims. *Id.* at 1282 (citing *Bartels v. Hecker*, 46 F.3d 1150 (table opinion), 1995 WL 24911, at *2 (10th Cir. Jan. 23, 1995)). Under Federal Rule of Civil Procedure 4(e), service on an individual must be made according to a method allowed by state law or by personal delivery to the individual or to an agent authorized to receive service for the individual in their individual capacity. *See also* Fed. R. Civ. P. 4(i)(3) (requiring service on the individual when suing a federal officer in their individual capacity).

Here, service on Kobach was made by return receipt delivery to the Kansas Attorney General's office. Kansas law does not allow service for individual capacity claims to be made by return receipt delivery to an individual's business address. *Fisher v. DeCarvalho*, 298 Kan. 482, 491-92 (2013); *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1228-31 & n.5 (D. Kan. 2016). Neither does Rule 4. Therefore, no sufficient service has been made on Kobach in his individual capacity.

B.   **Federal capacity claims require service on the United States federal government.**

Service on a federal officer in both his official and individual capacities requires serving the United States in addition to serving the individual. Fed. R. Civ. P. 4(i)(3). Here, Kobach is sued in his capacity as a federal officer. (*See* Doc. 1 at ¶ 9.) Service of the summons directed to Kobach was only made on the Kansas Attorney General's office. The United States was not served and Kobach was not served individually. None of the relevant requirements for service on Kobach in his official federal capacity have been met. Therefore, no sufficient service has been made on Kobach in his official

federal capacity.[4]

**C. The Court should dismiss claims for improper service when they would also be dismissed under Rule 12(b)(6).**

Although courts have discretion to extend the time for a plaintiff to serve a defendant, claims can properly be dismissed when the claims also fail under Rule 12(b)(6). *Wanjiku*, 173 F. Supp. 3d at 1231-32 (citing *Ngiendo v. Soc. Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013)). Claims can be dismissed on both Rule 12(b)(5) and 12(b)(6) grounds. *Id.* Here, as argued in the next section, Plaintiffs' claims also fail under Rule 12(b)(6), so the Court should dismiss the Plaintiffs' claims against Kobach under Rule 12(b)(5) and 12(b)(6).

**III.   To the extent the Court has jurisdiction, it should dismiss Plaintiffs' claims for failure to state a claim because of untimeliness, lack of personal participation, and qualified immunity.**

**A. Kobach is entitled to dismissal of Plaintiffs' claims because they are untimely and barred by the applicable statutes of limitations and repose.**

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4. For § 1983 claims, the forum state's statute of limitations for personal injury actions applies.

---

[4] Although the undersigned counsel does not represent Kobach in any official federal capacity, this section clarifies for the Court's convenience that no such federal capacity claims are before this Court. Further, because many of the same arguments and defenses that apply to claims against Kobach in his individual capacity and official state capacity also apply clearly to his official federal capacity, this memorandum does not undertake pains to exclude discussion of the official federal capacity claims but in most places simply addresses all of these capacities at once for the Court's convenience, for the completeness of the argument, and for the speedy and just resolution of this case. Although the official federal capacity arguments herein should not be taken as arguments presented by Kobach in his official federal capacity, the Court can still dismiss claims *sua sponte* based on these arguments. *Reece v. AES Corp.*, 638 F. App'x 755, 763 n.10 (10th Cir. 2016) (citing *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)).

*Jenkins v. Chance*, 762 F. App'x 450, 454 (10th Cir. 2019) (citing *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)). If the forum state has multiple statutes of limitations for personal injury actions, the general or residual statute of limitations for personal injury actions applies. *Id.* (citing *Owens*, 488 U.S. at 249-50).

In Kansas, the two-year statute of limitations under K.S.A. 60-513(a)(4) applies to § 1983 and § 1985 claims, *M.A.C. v. Gildner*, 853 F. App'x 207, 209 (10th Cir. 2021) (citing *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984)) (addressing § 1983 claims); *E.H. v. Kan. Dep't for Child. and Fams.*, 494 P.3d 304 (table opinion), 2021 WL 4127704, at *6 (Kan. Ct. App. Sept. 10, 2021) (citing *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010)) (addressing § 1985 claims). That statute of limitations is subject to a ten-year statute of repose, which states "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(b). The statute of repose "begins to run . . . when the defendant completes the last original wrongful act." *Deters v. Nemaha-Marshall Elec. Coop. Ass'n*, 56 Kan. App. 2d 1170, 1183 (2019).

For persons such as minors who are under legal disability at the time a cause of action arose, the statute of limitations in Kansas is adjusted to allow bringing the action within one year after the person's disability is removed. K.S.A. 60-515(a). But this adjustment is nevertheless subject to an eight-year statute of repose, which states "no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action." *Id.* This means that "[f]or most tort claims . . . an injury suffered by a child at the age of, say 8, would no longer be actionable by the time the child turned 18. *H.B. v. M.J.*, 315 Kan. 310, 314 (2022).

Here, Plaintiffs bring § 1983 and § 1985 claims, so the two-year statute of limitations and ten-year statute of repose from K.S.A. 60-513(a)(4) and (b) apply. Although Plaintiffs do not mention when or how Kobach was involved in their alleged injuries, the latest date Plaintiffs point to in general is August 2008. (Doc. 1 at ¶ 70.) August 2008 was over 14 years ago. Therefore, Plaintiffs' claims are

barred by the applicable statutes of limitation and repose.

Plaintiff Jalen Davis was a minor when any causes of action arose. He was born in 2003 and is now at least 19 years old. (*See* Doc. 1 at ¶¶ 56-57, 61, 63 (Jalen was *in utero* in late 2002 and early 2003).)[5] His legal disability of being a minor was removed over a year ago when he turned 18. Therefore, Jalen Davis's claims are not helped by the one-year statute of limitations and the eight-year statute of repose under K.S.A. 60-515(a) for claims that arose while a plaintiff was under legal disability, as Jalen Davis's claims are barred under those statutes of limitations and repose as well.

To the extent the Plaintiffs may allege an ongoing injury with regard to being denied records (Doc. 1 at ¶¶ 67(2)-69, 72, 74), the Plaintiffs still fail to state a claim for the reasons stated in the following sections.

## B. Kobach is entitled to dismissal of Plaintiffs' claims because Plaintiffs fail to state the requisite personal participation of Kobach.

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v. Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). "Section 1983 does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Rather, Plaintiffs must show an "affirmative link" between a defendant's actions and their alleged constitutional injury. *Id.* To establish the affirmative link, Plaintiffs must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Id.* The same personal participation requirement applies to § 1985. *Saviour v. City of Kan. City*, No. 90-2430-L, 1992 WL 135019, at *7 (D. Kan. May 15, 1992) (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979)).

Here, Defendants Kobach cannot be liable under Plaintiffs' claims because he was not personally involved in their injury. Aside from being named in the caption and generically described in paragraph 9 of the complaint, Kobach is not mentioned anywhere else in the complaint. Plaintiffs do

_____

[5] Federal Rule of Civil Procedure 5.2 discourages the undersigned counsel from providing Jalen Davis's precise birth date in a publicly filed document, but the fact that Jalen is at least 19 years old is clear from the face of the complaint.

not allege that Kobach acted at all, much less acted in a way that made him personally involved in their injury, in a way that made him cause their injury, or with a culpable state of mind. Therefore, Plaintiffs fail to state a claim against Kobach because they fail to state that he personally participated in their injury.

**C. Kobach is entitled to dismissal for failure to state a claim because Plaintiffs have not overcome qualified immunity by showing that any alleged conduct violated clearly established law.**

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[6] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity is an affirmative defense that can be raised in a motion to dismiss or in a motion for summary judgment. *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). When a § 1983 defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021).

To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.*; *see also Grissom v. Roberts*, 902 F.3d 1162, 1167-68 (10th Cir. 2018) ("only if the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant . . . " (comma omitted)). The right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). For the plaintiff to satisfy this "heavy two-part burden," *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014), "the complaint must isolate

---

[6] Federal statutory rights enforceable under § 1983 are limited in number. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124-25 (2005) ("a few § 1983 claims are based on statutory rights"). They are not relevant to this case, so the rest of this memorandum refers only to "constitutional rights" as shorthand for the full phrase "statutory or constitutional rights."

the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018). The Tenth Circuit has found it to be error to improperly place the burden on the defendants to establish their entitlement to qualified immunity. *Id.* at 1144.

Here, Kobach is entitled to qualified immunity because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that any alleged actions violated clearly established law, particularized to the facts of this case. Specifically, Plaintiffs have not shown any law that put Kobach on notice that serving as "Counsel to former U.S. Attorney General John Ashcroft during bioterrorism preparedness" or now serving as "the Kansas Attorney General" somehow violated federal law. Because qualified immunity applies, the Court should dismiss the claims for failure to state a claim. At the very least, the burden now shifts to Plaintiffs, and Plaintiffs must be specific. Plaintiffs must identify specific conduct and demonstrate that the alleged conduct violates specific, clearly-established constitutional rights.

## CONCLUSION

For the above reasons, Defendant Kris Kobach requests that the Court dismiss Plaintiffs' claims against him due to lack of subject-matter jurisdiction, or, in the alternative, for insufficient service of process and failure to state a claim.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS KOBACH

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendant Kris Kobach*

15

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 7th day of March, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which sent electronic notice to counsel of record, with copies also sent to Plaintiffs by means of first-class mail, postage prepaid, addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

                        */s/ Matthew L. Shoger*

                        Matthew L. Shoger
                        Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARLA DAVIS,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-01010-JAR-KGG |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION TO DISMISS BY DEFENDANTS KANSAS UNIVERSITY SCHOOL OF MEDICINE and Dr. GAROLD O. MINNS

**COME NOW,** the Defendants, Kansas University School of Medicine and Dr. Garold O. Minns, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and moves the Court for an order dismissing all claims asserted against it in Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction and that Plaintiff's Complaint fails to state a claim against these Defendants upon which relief can be granted. Pursuant to local rule D. Kan. 7.1(a), filed simultaneously herewith is a memorandum of arguments and authorities in support thereof.

**WHEREFORE**, for the above and foregoing reasons, and those set forth in the attached memorandum of arguments and authorities in support hereof, Defendants Kansas University School of Medicine and Dr. Minns respectfully request this motion be granted, and an order entered dismissing all claims against them in Plaintiff's Complaint, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
KRIS KOBACH

*/s/ Carrie A. Barney*
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
Fax:    (785) 291-3767
Email: carrie.barney@ag.ks.gov
*Attorney for Defendants Kansas University*
*School of Medicine and Dr. Minns*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March, 2023, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record and to Plaintiff, by US Mail, postage prepaid on March 8th, 2023, as follows:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Plaintiffs Pro se*

*/s/ Carrie A. Barney*
Carrie A. Barney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARLA DAVIS, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-01010-JAR-KGG |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, *et al.*** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ _____ | ) | |

## MOTION TO DISMISS BY DEFENDANTS
## <u>KANSAS HOMELAND SECURITY and DAVID WEISHAAR</u>

**COME NOW,** the Defendants, Kansas Homeland Security and David Weishaar, pursuant

to Fed. R. Civ. P. 12(b)(1) and (6), and moves the Court for an order dismissing all claims asserted

against it in Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction

and that Plaintiff's Complaint fails to state a claim against these Defendants upon which relief can

be granted. Pursuant to Local Rule D. Kan. 7.1(a), filed simultaneously herewith is a memorandum

of arguments and authorities in support thereof.

**WHEREFORE**, for the above and foregoing reasons, and those set forth in the attached

memorandum of arguments and authorities in support hereof, Defendants Kansas Homeland

Security and Weishaar respectfully request this motion be granted, and an order entered dismissing

all claims against them in Plaintiff's Complaint, and for such other relief as the Court deems just

and equitable.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
KRIS KOBACH

*/s/ Carrie A. Barney*
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
Fax:    (785) 291-3767
Email: carrie.barney@ag.ks.gov
*Attorney for Defendants Kansas University*
*School of Medicine and Dr. Minns*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2023, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record and to Plaintiff, by US Mail, postage prepaid on March 8th, 2023, as follows:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Plaintiffs Pro se*

*/s/ Carrie A. Barney*
Carrie A. Barney

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARLA DAVIS, et al.             ) | |
|                              ) | |
|       Plaintiffs,      ) | |
|                              ) | |
| -vs-                        ) | Case No. 23-CV-1010-JAR-KGG |
|                              ) | |
| U.S. DEPARTMENT     ) | |
| OF JUSTICE, et al.,      ) | |
|                              ) | |
|       Defendants.     ) | |

### DEFENDANT HEWITT GOODPASTURE'S MOTION TO DISMISS

Defendant Hewitt Goodpasture, pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss all of Plaintiff's claims against him with prejudice for the reasons stated in the Memorandum in Support of His Motion to Dismiss filed contemporaneously herewith.

Respectfully Submitted,

/s/ Andrew L. Foulston
Katy E. Tompkins, #25581
Andrew L. Foulston, #27688
MCDONALD TINKER PA
300 West Douglas Ave., Ste. 500
Wichita, Kansas 67202
T: (316) 263-5851 | F: (316) 263-4677
E: ktompkins@mcdonaldtinker.com
E: afoulston@mcdonaldtinker.com
*Attorneys for Defendant Hewitt Goodpasture*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on the 7th day of March 2023, I electronically filed the foregoing **DEFENDANT HEWITT GOODPASTURE'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

A copy is also being sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

/s/ Andrew L. Foulston
Andrew L. Foulston, #27688

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS, et al.    )
           )
    Plaintiffs,   )
           )
-vs-         )  Case No. 23-CV-1010-JAR-KGG
           )
U.S. DEPARTMENT   )
OF JUSTICE, et al.,    )
           )
    Defendants.  )
           )

## MEMORANDUM IN SUPPORT OF
## <u>DEFENDANT HEWITT GOODPASTURE'S  MOTION TO DISMISS</u>

Defendant Hewitt Goodpasture submits the following Memorandum in Support of His Motion to Dismiss and, for the reasons set forth herein, respectfully requests that the Court dismiss plaintiffs Carla and Mr. Davis's claims against him with prejudice.

### <u>Nature of Matter Before the Court</u>

Plaintiffs Carla and Jalen Davis ("Plaintiffs"), proceeding pro se, filed this lawsuit against numerous individuals and entities, claiming deprivation of their rights and conspiracy to interfere with their civil rights under 42 U.S.C. §§ 1983 and 1985. It appears that Plaintiffs' claims revolve around medical care they received and interactions with healthcare providers that they had in the mid-2000s, which they claim resulted in the deprivation of their rights.

As Plaintiffs fail to state any plausible § 1983 or § 1985 claim against Dr. Goodpasture and because the statute of limitations would have run on any claim

Plaintiffs even theoretically could have against Dr. Goodpasture, Dr. Goodpasture asks that the Court dismiss Plaintiffs' claims against him with prejudice.

### Statement of Facts

The following statements of facts, based on the factual allegations of Plaintiffs' Complaint, is submitted and taken to be true for the purposes of Memorandum only.

In August 2002, Carla Davis was pregnant with her in-utero child Mr. Davis and began receiving OB/GYN care from Clyde Wilson Wesbrook, M.D., at Wichita Clinic P.A. (*Id.*) On October 18, 2002, Ms. Davis told Dr. Wesbrook that she wanted to deliver Mr. Davis at St. Joseph Hospital in Wichita, Kansas. (*Id.* at ¶¶ 57, 60; ECF 1-1 at 8.). Wichita Clinic then "allocated [her] health care services to 'Deliver at Wesley Medical Center' . . . ." (ECF 1 at ¶ 61.) Specifically, Plaintiffs allege that Ms. Davis was "forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for January 23, 2003." (*Id.*) When Ms. Davis arrived at Wesley Medical Center, she was placed "in the hands of indigent and research training programs" without her knowledge. (*Id.* at ¶ 62.) Plaintiffs were then incapacitated with a toxic dose of the drug Fentanyl. (*Id.* at ¶ 63.) Mr. Davis was ultimately born on January 23, 2003. (ECF 1 at ¶¶ 61–66; ECF 1-1 at 3.)

While Ms. Davis was incapacitated, she was raped by Anna Stork-Furry. (ECF 1 at ¶ 64.) Tom Yao also stabbed Ms. Davis deeply in her lower back with a needle, causing severe pain. (*Id.* at ¶ 65.) Plaintiffs were also administered toxic doses of antibiotics and Ms. Davis was administered toxic doses of Bupivacaine and

other medications even though these medications were not medically necessary. (*Id.* at ¶ 66.) Plaintiffs allege that Ms. Davis suffered serious injuries as a result of these allege bodily intrusions. (*Id.* at ¶ 67-1.)[1]

On possibly February 4, 2004, but more likely February 4, 2005, an unknown device was placed in Ms. Davis's chest blood vessels without her knowledge and consent at Wesley Medical Center. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7.) In addition, Plaintiffs allege that unspecified public officials refused to give them the results of diagnostic testing, Plaintiffs' medical records are in confidential statute, and Plaintiffs are unable to use their health information for any reason. (ECF 1 at ¶ 67-2; ECF 1-1 at 1; ECF 7.) Plaintiffs allege that they are being denied effective medical treatment and the ability to use their medical records for evidence in an auto accident case and in applying for and/or receiving social security benefits. (ECF 1 at ¶¶ 68-2, 72). Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries resulting therefrom that they claim that they have endured. (*Id.* at ¶ 69.) Based on the documents submitted alongside Plaintiff's Complaint, it appears that Plaintiffs' allegations concern a denial of a request for information from Children's Mercy Hospital that occurred on August 14, 2008, and Wesley Medical Center medical record for Ms. Davis from February 2005 being stamped "CONFIDENTIAL NOT FOR RE-RELEASE." (ECF 1-1 at 1; ECF 8.)

---

[1]   Plaintiffs' Complaint appears to repeat and contain two sets of paragraphs 67 and 68. (ECF 1 at p. 8–9.) The first set of paragraphs 67 and 68 are herein referred to as paragraphs 67-1 and 68-1, respectively, and the second set are referred to as paragraphs 67-2 and 68-2, respectively.

In August 2008, unspecified public officials stole the blood of Mr. Davis at Children's Mercy and prevented him from receiving medical treatment. (ECF 1 at ¶ 70.) Plaintiffs appear to allege that there was an attempted abduction of Mr. Davis by "a U.S. Military Social Worker- Michael Dustin ( Korea) [sic]." (*Id.* at ¶ 70.) Plaintiffs allege that Ms. Davis was falsely accused of child abuse, was investigated, and found innocent. (*Id.* at ¶ 71.)

Plaintiffs filed this lawsuit on January 23, 2023, seeking declaratory relief, injunctive relief, and monetary damages for the above-described allegations. (ECF 1 at p. 9.) In Plaintiffs' Complaint and Civil Cover Sheet, they state they are bringing this case under 42 U.S.C. §§ 1983 and 1985. (*Id.* at ¶ 43; ECF 2.) Plaintiffs have brought this case against approximately 40 defendants, including multiple physicians, private and public medical entities, law firms, governmental entities, and past and former government officials. (ECF 1 at ¶¶ 3–42.) One of the defendants is Hewitt Goodpasture, M.D., who Plaintiffs allege was the "2002-2003 President of Medical Society of Sedgwick County during terrorism." (*Id.* at ¶ 33.) Plaintiffs sue Dr. Goodpasture in "his official and individual capacity" but do not allege that the Medical Society of Sedgwick County ("MSSC") is a governmental entity or allege that Dr. Goodpasture is a state actor. (*Id.*) Plaintiffs have also not pleaded any facts showing that MSSC is a governmental entity, performs any governmental function, or acted jointly with any governmental entity.

Besides the paragraph of the Complaint identifying Dr. Goodpasture as the president of MSSC from 2002 through 2003, stating that he is being sued in his

official and individual capacity, and providing an address for service, neither the Complaint nor any other documents filed by Paintiffs reference Dr. Goodpasture or MSSC. (ECF 1 at p. 1–10; ECF 1-1 at 1–14; ECF 7; ECF 8.) Plaintiffs' Complaint and the other documents filed by them also do not identify any acts or omissions on the part of Dr. Goodpasture or MSSC as part of the bases for Plaintiffs' claims. (*Id.*)

<u>**Arguments and Authorities**</u>

**I.    Governing Standard**

**A.    Failure to state a claim**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face." Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility." "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth. Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Cory D. Cline v. Anthony R. Russo*, No. 22-CV-4010-JAR-TJJ, 2023 WL 2375107, at
\*1 (D. Kan. Mar. 6, 2023).

In addition, to state a claim in federal court, a complaint must explain what
each defendant did to the plaintiff, when the defendant did it, how the defendant's
action harmed the plaintiff and what specific legal right the plaintiff believes the
defendant violated. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).
Complaints in which a plaintiff merely broadly claims that their rights "were
violated" or that a defendant "infringed" on the plaintiff's rights are also
insufficient. *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2008).

### B.      Rule applicable to pro se parties

"A party proceeding pro se is entitled to a liberal construction of his
pleadings. However, a pro se party must follow the same rules of procedure that
govern other litigants." *Trammell v. Denning*, No. 12-3152-JAR, 2012 WL 5362968,
at \*1 (D. Kan. Oct. 31, 2012). Further, it is not "the proper function of the district
court to assume the role of advocate for the pro se litigant." *United States v. Dixon*,
No. 5:07-CR-40124-JAR, 2021 WL 3129593, at \*2 (D. Kan. July 23, 2021). Finally, a
party's pro se status does not operate to toll the statute of limitations. *Van Deelen v.
City of Eudora*, No. 96-4040-SAC, 1996 WL 707016, at \*3 (D. Kan. Nov. 5, 1996)

### II.     Plaintiffs have not pleaded any facts supporting a plausible § 1983 or § 1985 claim against Dr. Goodpasture.

Plaintiff has sued Dr. Goodpasture in his individual and alleged official
capacity. As an initial matter, Plaintiffs have not pleaded any facts showing that
Dr. Goodpasture was a governmental official or state actor. Further, although

Plaintiffs have pleaded that Dr. Goodpasture was the president of MSSC from 2002 through 2003, they have not pleaded any facts that show that MSSC was a governmental entity or performed any governmental action that resulted in any injury to Plaintiff. Accordingly, Plaintiffs have failed to state a plausible official capacity suit of any kind against Dr. Goodpasture as they have not pleaded any facts showing that Dr. Goodpasture has any official capacity in which he could be sued, much less that he was acting in an official capacity with regard to the events that form the basis for Plaintiffs' claims.

Plaintiffs have also not pleaded facts sufficient to meet the other requirements of stating a § 1983 or § 1985 claim against Dr. Goodpasture. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

Here, Plaintiffs do not make any factual allegations that Dr. Goodpasture ever deprived them of any rights or that Dr. Goodpasture ever acted under color of state law. Plaintiffs also do not make any factual allegations that Dr. Goodpasture ever engaged in any conspiracy or ever interfered with their civil rights at all. Thus, Plaintiffs have clearly failed to even partially meet the basic requirements of stating a plausible § 1983 or § 1985 claim against Dr. Goodpasture.

Additionally, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). But Plaintiffs' do not identify acts or omissions of Dr. Goodpasture at all in their Complaint, much less state how any alleged act or omission of Dr. Goodpasture has any relation to their claims. Thus, Plaintiffs have also failed to state a plausible § 1983 against Dr. Goodpasture in his individual capacity by failing to allege personal involvement by Dr. Goodpasture in the claimed deprivation of their rights.

Finally, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Again, Plaintiffs have not pleaded any factual allegations indicating that Dr. Goodpasture had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Goodpasture for these reasons as well.

Due to the numerous deficiencies in the factual allegations contained in the Complaint, it is clear that Plaintiffs have failed to even approach stating a plausible § 1983 or § 1985 claim against Dr. Goodpasture or even show that Dr. Goodpasture had any connection with any of the alleged events that form the basis of Plaintiffs' lawsuit. The Court should, therefore, dismiss all of Plaintiffs' claims against Dr. Goodpasture with prejudice.

### III.   The statute of limitations has run on Plaintiffs' claims.

The statute of limitations on 42 U.S.C. §§ 1983 and 1985 claims in Kansas are governed by the two-year limitations period applicable to personal injury claims provided by Kansas statute, K.S.A. 60-513(a)(4). *Gilmore v. Easter*, No. 22-3181-JWL-JPO, 2022 WL 4289549, at *2 (D. Kan. Sept. 16, 2022). "State law also determines any tolling of the limitations period, although federal law may allow for additional tolling in rare circumstances." *Id.* at *10. In response to the global pandemic of COVID-19, the Kansas Supreme Court suspended the running of all statute of limitations in Kansas from March 19, 2020, to April 15, 2021. *Korgan v. Est. of Hansen by & through Cramer*, No. 21-2567-JWB, 2022 WL 4465074, at *1 (D. Kan. Sept. 26, 2022). However, even considering the COVID-related and all other applicable tolling to Plaintiffs' claims, their claims are still time-barred.

### A.   Ms. Davis's claims are barred by the statute of limitation.

When determining when a federal civil rights action accrued, a court must apply federal law. *McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *4 (D. Kan. Sept. 27, 2022). Under federal law, a "civil rights action accrues when

the plaintiff knows or has reason to know of the injury which is the basis of the action. It is not necessary that the plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue." *Abdullah ("Abe") Fattaey v. Kansas State Univ.*, No. 15-9314-JAR-KGG, 2017 WL 347500, at *11 (D. Kan. Jan. 24, 2017).

Here, the alleged events that form the bases of Ms. Davis's claims can be grouped into three timeframes. The first timeframe is August 2002 to January 2003, which encompasses all allegations related to the birth of Mr. Davis and all the medical treatment that Plaintiffs' received in connection with his birth. (ECF 1 at ¶¶ 57, 61–66.) Any injuries Ms. Davis suffered from these alleged events would have been or should have been known to her shortly at the time the events occurred, as she would have been aware of the procedures performed and the effects thereof. Further, the documents filed by Plaintiffs alongside their complaint include pictures of alleged injuries suffered by Ms. Davis. (ECF 1-1 at 13–14.) Assuming the information contained within the pictures is true, these pictures were taken between May 3, 2007, and April 29, 2013. (*Id.* at 14.) Accordingly, at the latest, Ms. Davis was indisputably aware that she suffered some injury by May 3, 2007. Thus, the statute of limitations on her claims related to events occurring between August 2002 and January 2003, would have run on May 3, 2009, at the latest.

The second set of events occurred in or around February 2005, when an unknown device was allegedly placed in Ms. Davis's chest blood vessels without her knowledge and consent. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7; ECF 8.) Again,

there are no facts indicating that she was unaware of the placement of the device without her consent, which itself would be an injury, at the tim it was placed or shortly thereafter. Therefore, the statute of limitations for claims arising from the alleged events that occurred in or around February 2005 would have run in February 2007 or shortly thereafter.

The final set of events occurred in or around August 2008, when there was an alleged attempt to abduct Mr. Davis, his blood was allegedly taken, and Children's Mercy declined to provide information in response to a request for information from Ms. Davis. (ECF 1 at ¶ 70; ECF 1-1 at 1.) From the face of these allegations, it clear that Ms. Davis knew or should have known of the alleged abduction attempt and her request for information being declined and any injuries resulting therefrom at the time or shortly after these events occurred. Plaintiffs have also again not pleaded any facts indicating that they were unaware of these events and any injuries therefrom at or near the time they occurred. Accordingly, the limitations period Ms. Davis's claims related to the events that allegedly occurred in or around August 2008 would have ended in August 2010 or shortly thereafter.

As the limitations period for any of Ms. Davis's claims related to the allegations contained in Plaintiffs' Complaint would have expired in 2010, at the latest, her claims in this case are untimely absent any tolling. Plaintiffs have not pleaded any facts supporting the tolling of the statute of limitations as to Ms. Davis's claims. Moreover. as COVID-related tolling did not begin until March 2020, such tolling is also not applicable to Ms. Davis's claims. Therefore, Ms. Davis's

claims are time-barred as the limitations period had expired long before Plaintiffs filed their Complaint on January 23, 2023. Accordingly, Ms. Davis's claims should be dismissed with prejudice because her claims are barred by the statute of limitations.

### B.    Mr. Davis's claims are barred by the statute of limitation.

As part of the federal discovery rule regarding the accrual of claims, the knowledge of a claim or injury of a parent is imputed to a minor. *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 274 (3d Cir. 2006); *see also Rice v. U.S.*, No. 96-5175, 1997 WL 353009, at *3 n.6 (10th Cir. 1997). Although this rule usually comes into play in claims under the federal tort claims act, the rule also applies to determining the date that Plaintiffs' claims accrued because the accrual date is controlled by the federal "common law" discovery rule just as the accrual date of FTCA claims are. *See Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) (generally, federal discovery rule applies equally to both FTCA and § 1983 claims).

Because Ms. Davis's knowledge regarding Plaintiffs' claims and injuries is imputed to Mr. Davis, their claims accrue on the same date. Thus, the discussion above regarding the accrual of Ms. Davis's claims is equally applicable to the accrual of Mr. Davis's claims, and the latest that any of his claims would have accrued would have been in August 2008.

However, unlike Ms. Davis, additional tolling considerations must be given to Mr. Davis's claims as he did not turn eighteen until January 23, 2021. As the forum's state's law governs the tolling of federal civil rights claims, the Kansas

statute tolling the statute of limitations period while a plaintiff is under a legal disability, K.S.A. 60-515(a), applies. In relevant part, this statute states:

> [I]f any person entitled to bring an action, . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, . . . such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).

Pursuant to this statute, the one-year period for Mr. Davis to file his claims after turning eighteen would have begun to run, under normal circumstances, on January 23, 2021, and elapsed on January 23, 2022, exactly one year before Plaintiffs filed suit. *See Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 6037380, at *6 (D. Kan. Nov. 14, 2019). Further, even assuming that the COVID-related tolling would have applied to this one-year limitation period, the one-year period would have begun to run on April 15, 2021, and ended on April 15, 2022, still well-before Plaintiffs filed suit.

Accordingly, even assuming all possible tolling of the statute of limitations on Mr. Davis's claims, he still did not file suit on his claims within the applicable limitations periods. Mr. Davis's claims against Dr. Goodpasture should, therefore, be dismissed with prejudice for being time-barred.

## IV. Plaintiffs' claims against Dr. Goodpasture should be dismissed with prejudice.

"Even though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment where it is obvious that the

plaintiff cannot prevail on the facts she has alleged and it would be futile to give her an opportunity to amend." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation omitted).

Here, Plaintiffs have not provided any indication that they can prevail against Dr. Goodpasture on any claim based on any facts they have alleged or that allowing them leave to amend would be anything but futile. First, Plaintiffs have not provided any indication that any of the elements of a plausible § 1983 or § 1985 claim against Dr. Goodpasture are even partially present. In fact, they have not provided even a shred of a reason to believe that Dr. Goodpasture had any involvement with any of the incidents that form the bases of their claims. Thus, Plaintiffs' claims against Dr. Goodpasture should be dismissed with prejudice as it is patently obvious that they do not even have the beginning of a viable claim against Dr. Goodpasture. *See Allen v. Adams*, No. 21-1221-JAR-KGG, 2021 WL 5279642, at *3 (D. Kan. Nov. 12, 2021); *Herlocker v. Loffswold*, No. 16-2300-JAR-TJJ, 2016 WL 5851732, at *3 (D. Kan. Oct. 6, 2016).

Further, even if Plaintiffs could plead facts generally supporting the substantive legal elements of their claims, their claims would still clearly be time-barred as the statute of limitations on Ms. Davis's claims ran, at the latest, in or around August 2010, and the statute of limitations on Mr. Davis's claims ran, at the latest, on April 15, 2022. As Plaintiffs' claims, even if otherwise substantively viable, would be time-barred, their claims against Dr. Goodpasture should be

dismissed with prejudice. *See Wilson v. Reid*, 781 F. App'x 789, 793 (10th Cir. 2019);

*Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014).

Because Plaintiffs clearly do not have any plausible claims against Dr.
Goodpasture and, even if they did have such a claim, the claim would be time-barred, the Court should not grant Plaintiffs leave to amend their claims against
Dr. Goodpasture but should dismiss their claims against him with prejudice.

## Conclusion

For the reasons stated above, Dr. Goodpasture respectfully requests that the
Court grant his Motion to dismiss, dismiss all of Plaintiffs' claims against him with
prejudice, and for such other and further relief that the Court finds to be just and
equitable.

Respectfully Submitted,

/s/ Andrew L. Foulston
Katy E. Tompkins, #25581
Andrew L. Foulston, #27688
MCDONALD TINKER PA
300 West Douglas Ave., Ste. 500
Wichita, Kansas 67202
T: (316) 263-5851 | F: (316) 263-4677
E: ktompkins@mcdonaldtinker.com
E: afoulston@mcdonaldtinker.com
*Attorneys for Defendant Hewitt Goodpasture*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 7th day of March 2023, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT HEWITT GOODPASTURE'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

A copy is also being sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

/s/ Andrew L. Foulston
Andrew L. Foulston, #27688

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS, *et al.*,          )
)
          Plaintiffs,       )
)
v.                      )      Case No. 2:23-CV-01010-JAR-KGG
)
U.S. DEPARTMENT OF JUSTICE, *et al.*  )
)
          Defendants.    )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANTS Dr. MINNS and KANSAS
UNIVERSITY SCHOOL OF MEDICINE's MOTION TO DISMISS**

Defendants Kansas University School of Medicine ("University" or "State") and Dr.
Garold Minns submit the following memorandum in support of their motion to dismiss.

**I.     Nature of the Case and Relevant Facts.**

On January 23, 2023, Carla Davis and her adult son, Jalen Davis, filed a Complaint against
multiple government agencies, including the Kansas University School of Medicine and Dr.
Garold Minns. Plaintiffs bring suit against Defendant Minns as "the current Dean of KU School
of Medicine – Wichita[and] he is sued in his official and individual capacity…." (Doc. 1, ¶ 27.)
The University is identified as a government agency. (Doc. 1, ¶ 26.)

It is difficult to summarize the claims brought by these Plaintiffs. The Court, having
received several other, similarly styled motions here, is likely already familiar with the facts
alleged and claims asserted in Plaintiffs' Complaint. That being said, Plaintiffs appear to allege
that their constitutional rights were violated in the early 2000's (roughly 20-years ago) when they

were subjected to governmental experiments, implanted with devices, and other similar sci-fi themed acts.

Plaintiffs allege actions that are brought pursuant to 42 U.S.C. ¶¶ 1983 and 1985. Plaintiffs state that they seek a declaration vindicating their rights, money damages, and access to medical records and "all the agents that were intruded in their bodies." (Doc. 1, unnumbered para/prayer for relief.)

**II.      Arguments and Authorities.**

These defendants are entitled to a complete dismissal of all claims alleged against them. As a matter of law: (1) Claims for money damages, intended against the University, must be dismissed because, as an arm of the State of Kansas, the University is immune from such claims in federal court; (2) Claims alleged against Defendant Minns, in his official capacity, must be dismissed because in this capacity he shares the University's immunity from money damages, and there does not appear to be a clear request for injunctive relief relating to defendant Minns in his official capacity; (3) Claims alleged against Defendant Minns, in his individual capacity, must be dismissed because qualified immunity protects him from liability for civil damages; and, (4) Plaintiffs' allegations are nonsense, and as such, fail to state a claim as a matter of law.

a.   <u>Motion to Dismiss Standards (FRCP 12(b)(1) and (6)</u>

In general, a plaintiff's complaint must contain sufficient factual matter to state a claim that is plausible – not merely conceivable – on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on these Defendants' motion under FRCP 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. Plaintiff bears the burden of alleging enough facts to suggest that he is entitled to relief; he must

do more than make threadbare recitals of a cause of action accompanied by conclusory statements. *Twombly*, 550 U.S. at 556. The court need not accept a plaintiff's conclusory allegations. *Loggins v. Cline*, 568 F. Supp. 2d 1265, 1268 (D. Kan. 2008).

Defendants are entitled to Eleventh Amendment and Qualified Immunity. Federal courts are courts of limited jurisdiction and must have a statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Dismissal is appropriate when it becomes apparent that jurisdiction is lacking. *Laughlin v. Kmart Corp*., 50 F.3d 871, 873 (10th Cir. 1995). Eleventh Amendment Immunity is jurisdictional in nature. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir.  2013). Plaintiff bears the burden of establishing that jurisdiction is proper. *Montoya*, 296 F.3d at 955; *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194 (2010).

A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action for which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be pursued as a facial attack or a factual attack. *See Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* Having raised subject matter jurisdiction, Plaintiffs now have "[t]he burden of establishing subject matter jurisdiction" because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.,* 518 F.3d 1186, 1189 (10th Cir. 2008).

**b.  Dr. Minns and the State are immune from suit pursuant to the Eleventh Amendment**

In addition to Plaintiffs' failure to state a claim, dismissal is urged as to defendant Minns and the State on grounds of Eleventh Amendment Immunity, as claims for money damages against

a state employee in their official capacity are generally barred by the Eleventh Amendment doctrine of sovereign immunity. *Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

> Generally, the Eleventh Amendment shields from suit state officials acting in their official capacity. *Wares v. VanBebber*, 231 F.Supp.2d 1120, 1124 (D.Kan.2002) … Congress did not intend to abrogate state immunity. *Neal v. Lewis*, 325 F.Supp.2d 1231, 1235 (D.Kan.2004). Thus, when state officials act in their official capacities, they are entitled to absolute immunity. *Id.*

*Hernandez v. Conde*, 442 F.Supp.2d 1141, 1152 (D.Kan.2006). Although, claims for certain prospective equitable relief can be brought against state officials sued in their official capacity, claims for monetary damages are barred. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998).

### c.   Defendant Minns is Entitled to Qualified Immunity

In the unlikely event that this Court implies a claim pursuant to 42 U.S.C. § 1983, despite Plaintiffs' failure to state such, the Complaint must fail as a matter of law because qualified immunity bars their claims, as alleged against defendant Minns. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). This immunity is "immunity from suit  rather than a mere defense to  liability." *Mitchell v. Forsyth*, 472 U.S.  511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Tenth Circuit places a presumption in favor of immunity for public officials sued in their individual capacities. *Hidahl v. Gilpin County DSS*, 938 F.2d 1150, 1155 (1991); *Schalk v. Gallemore,* 906 F.2d 491, 499 (10th Cir.1990); Melton v. City of Oklahoma City, 879 F.2d 706, 728–29 (10th Cir.1989).

### III.     Conclusion.

For the reasons outlined above, defendants University of Kansas School of Medicine and

Minns are entitled to a complete dismissal of all claims alleged against them.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
KRIS KOBACH

*/s/ Carrie A. Barney*
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
Fax:    (785) 291-3767
Email: carrie.barney@ag.ks.gov
*Attorney for Defendants Kansas University*
*School of Medicine and Dr. Minns*

### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March, 2023, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record and to Plaintiff, by US Mail, postage prepaid on March 8th, 2023, as follows:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Plaintiffs Pro se*

*/s/ Carrie A. Barney*
Carrie A. Barney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARLA DAVIS, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-01010-JAR-KGG |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, *et al.*** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### AMENDED MOTION TO DISMISS BY DEFENDANTS
### KANSAS HOMELAND SECURITY and DAVID WEISHAAR

**COME NOW,** the Defendants, Kansas Homeland Security and David Weishaar, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and moves the Court for an order dismissing all claims asserted against it in Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction and that Plaintiff's Complaint fails to state a claim against these Defendants upon which relief can be granted. Pursuant to Local Rule D. Kan. 7.1(a), filed simultaneously herewith is a memorandum of arguments and authorities in support thereof.

**WHEREFORE**, for the above and foregoing reasons, and those set forth in the attached memorandum of arguments and authorities in support hereof, Defendants Kansas Homeland Security and Weishaar respectfully request this motion be granted, and an order entered dismissing all claims against them in Plaintiff's Complaint, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
KRIS KOBACH

*/s/ Carrie A. Barney*
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
Fax:     (785) 291-3767
Email: carrie.barney@ag.ks.gov
*Attorney for Defendants Kansas University*
*School of Medicine and Dr. Minns*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2023, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record and to Plaintiff, by US Mail, postage prepaid on March 10th, 2023, as follows:

Carla Davis
901 N. Belmont
Wichita, KS  67208
*Plaintiffs Pro se*

Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Plaintiffs Pro se*

*/s/ Carrie A. Barney*
Carrie A. Barney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CARLA DAVIS, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-CV-01010-JAR-KGG |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, *et al.*** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**AMENDED MEMORANDUM IN SUPPORT**
**OF DEFENDANTS KANSAS HOMELAND SECURITY and DAVID WEISHAAR[1]**

Defendants Kansas Homeland Security ("State") and David Weishaar, Adjutant General,

("TAG") submit the following memorandum in support of their amended motion to dismiss.

**I.      Nature of the Case and Relevant Facts.**

On January 23, 2023, Carla Davis and her adult son, Jalen Davis, filed a Complaint against

multiple government agencies, including Kansas Homeland Security and David Weishaar.

Plaintiffs bring suit against Defendant Weishaar, he is sued in his official and individual

capacity…." (Doc. 1, ¶10.)

It is difficult to summarize the claims brought by these Plaintiffs. The Court, having

received several other, similarly styled motions here, is likely already familiar with the facts

---

[1] Defendants originally filed their Motion to Dismiss on Tuesday, March 7th 2023.
While filing multiple items that day counsel had several technical issues, and
did not initially realize that the MIS for Doc. 114 hadn't been filed. [issue
was on counsel's side/Pacer was not the problem]
Because of this delay, defendants are refiling their motion and MIS concurrently
as "amended." Counsel files this amended motion and motion support in order to
more clearly reset plaintiffs' response deadline. The MIS is substantially
similar to another filing, and counsel's error should not otherwise prejudice
plaintiffs.

alleged and claims asserted in Plaintiffs' Complaint. That being said, Plaintiffs appear to allege that their constitutional rights were violated in the early 2000's (roughly 20-years ago) when they were subjected to governmental experiments, implanted with devices, and other similar sci-fi themed acts.

Plaintiffs allege actions that are brought pursuant to 42 U.S.C. ¶¶ 1983 and 1985.  Plaintiffs state that they seek a declaration vindicating their rights, money damages, and access to medical records and "all the agents that were intruded in their bodies." (Doc. 1, unnumbered para/prayer for relief.)

**II.     Arguments and Authorities.**

These defendants are entitled to a complete dismissal of all claims alleged against them. As a matter of law: (1) Claims for money damages, intended against the University, must be dismissed because, as an arm of the State of Kansas, Kansas Homeland Security is immune from such claims in federal court; (2) Claims alleged against Defendant Weishaar, in his official capacity, must be dismissed because in this capacity he shares the State's immunity from money damages, and there does not appear to be a clear request for injunctive relief relating to defendant Weishaar in his official capacity; (3) Claims alleged against Defendant Weishaar, in his individual capacity, must be dismissed because qualified immunity protects him from liability for civil damages; and, (4) Plaintiffs' allegations are nonsense, and as such, fail to state a claim as a matter of law.

a.   <u>Motion to Dismiss Standards (FRCP 12(b)(1) and (6)</u>

In general, a plaintiff's complaint must contain sufficient factual matter to state a claim that is plausible – not merely conceivable – on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In ruling on these Defendants'

motion under FRCP 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. Plaintiff bears the burden of alleging enough facts to suggest that he is entitled to relief; he must do more than make threadbare recitals of a cause of action accompanied by conclusory statements. *Twombly*, 550 U.S. at 556. The court need not accept a plaintiff's conclusory allegations. *Loggins v. Cline*, 568 F. Supp. 2d 1265, 1268 (D. Kan. 2008).

Defendants are entitled to Eleventh Amendment and Qualified Immunity. Federal courts are courts of limited jurisdiction and must have a statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Dismissal is appropriate when it becomes apparent that jurisdiction is lacking. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). Eleventh Amendment Immunity is jurisdictional in nature. *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir.  2013). Plaintiff bears the burden of establishing that jurisdiction is proper. *Montoya*, 296 F.3d at 955; *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1194 (2010).

A Rule 12(b)(1) motion to dismiss requires a court to dismiss any action for which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be pursued as a facial attack or a factual attack. *See Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.* Having raised subject matter jurisdiction, Plaintiffs now have "[t]he burden of establishing subject matter jurisdiction" because they are "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.,* 518 F.3d 1186, 1189 (10th Cir. 2008).

b. David Weishaar and the State are immune from suit pursuant to the Eleventh Amendment

In addition to Plaintiffs' failure to state a claim, dismissal is urged as to defendant Weishaar and the State on grounds of Eleventh Amend. Immunity, as claims for money damages against a state employee in their official capacity are generally barred by the Eleventh Amendment doctrine of sovereign immunity. *Fent v. OK Water Resources Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

> Generally, the Eleventh Amendment shields from suit state officials acting in their official capacity. *Wares v. VanBebber*, 231 F.Supp.2d 1120, 1124 (D.Kan.2002) … Congress did not intend to abrogate state immunity. *Neal v. Lewis*, 325 F.Supp.2d 1231, 1235 (D.Kan.2004). Thus, when state officials act in their official capacities, they are entitled to absolute immunity. *Id*.

*Hernandez v. Conde*, 442 F.Supp.2d 1141, 1152 (D.Kan.2006). Although, claims for certain prospective equitable relief can be brought against state officials sued in their official capacity, claims for monetary damages are barred. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998).

c. Defendant Weishaar is Entitled to Qualified Immunity

In the unlikely event that this Court implies a claim pursuant to 42 U.S.C. § 1983, despite Plaintiffs' failure to state such, the Complaint must fail as a matter of law because qualified immunity bars their claims, as alleged against defendant Weishaar. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). This immunity is "immunity from suit  rather than a mere defense to  liability." *Mitchell v. Forsyth*, 472 U.S.  511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Tenth Circuit places a presumption in favor of immunity for public officials sued in their individual capacities. *Hidahl v. Gilpin County DSS*, 938

F.2d 1150, 1155 (1991); *Schalk v. Gallemore,* 906 F.2d 491, 499 (10th Cir.1990); *Melton v. City of Oklahoma City*, 879 F.2d 706, 728–29 (10th Cir.1989).

### III.    Conclusion

For the reasons outlined above, defendants Kansas Homeland Security and Weishaar, are entitled to a complete dismissal of all claims alleged against them.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
KRIS KOBACH

*/s/ Carrie A. Barney*
Carrie A. Barney, KS #22872
Assistant Attorney General/Trial Counsel
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas, 66612-1597
Phone: (785) 368-6695
Fax:    (785) 291-3767
Email: carrie.barney@ag.ks.gov
*Attorney for Defendants Kansas Homeland Security & Weishaar*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2023, the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notice to counsel of record and to Plaintiff, by US Mail, postage prepaid on March 10th, 2023, as follows:

Carla Davis
901 N. Belmont
Wichita, KS  67208
*Pro se Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Pro se Plaintiff*

*/s/ Carrie A. Barney*
Carrie A. Barney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

        Plaintiffs,

vs.                                  Case No. 6:23-cv-1010-JAR-GEB

U.S. DEPARTMENT OF JUSTICE, et al.,

        Defendants.

### MOTION TO DISMISS BY FORMER UNITED STATES ATTORNEY DUSTON SLINKARD[1] AND U.S. DISTRICT COURT CHIEF JUDGE ERIC MELGREN AS THE FORMER UNITED STATES ATTORNEY FOR THE DISTRICT OF KANSAS

The United States, on behalf of Duston Slinkard, Former United States Attorney for the District of Kansas in his individual capacity and U.S. District Court Chief Judge Eric Melgren, as former United States Attorney for the District of Kansas in his individual capacity,[2] files this motion to dismiss all of Plaintiffs' claims against these defendants pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim.

In support of this motion, the Duston Slinkard and Eric Melgren submit a Memorandum in Support of their Motion to Dismiss which is hereby incorporated into and made a part of this Motion by reference.

---

[1] On March 10, 2023, Kate E. Brubacher was sworn in as the United States Attorney for the District of Kansas.  Duston Slinkard is now the First Assistant United States Attorney (FAUSA) for the District of Kansas.

[2] The United States has already filed a motion to dismiss Plaintiffs' official capacity claims against Duston Skinkard and Chief Judge Melgren.  *See* (Docs. 100-101).

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S.Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorneys for the Former United States
Attorney Duston Slinkard and
U.S. District Court Judge Eric Melgren as
former United States Attorney for the District
of Kansas

## CERTIFICATE OF SERVICE

I certify that on March 13, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system and a paper copy was sent to the Plaintiffs by U.S. mail addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

          Plaintiffs,

vs.                                Case No. 6:23-cv-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al.,

          Defendants.

## MEMORANDUM IN SUPPORT OF FORMER UNITED STATES ATTORNEY DUSTON SLINKARD[1] AND U.S. DISTRICT COURT JUDGE ERIC MELGREN AS THE FORMER UNITED STATES ATTORNEY FOR THE DISTRICT OF KANSAS' MOTION TO DISMISS

The United States, on behalf of Duston Slinkard, Former United States Attorney for the

District of Kansas in his individual capacity and U.S. District Court Judge Eric Melgren, as former

United States Attorney for the District of Kansas in his individual capacity,[2] files this memorandum

in support of their motion to dismiss all of Plaintiffs' claims against these defendants pursuant to

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a

claim.

## Overview

On January 23, 2023, *pro se* Plaintiffs commenced this action against the United States

Department of Justice, Department of Health and Human Services, and four officers or employees

of the United States—U.S. Attorney General Merrick B. Garland, Secretary of Health and Human

---

[1] On March 10, 2023, Kate E. Brubacher was sworn in as the United States Attorney for the District of Kansas. Duston Slinkard is now the First Assistant United States Attorney (FAUSA) for the District of Kansas.

[2] The United States has already filed a motion to dismiss Plaintiffs' official capacity claims against Duston Slinkard and Chief Judge Melgren. *See* (Docs. 100-101).

Services Xavier Becerra, United States Attorney for the District of Kansas Duston Slinkard, and U.S. District Court Judge Eric Melgren, formerly United States Attorney for the District of Kansas. Plaintiffs also name numerous other non-federal persons or entities as defendants.

Plaintiffs allege that this action is brought "pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985 seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution." *Compl*. 1, ¶ 43.   However, Plaintiffs fail to allege *any* facts indicating what any federal defendant purportedly did to harm them.

Plaintiffs begin their factual allegations by stating that after September 11, 2001, the State of Kansas received federal funding to create a Bioterrorism Hospital Preparedness and Coordinating Council. *Id.* at ¶ 46.   After citing a number of events in 2002 pertaining to bioterrorism and health laws, Plaintiff Carla Davis alleges that on October 18, 2002, she made health care choices for herself that did not get fulfilled, resulting in a violation of her rights as well as the rights of her unborn son, Plaintiff Jalen Davis.   *Id.* at ¶ 57.   From there she relates being mistreated by hospital personnel to include being administered toxic doses of drugs, rape, and stabbing with a needle. *Id.* at ¶ 63-67.   Then in 2008, "public officials" stole the blood of Jalen Davis at Children's Mercy Hospital and prevented him from receiving medical treatment. *Id.* at ¶ 70.   In addition, she was falsely accused of child abuse and denied access to her and Jalen Davis' medical records and is still being denied access to medical records. *Id.* at ¶ 71-72.   Plaintiffs seek monetary damages for these actions and access to their medical records.

## Legal Standards

**A.      Rule 12(b)(1) Standards**

"Federal courts are courts of limited jurisdiction." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). This Court's jurisdiction is established by the Constitution and acts of Congress. *See United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982), and they are not omnipotent.  They draw their jurisdiction from the powers specifically granted by Congress, *id.* at 701–02.").  "Sovereign immunity is jurisdictional in nature.  Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (*quoting United States v. Sherwood*, 312 U.S. 584, 586(1941).

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint based on lack of jurisdiction over the subject matter of the complaint. *See Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1324 (10th Cir. 2002).  When determining subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations, and has wide discretion to review outside documents. *Id.; see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  This Court may dismiss a claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) by assuming either all well-pleaded facts are true or where facts underlying subject matter jurisdiction are challenged, the Court has discretion to allow affidavits and other documents to resolve jurisdictional facts. *Holt*, 46 F.3d at 1002-03. When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v. United States*, 235 F.3d 1249,

1255 (10th Cir. 2000).   The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court.   *Id.* at 1257.

"[T]he court has an independent obligation to satisfy itself that subject matter jurisdiction is proper."  *Coffman v. CHS Gas & Oil*, No. 18-4031-DDC-GEB, 2018 WL 3616948, at *3 (D. Kan. July 30, 2018), *appeal dismissed*, No. 18-3168, 2018 WL 7223064 (10th Cir. Nov. 27, 2018) (*citing Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).   The court "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Id. (citing Penteco Corp. Ltd. P'ship v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").   The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

**B.      Rule 12(b)(6) Standards**

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs must set forth a complaint that contains "a short and plain statement of the claim showing that the pleader is entitled to relief," and that is "*plausible on its face.*" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements. *Id.* at 545.

The facts pled must provide more than a speculative chance of the right to relief. *Id.* Furthermore, in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570).   Facial plausibility is found "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008).

### C.      Pro Se Litigant Standards

Plaintiffs are proceeding pro se in this case. "[A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotation omitted). In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). Additionally, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'") (*quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)); *see also Drake v. City*

*of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded

pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence

of any discussion of those issues""). Nor is the court to "supply additional factual allegations to

round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir.

1997).

<u>**Analysis**</u>

I.   **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R.
     CIV. P. 12(B)(1) BECAUSE THEY ARE SO COMPLETELY DEVOID OF
     MERIT THAT THE COURT LACKS SUBJECT MATTER JURISDICTION
     TO CONSIDER THEM**

Plaintiffs' claims against Duston Slinkard and Chief Judge Melgren are so insubstantial

and implausible that this court lacks subject matter jurisdiction to consider them.   Plaintiffs'

Complaint offers no clues for the basis for any claim against these Defendants and for events so

remote in time that they are plainly time-barred.  *See Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th

Cir. 2003) (courts lack jurisdiction "when the claim is so insubstantial, implausible, foreclosed by

prior decisions, . . . or otherwise completely devoid of merit as not to involve a federal controversy"

(quotation omitted)); *Frank v. Bush*, No. 09-4146-RDR, 2010 WL 1408405, at *2-3, 7 (D. Kan.

Apr. 2, 2010) (dismissing, as insubstantial, action under FISA and the Patriot Act alleging that

former state legislator and other officials unlawfully surveilled plaintiff and "use[d] a 'steroid

cocktail' to try and cause [the] death" of plaintiff's spouse, stating "[c]laims presenting bizarre

conspiracy theories or describing fantastic government manipulations exemplify matters which

may be dismissed . . . for lack of subject matter jurisdiction") (collecting similar cases), *aff'd*, 391

F. App'x 745 (10th Cir. 2010); *Thibeaux v. Cain*, 448 F. App'x 863, 864 (10th Cir. 2012)

(affirming dismissal of Section 1983 action alleging secret surveillance of plaintiff, stating "a

finding of factual frivolousness is appropriate when the facts alleged rise to the level of the

irrational or the wholly incredible" (quotation omitted)); *Tarshik v. Kansas*, 327 F. App'x 56, 57

(10th Cir. 2009) (affirming dismissal of "insubstantial" action alleging that defendants participated

in an "organized crime syndicate which has repeatedly tried to poison him and caused him a variety

of injuries").

**II.   IF CONSTRUED AS CLAIMS BROUGHT UNDER THE FEDERAL TORT CLAIMS ACT (FTCA), PLAINTIFFS' CLAIMS AGAINST DUSTON SLINKARD AND CHIEF JUDGE ERIC MELGREN ARE BARRED BY SOVEREIGN IMMUNITY BECAUSE ONLY THE UNITED STATES IS A PROPER DEFENDANT UNDER THE FTCA**

While difficult to discern from the Complaint, if Plaintiffs intend to allege tort claims

against all named Defendants in this action including Duston Slinkard and Chief Judge Melgren,

Plaintiffs have failed to name the United States as a party—dooming their claims to dismissal.

"The United States is the only proper defendant in an FTCA action." *Oxendine v. Kaplan*, 241

F.3d 1272, 1275 n. 4 (10th Cir. 2001).

> As an initial matter, we, like the district court, note that Smith asserted his FTCA claim against all the named defendants. "The United States is the only proper defendant in an FTCA action." *Oxendine v. Kaplan,* 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001). Thus, the district court correctly dismissed Smith's FTCA claims against every defendant except the United States on the ground that those defendants were not proper parties.

*Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009).  *See Wilson v. U.S. Marshals Serv.*,

17-3224-SAC, 2018 WL 4681638, at *5 (D. Kan. Sept. 28, 2018) (same).

> The FTCA allows a plaintiff to assert a claim for money damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee" of the United States. 28 U.S.C. § 1346(b)(1). The FTCA "provides the exclusive remedy for tort actions against the federal government, its agencies, and employees." *Wexler v. Merit Sys. Prot. Bd.*, 1993 WL 53548 *2 (10th Cir. 2/17/1993). Only the United States, however, is a proper defendant in a lawsuit under the Federal Tort Claims Act. Plaintiff names the Department of Justice as a defendant. "[F]ailure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." *Id*. (citing *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990) and *Vernell v. U.S. Postal Service*, 819 F.2d 108, 110 (5th Cir. 1987)); *see also Ngiendo v.*

7

> *Social Security Administration*, 547 Fed. Appx. 913, 914 (10th Cir. 2013); *Hudson v. Cahill*, 2015 WL 6738714 *2 (D. Kan. 11/4/2015); *Davenport v. U.S. Dept. of Treasury*, 2015 WL 1346847 *1 (D. Kan. 3/25/2015).

*Jones v. Dep't of Justice*, No. 16-3173-SAC-DJW, 2016 WL 11551058, at *2 (D. Kan. Oct. 19, 2016).  Consequently, Plaintiffs' tort claims, liberally construed as FTCA claims, against these named defendants must be dismissed for lack of subject matter jurisdiction.  *See Leavenworth Cty., Kansas, Bd. of Commissioners v. Lewis*, No. 19-02664-EFM-TJJ, 2020 WL 1659864, at *3 (D. Kan. Apr. 3, 2020) ("It is well-established, however, that only the United States is a proper defendant in a lawsuit under the FTCA.  Indeed, the 'failure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction.'  Accordingly, Lewis' claims under the FTCA against May and Medina must be dismissed for lack of subject matter jurisdiction.") (footnotes/citations omitted).

## III.   PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS AGAINST DUSTON SLINKARD AND CHIEF JUDGE ERIC MELGREN FAIL AS A MATTER OF LAW.

### A.   Plaintiffs Assert no Plausible Claim Against Duston Slinkard or Chief Judge Eric Melgren in Their Individual Capacity.

To the extent Plaintiffs' Complaint is construed to assert claims against Duston Slinkard or Chief Judge Melgren in their individual capacities, those claims lack any factual basis for personal involvement by either and should be dismissed under Rule 12(b)(6) for failure to state a plausible claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

**B.**     **Because Section 1983 Applies to State Actors, Plaintiffs Cannot Assert Valid 1983 Claims Against Duston Slinkard or Chief Judge Eric Melgren.**

Plaintiffs' Section 1983 claims against Duston Slinkard or Chief Judge Melgren fail as a matter of law because they are federal employees, not state actors.  *See Shepherd v. Robbins*, 55 F.4th 810, 813 (10th Cir. 2022) ("Congress enacted 42 U.S.C. § 1983 as the vehicle to remedy a *state* actor's violation of a person's federal rights.") (emphasis added); *Schmidt v. Hardman*, 189 F. App'x 741, 742 (10th Cir. 2006) ("As the district court held, 42 U.S.C. § 1983 applies to state rather than federal actors, 42 U.S.C. § 1985 to claims of racial discrimination . . .); *Crowe v. Gee*, No. 1:21-cv-00503-KWR-KRS, 2022 WL 17360272, at *2 (D.N.M. Dec. 1, 2022) ("Section 1983 provides a vehicle a person whose federal constitutional or statutory rights have been violated by state or local officials 'acting under color of state law.' The Defendants in this lawsuit—a federal agency and two federal probation officers—cannot be sued under § 1983 because they are not state actors.").

Even if Plaintiffs could assert 1983 claims against the individual Federal Defendants, Plaintiffs' claims that occurred no later than August 2010 are plainly time-barred.  *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) ("Because plaintiff's § 1983 claims arose in Kansas, the court applies Kansas's two-year statute of limitations for personal injury actions to his claims. *See* Kan. Stat. Ann. § 60–513(a)(4)."), *aff'd in part, dismissed in part sub nom. Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019).  The same is true for Plaintiffs' 1985 claims.  *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

**C.     Plaintiffs' Complaint Alleges No Viable *Bivens* Claim Against the Federal Defendants.**

Because Plaintiffs' Section 1983 claims do not apply to federal employees, they may suggest that their claims against Duston Slinkard and Chief Judge Melgren should be construed as *Bivens*[3] claims, but this the Court should not do in light of recent Supreme Court and Tenth Circuit precedent.  *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) ("[W]e have emphasized that recognizing a cause of action under *Bivens* is a disfavored judicial activity.'") (*quoting Ziglar v. Abbasi*, 137 S. Ct. 1843, at 1856-1857 (2017) (internal quotation marks omitted)); *see Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("We take several lessons from *Egbert*.  First and foremost, we are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' *id.* at 1803 (*quoting Abbasi*, 137 S. Ct. at 1857), it is an action that is impermissible in virtually all circumstances.").  Plaintiffs cannot demonstrate a viable *Bivens* claim against the Federal Defendants.[4]

And even if Plaintiffs' claims are construed to assert *Bivens* claims against Duston Slinkard or Chief Judge Melgren in their individual capacity, they are time-barred.  The statute of limitations for *Bivens* actions in Kansas is two years.  *Logan v. United States,* 272 F. Supp. 2d 1182, 1185 (D. Kan. 2003).  "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the

---

[3]  *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (authorizing a suit for damages against federal officials whose actions violated an individual's constitutional rights, even though Congress had not expressly authorized such suits).

[4]  Even if Plaintiffs' complaint invokes a new type of *Bivens* claim and alleged an individual capacity claim against Duston Slinkard or Chief Judge Melgren, Plaintiffs' claims against them are also precluded by qualified immunity for the Complaint's failure to allege the violation of any constitutional or statutory right that is clearly established under law.  *See White v. Pauly*, 137 S. Ct. 548, 551 (2017) (qualified immunity is appropriate unless existing precedent has placed the statutory or constitutional question beyond debate).

basis of his action." *Van Tu v. Koster,* 364 F.3d 1196, 1199 (10th Cir. 2004) (internal quotation omitted).  Any individual capacity *Bivens* claim is time-barred.

    **D.**    **Plaintiffs' Claims Against Chief Judge Eric Melgren For Any Judicial Act Are Barred By Judicial Immunity.**

    Although Plaintiffs' Complaint ostensibly suggests that Chief Judge Melgren is being sued for events that occurred during the time he served as the United States Attorney for the District of Kansas between March 2002 and September 2008, *see* https://www.ksd.uscourts.gov/content/chief-judge-eric-f-melgren (" In March 2002, President George W. Bush appointed Melgren United States Attorney for the District of Kansas. He served in that position until September 2008, when the U. S. Senate confirmed President Bush's nomination of Melgren to the U.S. District Court in Kansas."), any claims against Chief Judge Melgren for any judicial decision that occurred after his appointment to the federal bench are barred by judicial immunity.  *See Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, (1985).  Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly"). *See Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994) (*citing Dennis v. Sparks*, 449 U.S. 24, 27 (1980) ("[J]udges enjoy absolute immunity from liability under § 1983—even when the judge allegedly conspires with private parties.")).

E.    **Plaintiffs' Claims Against Federal Prosecutors are Barred by Absolute Immunity.**

To the extent Plaintiffs' Complaint asserts any claims that challenge the prosecutorial discretion or the judicial phase of a criminal prosecution under the direction of either Duston Slinkard or Chief Judge Melgren, such claims are barred by prosecutorial immunity. *See Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) ("Prosecutors generally enjoy absolute immunity from suit for activities that are 'intimately associated with the judicial phase of the criminal process.'") (*quoting Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

## Conclusion

Plaintiffs' claims against Duston Slinkard and Chief Judge Melgren in their individual capacities should be dismissed for lack of subject matter jurisdiction or failure to state a plausible claim. The claims suffer numerous flaws that cannot be saved by amendment. Plaintiffs cannot pursue claims against Duston Slinkard or Chief Judge Melgren in their individual capacities as § 1983 claims do not apply to federal actors and Plaintiffs fail to state a viable *Bivens* claim or overcome their assertion that such claims are barred by qualified immunity. Finally, and perhaps most importantly, *all* of Plaintiffs claims are barred by the applicable statute of limitations, no matter how the claims are characterized.

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S.Ct. No. 14225
500 State Avenue, Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorneys for the Former United States
Attorney Duston Slinkard and
U.S. District Court Judge Eric Melgren as
former United States Attorney for the District
of Kansas

CERTIFICATE OF SERVICE

I certify that on March 13, 2023, this document was electronically filed with the Clerk of
the Court by using the CM/ECF system and a paper copy was sent to the Plaintiffs by U.S. mail
addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARLA DAVIS and ) | |
| JALEN DAVIS, ) | |
| **Plaintiffs,** ) | |
| vs. ) | **Case No. 6:23-CV-1010-JAR-KGG** |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, et al ) | |
| **Defendants.** ) | |

## DEFENDANT BRENDA KALLENMEYN, M.D.'S
## MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Brenda Kallemeyn, M.D., in her individual capacity, and hereby files her motion to pursuant to Rule 12(b)(1), 12(b)(5) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support of this motion, the Defendant submits a Memorandum in Support of her Motion to Dismiss which is hereby incorporated into and made a part of this motion by reference.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**


/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn, and*
*Wichita Center for Graduate Medical Education*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of March, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro se plaintiffs***


                                        /s/ Chris S. Cole
                                        Chris S. Cole, #16343
                                        ***Attorneys for Clark Shultz, the Kansas***
                                        ***Health Care Stabilization Fund, Brenda Kallemeyn, and***
                                        ***Wichita Center for Graduate Medical Education***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **CARLA DAVIS and** | ) | |
| **JALEN DAVIS,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 6:23-CV-1010-JAR-KGG** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE, et al** | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT BRENDA KALLENMEYN, M.D.'S MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Brenda Kallemeyn, M.D. and hereby submits this memorandum brief in support of her motion to pursuant to Rule 12(b)(1), 12(b)(5) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Complaint identifies more than forty defendants.  The defendants include a variety of federal, state, county and municipal agencies and officials, numerous health care providers, and two law firms.  The Complaint states that Plaintiffs bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes approximately one page of "Statement of Facts."  In that section, Plaintiffs describe federal funding of efforts to protect the nation from bioterrorism and enactment of federal legislation on that subject in 2002, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state and local levels.  Finally, Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was

pregnant in 2002 with her son Jalen Davis, that she received pre-natal care from an obstetrician and medical clinic in Wichita, and finally, that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments."  In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January, 2003. Plaintiffs allege that in 2002 Carla Davis had told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center, and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor.  (Doc. 1, ¶¶ 60, 61).  Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases;  that Carla was stabbed deeply in the back with a needle by Tom Yao, causing severe pain;  that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions.  (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February, 2004 (likely meant to be February, 2005).  (Doc. 1, ¶ 68).  A medical record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain.  (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to

obtain health care, their ability make social security benefit claims, and in prosecuting an auto accident injury claim.  (Doc. 1 at ¶67 (2) - ¶(2)).  Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008, that Carla Davis was falsely accused of child abuse, but found innocent, and of an attempted abduction of Jalen by a social worker. (Doc. 1, ¶¶ 70-71).  Plaintiffs allege that unspecified public officials and their  cooperators are concealing the unlawful bodily intrusions and serious injuries  resulting therefrom. (*Id.* at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

## ARGUMENTS AND AUTHORITIES

Defendant Kallemeyn is entitled to dismissal of Plaintiffs' claims with prejudice on several bases.  First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against Defendant Kallemeyn upon which relief can be granted.  Second, pursuant to Rule 12(b)(1), as a result of the lack of specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court.  Third, dismissal pursuant to Rule 12(b)(6) is appropriate because the Complaint reveals on its face that the statute of limitations on any purported claims against these Defendants has long ago expired.  And finally, Plaintiffs have not properly served Defendant with process, entitling Defendant to dismissal pursuant to Rule 12(b)(5).

While Plaintiffs purport to assert claims against Dr. Kallemeyn in both her official and individual capacities, they fail to allege any official capacity of Dr. Kallemeyn.  One might presume, because Plaintiffs identify Dr. Kallemeyn as a medical student of the KU School of Medicine, that Plaintiffs mean to refer to some official capacity with the medical school.  Dr.

Kallemeyn, as a medical student, almost certainly could not constitute an official of the KU School of Medicine for purposes of a claim in an official capacity.   Nonetheless, any such claims would actually be claims against KU School of Medicine, as "[a] suit against a state official in his or her official capacity. . . is no different than a suit against the State itself." *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services,* 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.3d.2d 45 (1989)). ". . .an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (citing *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985)).

Even if an "official capacity" claim were possible, the KU School of Medicine is separately named as a defendant, and has itself separately responded to Plaintiffs' Complaint through its counsel.  (See Doc. 113 and Doc. 117).  While Defendant Kallemeyn believes the principles discussed in this motion are equally dispositive of any official capacity suit against Dr. Kallemeyn, this motion concerns Plaintiffs' claims against her in her individual capacity.  Counsel for Dr. Kallemeyn does not represent the KU School of Medicine.

# I.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.  Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court. *Id.* at 1257.

Plaintiffs are proceeding pro se. [A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Garrett v.*

*Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  In *Hall v. Bellmon*, 935 F.2d

1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the
> pleadings to state a valid claim on which the plaintiff could prevail, it
> should do so despite the plaintiff's failure to cite proper legal authority, his
> confusion of various legal theories, his poor syntax and sentence
> construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  However, it is

not the proper function of the district court to assume the role of the advocate for the pro se

litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure.  *See Ogden v. San

Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of

any litigant to comply with the fundamental requirements of the Federal Rules of Civil and

Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has

repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other

litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  "Despite the liberal

construction afforded pro se pleadings, the court will not construct arguments or theories for the

plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927

F.2d 1156, 1159 (10th Cir. 1991).  Nor is the court to "supply additional factual allegations to

round out a plaintiff's complaint."  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir.

1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."  The claim must be

"*plausible on its face*."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis

added).  A plaintiff's complaint must include more than labels, legal conclusions, and formulaic

recitations of the cause of action's elements. *Id*. at 545. To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or § 1985 claim against Dr. Kallemeyn. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17,

6

2022).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994).

**B.    There Are Insufficient Allegations in Plaintiffs' Complaint to State a Claim Against These Defendants.**

Plaintiffs' Complaint fails to meet the above-stated standards. There is complete lack of any allegation of conduct by Dr. Kallemeyn in the Plaintiffs' Complaint, beyond identifying her as a medical student in 2003. From this description of her as a medical student in 2003, perhaps one could infer an allegation that she in some way participated in the medical care provided to Plaintiffs in 2003. However, there are no allegations actually indicating her involvement in any of the events described in the statements of fact in Plaintiffs' Complaint. Similarly, there are no allegations in the Claim for Relief portion of the Complaint indicating any involvement by Dr. Kallemeyn in any of the purported constitutional violations. Simply put, beyond having been identified among the many defendants in the suit, Dr. Kallemeyn is ever again mentioned in the Complaint. As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief against her.

Plaintiffs do not identify acts or omissions of Dr. Kallemeyn at all in their Complaint, much less state how any alleged act or omission of Dr. Kallemeyn has any relation to their constitutional claims. Thus, Plaintiffs have failed to state a plausible § 1983 against Dr. Kallemeyn in her individual capacity by failing to allege personal involvement by Dr.

Kallemeyn in the claimed deprivation of their rights. Plaintiffs' Complaint also includes no allegation of conduct under color of state law.

Plaintiffs have also not pleaded any factual allegations indicating that Dr. Kallemeyn had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Moreover, conspiracy claims must be pled with specificity, rather than by a mere conclusory allegation, which is the most that can be said of the Plaintiffs' Complaint. Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Kallemeyn for these reasons as well.

To the extent the complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that Dr. Kallemeyn had, or could have had, any involvement in those matters. There is no allegation in the complaint that Dr. Kallemeyn possesses any medical records of these Plaintiffs. Certainly, there is no allegation that Plaintiffs have ever requested medical records from Dr. Kallemeyn, or that such a request (futile as it might be) was refused. There is clearly no basis to infer that Dr. Kallemeyn has acted in any manner that could serve as the basis for the constitutional claims asserted.

Plaintiffs' complaint should therefore be dismissed as to Dr. Kallemeyn for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS ACTUALLY BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE, ENTITLING DEFENDANT TO A DISMISSAL PURSUANT TO RULE 12(b)(1).

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy,"

then the  complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is  presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as  'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'"  *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but  do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law, then the purported § 1983 claim does not support the district court's exercise  of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on  racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d  746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the  purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x  482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law.  Thus, the  purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit.  Plaintiffs also purport to bring a § 1985 claim. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim.  But, Plaintiffs do not allege a motive based on racial or class-based discrimination.  Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction in on the plaintiff.  Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this court to find existence of subject matter jurisdiction.  First, as discussed above, there is a complete absence of factual allegations of any action on the part of Dr. Kallemeyn.  Beyond that, there is no allegation of any specific action purported to have been taken under color of state law, or any alleged discriminatory motive.  Given the overall implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories.  (See Doc. 101 at 6-7).  The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction.  The circumstances of the Plaintiffs' complaint in this action urges the same result.

**III.    PLAINTIFFS' COMPLAINT DEMONSTRATES THAT ANY CLAIMS WHICH PLAINTIFFS ATTEMPT TO ASSERT ARE BARRED BY EXPIRATION OF THE STATUTES OF LIMITATIONS AND THE STATUTE OF REPOSE.**

Even if Plaintiffs were able to state claims against this Defendant, Plaintiffs' claims are plainly time-barred.  While the complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises.  And, it is clear that more than a decade has passed since those events occurred.  As to Dr. Kallemeyn, whose only mention in the Complaint is that she was a medical student in 2003, approximately 20 years have passed since any possible involvement of Dr. Kallemeyn.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right

sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two year statute of limitations. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal injury actions to his claims), *aff'd in part, dismissed in part sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019). The same is true for Plaintiffs' 1985 claims. *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert a claim arising out of medical care by Defendant Kallemeyn, such claims are also subject to a two year limitations period. See K.S.A. 60-513(a)(7)(establishing a two years limitations period on actions arising out of the rendering or failure to render professional services). While Plaintiffs' complaint includes no specific factual allegation of this Defendant's involvement in their health care, the Complaint certainly does include factual allegations involving health care provided to Plaintiffs in 2003, and asserts that Dr. Kallemeyn was a medical student in 2003. Thus, to the extent Plaintiffs' claims against Defendant arise out of professional services by health care providers, such claims are clearly subject to a two year limitations period.

As discussed at pages 1-3 of this motion, the medical events alleged by Plaintiffs occurred from roughly 2002 to 2008, with the only mention of Dr. Kallemeyn in the Complaint referencing her status in 2003. This action was filed in January, 2023, clearly well beyond the applicable

limitations period.  Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the statute of limitations on his claim has also clearly expired.

K.S.A. 60-515(a) provides as follows:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).  Plaintiffs' claims are barred by the eight year statute of repose imposed by K.S.A. 60-515(a).  This statute expressly prohibits any action commenced "more than 8 years after the time of the act giving rise to the cause of action."  This is true notwithstanding any disability arising from Jalen Davis's status as a minor.   Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from 2002 to 2008, considerably more than 8 years prior to the filing of Complaint in this case.  As such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the eight year statute of repose in K.S.A. 60-515(a).

Application of K.S.A. 60-515(a) bars Jalen Davis's claims on anther basis as well. According to Wesley Medical Center records attached as exhibits to the Plaintiffs' Complaint, Jalen Davis was born January 23, 2003.  As such, he reached the age of majority on January 23, 2021.  To the extent that any viable claim remained at the time he reached the age of majority, he had one year from that date in which to bring the claim pursuant to K.S.A. 60-515(a).  The Complaint in this action was filed January 23, 2023, a full two years after Jalen Davis reached the age of majority, and is therefore time-barred.

If there were any question of the timing of the events complained of in this action, one need only look to a prior lawsuit filed by Carla Davis in 2012.  The petition in that auto accident lawsuit

was filed July 25, 2012.  (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV

2597).  As it is a matter of public record, this Court may take judicial notice of it.  *Hastey on behalf*

*of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020).  As can be seen at

pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in

the complaint in the present action, including that in 2003 she experienced a deep stabbing into

her spine, that multiple toxic agents were administered without her knowledge, that as a result she

experienced medical conditions due to unsafe medical procedures, and that social security benefits

had been denied to her in 2006.  (Exhibit 1 at 3-4).  She further alleged in the 2012 petition, related

to those conditions which pre-existed her auto accident, that she had hidden injuries that were

never communicated to her.  (Id. at 5).  Clearly, not only did the events alleged in Plaintiffs' current

Complaint occur more than a decade ago, but they were known to Mrs. Davis for more than a

decade prior to filing of the present action.

In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by

expiration of the statutes of limitations.  As such, permitting Plaintiffs' claims against these

defendants would be futile, and a waste of judicial resources.

**IV.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12 (b)(5) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OF DEFENDANT DUE TO LACK OF PERSONAL SERVICE OF PROCESS ON DEFENDANT KALLEMEYN.**

Plaintiffs have failed to serve process on this Defendant in a manner meeting the

requirements for service under applicable law.

A Rule 12(b)(5) motion challenges the mode or lack of delivery of a summons and complaint. Objections to the sufficiency of process must be specific and point out in  what manner the plaintiff has failed to satisfy the service provision utilized. When a  defendant challenges the sufficiency of service of process, the burden of proof is on the  plaintiff to show the adequacy of service. A pro se party is not relieved of her obligation to comply with the service of process requirements under Fed. R. Civ. P. 4.

13

*Lewis v. Wyandotte/Leavenworth Area on Aging*, No. 10-2109-JWL, 2010 WL 2735563, at *2 (D. Kan. July 9, 2010) (citations omitted). In federal court, a party does not waive the defense of insufficient service of process by joining it with other arguments or by presenting evidence on the merits of the case. *Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 1556250, at *3 (D. Kan. Apr. 10, 2019). Accordingly, special limited appearances are not required. *Id.*

### A.    Individual capacity claims require service on a defendant as an individual.

"Without personal service in accordance with Rule 4(e), the district court is without jurisdiction to render a personal judgment against a defendant." *Scherer v. United States*, 241 F. Supp. 2d 1270, 1281 (D. Kan. 2003), *aff'd*, 78 F. App'x 687, 690 (10th Cir. 2003). Even if service is properly made on a defendant in his official capacity, service can be improper on that defendant in his individual capacity, requiring dismissal of the individual capacity claims. *Id.* at 1282 (citing *Bartels v. Hecker*, 46 F.3d 1150 (table opinion), 1995 WL 24911, at *2 (10th Cir. Jan. 23, 1995)). Under Federal Rule of Civil Procedure 4(e), service on an individual must be made according to a method allowed by state law or by personal delivery to the individual or to an agent authorized to receive service for the individual in their individual capacity. *See also* Fed. R. Civ. P. 4(i)(3) (requiring service on the individual when suing a federal officer in their individual capacity).

Here, the purported service on Dr. Kallemeyn was made by return receipt delivery to McGreevy Clinic, 1200 S 7th Ave, Sioux Falls, SD 57105-0900, according to the return of service filed by Plaintiffs (Doc. 77). Kansas law does not allow service for individual capacity claims to be made by return receipt delivery to an individual's business address. *Fisher v. DeCarvalho*, 298 Kan. 482, 491-92 (2013); *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1228-31 & n.5 (D. Kan. 2016). Neither does Rule 4. Therefore, no sufficient service has been made on Defendant Kallemeyn in her individual capacity.

**B.     The Court should dismiss claims for improper service when they would also be dismissed under Rule 12(b)(6).**

Although courts have discretion to extend the time for a plaintiff to serve a defendant, claims can properly be dismissed when the claims also fail under Rule 12(b)(6). *Wanjiku*, 173 F. Supp. 3d at 1231-32 (citing *Ngiendo v. Soc. Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013)). Claims can be dismissed on both Rule 12(b)(5) and 12(b)(6) grounds. *Id.* Here, as discussed above, Plaintiffs' claims also fail under Rule 12(b)(6), so the Court should dismiss the Plaintiffs' claims against Dr. Kallemeyn under Rule 12(b)(5) and 12(b)(6).

## <u>CONCLUSION</u>

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed with prejudice as to this Defendant.  Moreover, the Complaint itself reveals that any purported claim by Plaintiffs against this Defendant is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).  Finally, the failure to properly serve Defendant with process provides additional grounds for dismissal under all of the circumstances.

Defendant respectfully prays that her motion be granted, and she be dismissed from this action with prejudice.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**


/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958     Fax:   316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn, and*
*Wichita Center for Graduate Medical Education*

16

## CERTIFICATE OF SERVICE

     I hereby certify that on the 21st day of March, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*


                /s/ Chris S. Cole
                Chris S. Cole, #16343
                *Attorneys for Clark Shultz, the Kansas*
                *Health Care Stabilization Fund, Brenda Kallemeyn, and*
                *Wichita Center for Graduate Medical Education*

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP. DOCKET NO.

2012 JUL 25  A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

**IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT**

CARLA B. DAVIS,                    )
           Plaintiff,          )
vs.                                )    Case No.:
                            )    **12CV2597**
LISA KRISTAN,                      )
           Defendant,          )
_____ )

PURSUANT TO K.S.A. CHAPTER 60

## PETITION, DEMAND FOR JURY TRIAL, EXHIBITS INDEX SHEET, AND EXHIBITS

      COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

      1.      That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

      2.      That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

      3.      This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

      4.      On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

      5.      At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



EXHIBIT
**1**
~~Vol. I 257~~

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6.      Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

7.      Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8.      There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

9      Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

10      Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

11.      Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12.      Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13.      Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14.      Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

COUNT 1

15.      Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.     Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.     Operated vehicle in a negligent manner by inattentive driving. The Code of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver whose vehicle, because of his driving error or *negligent inattention*, collides with another vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in violation of this section. (Exhibits E2-E3)

18.     Failed to keep a proper outlook. Defendant was distracted doing other things while driving, which may become known at the time of trial, that caused a porcelain plate to slide under Defendant's brake, causing a car accident.

19.     Failed to maintain control of vehicle.

20.     Failed to secure items in her vehicle.

21.     Failed to use due care in the safety of others.

<u>Damages</u>

22.     Plaintiff's significant and frail medical history made her more susceptible to injuries than a person in good health. Defendant's negligence caused an exacerbation (an increase in the severity of a disease or any of its signs or symptoms) of her pre-existing musculoskeletal injuries as supported by the medical records attached to this pleading.

a.     On January 23, 2003, through no fault of her own, and without her knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

       b.     Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

    23.    Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

    24.    Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

*Petition- Page 4-14*

25.      Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.      Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.      Plaintiff did not use as needed assistive devices prior to accident.

28.      Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

      a.      August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken.  Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment.  Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

                    959.01-Head Injury

                    759.09-Neck Injury

                    847.0- Sprains/Strains Neck

                              *Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

b.      Plaintiff's injuries and pain became more severe. August 9, 2010-
Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,
reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:
Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,
neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to
pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction
and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to
non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-
back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.
Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and
inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in
resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic
Therapies were discontinued due to chiropractic therapies causing a worsening of
Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented
in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical          846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical        739.4- Segmental Dysf. Sacrococcygeal

### REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr. Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

    c.    September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

### X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

    d.    In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

## PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

## SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations in Vocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011- Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.

> 723.1-Cervicalgia

> 724.2-Lumbago

> 847.0-Sprain/Strain Cervical

29.   Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.     Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.     Plaintiff has an Associate Degree as a Registered Nurse since the year 2001with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.     Due to pre-existing injuries plaintiff entered occupational retraining in 2009 in order to obtain suitable employment, transitioning from performing skilled nursing patient care, to management skills. (Exhibits S1-S12)

32.     During 2009 Plaintiff returned to college, and was participating in gainful activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.     Prior to accident Plaintiff was working as a home care attendant, assisting the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.     Plaintiff completed a degree in Organizational Management & Leadership Program at Friend's University July 2010, and was enrolled at Wichita State University in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.     A significant lifestyle change has occurred in Plaintiff's life since the accident. Necessary activities of daily living such as dressing, bathing, squatting to use toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain, fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has painful impingements throughout the spine. Joints in her neck and extremities makes painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.     Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.     Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.     Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.     Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21 2015

*Petition -Page 13-14*

## CERTIFICATE OF SERVICE

I hereby certify that on the _24th_ day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:

Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

Carla B. Davis

*PETITION- Page 14-14*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and          )
JALEN DAVIS             )
          Plaintiff,      )
                   )
    vs.              )    CASE NO.    23-1010-JAR-KGG
                   )
U. S. DEPARTMENT OF JUSTICE, et al.  )
                   )
        Defendants.    )
_____)

### MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF

COMES NOW, Defendant Board of County Commissioners of Sedgwick County, Kansas, by and through Kevin T. Stamper, Assistant Sedgwick County Counselor, and for its response to the Complaint of Plaintiffs, hereby moves to dismiss the above-captioned action with prejudice to its re-filing, pursuant to F.R.Civ.P. 12(b)(6).

In support of this Motion, this named Defendant does hereby allege and state as follows:

### NATURE OF THE CASE

The Complaint, premised as claims pursuant to 42 U.S.C. §1983 and §1985, posits that a collection of Federal, State, County, and City governmental bodies and officials, a couple of local law firms, and a plethora of health care providers and facilities, jointly coordinated to implant Plaintiff Carla Davis with "an unknown device," also referred to as "weapons of mass destruction" [Doc. 1-1 at 3, 4, 5], on February 4, 2004.  [Doc. 1 at 8].  Plaintiff Carla Davis also alleges that all these same actors "incapacitated" her and her unborn child "with toxic does [*sic*] of the drug Fentanyl" on January 23, 2003.  [*Id.*]  The final accusation potentially constituting a cause of action blames "public officials" for refusing to provide her with medical records from these remote events [*Id.*], while failing to acknowledge that Plaintiff C. Davis attached a variety

of her medical records to her Complaint. [Doc. 1-1]. Specific to this moving Defendant, Plaintiffs Davis sue the Board of County Commissioners "in their official and individual capacity." [Doc. 1 at 4].

## ARGUMENTS AND AUTHORITIES

### I.      Plaintiffs' Claims Fail on the Face of the Complaint

Sedgwick County Board of County Commissioners (hereinafter "BOCC") is named as a Defendant in the caption of the Complaint, and then mentioned again in paragraphs 19, 51, 52, and (charitably) 53 of same. [Doc. 1]   Paragraph 19 designates BOCC as  a Defendant, Paragraph 51 mentions an irrelevant issue relating to an agreement with the KU School of Medicine,  Paragraph 52 notes that BOCC approved a contract for bioterrorism preparedness, and Paragraph 53 discusses a previous Sedgwick County Health Officer, whose service ended in 2008.  BOCC is not mentioned with specificity anywhere else in the body of Document 1.  The Complaint alleges that the BOCC is sued in its official and individual capacities, but fails to designate the constituent members of the Board be either name or number, and omits any mention of actions or inactions undertaken by those persons constituting a violation of the Davis' Constitutional rights.  Of the primary allegations raised, that Ms. Davis was drugged, directed to the wrong hospital, raped by a nurse, stabbed by a different person, or implanted with an unknown device, those claims are directed at others, and no participation by BOCC or its membership is stated, or even implied.

Federal Rule of Civil Procedure 8 requires that a Complaint contain short, plain statements of fact in support of the claims raised, and a demand for relief sought.  Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a Complaint when it fails to state causes of action for which relief can be granted.  On its face, the Complaint fails to set forth a credible prima facie claim against the BOCC in its official capacity, let alone its constituent members individually, and such should be dismissed at this time.  "In general, state actors may only be

held liable under § 1983 for their own acts, not the acts of third parties." <u>Robbins v. Oklahoma,</u> 519 F.3d 1242, 1251 (10th Cir. 2008) (citing <u>DeShaney v. Winnebago Cty. Dep't of Social Servs.,</u> 489 U.S. 189, 197 (1989)).  In their Complaint, Plaintiffs must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (citing <u>Twombly</u>, 550 U.S. at 564 n.10).

To establish § 1983 liability for BOCC as an organization, Plaintiffs are required to allege constitutional violations because of enforcement of a municipal policy or custom. <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 694 (1978) ("it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983").  A "municipal policy or custom" means a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." <u>Schneider v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 770 (10th Cir. 2013). Courts have held that § 1983 municipal liability may only be imposed when the enforcement of a such a policy or custom was the "moving force" behind the violation of federally-protected rights. See <u>Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown</u>, 520 U.S. 397, 404 (1997); Monell, 436 U.S. at 694.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities.  <u>Hidahl v. Gilpin County Dep't of Social Services</u>, 938 F.2d 1150, 1155. This defense provides "protection to all but the plainly incompetent and those who knowingly violate the law." *Id.*, quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986.)  A concise explanation of the qualified immunity standard was recently set forth in <u>Alexander v. Bouse</u>, No. 17-2067-CM-JPO, p. 5, 2018 WL 1083256 (D. Kan. Feb. 28, 2018):

> Qualified immunity is a defense to individual capacity claims. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." <u>Plumhoff v. Rickard</u>, 134 S. Ct. 2012, 2023 (2014)

3

(quoting <u>Ashcroft</u>, 563 U.S. at 735). A right is not "clearly established" under the law "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Id. This means that "existing precedent must have placed the statutory or constitutional question confronted by the official 'beyond debate.'" *Id.* Qualified immunity protects public employees from the burdens of litigation as well as liability. <u>A.M. v. Holmes</u>, 830 F.3d 1123, 1135 (10th Cir. 2016).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Id. (emphasis in original). If the plaintiff fails to prove either part of this test, the defendant is entitled to qualified immunity.

Even if Plaintiffs' allegations are construed as ones where the dozens of named defendants conspired in different aspects of the constitutional violations, her claims against BOCC and its members must fail as a matter of law. The Tenth Circuit has evaluated similar cases. In <u>Hunt v. Bennett</u>, 17 F.3d 1263 (10th Cir. 1994), the Court rejected a conspiracy allegation because "Hunt fail[ed] to allege specific facts showing agreement and concerted action among" the allegedly conspiring defendants. *Id*. at 1266. Plaintiff Carla Davis has not stated, implicitly or explicitly, how in any way, she was damaged by any act or inaction of the BOCC. Accordingly, the vague claims of the Plaintiffs Davis are not well pled and fail to state any claim for which relief can be granted.

## II.    Plaintiffs' Claims Would Be Time-Barred

42 U.S.C. §1983 and §1985 claims are not substantive, but a vehicle for addressing Constitutional violations by those acting under the color of state law. Accordingly, both statutes import the applicable law of the state where the alleged action arises. In examining the applicable law, Judge Sam Crow set forth an extensive citation to encapsulate the issue, stating:

The applicable statute of limitations in §§ 1983 and 1985 actions is determined from looking at the appropriate state statute of limitations and governing tolling principles. *See* <u>Hardin v. Straub</u>, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." <u>Brown v. Unified School Dist. 501, Topeka Public Schools</u>, 465 F .3d 1184, 1188 (10th Cir.2006) (citations omitted).

The same two-year statute of limitations governs actions under 42 U.S.C. § 1985. See <u>Alexander v. Oklahoma</u>, 382 F.3d 1206, 1212 (10th Cir.), *rehearing denied*, 391 F.3d 1155 (10th Cir.2004), *cert. denied*, 544 U.S. 1044 (2005).

While the length of the limitations period is governed by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* at 388 (internal quotation marks and citation omitted). "A § 1983 action accrues when facts that would support a cause of action are or should be apparent." <u>Fogle</u>, 435 F.3d at 1258 (internal quotation marks and citation omitted)

<u>Hawkins v. Lemons</u>, 2009 WL 2475130 (2009) (Not designated for publication).

Here, Plaintiffs complain of a variety of purported physical "abuse" sustained by Carla Davis and by virtue of her pregnancy, also the unborn Jalen Davis. By her own admission in the Complaint, the conduct ostensibly serving as the gravamen of Plaintiffs' case occurred in 2002, 2003, and perhaps in 2008. The two-year statute of limitations has long since extinguished the outlandish claims set forth by the Davises, and as a result, same are time-barred.

## <u>CONCLUSION</u>

For reasons set forth above, Defendant Sedgwick County BOCC move the Court for an Order dismissing the claims set forth herein, with prejudice to their re-filing, and for all other and further relief as the Court may deem fair, just, and equitable in the premises.

Respectfully submitted,

/s/ *Kevin T. Stamper*

Kevin T. Stamper, S.C.# 18824
Attorney for Board of County Commissioners of
Sedgwick County, Kansas
Office of the County Counselor
Assistant County Counselor
100 N. Broadway, Suite 650
Wichita, Kansas 67202
Tel: 316.660.9340
Fax: 316.660.9351
Kevin.Stamper@sedgwick.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 23nd day of March, 2023, I electronically filed the foregoing

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk

of the Court by using CM/ECF system, which will send a notice of electronic filing to Any Party

or Counsel who has entered an appearance; and a copy was sent via United States mail, postage

prepaid and properly addressed to Plaintiff as follows

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS  67208
*Pro se plaintiffs*

Respectfully submitted,

/s/ *Kevin T. Stamper*

Kevin T. Stamper, S.C.# 18824
Attorney for Board of County Commissioners of
Sedgwick County, Kansas
Office of the County Counselor
Assistant County Counselor
100 N. Broadway, Suite 650
Wichita, Kansas 67202
Tel: 316.660.9340
Fax: 316.660.9351
Kevin.Stamper@sedgwick.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CARLA DAVIS, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 23-1010-JAR-KGG |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MOTION TO DISMISS

Defendant Marc Bennett respectfully requests, through Assistant Attorney General Matthew L. Shoger, that this Court dismiss all claims against him pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). In accordance with D. Kan. Rule 7.1(a), a memorandum in support is filed with this motion.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorney for Defendants Bennett and Kobach*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 3rd day of April, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which sent electronic notice to counsel of record, with copies also sent to Plaintiffs by means of first-class mail, postage prepaid, addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

/s/ Matthew L. Shoger
Matthew L. Shoger
Assistant Attorney General

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CARLA DAVIS,** *et al.*, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 23-1010-JAR-KGG** |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| ———————————————— ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT BENNETT'S MOTION TO DISMISS

In accordance with D. Kan. Rule 7.1(a), Defendant Marc Bennett submits this memorandum, through Assistant Attorney General Matthew L. Shoger, in support of his motion under Fed. R. Civ. P. 12(b)(1) and (b)(6). Bennett respectfully requests that this motion be granted and this action be dismissed, and states the following in support.

### NATURE OF THE CASE

Plaintiffs Carla and Jalen Davis bring § 1983 and § 1985 claims, alleging past and ongoing violations of unspecified constitutional rights under the Fourth, Fifth, and Fourteenth Amendments. (Doc. 1 at ¶ 43.) The Plaintiffs appear to be attempting to allege a conspiracy to use Plaintiffs without their consent as test subjects to research bioterrorism by injecting or inserting into Carla Davis's body various drugs, substances, or devices between 2002 and 2004 (Doc. 1 at ¶¶ 46-68(1))[1], some of which allegedly occurred while Jalen Davis was *in utero* in Carla Davis's womb (Doc. 1 at ¶¶ 56-57, 63). Plaintiffs refer to this as "Bodily intrusion without Due Process." (Doc. 1 at 8.) Based on the exhibits Plaintiffs provide, they apparently believe

---

[1] Plaintiffs include two paragraphs 67 and 68. The "(1)" is meant here to indicate the first paragraph 68.

"weapons of mass destruction" were involved somehow. (Doc. 1-1 at 3-5.)

The Plaintiffs allege an ongoing refusal by unspecified "public officials" to provide Plaintiffs with their medical records. (Doc. 1 at ¶¶ 67(2)-69, 72, 74.) The Plaintiffs further allege that unspecified "public officials" stole Jalen Davis's blood in August 2008 and prevented Jalen Davis from receiving unspecified medical treatment at an unspecified time. (Doc. 1 at ¶ 70.) The Plaintiffs allege that a U.S. Military Social Worker named Michael Dustin (who is not named as a defendant in this lawsuit) attempted to abduct Jalen Davis at an unspecified time, possibly in Korea. (Doc. 1 at ¶ 70.) The Plaintiffs allege that Carla Davis was falsely accused by unspecified persons of child abuse at an unspecified time, which Plaintiffs insist means that unspecified "public officials" need to be investigated by unspecified investigators. (Doc. 1 at ¶ 71.) Plaintiffs make conclusory statements that unspecified actions by unspecified defendants while Jalen Davis was *in utero* were "willful" and "showed a reckless disregard for the sanctity of the life of Carla Davis and [Jalen Davis]." (Doc. 1 at 9, especially ¶ 73.)

Plaintiff brought this lawsuit on January 23, 2023, requesting a declaratory judgment, monetary damages of an unspecified amount, an injunction to provide Plaintiffs with their medical records, and the costs of this action. (Doc. 1 at 9.) Plaintiffs name a plethora of defendants (Doc. 1 at 1-2 and ¶¶ 1-42), including Defendant Marc Bennett in his official capacity as the Sedgwick County District Attorney and in his individual capacity. (Doc. 1 at ¶ 20.) Bennett was served in his official capacity on March 2, 2023, and in his individual capacity on March 11, 2023. (Doc. 139.)

Plaintiffs' claims against Bennett should be dismissed for lack of subject-matter jurisdiction due to lack of a substantial federal claim and due to lack of constitutional standing. To the extent the Court has jurisdiction, it should dismiss Plaintiffs' claims for failure to state a

claim because of untimeliness, lack of personal participation, lack of a precipitating policy, and qualified immunity.

## QUESTIONS PRESENTED

I.    Does the Court lack federal question jurisdiction over this case when no substantial federal claim has actually been raised?

II.   Do Plaintiffs lack constitutional standing to bring their claims when they fail to allege causation and when it would be impossible for Bennett to fulfill the requested injunction and therefore it would not redress any of the Plaintiffs' alleged injuries?

III.  Is Bennett entitled to dismissal of Plaintiffs' claims when they are untimely and barred by the applicable statutes of limitations and repose?

IV.   Is Bennett entitled to dismissal of Plaintiffs' claims when Plaintiffs fail to state the requisite personal participation of Bennett?

V.    Is Bennett entitled to dismissal of Plaintiffs' official capacity claims when they fail to allege that an official policy or custom caused injury with the requisite state of mind?

VI.   Is Bennett entitled to qualified immunity when Plaintiffs have not shown that his actions as alleged violated clearly established law?

## ARGUMENTS AND AUTHORITIES

### *Standard on Motion to Dismiss for Lack of Subject-Matter Jurisdiction*

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Plaintiffs, as the parties invoking the Court's jurisdiction, bear the burden of showing its existence. *Id.* "A court lacking jurisdiction cannot render judgment but must dismiss the cause at

any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018). A federal court must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) can take the form of either a facial attack, looking only to the factual allegations of the complaint, or a factual attack, presenting evidence to challenge the court's jurisdiction. *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010). For a facial attack, the same standards apply to the motion as are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action. *Id.*; *see also Garling v. EPA*, 849 F.3d 1289, 1293 & n.3 (10th Cir. 2017) ("the trial court must apply a standard patterned on Rule 12(b)(6)"). To the extent a factual attack is made, the Court is not required to assume the truth of the complaint's factual allegations for purposes of resolving the jurisdictional issue, but "may consider materials outside the complaint to resolve disputed jurisdictional facts." *Williams v. United States*, 780 F. App'x 657, 660 (10th Cir. 2019); *see also Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (saying that resolving disputed jurisdictional facts only converts the motion to a summary judgment motion if "resolution of the jurisdictional question is intertwined with the merits").

### Standard on Motion to Dismiss for Failure to State a Claim

On a Rule 12(b)(6) motion to dismiss – or a facial attack under 12(b)(1), as mentioned above – a court must accept as true all well-pleaded factual allegations in the complaint, *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009), but a complaint must also contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Brownback v. King*, 141 S. Ct. 740, 749 (2021) ("a plaintiff must plausibly allege all jurisdictional elements"). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Garling*, 849 F.3d at 1293 & n.3 (applying *Twombly* and *Iqbal* to a facial attack on subject-matter jurisdiction under Rule 12(b)(1)).

The court need not accept as true those allegations that state only legal conclusions. *Iqbal*, 556 U.S. at 678. Under this standard, a plaintiff's claim must cross the line from "conceivable to plausible," and "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). Similarly, courts do not assume the role of an advocate for the *pro se* litigant by constructing arguments or searching the record for potentially viable theories. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A *pro se* litigant is expected to construct his or her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this circuit. *Id.* at 840-41.

I.   **Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction due to lack of a substantial federal claim and lack of constitutional standing.**

   A.   **The lack of a substantial federal claim means no federal question has actually been raised, so this Court lacks subject-matter jurisdiction over this case.**

Although the absence of a valid cause of action does not normally implicate subject-

matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015).

If plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that the defendants invaded nor allege facts showing that the defendants acted under color of state law, then the purported § 1983 claim does not support the district court's exercise of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003). Similarly, if plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019). The same is true for an obstruction of justice claim under § 1985(2). *See Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1323 (10th Cir. 1976).

Here, plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that defendants invaded nor allege facts showing that defendants acted under color of state law, so the purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit. Plaintiffs also purport to bring a § 1985 claim. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that a party, witness, or juror was

intimated (*see* § 1985(2)), so Plaintiffs appear to be relying for their § 1985 claim either on a deprivation of rights or privileges under subsection (3) or on an obstruction of justice under subsection (2). But Plaintiffs do not allege a motive based on racial or class-based discrimination, so the purported § 1985 claim under either subsection fails to provide a basis for federal jurisdiction.

**B.   Plaintiffs lack constitutional standing for their claims against Bennett because of lack of causation and lack of redressability.**

As the Supreme Court has explained:

> Article III, § 2, of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies." We have always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process. . . . Standing to sue is part of the common understanding of what it takes to make a justiciable case.

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The "irreducible constitutional minimum of standing" contains a triad of three requirements: injury in fact, causation, and redressability. *Id.* at 102-03. This triad "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 103.

*1.   Lack of causation for all of Plaintiffs' claims*

For the second prong of the standing inquiry, causation, "there must be . . . a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* Here, aside from being named in the caption and generically described in paragraph 20 of the complaint, Bennett is not mentioned anywhere else in the complaint. Plaintiffs do not complain of any conduct by Bennett, much less conduct that could be fairly traced and connected to Plaintiffs' injuries. Therefore, Plaintiffs lack constitutional standing to bring any claims against Bennett because they have not plausibly alleged causation by Bennett.

2. *Lack of redressability for the requested injunction*

For the third prong of the standing inquiry, redressability, the relief sought must serve to either reimburse the plaintiff for losses or to eliminate lingering effects of losses. *See id.* at 105-06. "Relief that does not remedy the injury suffered" does not count. *Id.* at 107. And "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). A party may lack standing to bring an injunction even when the party has standing to bring claims for other kinds of relief. *See City of Los Angeles. v. Lyons*, 461 U.S. 95, 109 (1983).

Here, the Plaintiffs request that the Court issue an injunction for unspecified defendants to provide them with their medical records. Plaintiffs have not plausibly alleged that Bennett has access to Plaintiffs' medical records or that he has any authority to produce their medical records or to cause others to produce them. Plaintiffs have also not alleged any facts from which such an inference could be drawn. So an injunction against Bennett to provide their medical records would be pointless, impossible to fulfill, and would not actually redress any alleged injuries. *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("the court . . . will not be blind to evidence that compliance [with a court order] is . . . factually impossible"). Therefore, the Plaintiffs lack constitutional standing to request such an injunction against Bennett because it fails the redressability prong of the standing inquiry.

## II.    Alternatively, the Court should dismiss Plaintiffs' claims for failure to state a claim because of untimeliness, lack of personal participation, lack of a precipitating policy, and qualified immunity.

### A.   Bennett is entitled to dismissal of Plaintiffs' claims because they are untimely and barred by the applicable statutes of limitations and repose.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right

sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4. For § 1983 claims, the forum state's statute of limitations for personal injury actions applies. *Jenkins v. Chance*, 762 F. App'x 450, 454 (10th Cir. 2019) (citing *Owens v. Okure*, 488 U.S. 235, 240-41 (1989)). If the forum state has multiple statutes of limitations for personal injury actions, the general or residual statute of limitations for personal injury actions applies. *Id.* (citing *Owens*, 488 U.S. at 249-50).

In Kansas, the two-year statute of limitations under K.S.A. 60-513(a)(4) applies to § 1983 and § 1985 claims.[2] That statute of limitations is subject to a ten-year statute of repose, which states "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(b). The statute of repose "begins to run . . . when the defendant completes the last original wrongful act." *Deters v. Nemaha-Marshall Elec. Coop. Ass'n*, 56 Kan. App. 2d 1170, 1183 (2019).

For persons such as minors who are under legal disability at the time a cause of action arose, the statute of limitations in Kansas is adjusted to allow bringing the action within one year after the person's disability is removed. K.S.A. 60-515(a). But this adjustment is subject to an eight-year statute of repose, which states "no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the

---

[2] *M.A.C. v. Gildner*, 853 F. App'x 207, 209 (10th Cir. 2021) (citing *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984)) (addressing § 1983 claims); *E.H. v. Kan. Dep't for Child. and Fams.*, 494 P.3d 304 (table opinion), 2021 WL 4127704, at *6 (Kan. Ct. App. Sept. 10, 2021) (citing *Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010)) (addressing § 1985 claims).

cause of action." *Id.* This means that "[f]or most tort claims . . . an injury suffered by a child at the age of, say 8, would no longer be actionable by the time the child turned 18. *H.B. v. M.J.*, 315 Kan. 310, 314 (2022).

Here, Plaintiffs bring § 1983 and § 1985 claims, so the two-year statute of limitations and ten-year statute of repose from K.S.A. 60-513(a)(4) and (b) apply. Although Plaintiffs do not mention when or how Bennett was involved in their alleged injuries, the latest date Plaintiffs point to in general is August 2008. (Doc. 1 at ¶ 70.) August 2008 was over 14 years ago. Therefore, Plaintiffs' claims are barred by the applicable statutes of limitations and repose.

Plaintiff Jalen Davis was a minor when any causes of action arose. He was born in 2003 and is now at least 19 years old. (*See* Doc. 1 at ¶¶ 56-57, 61, 63 (Jalen was *in utero* in late 2002 and early 2003).)[3] His legal disability of being a minor was removed over a year ago when he turned 18. Therefore, Jalen Davis's claims are not helped by the one-year statute of limitations and the eight-year statute of repose under K.S.A. 60-515(a) for claims that arose while a plaintiff was under legal disability, as Jalen Davis's claims are barred under those statutes of limitations and repose as well.

To the extent the Plaintiffs may allege an ongoing injury with regard to being denied records (Doc. 1 at ¶¶ 67(2)-69, 72, 74), the Plaintiffs still fail to state a claim for the reasons stated in the following sections.

**B. Bennett is entitled to dismissal of Plaintiffs' claims because Plaintiffs fail to state the requisite personal participation of Bennett.**

"Liability under § 1983 requires personal participation in the unlawful acts." *Beedle v.*

---

[3] Federal Rule of Civil Procedure 5.2 discourages the undersigned counsel from providing Jalen Davis's precise birth date in a publicly filed document, but the fact that Jalen is at least 19 years old is clear from the face of the complaint.

*Wilson*, 422 F.3d 1059, 1072 (10th Cir. 2005). "Section 1983 does not authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Neither does § 1985. *Saviour v. City of Kan. City*, No. 90-2430-L, 1992 WL 135019, at *7 (D. Kan. May 15, 1992) (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979)). Rather, Plaintiffs must show an "affirmative link" between a defendant's actions and their alleged constitutional injury. *Schneider*, 717 F.3d at 767. To establish the affirmative link, Plaintiffs must show: (1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind. *Id.*

Here, Defendant Bennett cannot be liable under Plaintiffs' claims because he was not personally involved in their injury. Aside from being named in the caption and generically described in paragraph 20 of the complaint, Bennett is not mentioned anywhere else in the complaint. Plaintiffs do not allege that Bennett acted at all, much less acted in a way that made him personally involved in their injury, in a way that made him cause their injury, or with a culpable state of mind. Therefore, Plaintiffs fail to state a claim against Bennett because they fail to state that he personally participated in their injury.

### C. Bennett is entitled to dismissal of Plaintiffs' official capacity claims because Plaintiffs fail to allege that an official policy or custom caused injury with the requisite state of mind.

A suit against a government official in their official capacity "is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). So a suit against a county official is a suit against the county. *See id.* Although local government units can be sued as "persons" under § 1983 and § 1985, they "cannot be held liable . . . on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (addressing § 1983 claims); *Saviour v. City of Kan. City*, No. 90-2430-

L, 1992 WL 135019, at *7 (D. Kan. May 15, 1992) (citing *Owens v. Haas*, 601 F.2d 1242, 1247

(2d Cir. 1979)) (addressing § 1985 claims). "Congress did not intend to impose liability on a

[local government unit] unless *deliberate* action attributable to the [local government unit] itself

is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs*

*v. Brown*, 520 U.S. 397, 400 (1997) (emphasis in original). Accordingly, "a plaintiff must

identify a government's policy or custom that caused the injury." *Schneider v. City of Grand*

*Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The plaintiff must also "show that

that the policy was enacted or maintained with deliberate indifference to an almost inevitable

constitutional injury." *Id.* The plaintiff therefore must show three elements: (1) official policy or

custom, (2) causation, and (3) state of mind. *Id.*

Here, Plaintiffs allege two agreements that could potentially be considered policies or

customs of Sedgwick County, one involving an "infectious disease control consultative program"

and another "providing implementation of bioterrorism planning and preparedness." (Doc. 1 at

¶¶ 51-52.) Plaintiffs have not alleged that either of these agreements caused anything to happen

at all, much less plausibly alleged that these agreements caused an injury to Plaintiffs. Plaintiffs

have also not alleged facts to make it plausible that these agreements would almost inevitably

lead to a constitutional injury or that the unspecified individuals who made or maintained these

agreements did so with deliberate indifference to such a consequence. Therefore, Plaintiffs fail to

meet the required elements and fail to state a claim against Sedgwick County or against Bennett

in his official county capacity.

**D.  Bennett is entitled to dismissal for failure to state a claim because Plaintiffs have not overcome qualified immunity by showing that any alleged conduct violated clearly established law.**

Qualified immunity protects from civil liability government officials whose actions do

not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[4] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Qualified immunity is an affirmative defense that can be raised in a motion to dismiss or in a motion for summary judgment. *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). When a § 1983 defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021).

To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.*; *see also Grissom v. Roberts*, 902 F.3d 1162, 1167-68 (10th Cir. 2018) ("only if the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant . . . " (comma omitted)). The right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). For the plaintiff to satisfy this "heavy two-part burden," *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014), "the complaint must isolate the allegedly unconstitutional acts of each defendant; otherwise the complaint does not provide adequate notice as to the nature of the claims against each and fails for this reason." *Matthews v. Bergdorf*, 889 F.3d 1136, 1144 (10th Cir. 2018). The Tenth Circuit has found it to be error to improperly place the burden on the defendants to establish their entitlement to qualified immunity. *Id.*

---

[4] Federal statutory rights enforceable under § 1983 are limited in number. *See City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124-25 (2005) ("a few § 1983 claims are based on statutory rights"). They are not relevant to this case, so the rest of this memorandum refers only to "constitutional rights" as shorthand for the full phrase "statutory or constitutional rights."

Here, Bennett is entitled to qualified immunity[5] because there was no clearly established law within this Circuit, or a robust consensus of cases outside of it, that any alleged actions violated clearly established law, particularized to the facts of this case. Specifically, Plaintiffs have not shown any law that put Bennett on notice that serving as "Sedgwick County District Attorney" somehow violated federal law. Because qualified immunity applies, the Court should dismiss the claims for failure to state a claim. (At the very least, the burden now shifts to Plaintiffs, and Plaintiffs must be specific. Plaintiffs must identify specific conduct and demonstrate that the alleged conduct violates specific, clearly-established constitutional rights.)

## CONCLUSION

For the above reasons, Defendant Marc Bennett requests that the Court dismiss Plaintiffs' claims against him due to lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
KRIS W. KOBACH

/s/ Matthew L. Shoger
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
Attorney for Defendants Bennett and Kobach

---

[5] Prosecutorial immunity does not appear relevant at this time because Plaintiffs do not allege any actions by Bennett, much less any actions "intimately associated with the judicial process." See Gagan v. Norton, 35 F.3d 1473, 1475 (10th Cir. 1994) (emphasis omitted).

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April, 2023, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which sent electronic notice to counsel of record, with copies also sent to Plaintiffs by means of first-class mail, postage prepaid, addressed to:

Carla Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Plaintiff, pro se*

*/s/ Matthew L. Shoger*
Matthew L. Shoger
Assistant Attorney General

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                          Plaintiffs,

v.                                         Case No. 6:23-CV-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al

                          Defendants.

## MOTION TO DISMISS

David Grainger M.D. ("Dr. Grainger"), moves this Court under Fed. R. Civ. P. 12(b)(1) and (6) for its Order dismissing Plaintiffs' Complaint.

The grounds for this Motion are as follows: (1) The Court lacks subject matter jurisdiction; (2) Plaintiffs have failed to state a claim upon which relief can be granted; (3) Dr. Grainger is entitled to qualified immunity and is shielded from this suit; (4) Any and all possible claims against Dr. Grainger are barred by the applicable statute of limitations and/or statute of repose.

Dr. Grainger has filed an accompanying memorandum of law in further support of this Motion to Dismiss.

Respectfully submitted,

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

*s/ Samantha M. H. Woods*
Samantha M. H. Woods, #25929
Ruslan D. Ivanov, #26902
645 E. Douglas, Suite 100
Wichita, KS 67202
Tel (316) 265-9311
Fax (316) 265-2955
smwoods@martinpringle.com
rdivanov@martinpringle.com
*Attorneys for Defendant David Grainger, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

s/ Samantha M. H. Woods
Samantha M. H. Woods #25929

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                Plaintiffs,

v.

                              Case No. 6:23-CV-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al

                Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT
## DAVID GRAINGER M.D.'S MOTION TO DISMISS

COMES NOW, Defendant David Grainger, M.D. ("Dr. Grainger") and submits this memorandum in support of his motion to dismiss all Plaintiffs' claims against Dr. Grainger. In support, Dr. Grainger states as follows:

### I.  NATURE OF THE MATTER BEFORE THE COURT

On January 23, 2023, *pro se* Plaintiffs Carla Davis and Jalen Davis filed a Complaint against various private and governmental entities and persons. Plaintiffs commenced this action under 42 U.S.C. §1983 and 42 U.S.C. §1985, "seeking injunctive and declaratory relief, money damages for past and ongoing violations of the Fourth, Fifth and Fourteen [sic] Amendments of the United States Constitution."  *Complaint*, ¶ 43.

Dr. Grainger is mentioned in only one place in the Complaint: under the "Parties" heading and as follows:

        Defendant DAVID GRAINGER m.d. (reproductive endocrinology)
        2002-2003 served on the board of directors for Central Plains Health
        Care Partnership with Robert Kenegy m.d., at the same time as

1

serving as Associate Vice Chairman for KU School of Medicine OB/GYN Residency Program. He is being sued in his official and individual capacity with the principle [sic] address 9300 E. 29th Street North, suit[sic] 102, Wichita, Kansas 67226.

*Complaint*, ¶ 34.

Dr. Grainger is not mentioned again in the pleading.

Plaintiffs' Statement of Facts lists multiple alleged events related to the subject of bioterrorism, including alleged participation of governmental entities and their officers, in bioterrorism research, infectious disease, and the passage of certain Public Laws related to those subjects. *Id.* at ¶¶ 46-54. The Statement of Facts concludes by alleging that "On October 18, 2002 Carla Davis made health care choices for herself that did not get fulfilled, and there has been ongoing violations of the rights of herself and her the [sic] in utero child, now an adult by the name of Jalen Davis." *Id.* at ¶ 57. Plaintiffs do not provide a logical connection between the stated bioterrorism/epidemiology-related facts and alleged violations of their rights, nor do they mention any involvement by Dr. Grainger.

Under the "Claims for Relief" heading, Plaintiffs make various allegations, including rape, intoxication with narcotics, administration of drugs without a medically necessary reason, placement of "an unknown device in my chest blood vessels with my knowledge and consent," being stabbed with a needle, theft of Jalen Davis's blood, attempted abduction of Jalen Davis, denial of effective medical treatment and access to medical records, and the concealment by public officials of "unlawful bodily intrusions and serious injuries resulting from it." *Complaint*, ¶¶ 60-73. In these allegations, Plaintiffs make no mention of Dr. Grainger, by name or description. (*See id.*)

## II.  ARGUMENT AND AUTHORITIES

**A.      Plaintiffs' action must be dismissed because the Court lacks subject-matter jurisdiction.**

**1.   Rule 12(b)(1) Standard.**

Fed. R. Civ. P. 12(b)(1) permits a party to assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(h)(3) provides that if the Court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.

Federal Courts are courts of limited jurisdiction, there is a strong presumption against their jurisdiction and the party invoking federal jurisdiction bears the burden of proof. *Penteco Corp. Ltd. Partnership-1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir. 1991) (*citing Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974)). A Court lacking jurisdiction cannot render judgment and must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. *Id.* The existence of subject-matter jurisdiction is a threshold inquiry which must precede any merits-based determination. This requirement is inflexible and without exception. *Olsen v. Aebersold*, 71 F. Appx. 7, 9 (10th Cir. 2003) (*citing Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998)).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.*

**2. Plaintiffs' claims are so insubstantial, implausible, foreclosed by prior decisions of the Court, and devoid of merit that there is no Federal controversy, and the Court lacks subject matter jurisdiction.**

To support the exercise of federal-question jurisdiction, plaintiffs must present a "substantial" federal claim. *Hagans v. Lavine*, 415 U.S. 528, 536-538 (1974). The Court lacks subject-matter jurisdiction when the claim is so insubstantial, implausible, foreclosed by prior decisions of the Court or otherwise completely devoid of merit as not to involve a federal controversy. *Olsen v. Aebersold*, 71 F. Appx. 7, 9 (10th Cir. 2003) (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

Throughout their Complaint, Plaintiffs assert implausible theories that are devoid of merit. At times, it is impossible to comprehend the purpose of Plaintiffs' proposed statements of facts as they are bizarre and do not articulate a cogent, substantial federal question theory. Notably, paragraphs 46-54 of the Complaint contain references to biological warfare, terrorism or disease control, and seem to be completely disjointed from other facts Plaintiffs assert. The Assistant United States Attorney's memorandum in this case cites several 10th Circuit cases where the Court examined pleadings in which Plaintiffs propose bizarre conspiracy theories. The Court found that dismissal of the matters was warranted due to insubstantiality. *Federal Defendants' Memorandum in Support of Motion to Dismiss,* pp. 6-7. This case is similar to the cases cited by the Assistant United States Attorney, and the cases cited support dismissal here.

Where Plaintiffs invoke federal statutes, they fail to establish federal subject matter jurisdiction. Plaintiffs purport to bring this action under 42 U.S.C. § 1983 but do not assert anywhere in the Complaint that that any Defendants, particularly Dr. Grainger, acted under the color of state law – a threshold jurisdictional requirement for a § 1983 claim. *See Aebersold*, 71 F. Appx. at 9. This leaves the Court with no subject matter jurisdiction over the claim.

4

Plaintiffs also claim to bring the action under 42 U.S.C. § 1985 yet fail to plead any of the conduct described in subsections (1)-(3) of that statute, namely conspiring to: prevent any person from accepting or holding office or from discharging duties, inducing any officer to leave or to injure him or his property. *See* 42 U.S.C. § 1985(1). Conspiring to: deter any party or witness from attending or testifying in Court or to injure them or their property, to influence acts of jurors or to injure them due to their participation, to obstruct due course of justice with intent to deny any citizen the equal protection of laws, or to injure the citizen or their property for attempting to enforce rights to the equal protection of the laws. *See* 42 U.S.C. § 1985(2). Conspiring or going in disguise on the highway or premises of another to: deprive any persons or class of persons from the equal protection or privileges and immunities, hindering the authorities from securing persons the equal protection of laws, or conspiring to prevent any citizen from participating in elections or from supporting electors or to injure any citizen on account of such support. *See* 42 U.S.C. § 1985(3).

Original jurisdiction is provided to the district courts under 28 U.S.C.S. § 1343(a)(1) to "recover damages for injury to his person or because of deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of *any conspiracy mentioned in section 1985 of Title 42.* Similarly, 28 U.S.C.S. § 1343(a)(2) grants jurisdiction to recover damages from any person who fails to prevent or aid in preventing *any of the wrongs mentioned in section 1985 of Title 42* which he had knowledge were about to occur and power to prevent. This language is a jurisdictional hook and because Plaintiffs failed to plead or allege anything resembling conduct described in 42 U.S.C. §1985, the Court has no subject-matter jurisdiction under 28 U.S.C.S. § 1343.

Plaintiffs' claims are so insubstantial, implausible, and otherwise so completely devoid of merit, that they do not involve a federal controversy. This, along with Plaintiffs' failure to establish

threshold subject matter jurisdiction requirements for 42 U.S.C. § 1983 and 42 U.S.C. § 1985 necessitates a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1).

   3.   **The Court lacks subject matter jurisdiction because Plaintiffs have no Article III standing to bring suit against Dr. Grainger.**

Plaintiffs bear the burden of demonstrating that: 1) they suffered an injury in fact – an invasion of a legally protected interest which is concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) is fairly traceable to the challenged action of the defendant and not…the result of the independent action of some third party not before the Court, and 3) is likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Baca v. King*, 92 F.3d 1031, 1035 (10th Cir. 1996) (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).

If at any point in the litigation plaintiff ceases to meet any of the three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction. *See United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012). The causation element of standing is satisfied when an injury is fairly traceable to the challenged action. *Roselle v. Berger & Montague, P.C.*, 753 F. Appx. 565, 571 (10th Cir. 2018).

Plaintiffs fail to meet the second prong required for standing. Plaintiffs' Complaint contains no facts connecting Dr. Grainger with any alleged injury. Dr. Grainger is merely included in the list of "Parties" in Plaintiffs' pleadings and the recitation provided in that paragraph provides no useful information about how Dr. Grainger is connected to any injuries alleged by Plaintiffs or to any other facts they assert. *Complaint*, ¶ 34.  It is not clear why Dr. Grainger appears in Plaintiffs' pleadings at all, and the alleged injuries are not traceable at all, let alone "fairly traceable" to Dr.

Grainger. The Plaintiffs lack Article III standing to bring suit against Dr. Grainger, and the Court has no subject matter jurisdiction as a result.

####    4.   Dr. Grainger is immune from suit under the Eleventh Amendment.

The Eleventh Amendment provides immunity "when state officials are sued for damages in their official capacity." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (*citing Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *See also Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). Eleventh Amendment immunity also extends to State employees who are sued in § 1983 and § 1985 actions in their official capacities for money damages. *See Jones v. Courtney,* 466 F. Appx. 696, 700 (10th Cir. 2012) and *Patillo v. Larned State Hosp.,* 462 F. Appx. 780, 783 (10th Cir. 2012). Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction. *Williams v. Utah Dep't of Corr.,* 928 F.3d 1209, 1212 (10th Cir. 2019) (*quoting Fent. V. Okla. Water Res. Bd.,* 235 F.3d 553, 558-559 (10th Cir. 2000)).

Here, Plaintiffs purport to sue Dr. Grainger as a state employee in his official capacity for money damages ("Defendant DAVID GRAINGER…served on the board of directors for Central Plains Health Care Partnership with Robert Kenegy m.d. at the same time as serving as Associate Vice Chairman for KU School of Medicine OB/GYN Residency Program. He is being sued in his official and individual capacity…" *Complaint*, ¶ 34) but provide no jurisdictional basis for their suit. Because Dr. Grainger is immune from suit under the Eleventh Amendment, the Court lacks subject matter jurisdiction and Plaintiffs' claims should be dismissed.

**B.    Plaintiffs fail to state any claim against Dr. Grainger upon which relief can be granted.**

### 1.    Rule 12(b)(6) Standard.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing the pleader is entitled to relief in order to give defendant fair notice what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, (2007). Under Fed. Rule Civ. Proc. 12(b)(6), a party may assert, by motion, the defense of failure to state a claim upon which relief can be granted.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 545. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679.

### 2.    Plaintiffs fail to state a valid 42 U.S.C. § 1983 claim against Dr. Grainger.

To recover damages from a Defendant under § 1983, Plaintiffs must show that Dr. Grainger personally participated in the alleged Constitutional violation. *See Vasquez v. Davis*, 882 F.3d

1270, 1275 (10th Circuit 2018). Additionally, an affirmative link between the defendant's conduct and any constitutional violation must be alleged in the complaint. *Stidham v. Peace Officer Stds. & Training,* 265 F.3d 1144, 1157 (10th Cir. 2001). In § 1983 cases, where defendants typically sue various government entities alongside various individual actors "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom." *Shrum v. Cooke*, 60 F.4th 1304 (10th Cir. 2023) (*quoting Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

Nowhere in their Complaint do Plaintiffs allege that Dr. Grainger deprived them of any right, privilege, or immunity. *See* 42 U.S.C. § 1983. Plaintiffs never mention Dr. Grainger in their statement of facts at all. Plaintiffs generally claim violations of various Constitutional rights, but attribute none of them to Dr. Grainger. As such, Plaintiffs do not plead with the specificity required by the Tenth Circuit for § 1983 actions.

### 3. Plaintiffs fail to state a valid 42 U.S.C. § 1985 claim against Dr. Grainger.

Generally, § 1985(1) addresses two or more persons conspiring to prevent an officer from performing his duties, § 1985(2) addresses two or more persons conspiring to obstruct justice or intimidate parties, witnesses, or jurors in legal proceedings, and § 1985(3) covers two or more persons conspiring or going in disguise on a highway or premises of another for the purposes of depriving any person or class of rights or privileges. *See* 42 U.S.C. § 1985. The act itself is entitled "Conspiracy to interfere with civil rights." *Id.*

Mere conclusory allegations of conspiracy without supporting factual detail are inadequate when pleading a § 1985 claim. *See Patillo v. Larned State Hosp.*, 462 F. Appx. 780, 784 (10th Cir. 2012) and *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983). Here, Plaintiffs fail to plead the conspiracy element at all. Apart from merely citing the statute in the Complaint,

Plaintiffs do not state any facts alleging conspiracy between two or more persons, much less one involving Dr. Grainger.

Plaintiffs' failure to plead the conspiracy element of § 1985(3) is already fatal to their assertion of a valid claim but Plaintiffs fail to plead the second element as well.  With respect to the second element of a valid § 1985(3) claim, the Supreme Court held that it does not apply to "all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton,* 6 F.3d at 686 (*citing Griffin v. Breckenridge,* 403 U.S. 88, 101-102 (1971)).  Plaintiffs provide no facts that allege a racial or a class-based discriminatory animus or that Plaintiffs are a member of any protected class.  The result is a failure to state a claim which warrants dismissal. *Id.*

### 4.  Plaintiffs fail to state a valid "health care" claim against Dr. Grainger.

Plaintiffs make several assertions about acts or occurrences that seem to be related to health care. *See Complaint*, ¶¶ 57, 61-68, 70, 73. However, Plaintiffs do not articulate a single valid health care-related claim. Merely alleging that one was incapacitated with toxic doses of the drug Fentanyl, or simply saying that one underwent a medically unnecessary procedure, without providing any detail about what was done by whom does not "give defendant fair notice what the claim is and the grounds upon which it rests."  *See Twombly*, 550 U.S. at 554-55.

Moreover, Plaintiffs do not provide any factual content that would allow the court to draw the "reasonable inference" that Dr. Grainger is liable for any health care-related injury alleged. *See Iqbal*, 556 U.S. 662 at 678.

### 5.   Plaintiffs fail to state a valid intentional tort claim against Dr. Grainger

Plaintiffs' Complaint contains several statements which may be insufficient attempts to allege an intentional tort. Plaintiffs claim to have suffered serious injuries as a result of bodily intrusions. *See Complaint*, ¶¶ 63-68. Dr. Grainger's name is absent from these allegations.

Thus, though it is almost impossible to discern Plaintiffs' chosen cause of action if one relies solely on their Complaint, to the extent the attempt is to make an intentional tort claim, Plaintiffs' attempts fail.

### C.   Dr. Grainger is entitled to qualified immunity.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 802, 102 S. Ct. 2727 (1982). *Harlow* places the presumption in favor of public officials acting in their individual capacities. *Melton v. City of Oklahoma City*, 879 F.2d 706, 728–729 (10th Cir.1989). Such entitlement is immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 513, 105 S. Ct. 2806 (1985). Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735, (2011).

Even if Plaintiffs were able to state any valid claims against Dr. Grainger, he would be entitled to qualified immunity. Plaintiffs' Complaint states, in part: "Dr. DAVID GRAINGER m.d. (reproductive endocrinology) 2002-2003 served on the board of directors for Central Plains Health Care Partnership with Robert Kenegy m.d., at the same time as serving as Associate Vice Chairman for KU School of Medicine OB/GYN Residency Program. He is being sued in his official and

individual capacity…" *Complaint*, ¶ 34. As Plaintiffs have not pleaded any facts stating that Dr. Grainger violated any constitutional or statutory right, Dr. Grainger is entitled to qualified immunity.

**D.   Construing *pro se* Plaintiffs' pleadings liberally does not allow for a reasonable reading of a valid claim.**

Courts grant certain leniency to *pro se* litigants. For example, if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not the proper *function* of the Court to assume the role of advocate for the *pro se* litigant. *Id.* The Court should not rewrite a *pro se* Petition to include claims that were never presented. *See Parker v. Champion,* 148 F.3d 1219, 1222 (10th Cir. 1998). Even a "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . This is so because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury." *Erikson v. BP Exploration & Prod.*, 567 F. Appx. 637, 639 (10th Cir. 2014) (*quoting Hall,* 935 F.2d at 1110*)*. Furthermore, *pro se* litigants must follow the same rules of procedure that govern other litigants. *Hare v. Donahoe*, 608 F. Appx. 627, 629-30 (10th Cir. 2015).

Plaintiffs' Complaint is not one that can reasonably be read to uncover a valid claim against Dr. Grainger, even with the most liberal reading. Dr. Grainger's name only appears among the Parties enumerated by Plaintiffs, who present no facts indicating what injury or harm Dr. Grainger may have caused them or how he was involved at all. As a result, the Court is placed in a position of trying to guess the substance of Plaintiffs' claims. This effectively invites the Court to become the Plaintiffs' advocate, which it should not do. Even the most liberal reading of the *pro se*

Plaintiffs' Complaint does not reveal any valid claim against Dr. Grainger and therefore cannot cure their failure to state a valid claim upon which relief can be granted.

**E.      Plaintiffs' claims are time-barred by the applicable statutes of limitations and/or statutes of repose.**

   **1.   Plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims**

Plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims are barred by the Kansas statute of limitations for personal injury claims, as well as the related statute of repose. A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits. *Id.* Federal law, however, determines the date on which the claim accrues, and the limitations period starts to run. *Id.* State law governs any tolling of that period. *Id.* While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Caballero v. Wyandotte Cty. Sheriff's Dep't*, 789 F. Appx. 684, 686 (10th Cir. 2019).

Kansas has a two-year statute of limitations for personal injury actions. *See* K.S.A. 60-513(a)(4). In Kansas, this statute of limitations was also held to apply to actions brought under 42 U.S.C. § 1985.  *See Lyons v. Kyner,* 367 F. Appx. 878, 882 (10th Cir. 2010). According to the Complaint, the last pleaded act took place in August 2008, which Plaintiffs say was the abduction attempt of Jalen Davis and the theft of his blood. *Complaint*, ¶ 70.  The accrual date of a U.S.C. § 1983 claim is solely a question of federal law and accrual occurs when a plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Plaintiffs provide no reason as to why accrual would occur any later than August 2008 and provide no basis for tolling

the statute of limitations. Thus, Plaintiffs are barred from asserting 42 U.S.C. § 1983 and 42 U.S.C.

§ 1985 claims and such claims should be dismissed.

### 2. Plaintiffs' health care-related claims are barred by K.S.A. 60-513(c), and K.S.A. 60-515(a).

Plaintiffs attempt to assert what appear to be health care-related claims, including but not

limited to: Carla Davis making health choices that were not fulfilled, undergoing medical

procedures that were not medically necessary, denial of effective medical treatment, and denial of

access to medical records. *See Complaint*, ¶¶ 57, 61-68, 70. Any such claims are time-barred by

the applicable statutes of repose and/or statutes of limitations.

K.S.A. 60-513(c) provides:

> A cause of action arising out of the rendering of or the failure to
> render professional services by a health care provider shall be
> deemed to have accrued at the time of the occurrence of the act
> giving rise to the cause of action, unless the fact of injury is not
> reasonably ascertainable until sometime after the initial act, then the
> period of limitation shall not commence until the fact of injury
> becomes reasonably ascertainable to the injured party, but in no
> event shall such an action be commenced more than four years
> beyond the time of the act giving rise to the cause of action.

K.S.A. 60-515(a) states, in part:

> Except as provided in K.S.A. 60-523, if any person entitled to bring
> an action, other than for the recovery of real property or a penalty or
> a forfeiture, at the time the cause of action accrued or at any time
> during the period the statute of limitations is running, is less than 18
> years of age, an incapacitated person or imprisoned for a term less
> than such person's natural life, such person shall be entitled to bring
> such action within one year after the person's disability is removed,
> except that no such action shall be commenced by or on behalf of
> any person under the disability more than eight years after the time
> of the act giving rise to the cause of action.

K.S.A. 60-513(c) applies to Carla Davis's alleged injuries while K.S.A. 60-515(a) applies

to Jalen Davis's alleged injuries. Even if one assumes that Dr. Grainger is a "health care provider"

under K.S.A. 60-513(d), and even if Plaintiffs had stated a valid claim against Dr. Grainger, any

14

health-care related claims against him would be time-barred. Carla Davis's claims are filed well past the four (4) – year limitation established by K.S.A. 60-513(c). This action was filed on January 23, 2023, and Plaintiffs allege no injuries that occurred after 2008.

K.S.A. 60-515(a) would permit Jalen Davis to file his health care cause of action within one year after turning eighteen (18) years of age. According to the Complaint, Carla Davis was scheduled for labor on January 23, 2003. *Complaint*, ¶ 62. Wesley Medical Center records attached to the Complaint are redacted, but a record documents a procedure for a 'Boy Davis' with a birth date of January 23, 2003, which almost certainly refers to Jalen Davis. *Wesley Medical Center Record (attached to Complaint).*   Jalen Davis would have turned eighteen (18) on January 23, 2021, and would not be permitted by Kansas law to file his cause of action beyond January 23, 2022.

Alternatively, Jalen Davis's health care claims are barred even earlier by the repose language of K.S.A. 60-515(a), which clearly states that "no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action." Eight (8) years from the time of the last injury alleged by Plaintiffs, August 2008, would be August 2016 and Jalen Davis would have been less than eighteen (18) years of age in August 2016. As a result, Jalen Davis's claims are barred by the repose language of K.S.A. 60-515(a) as well.

**3. Plaintiffs' intentional tort claims are barred by K.S.A. 60-514(b) and K.S.A. 60-515(a).**

While Plaintiffs attribute no injuries or acts to Dr. Grainger, some of Plaintiffs' general assertions may fall under K.S.A. 60-514(b), specifically the assertions contained in paragraphs 63-68 of their Complaint.

Under K.S.A. 60-514(b), Plaintiffs must bring an action for assault, battery, malicious prosecution, or false imprisonment within one year. Any claims Plaintiffs attempt to bring under such theories are time-barred. Plaintiffs allege no incidents that occurred later than August 2008 and state no basis for tolling or that the cause of action accrued at any later time. While most of these potential claims appear to be related to alleged injuries sustained by Carla Davis, to the extent that any of these claims are related to Jalen Davis, he too would be barred from any such claims under K.S.A. 60-515(a) for the same reasons he would be barred from bringing health care-related claims (discussed *supra*).

## III.  CONCLUSION

Plaintiffs' claims against Dr. Grainger should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Even if jurisdiction were had, or if Plaintiffs had stated a valid cause of action against Dr. Grainger, all possible causes of action asserted by Plaintiffs are time-barred due to the expiration of the applicable statutes of repose and/or statutes of limitations. Additionally, Dr. Grainger is entitled to qualified immunity. Accordingly, Defendant Dr. Grainger respectfully prays the Court grant his Motion to Dismiss and enter an Order dismissing him from this action with prejudice.

Respectfully Submitted,

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

*s/ Samantha M. H. Woods*
Samantha M. H. Woods #25929
Ruslan D. Ivanov, #26902
645 East Douglas, Suite 100
Wichita, Kansas 67202
(316) 265-9311
(316) 265-2955 (fax)
smwoods@martinpringle.com
rdivanov@martinpringle.com
*Attorneys for Defendant David Grainger, M.D.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

<u>s/ Samantha M. H. Woods</u>
Samantha M. H. Woods #25929

17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                   Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE, et al

                   Defendants.

Case No. 6:23-CV-1010-JAR-KGG

## <u>MOTION TO DISMISS</u>

Travis Stembridge M.D. ("Dr. Stembridge"), moves this Court under Fed. R. Civ. P. 12(b)(1) and (6) for its Order dismissing Plaintiffs' Complaint.

The grounds for this Motion are as follows: (1) The Court lacks subject matter jurisdiction; (2) Plaintiffs have failed to state a claim upon which relief can be granted; (3) Dr. Stembridge is entitled to qualified immunity and is shielded from this suit; (4) Any and all possible claims against Dr. Stembridge are barred by the applicable statute of limitations and/or statute of repose.

Dr. Stembridge has filed an accompanying memorandum of law in further support of this motion to dismiss.

Respectfully submitted,

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

*s/ Samantha M. H. Woods*
Samantha M. H. Woods, #25929
Ruslan D. Ivanov, #26903
645 E. Douglas, Suite 100
Wichita, KS 67202
Tel (316) 265-9311
Fax (316) 265-2955
smwoods@martinpringle.com
rdivanov@martinpringle.com
*Attorneys for Defendant Travis Stembridge, M.D.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

*s/ Samantha M. H. Woods*
Samantha M. H. Woods #25929

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                          Plaintiffs,

v.                                                        Case No. 6:23-CV-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al

                          Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT
## DAVID STEMBRIDGE M.D.'S MOTION TO DISMISS

COMES NOW, Defendant Travis Stembridge, M.D. ("Dr. Stembridge") and submits this memorandum in support of his motion to dismiss all Plaintiffs' claims against Dr. Stembridge. In support Dr. Stembridge states as follows:

### I.        NATURE OF THE MATTER BEFORE THE COURT

On January 23, 2023, *pro se* Plaintiffs Carla Davis and Jalen Davis filed a Complaint against various private and governmental entities and persons. Plaintiffs commenced this action under 42 U.S.C. §1983 and 42 U.S.C. §1985, "seeking injunctive and declaratory relief, money damages for past and ongoing violations of the Fourth, Fifth and Fourteen [sic] Amendments of the United States Constitution."  *Complaint*, ¶ 43.

Dr. Stembridge is mentioned in only one place in the Complaint: under the "Parties" heading and as follows:

> Defendant TRAVIS STEMBRIDGE m.d. (OB/GYN) 2003- KU School of Medicine Ob/GYN Program Director, Kansas Health Care Stabilization Fund Board of Governers [sic], Medical Society of Sedgwick County Board of Directors, being sued in his official and individual capacity with the principle [sic] address 9401 Indian creek Prkwy Suite 13, Overland Park, Kansas 66210.

1

*Complaint*, ¶ 35.

Dr. Stembridge is not mentioned again in the pleading.

Plaintiffs' Statement of Facts lists multiple alleged events related to the subject of bioterrorism, including alleged participation of governmental entities and their officers, in bioterrorism research, infectious disease, and the passage of certain Public Laws related to those subjects. *Id.* at ¶¶ 46-54. The Statement of Facts concludes by alleging that "On October 18, 2002 Carla Davis made health care choices for herself that did not get fulfilled and there has been ongoing violations of the rights of herself and her the [sic] in utero child now an adult by the name of Jalen Davis." *Id.* at ¶ 57. Plaintiffs do not provide a logical connection between the stated bioterrorism/epidemiology-related facts and alleged violations of their rights, nor do they mention any involvement by Dr. Stembridge.

Under the "Claims for Relief" heading, Plaintiffs make various allegations, including rape, intoxication with narcotics, administration of drugs without a medically necessary reason, placement of "an unknown device in my chest blood vessels with my knowledge and consent," being stabbed with a needle, theft of Jalen Davis's blood, attempted abduction of Jalen Davis, denial of effective medical treatment and access to medical records, and the concealment by public officials of "unlawful bodily intrusions and serious injuries resulting from it." *Complaint*, ¶¶ 60-73. In these allegations, Plaintiffs make no mention of Dr. Stembridge, by name or description. (*See id.*)

## II.        ARGUMENT AND AUTHORITIES

**A.        Plaintiffs' action must be dismissed because the Court lacks subject-matter jurisdiction.**

### 1.  Rule 12(b)(1) Standard.

Fed. R. Civ. P. 12(b)(1) permits a party to assert the defense of lack of subject matter jurisdiction by motion. Fed. R. Civ. P. 12(h)(3) provides that if the Court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action.

Federal Courts are courts of limited jurisdiction, there is a strong presumption against their jurisdiction and the party invoking federal jurisdiction bears the burden of proof. *Penteco Corp. Ltd. Partnership-1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1521 (10th Cir. 1991) (*citing Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974)). A Court lacking jurisdiction cannot render judgment and must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. *Id.* The existence of subject-matter jurisdiction is a threshold inquiry which must precede any merits-based determination. This requirement is inflexible and without exception. *Olsen v. Aebersold*, 71 F. Appx. 7, 9 (10th Cir. 2003) (*citing Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 94 (1998)).

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.*

**2. Plaintiffs' claims are so insubstantial, implausible, foreclosed by prior decisions of the Court, and devoid of merit that there is no Federal controversy, and the Court lacks subject matter jurisdiction.**

To support the exercise of federal-question jurisdiction, plaintiffs must present a "substantial" federal claim. *Hagans v. Lavine*, 415 U.S. 528, 536-538 (1974). The Court lacks subject-matter jurisdiction when the claim is so insubstantial, implausible, foreclosed by prior decisions of the Court or otherwise completely devoid of merit as not to involve a federal controversy. *Olsen v. Aebersold*, 71 F. Appx. 7, 9 (10th Cir. 2003) (*quoting Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

Throughout their Complaint, Plaintiffs assert implausible theories that are devoid of merit. At times, it is impossible to comprehend the purpose of Plaintiffs' proposed statements of facts as they are bizarre and do not articulate a cogent, substantial federal question theory. Notably, paragraphs 46-54 of the Complaint contain references to biological warfare, terrorism or disease control, and seem to be completely disjointed from other facts Plaintiffs assert. The Assistant United States Attorney's memorandum in this case cites several 10th Circuit cases where the Court examined pleadings in which Plaintiffs propose bizarre conspiracy theories. The Court found that dismissal of the matters was warranted due to insubstantiality. *Federal Defendants' Memorandum in Support of Motion to Dismiss,* pp. 6-7. This case is similar to the cases cited by the Assistant United States Attorney, and the cases cited support dismissal here.

Where Plaintiffs invoke federal statutes, they fail to establish federal subject matter jurisdiction. Plaintiffs purport to bring this action under 42 U.S.C. § 1983 but do not assert anywhere in the Complaint that that any Defendants, particularly Dr. Stembridge, acted under the color of state law – a threshold jurisdictional requirement for a § 1983 claim. *See Aebersold*, 71 F. Appx. at 9. This leaves the Court with no subject matter jurisdiction over the claim.

Plaintiffs also claim to bring the action under 42 U.S.C. § 1985 yet fail to plead any of the conduct described in subsections (1)-(3) of that statute, namely conspiring to: prevent any person from accepting or holding office or from discharging duties, inducing any officer to leave or to injure him or his property. *See* 42 U.S.C. § 1985(1). Conspiring to: deter any party or witness from attending or testifying in Court or to injure them or their property, to influence acts of jurors or to injure them due to their participation, to obstruct due course of justice with intent to deny any citizen the equal protection of laws, or to injure the citizen or their property for attempting to enforce rights to the equal protection of the laws. *See* 42 U.S.C. § 1985(2). Conspiring or going in disguise on the highway or premises of another to: deprive any persons or class of persons from the equal protection or privileges and immunities, hindering the authorities from securing persons the equal protection of laws, or conspiring to prevent any citizen from participating in elections or from supporting electors or to injure any citizen on account of such support. *See* 42 U.S.C. § 1985(3).

Original jurisdiction is provided to the district courts under 28 U.S.C.S. § 1343(a)(1) to "recover damages for injury to his person or because of deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of *any conspiracy mentioned in section 1985 of Title 42*. Similarly, 28 U.S.C.S. § 1343(a)(2) grants jurisdiction to recover damages from any person who fails to prevent or aid in preventing *any of the wrongs mentioned in section 1985 of Title 42* which he had knowledge were about to occur and power to prevent. This language is a jurisdictional hook and because Plaintiffs failed to plead or allege anything resembling conduct described in 42 U.S.C. §1985, the Court has no subject-matter jurisdiction under 28 U.S.C.S. § 1343.

Plaintiffs' claims are so insubstantial, implausible, and otherwise so completely devoid of merit, that they do not involve a federal controversy. This, along with Plaintiffs' failure to establish

5

threshold subject matter jurisdiction requirements for 42 U.S.C. § 1983 and 42 U.S.C. § 1985

necessitates a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. Proc. 12(b)(1).

###    3.    The Court lacks subject matter jurisdiction because Plaintiffs have no Article III standing to bring suit against Dr. Stembridge.

Plaintiffs bear the burden of demonstrating that: 1) they suffered an injury in fact – an

invasion of a legally protected interest which is concrete and particularized and actual or imminent,

not conjectural or hypothetical; 2) is fairly traceable to the challenged action of the defendant and

not…the result of the independent action of some third party not before the Court, and 3)  is likely

as opposed to merely speculative that the injury will be redressed by a favorable decision. *Baca v.

King*, 92 F.3d 1031, 1035 (10th Cir. 1996) (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555,

560-61 (1992)).

If at any point in the litigation the plaintiff ceases to meet any of the three requirements for

constitutional standing, the case no longer presents a live case or controversy, and the federal court

must dismiss the case for lack of subject matter jurisdiction. *United States v. Ramos*, 695 F.3d

1035, 1046 (10th Cir. 2012). The causation element of standing is satisfied when an injury is fairly

traceable to the challenged action. *Roselle v. Berger & Montague, P.C.*, 753 F. Appx. 565, 571

(10th Cir. 2018).

Plaintiffs fail to meet the second prong required for standing. Plaintiffs' Complaint contains

no facts connecting Dr. Stembridge with any alleged injury. Dr. Stembridge is merely included in

the list of "Parties" in Plaintiffs' pleadings and the recitation provided in that paragraph provides

no useful information about how Dr. Stembridge is linked to any injuries alleged by Plaintiffs or

to any other facts they assert. *Complaint*, ¶ 35. It is not clear why Dr. Stembridge appears in

Plaintiffs' pleadings at all, and the alleged injuries are not traceable at all, let alone "fairly

traceable" to Dr. Stembridge. The Plaintiffs lack Article III standing to bring suit against Dr. Stembridge and the Court has no subject matter jurisdiction as a result.

### 4. Dr. Stembridge is immune from suit under the Eleventh Amendment

The Eleventh Amendment provides immunity "when state officials are sued for damages in their official capacity." *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (*citing Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *See also Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). Eleventh Amendment immunity also extends to State employees who are sued in § 1983 and § 1985 actions in their official capacities for money damages. *See Jones v. Courtney,* 466 F. Appx. 696, 700 (10th Cir. 2012) and *Patillo v. Larned State Hosp.,* 462 F. Appx. 780, 783 (10th Cir. 2012). Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction. *Williams v. Utah Dep't of Corr.,* 928 F.3d 1209, 1212 (10th Cir. 2019) (*quoting Fent. V. Okla. Water Res. Bd.,* 235 F.3d 553, 558-559 (10th Cir. 2000)).

Here, Plaintiffs purport to sue Dr. Stembridge as a state employee in his official capacity for money damages ("Defendant TRAVIS STEMBRIDGE m.d. (OB/GYN) 2003- KU School of Medicine Ob/GYN program Director, Kansas Health Care Stabilization Fund Board of Governers [sic], Medical Society of Sedgwick County Board of Directors, being sued in his official and individual capacity…" *Complaint*, ¶ 35) but provide no jurisdictional basis for their suit. Because Dr. Stembridge is immune from suit under the Eleventh Amendment, the Court lacks subject matter jurisdiction, and Plaintiffs' claims should be dismissed.

**B.**   **Plaintiffs fail to state any claim against Dr. Stembridge upon which relief can be granted.**

    **1.   Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing the pleader is entitled to relief in order to give defendant fair notice what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, (2007). Under Fed. Rule Civ. Proc. 12(b)(6), a party may assert, by motion, the defense of failure to state a claim upon which relief can be granted.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 545. Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 679.

    **2.   Plaintiffs fail to state a valid 42 U.S.C. § 1983 claim against Dr. Stembridge.**

    To recover damages from a Defendant under § 1983, Plaintiffs must show that Dr. Stembridge personally participated in the alleged Constitutional violation. *See Vasquez v. Davis*,

882 F.3d 1270, 1275 (10th Circuit 2018). Additionally, an affirmative link between the defendant's conduct and any constitutional violation must be alleged in the complaint. *Stidham v. Peace Officer Stds. & Training,* 265 F.3d 1144, 1157 (10th Cir. 2001). In § 1983 cases, where defendants typically sue various government entities alongside various individual actors "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom." *Shrum v. Cooke*, 60 F.4th 1304 (10th Cir. 2023) (*quoting Robbins v. Okla. ex rel. Dep't of Human Servs.,* 519 F.3d 1242, 1249-50 (10th Cir. 2008)).

Nowhere in their Complaint do Plaintiffs allege that Dr. Stembridge deprived them of any right, privilege, or immunity. *See* 42 U.S.C. § 1983. Plaintiffs never mention Dr. Stembridge in their statement of facts at all. Plaintiffs generally allege violations of various Constitutional rights, but attribute none of them to Dr. Stembridge. As such, Plaintiffs do not plead with specificity required by the Tenth Circuit for § 1983 actions.

### 3. Plaintiffs fail to state a valid 42 U.S.C. § 1985 claim against Dr. Stembridge.

Generally, § 1985(1) addresses two or more persons conspiring to prevent an officer from performing his duties, § 1985(2) addresses two or more persons conspiring to obstruct justice or intimidate parties, witnesses, or jurors in legal proceedings, and § 1985(3) covers two or more persons conspiring or going in disguise on a highway or premises of another for the purposes of depriving any person or class of rights or privileges. *See* 42 U.S.C. § 1985. The act itself is entitled "Conspiracy to interfere with civil rights." *Id.*

Mere conclusory allegations of conspiracy without supporting factual detail are inadequate when pleading a § 1985 claim. *See Patillo v. Larned State Hosp*., 462 F. Appx. 780, 784 (10th Cir. 2012) and *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir. 1983). Here, Plaintiffs fail to plead the conspiracy element at all. Apart from merely citing the statute in the Complaint,

Plaintiffs do not state any facts alleging conspiracy between two or more persons, much less one involving Dr. Stembridge.

Plaintiffs' failure to plead the conspiracy element of §1985(3) is already fatal to their assertion of a valid claim but Plaintiffs fail to plead the second element as well.  With respect to the second element of a valid § 1985(3) claim, the Supreme Court held that it does not apply to "all tortious, conspiratorial interferences with the rights of others," but rather, only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Tilton,* 6 F.3d at 686 (*citing Griffin v. Breckenridge,* 403 U.S. 88, 101-102 (1971)).  Plaintiffs provide no facts that allege a racial or a class-based discriminatory animus or that Plaintiffs are a member of any protected class.  The result is a failure to state a claim which warrants dismissal. *Id.*

### 4.  Plaintiffs fail to state a valid "health care" claim against Dr. Stembridge.

Plaintiffs make several assertions about acts or occurrences that seem to be related to health care. *See Complaint*, ¶¶ 57, 61-68, 70, 73. However, Plaintiffs do not articulate a single valid health care-related claim. Merely alleging that one was incapacitated with toxic doses of the drug Fentanyl, or simply saying that one underwent a medically unnecessary procedure, without providing any detail about what was done by whom does not "give defendant fair notice what the claim is and the grounds upon which it rests."  *See Twombly*, 550 U.S. at 554-55.

Moreover, Plaintiffs do not provide any factual content that would allow the court to draw the "reasonable inference" that Dr. Stembridge is liable for any health care-related injury alleged. *See Iqbal*, 556 U.S. 662 at 678.

**5.   Plaintiffs fail to state a valid intentional tort claim against Dr. Stembridge.**

Plaintiffs' Complaint contains several statements which may be insufficient attempts to allege an intentional tort. Plaintiffs claim to have suffered serious injuries as a result of bodily intrusions. *See Complaint*, ¶¶ 63-68. Dr. Stembridge's name is absent from these allegations.

Thus, though it is almost impossible to discern Plaintiffs' chosen cause of action if one relies solely on their Complaint, to the extent the attempt is to make an intentional tort claim, Plaintiffs' attempts fail.

**C.   Dr. Stembridge is entitled to qualified immunity**.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 802, 102 S. Ct. 2727 (1982). *Harlow* places the presumption in favor of public officials acting in their individual capacities. *Melton v. City of Oklahoma City*, 879 F.2d 706, 728–729 (10th Cir.1989). Such entitlement is immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 513, 105 S. Ct. 2806 (1985). Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd,* 563 U.S. 731, 735, (2011).

Even if Plaintiffs were able to state any valid claims against Dr. Stembridge, he would be entitled to qualified immunity. Plaintiffs' Complaint states, in part: "Defendant TRAVIS STEMBRIDGE m.d. (OB/GYN) 2003- KU School of Medicine Ob/GYN program Director, Kansas Health Care Stabilization Fund Board of Governers [sic], Medical Society of Sedgwick County Board of Directors, being sued in his official and individual capacity…" *Complaint*, ¶ 35.

11

As Plaintiffs have not pleaded any facts stating that Dr. Stembridge violated any constitutional or statutory right, Dr. Stembridge is entitled to qualified immunity.

**D.   Construing *pro se* Plaintiffs' pleadings liberally does not allow for a reasonable reading of a valid claim.**

Courts grant certain leniency to *pro se* litigants. For example, if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not the proper function of the Court to assume the role of advocate for the *pro se* litigant. *Id*. The Court should not rewrite a *pro se* Petition to include claims that were never presented. See *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998). Even a "broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. . . This is so because a *pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury." *Erikson v. BP Exploration & Prod*., 567 F. Appx. 637, 639 (10th Cir. 2014) (quoting *Hall*, 935 F.2d at 1110). Furthermore, *pro se* litigants must follow the same rules of procedure that govern other litigants. *Hare v. Donahoe*, 608 F. Appx. 627, 629-30 (10th Cir. 2015).

Plaintiffs' Complaint is not one that can reasonably be read to uncover a valid claim against Dr. Stembridge, even with the most liberal reading. Dr. Stembridge's name only appears among the Parties enumerated by Plaintiffs, who present no facts indicating what injury or harm Dr. Stembridge may have caused them or how he was involved at all. As a result, the Court is placed in a position of trying to guess the substance of Plaintiffs' claims. This effectively invites the Court to become the Plaintiffs' advocate, which it should not do. Even the most liberal reading of the

*pro se* Plaintiffs' Complaint does not reveal any valid claim against Dr. Stembridge and therefore cannot cure their failure to state a valid claim upon which relief can be granted.

**E.    Plaintiffs' claims are time-barred by the applicable statutes of limitations and/or statutes of repose.**

   **1.   Plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims.**

Plaintiffs' 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims are barred by the Kansas statute of limitations for personal injury claims, as well as the related statute of repose. A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). The statute of limitations is drawn from the personal-injury statute of the state in which the federal district court sits. *Id.* Federal law, however, determines the date on which the claim accrues, and the limitations period starts to run. *Id.* State law governs any tolling of that period. *Id.* While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Caballero v. Wyandotte Cty. Sheriff's Dep't*, 789 F. Appx. 684, 686 (10th Cir. 2019).

Kansas has a two-year statute of limitations for personal injury actions. *See* K.S.A. 60-513(a)(4). In Kansas, this statute of limitations was also held to apply to actions brought under 42 U.S.C. § 1985. *See Lyons v. Kyner,* 367 F. App'x 878, 882 (10th Cir. 2010). According to the Complaint, the last pleaded act took place in August 2008, which Plaintiffs say was the abduction attempt of Jalen Davis and the theft of his blood. *Complaint*, ¶ 70. The accrual date of a U.S.C. § 1983 claim is solely a question of federal law and accrual occurs when a plaintiff has a complete and present cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Plaintiffs provide no reason as to why accrual would occur any later than August 2008 and provide no basis for tolling

the statute of limitations. Thus, Plaintiffs are barred from asserting 42 U.S.C. § 1983 and 42 U.S.C. § 1985 claims and such claims should be dismissed.

### 2. Plaintiffs' health care-related claims are barred by K.S.A. 60-513(c), and K.S.A. 60-515(a).

Plaintiffs attempt to assert what appear to be health care-related claims, including but not limited to: Carla Davis making health choices that were not fulfilled, undergoing medical procedures that were not medically necessary, denial of effective medical treatment, and denial of access to medical records. *See Complaint, ¶¶* 57, 61-68, 70. Any such claims are time-barred by the applicable statutes of repose and/or statutes of limitations.

K.S.A. 60-513(c) provides:

> A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action.

K.S.A. 60-515(a) states, in part:

> Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-513(c) applies to Carla Davis's alleged injuries while K.S.A. 60-515(a) applies to Jalen Davis's alleged injuries. Even if one assumes that Dr. Stembridge is a "health care provider" under K.S.A. 60-513(d), and even if Plaintiffs had stated a valid claim against Dr.

Stembridge, any health-care related claims against him would be time-barred. Carla Davis's claims are filed well past the four (4) – year limitation established by K.S.A. 60-513(c). This action was filed on January 23, 2023, and Plaintiffs allege no injuries that occurred after 2008.

K.S.A. 60-515(a) would permit Jalen Davis to file his health care cause of action within one year after turning eighteen (18) years of age. According to the Complaint, Carla Davis was scheduled for labor on January 23, 2003. *Complaint*, ¶ 62. Wesley Medical Center records attached to the Complaint are redacted, but a record documents a procedure for a 'Boy Davis' with a birth date of January 23, 2003, which almost certainly refers to Jalen Davis. *Wesley Medical Center Record (attached to Complaint).* Jalen Davis would have turned eighteen (18) on January 23, 2021, and would not be permitted by Kansas law to file his cause of action beyond January 23, 2022.

Alternatively, Jalen Davis's health care claims are barred even earlier by the repose language of K.S.A. 60-515(a), which clearly states that "no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action." Eight (8) years from the time of the last injury alleged by Plaintiffs, August 2008, would be August 2016 and Jalen Davis would have been less than eighteen (18) years of age in August 2016. As a result, Jalen Davis's claims are barred by the repose language of K.S.A. 60-515(a) as well.

**3.  Plaintiffs' intentional tort claims are barred by K.S.A. 60-514(b) and K.S.A. 60-515(a).**

While Plaintiffs attribute no injuries or acts to Dr. Stembridge, some of Plaintiffs' general assertions may fall under K.S.A. 60-514(b), specifically the assertions contained in paragraphs 63-68 of their Complaint.

Under K.S.A. 60-514(b), Plaintiffs must bring an action for assault, battery, malicious prosecution, or false imprisonment within one year. Any claims Plaintiffs attempt to bring under such theories are time-barred. Plaintiffs allege no incidents that occurred later than August 2008 and state no basis for tolling or that the cause of action accrued at any later time. While most of these potential claims appear to be related to alleged injuries sustained by Carla Davis, to the extent that any of these claims are related to Jalen Davis, he too would be barred from any such claims under K.S.A. 60-515(a) for the same reasons he would be barred from bringing health care-related claims (discussed *supra*).

## III.    CONCLUSION.

Plaintiffs' claims against Dr. Stembridge should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Even if jurisdiction were had, or if Plaintiffs had stated a valid cause of action against Dr. Stembridge, all possible causes of action asserted by Plaintiffs are time-barred due to the expiration of the applicable statutes of repose and statutes of limitations. Additionally, Dr. Stembridge is entitled to qualified immunity. Accordingly, Defendant Dr. Stembridge respectfully prays the Court grant his Motion to Dismiss and enter an Order dismissing him from this action with prejudice.

Respectfully Submitted,

MARTIN, PRINGLE, OLIVER,
WALLACE & BAUER, L.L.P.

*s/ Samantha M. H. Woods*
Samantha M. H. Woods #25929
Ruslan D. Ivanov #26903
645 East Douglas, Suite 100
Wichita, Kansas 67202
(316) 265-9311
(316) 265-2955 (fax)
smwoods@martinpringle.com
rdivanov@martinpringle.com
*Attorneys for Defendant Travis Stembridge, M.D.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

<u>s/ Samantha M. H. Woods</u>
Samantha M. H. Woods #25929

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|                                          |     |                              |
|------------------------------------------|-----|------------------------------|
| CARLA DAVIS and                          | )   |                              |
| JALEN DAVIS,                             | )   |                              |
|     **Plaintiffs,**  | )   |                              |
| vs.                                      | )   | **Case No. 6:23-CV-1010-JAR-KGG** |
|                                          | )   |                              |
| U.S. DEPARTMENT OF JUSTICE, et al        | )   |                              |
|     **Defendants.**  | )   |                              |

## DEFENDANT DEE SPADE, D.O.'S
## MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Dee Spade, D.O., in her individual capacity, and hereby files her motion pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support of this motion, the Defendant submits a Memorandum in Support of her Motion to Dismiss which is hereby incorporated into and made a part of this motion by reference.

**Submitted by:**

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Steven C. Day
Steven C. Day,  #09755
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
scday@woodard-law.com
*Attorneys for Dee Spade, D.O.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro se plaintiffs***


/s/ Steven C. Day
Steven C. Day, #09755
***Attorneys for Dee Spade, D.O.***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS and | ) | |
| JALEN DAVIS, | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | **Case No. 6:23-CV-1010-JAR-KGG** |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANT DEE SPADE, D.O.'S MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Dee Spade, D.O., and respectfully submits this memorandum brief in support of her motion pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Complaint identifies more than forty defendants.  The defendants include a variety of federal, state, county and municipal agencies and officials, numerous health care providers, and two law firms.  The Complaint states that Plaintiffs bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes approximately one page of "Statement of Facts."  In that section, Plaintiffs describe federal funding of efforts to protect the nation from bioterrorism and enactment of federal legislation on that subject in 2002, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state and local levels.  Finally, Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was pregnant in 2002 with her son Jalen Davis, that she received pre-natal care from an obstetrician

and medical clinic in Wichita, and finally, that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments."  In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January, 2003. Plaintiffs allege that in 2002 Carla Davis had told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center, and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor.  (Doc. 1, ¶¶ 60, 61).  Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases;  that Carla was stabbed deeply in the back with a needle by Tom Yao, causing severe pain;  that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions.  (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February, 2004.  (Doc. 1, ¶ 68).  This was likely meant to be February, 2005, as a medical record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain.  (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to obtain health care, their ability make social security benefit claims, and in prosecuting an auto

accident injury claim.  (Doc. 1 at ¶67 (2) - ¶(2)).  Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008; that Carla Davis was falsely accused of child abuse, but found innocent; and of an attempted abduction of Jalen by a social worker. (Doc. 1, ¶¶ 70-71).  Plaintiffs allege that unspecified public officials and their  cooperators are concealing the unlawful bodily intrusions and serious injuries  resulting therefrom. (*Id*. at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

## ARGUMENTS AND AUTHORITIES

Defendant Spade is entitled to dismissal of Plaintiffs' claims on several bases.  First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against Defendant Spade upon which relief can be granted.  Second, pursuant to Rule 12(b)(1), as a result of the lack of specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court.  Third, dismissal pursuant to Rule 12(b)(6) is appropriate because the Complaint reveals on its face that the statute of limitations on any purported claims against the Defendant has long ago expired.

The only mention of Dr. Spade in Plaintiffs' Complaint is in paragraph 31, which reads as follows:

> Defendant DEE SPADE d.o. (pediatrics) a Wichita Clinic P.A. Stockholder with hospital privileges at Kansas City, Mo. Children's Mercy Hospital. She had a contract with plaintiffs for medical services starting January 23, 2003, She is sued in her official and individual capacity with the principle address 4723 E. Douglas Ave. Wichita. Kansas 67218

(Doc. 1 at 5).

While Plaintiffs purport to assert claims against Dr. Spade in both her official and

individual capacities, they fail to specify the official capacity of Dr. Spade.  Plaintiffs' Complaint

does not allege any association of Dr. Spade with the state or any agency of the state, or that she

held any government office.  Although Plaintiffs allege Dr. Spade was a stockholder in the Wichita

Clinic, P.A., the Wichita Clinic is a private entity, and is itself separately named as a defendant.

This motion concerns Plaintiffs' claims against Dr. Spade in her individual capacity.  Counsel for

Dr. Spade does not represent the Wichita Clinic, P.A..

## I.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.   Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory

allegations, unwarranted inferences, or legal conclusions in a complaint.  *Dry v. United States*, 235

F.3d 1249, 1255 (10th Cir. 2000).  The Court does not defer to allegations in the complaint that

constitute legal questions, because those issues are within the purview of the Court.  *Id.* at 1257.

Plaintiffs are proceeding pro se.  [A] pro se litigant's pleadings are to be construed

liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Garrett v.

Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  In *Hall v. Bellmon*, 935 F.2d

1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the
> pleadings to state a valid claim on which the plaintiff could prevail, it
> should do so despite the plaintiff's failure to cite proper legal authority, his
> confusion of various legal theories, his poor syntax and sentence
> construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  However, it is

not the proper function of the district court to assume the role of the advocate for the pro se

litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure.  *See Ogden v. San*

*Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The claim must be "*plausible on its face*." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements. *Id*. at 545. To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a

*reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or § 1985 claim against Dr. Spade. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994).

### B.    There Are Insufficient Allegations in Plaintiffs' Complaint to State a Claim Against This Defendant.

Plaintiffs' Complaint fails to meet the above-stated standards.  There is complete lack of

any allegation of conduct by Dr. Spade in the Plaintiffs' Complaint, beyond identifying her as a pediatrician who was a stockholder in the Wichita Clinic, held privileges at Children's Mercy and "had a contract with plaintiffs for medical services starting January 23, 2003." There are no allegations actually indicating Dr. Spade's involvement in any of the events described in the statements of fact in Plaintiffs' Complaint. Similarly, there are no allegations in the Claim for Relief portion of the Complaint indicating any involvement by Dr. Spade in any of the purported constitutional violations. Simply put, beyond having been identified among the many defendants in the suit, Dr. Spade is never again mentioned in the Complaint. As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief against her.

It should be noted that if Plaintiffs' reference to a contract for medical services is intended to assert a claim for breach of contract based upon medical services, no such claim is recognized under Kansas law. "Kansas courts will not permit a plaintiff to 'creatively classify' a claim as something other than one for medical malpractice if the substance of the claim concerns the physician-patient relationship." *Kernke v. Menninger Clinic, Inc.,* 172 F.Supp.2d 1347, 1354 (D. Kan. 2001) (citing *Christensen v. Gleason,* No. 98-1329-JTM, 2000 WL 133815 at *4 (D. Kan. 2000) citing *Bonin v. Vannaman,* 261 Kan. 199, 208, 929 P.2d 754 (1996).

Plaintiffs do not identify acts or omissions of Dr. Spade at all in their Complaint, much less state how any alleged act or omission of Dr. Spade has any relation to their constitutional claims. Thus, Plaintiffs have failed to state a plausible § 1983 against Dr. Spade in her individual capacity by failing to allege personal involvement by Dr. Spade in the claimed deprivation of their rights. Plaintiffs' Complaint also includes no allegation of conduct under color of state law.

Plaintiffs have also not pleaded any factual allegations indicating that Dr. Spade had a

racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Moreover, conspiracy claims must be pled with specificity, rather than by a mere conclusory allegation, which is the most that can be said of the Plaintiffs' Complaint.  Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Spade for these reasons as well.

To the extent the complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that Dr. Spade had, or could have had, any involvement in those matters.  There is no allegation in the complaint that Dr. Spade possesses any medical records of these Plaintiffs.  Certainly, there is no allegation that Plaintiffs have ever requested medical records from Dr. Spade, or that such a request (futile as it might be) was refused. There is clearly no basis to infer that Dr. Spade has acted in any manner that could serve as the basis for the constitutional claims asserted.

Plaintiffs' complaint should therefore be dismissed as to Dr. Spade for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS ACTUALLY BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE, ENTITLING DEFENDANT TO A DISMISSAL PURSUANT TO RULE 12(b)(1).

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the  complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is  presented). "[C]onstitutional insubstantiality for this purpose has been

equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law, then the purported § 1983 claim does not support the district court's exercise of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law. Thus, the purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim. But, Plaintiffs do not allege a motive based on racial or class-based discrimination. Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction is on the plaintiff. Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this court to find existence of subject matter jurisdiction. First, as discussed above, there is a complete absence of factual allegations of any action on the part of Dr. Spade. Beyond that, there is no allegation of

any specific action purported to have been taken under color of state law, or any alleged discriminatory motive. Given the overall implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories. (See Doc. 101 at 6-7). The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction. The circumstances of the Plaintiffs' complaint in this action urges the same result.

## III.    PLAINTIFFS' COMPLAINT DEMONSTRATES THAT ANY CLAIMS WHICH PLAINTIFFS ATTEMPT TO ASSERT ARE BARRED BY EXPIRATION OF THE STATUTES OF LIMITATIONS AND THE STATUTE OF REPOSE.

Even if Plaintiffs were able to state claims against this Defendant, Plaintiffs' claims are plainly time-barred. While the complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises. And, it is clear that more than a decade has passed since those events occurred. As to Dr. Spade, the latest date alleged in the Complaint that could possibly apply to her occurred well over ten years before the Complaint was filed.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two-year statute of limitations.

*See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal injury actions to his claims), *aff'd in part, dismissed in part sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019). The same is true for Plaintiffs' 1985 claims. *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert a state law claim arising out of medical care by Defendant Spade or others, such claims are also subject to a two-year limitations period. See K.S.A. 60-513(a)(7)(establishing a two year limitations period on actions arising out of the rendering or failure to render professional services). In addition, K.S.A. 60-513(c) establishes a four-year statute of repose applicable to claims arising out of the rendering of or failure to render professional services by a health care provider. *Marzolf v. Gilgore,* 914 F. Supp. 2d 450, 452 (D. Kan. 1996). While the two-year limitations period established by K.S.A. 513(a)(7) may not begin running until the fact of injury becomes reasonably ascertainable, K.S.A. 60-513(c) provides that "in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action." Id. As the Court has noted, this language is "unmistakably plain" and includes no tolling language of any kind. *Marzolf,* 914 F. Supp. 2d at 453. While Plaintiffs' complaint includes no specific factual allegation of this Defendant's involvement in their health care, the Complaint certainly does include factual allegations involving health care provided to Plaintiffs in 2003, and asserts that Dr. Spade had a contract with Plaintiffs for medical services in 2003. Thus, to the extent Plaintiffs' claims against Defendant arise out of professional services as a health care provider, such claims are clearly subject to a two-year limitations period, and the four-year statute of repose established by K.S.A. 60-513(c). The medical events alleged

by Plaintiffs occurred from roughly 2002 to 2008, with the only mention of Dr. Spade in the Complaint referencing her status in 2003.  This action was filed in January, 2023, clearly well beyond the applicable two-year limitations period, and beyond the expiration of the four-year statute of repose.

Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the limitations period on his claim has clearly expired.  K.S.A. 60-515(a) establishes an eight-year statute of repose, which applies to any cause of action that is even arguably disclosed by the wording of the Complaint.  The statute reads as follows:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a) (emphasis added).  This statute expressly prohibits any action commenced "more than 8 years after the time of the act giving rise to the cause of action," using the same clear language applied in *Marzolf.*  As a statute of repose, K.S.A. 60-515(a) applies notwithstanding any disability arising from Jalen Davis's status as a minor.   Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from 2002 to 2008, considerably more than 8 years prior to the filing of Complaint in this case.  As such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the eight-year statute of repose in K.S.A. 60-515(a).

Finally, if the Complaint can somehow be read as stating a claim for breach of contract, any such claim is barred under either K.S.A. 60-511(1) (five year statute of limitations for written contracts) or K.S.A. 60-512(1) (three year statute of limitations for contracts not in writing). Generally a cause of action for breach of contract accrues when plaintiff "could have filed and prosecuted his action to a successful conclusion."  *Pizel v. Zuspann,* 247 Kan. 54, 76, 795 P.2d 42

(1990).  "In most contract cases, that means the cause of action accrues when the contract is breached."  *Edward Kraemer & Sons, Inc. v. City of Overland Park,* 19 Kan. App. 2d 1087, 1091, 880 P.2d 789 (1994) (citing *Price, Administrator v. Holmes,* 198 Kan. 100, 106, 422 P.2d 976 (1967).  For reasons discussed above, any breach here occurred well over five years before the suit was filed.

     If there were any question of the timing of the events complained of in this action, one need only look to a prior lawsuit filed by Carla Davis in 2012.  The petition in that auto accident lawsuit was filed July 25, 2012.  (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV 2597).  As it is a matter of public record, this Court may take judicial notice of it.  *Hastey on behalf of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020).  As can be seen at pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the complaint in the present action, including that in 2003 she experienced a deep stabbing into her spine, that multiple toxic agents were administered without her knowledge, that as a result she experienced medical conditions due to unsafe medical procedures, and that social security benefits had been denied to her in 2006.  (Exhibit 1 at 3-4).  She further alleged in the 2012 petition that relevant information had been hidden from her.  (Id. at 5).  Clearly, not only did the events alleged in Plaintiffs' current Complaint occur more than a decade ago, they were known to Mrs. Davis for more than a decade prior to filing of the present action.

     In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations.  As such, permitting Plaintiffs' claims against these defendants would be futile, and a waste of judicial resources.

## **CONCLUSION**

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed as to this Defendant.  Moreover, the Complaint itself reveals that any purported claim by Plaintiffs against this Defendant is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."  *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).

Defendant respectfully prays that her motion be granted, and she be dismissed from this action with prejudice.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Steven C. Day
Steven C. Day,  #09755
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
scday@woodard-law.com
*Attorneys for Dee Spade, D.O.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                                     cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*

/s/ Steven C. Day
Steven C. Day, #09755
*Attorneys for Dee Spade, D.O.*

15

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP. DOCKET NO.

2012 JUL 25  A II: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

### IN THE EIGHTEENTH JUDICIAL DISTRICT
### DISTRICT COURT, SEDGWICK COUNTY, KANSAS
### CIVIL DEPARTMENT

CARLA B. DAVIS,                    )
        Plaintiff,              )
vs.                                )     Case No.:
                                )
LISA KRISTAN,                      )     12CV2597
        Defendant,              )
_____)

PURSUANT TO K.S.A. CHAPTER 60

### PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
### INDEX SHEET, AND EXHIBITS

    COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

    1.    That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

    2.    That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

    3.    This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

    4.    On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

    5.    At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



EXHIBIT

1

Vol. I 349

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6.     Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

7.     Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8.     There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

9     Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

10     Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

11.     Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12.     Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13.     Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14.     Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

<u>COUNT 1</u>

15.     Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.     Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.     Operated vehicle in a negligent manner by inattentive driving. The Code of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver whose vehicle, because of his driving error or *negligent inattention*, collides with another vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in violation of this section. (Exhibits E2-E3)

18.     Failed to keep a proper outlook. Defendant was distracted doing other things while driving, which may become known at the time of trial, that caused a porcelain plate to slide under Defendant's brake, causing a car accident.

19.     Failed to maintain control of vehicle.

20.     Failed to secure items in her vehicle.

21.     Failed to use due care in the safety of others.

<u>Damages</u>

22.     Plaintiff's significant and frail medical history made her more susceptible to injuries than a person in good health. Defendant's negligence caused an exacerbation (an increase in the severity of a disease or any of its signs or symptoms) of her pre-existing musculoskeletal injuries as supported by the medical records attached to this pleading.

a.     On January 23, 2003, through no fault of her own, and without her knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

        b.      Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

     23.     Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

     24.     Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

*Petition- Page 4-14*

25.    Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.    Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.    Plaintiff did not use as needed assistive devices prior to accident.

28.    Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

a.    August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken.  Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment.  Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

b.      Plaintiff's injuries and pain became more severe. August 9, 2010-

Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,

reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:

Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,

neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to

pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction

and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to

non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-

back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.

Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and

inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in

resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic

Therapies were discontinued due to chiropractic therapies causing a worsening of

Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented

in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical          846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical     739.4- Segmental Dysf. Sacrococcygeal

## REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr.  Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

       c.      September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

### X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

       d.      In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

## PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

## SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations inVocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

### FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011-  Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.
>
> 723.1-Cervicalgia
>
> 724.2-Lumbago
>
> 847.0-Sprain/Strain Cervical

29.    Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.     Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.     Plaintiff has an Associate Degree as a Registered Nurse since the year

2001with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health

Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.     Due to pre-existing injuries plaintiff entered occupational retraining in

2009 in order to obtain suitable employment, transitioning from performing skilled

nursing patient care, to management skills. (Exhibits S1-S12)

32.     During 2009 Plaintiff returned to college, and was participating in gainful

activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.     Prior to accident Plaintiff was working as a home care attendant, assisting

the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.     Plaintiff completed a degree in Organizational Management & Leadership

Program at Friend's University July 2010, and was enrolled at Wichita State University

in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the

accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.     A significant lifestyle change has occurred in Plaintiff's life since the

accident. Necessary activities of daily living such as dressing, bathing, squatting to use

toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain,

fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has

painful impingements throughout the spine. Joints in her neck and extremities makes

painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels

to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.    Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.    Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.    Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.    Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21 2015

*Petition -Page 13-14*

## CERTIFICATE OF SERVICE

I hereby certify that on the _24th_ day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:


Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires _April 21, 2015_

Carla B. Davis


*PETITION- Page 14-14*

HINKLE LAW FIRM, L.L.C.
1617 N. Waterfront Pkwy., Ste. 400
Wichita, KS  67206-6639
Telephone:  316-267-2000
Facsimile:  316-264-1556
bwhite@hinklaw.com
mmaloney@hinklaw.com
rbergkamp@hinklaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS & JALEN DAVIS,    )
    Plaintiffs,    )
    )
v.    )    Case No. 23-CV-01010
    )
UNITED STATES DEPARTMENT OF JUSTICE,    )
et al.    )
    )
    Defendants.    )
    )

## DEFENDANT ANNA STORK-FURY, M.D.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

COMES NOW the Defendant, Anna Stork-Fury, M.D., ("Dr. Fury") in her individual capacity, and hereby files her motion to pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5) and 12(b)(6), for an order dismissing Plaintiffs' Civil Complaint for Injunctive and Declaratory Relief with Possible Money Damages for Constitutional Violations ("Complaint") with prejudice. In support of this motion, Dr. Fury submits a Memorandum in Support of her Motion to Dismiss which is hereby incorporated into and made a part of this motion by reference.

Respectfully submitted,

/s/Brian L. White
Brian L. White, SC# 20767
Mark R. Maloney, SC# 14134
Rebecca E. Bergkamp, SC# 28239
Hinkle Law Firm, L.L.C.
1617 N. Waterfront Pkwy., Ste. 400
Wichita, KS  67206-6639
(316) 267-2000 Telephone
(316) 264-1556 Facsimile
bwhite@hinklaw.com mmaloney@hinklaw.com
rbergkamp@hinklaw.com
***Attorneys for Defendant Anna Stork-Fury, M.D.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS 67208
cardav01292021@yahoo.com
***Pro se Plaintiffs***

/s/Brian L. White
Brian L. White, SC# 20767
***Attorneys for Defendant Anna Stork-Fury, M.D.***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS & JALEN DAVIS,        )
    Plaintiffs,                )
                               )
v.                                )    Case No. 23-CV-01010
                               )
UNITED STATES DEPARTMENT OF JUSTICE, )
et al.                            )
                               )
    Defendants.                )
_____   )

**MEMORANDUM IN SUPPORT OF DEFENDANT ANNA STORK-FURY, M.D.'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COMES NOW the Defendant, Anna Stork-Fury, M.D., ("Dr. Fury") and hereby submits

this memorandum brief in support of her motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1),

12(b)(5), and 12(b)(6), for an order dismissing Plaintiffs' Civil Complaint for Injunctive and

Declaratory Relief with Possible Money Damages for Constitutional Violations ("Complaint")

with prejudice. In support of this motion, Dr. Fury states as follows:

**NATURE OF THE CASE**

Plaintiffs' Complaint identifies more than forty defendants. The defendants include a variety

of federal, state, county, and municipal agencies and officials, numerous health care providers, and

two law firms. Plaintiffs brought this lawsuit on January 23, 2023, requesting a declaratory

judgment, monetary damages of an unspecified amount, an injunction to provide Plaintiffs with

their medical records, and the costs of this action. (Doc. 1, ¶ 9).  The Complaint states that Plaintiffs

bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes

approximately one page of "Statement of Facts." In that section, Plaintiffs describe federal funding

of efforts to protect the nation from bioterrorism and enactment of federal legislation on that

subject in 2002, and that the State of Kansas received federal funding for such purposes. Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state, and local levels. Finally, Plaintiffs assert (1) that Carla Davis had private health insurance, (2) that she was pregnant in 2002 with her son Jalen Davis, (3) that she received pre-natal care from an obstetrician and medical clinic in Wichita, and finally, (4) that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments." In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January of 2003. Plaintiffs allege that in 2002, Carla Davis told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor. (Doc. 1, ¶¶ 60, 61). Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated, Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases; that Carla was stabbed deeply in the back with a needle by Tom Yao; that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions. (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February of 2004 (likely meant to be February, 2005). (Doc. 1, ¶ 68). A medical

record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain. (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to obtain health care, their ability make social security benefit claims, and in prosecuting an auto accident injury claim. (Doc. 1 at ¶67 (2) - ¶(2)). Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008, that Carla Davis was falsely accused of child abuse, but found innocent, and of an attempted abduction of Jalen by a social worker. (Doc. 1, ¶¶ 70-71). Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries resulting therefrom. (Id. at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

## ARGUMENTS AND AUTHORITIES

Dr. Stork-Fury is entitled to dismissal of Plaintiffs' claims with prejudice on several bases. First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against Defendant Dr. Stork-Fury upon which relief can be granted. Second, pursuant to Rule 12(b)(1), as a result of the lack of specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court. Third, dismissal pursuant to Rule 12(b)(6) is appropriate because the Complaint reveals on its face that the statute of limitations on any purported claims against these Defendants has long ago expired. Finally, Plaintiffs have not properly served Defendant Dr. Stork-Fury with process, entitling her to dismissal pursuant to Rule 12(b)(5).

While Plaintiffs purport to assert claims against Dr. Stork-Fury in both her official and individual capacities, they fail to allege any official capacity of Dr. Stork-Fury. Dr. Stork-Fury, as a medical student, does not constitute an official of the KU School of Medicine for purposes of a claim in an official capacity. There have been no factual allegations to the contrary. Nonetheless, any such claims would actually be claims against KU School of Medicine, as "[a] suit against a state official in his or her official capacity. . . is no different than a suit against the State itself." *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services,* 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, (1989)). ". . . an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (citing *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985)).

Even if an "official capacity" claim were possible, the KU School of Medicine is separately named as a defendant, and has itself separately responded to Plaintiffs' Complaint through its counsel. (See Doc. 113 and Doc. 117). While Dr. Stork-Fury believes the principles discussed in this motion are equally dispositive of any official capacity suit against Dr. Stork-Fury, this motion concerns Plaintiffs' claims against her in her individual capacity.

## I. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A. Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint. *Dry v.United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court. *Id.* at 1257.

Plaintiffs are proceeding pro se. [A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). However, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant. *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure. *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The claim must be "*plausible on its face.*" *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis

5

added). A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements. *Id.* at 545. To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at RedHawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or § 1985 claim against Dr. Stork-Fury. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). A § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994).

**B. There are insufficient allegations in Plaintiffs' Complaint to state a claim against Dr. Stork-Fury.**

Plaintiffs' Complaint fails to meet the above-stated standards. Plaintiffs do not state how any alleged acts or omissions of Dr. Stork-Fury have any relation to their constitutional claims. Thus, Plaintiffs have failed to state a plausible § 1983 claim against Dr. Stork-Fury in her individual capacity by failing to sufficiently allege how Dr. Stork-Fury deprived their rights. Plaintiffs' Complaint also includes no allegation of conduct under color of state law. As such, it is clear that Plaintiffs' Complaint fails to state any claim for relief against Dr. Stork-Fury.

Plaintiffs have also not pleaded any factual allegations indicating that Dr. Stork-Fury had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Moreover, conspiracy claims must be pled with specificity, rather than by a mere conclusory allegation, which is the most that can be said of Plaintiffs' Complaint. Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Stork-Fury for these reasons as well.

To the extent the Complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that Dr. Stork-Fury had, or could have had, any involvement in those matters. There is no allegation in the Complaint that Dr. Stork-Fury

7

possesses any medical records of these Plaintiffs. Certainly, there is no allegation that Plaintiffs

have ever requested medical records from Dr. Stork-Fury, or that such a request was refused. There

is clearly no basis to infer that Dr. Stork-Fury has acted in any manner that could serve as the basis

for the constitutional claims asserted.  Plaintiffs' Complaint should, therefore, be dismissed as to

Dr. Stork-Fury for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims

for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction. They

possess only that power authorized by Constitution and statute." *Kline v. Biles*, 861 F.3d 1177,

1180 (10th Cir. 2017) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994)). Plaintiffs, as the parties invoking the Court's jurisdiction, bear the burden of showing its

existence. *Id*. "A court lacking jurisdiction cannot render judgment but must dismiss the cause at

any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Siloam*

*Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018). A federal court

must generally "satisfy itself of its jurisdiction over the subject matter before it considers the merits

of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

Although the absence of a valid cause of action does not normally implicate subject-matter

jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions

of this Court, or otherwise completely devoid of merit as not to involve a federal controversy,"

then the complete lack of a federal claim means the district court lacks federal question jurisdiction.

*Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal

law is presented). "[C]onstitutional insubstantiality for this purpose has been equated with such

concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Dr. Stork-Fury invaded, nor allege facts showing that Dr. Stork-Fury acted under color of state law, then the purported § 1983 claim does not support the district court's exercise of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).  Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Dr. Stork-Fury invaded, nor allege facts showing that Dr. Stork-Fury acted under color of state law. Thus, the purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit. Plaintiffs also purport to bring a § 1985 claim. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim. Yet, Plaintiffs do not allege a motive based on racial or class-based discrimination. Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction in on Plaintiffs. Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this Court to find existence of subject matter jurisdiction. First, there is no allegation of any specific action purported to have been taken under color of state law, or any alleged discriminatory motive. Given the overall

implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories. (See Doc. 101 at 6-7). The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction. The circumstances of Plaintiffs' Complaint in this action urges the same result, entitling Dr. Stork-Fury to a dismissal pursuant to rule 12(b)(1).

### III.   PLAINTIFFS' CLAIMS ARE BARRED BY EXPIRATION OF THE STATUTE OF LIMITATIONS AND THE STATUTE OF REPOSE.

Even if Plaintiffs were able to state a claim against Dr. Stork-Fury, Plaintiffs' claims are clearly time-barred.  While the Complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises, and it is clear that more than a decade has passed since those events occurred.  As to Dr. Stork-Fury, approximately 20 years have passed since any possible involvement of Dr. Stork-Fury.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two-year statute of limitations. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal injury actions to his

claims), *aff'd in part, dismissed in part sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir.

2019). The same is true for Plaintiffs' 1985 claims. *See Lyons v. Kyner*, 367 F. App'x 878, 882

(10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions

to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert a claim arising out of medical care by Dr. Stork-

Fury, such claims are also subject to a two-year limitations period. See K.S.A. 60-

513(a)(7)(establishing a two years limitations period on actions arising out of the rendering or

failure to render professional services). Plaintiffs' Complaint includes factual allegations involving

health care provided to Plaintiffs in 2003, and asserts that Dr. Stork-Fury was a medical student in

2003. Thus, to the extent Plaintiffs' claims against Dr. Stork-Fury arise out of professional services

by health care providers, such claims are clearly subject to a two-year limitations period.

As discussed at pages 1-3 of this Motion, the medical events alleged by Plaintiffs occurred

from roughly 2002 to 2008.  This action was filed in January of 2023, clearly well beyond the

applicable limitations period. Even taking into account that Jalen Davis was a minor at the time of

the events alleged in the Complaint, the statute of limitations on his claim has also clearly expired.

K.S.A. 60-515(a) provides as follows:

If any person entitled to bring an action, other than for the recovery of real property
or a penalty or a forfeiture, at the time the cause of action accrued or at any time
during the period the statute of limitations is running, is less than 18 years of age. .
., such person shall be entitled to bring such action within one year after the person's
disability is removed, except that no such actions shall be commenced by or on
behalf of any person under the disability more than 8 years after the time of the act
giving rise to the cause of action.

K.S.A. 60-515(a). Plaintiffs' claims are barred by the eight-year statute of repose imposed by

K.S.A. 60-515(a). This statute expressly prohibits any action commenced "more than 8 years after

the time of the act giving rise to the cause of action." This is true notwithstanding any disability

arising from Jalen Davis's status as a minor. Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from 2002 to 2008, considerably more than 8 years prior to the filing of the Complaint in this case. As such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the eight-year statute of repose in K.S.A. 60-515(a).

Application of K.S.A. 60-515(a) bars Jalen Davis's claims on anther basis as well. According to Wesley Medical Center records attached as exhibits to the Plaintiffs' Complaint, Jalen Davis was born January 23, 2003. As such, he reached the age of majority on January 23, 2021. To the extent that any viable claim remained at the time he reached the age of majority, he had one year from that date in which to bring the claim pursuant to K.S.A. 60-515(a). The Complaint in this action was filed January 23, 2023, a full two years after Jalen Davis reached the age of majority, and is therefore time-barred.

If there were any question of the timing of the events complained of in this action, one need only look to a prior lawsuit filed by Carla Davis in 2012. The petition in that auto accident lawsuit was filed July 25, 2012. (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV 2597). As it is a matter of public record, this Court may take judicial notice of it. *Hastey on behalf of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020). As can be seen in that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the Complaint in the present action. Clearly, not only did the events alleged in Plaintiffs' current Complaint occur more than a decade ago, but they were known to Mrs. Davis for more than a decade prior to filing of the present action. In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations. As such, permitting Plaintiffs' claims against these Defendants would be futile and a waste of judicial resources.

12

## IV.   THIS COURT LACKS PERSONAL JURISDICTION OVER DR. STORK-FURY DUE TO LACK OF PERSONAL SERVICE OF PROCESS.

Plaintiffs have failed to serve process on Dr. Stork-Fury in a manner meeting the requirements for service under applicable law.

> A Rule 12(b)(5) motion challenges the mode or lack of delivery of a summons and complaint.  Objections to the sufficiency of process must be specific and point out in what manner the plaintiff has failed to satisfy the service provision utilized. When a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service. A pro se party is not relieved of her obligation to comply with the service of process requirements under Fed. R. Civ. P. 4.

*Lewis v. Wyandotte/Leavenworth Area on Aging*, No. 10-2109-JWL, 2010 WL2735563, at *2 (D. Kan. July 9, 2010) (citations omitted). In federal court, a party does not waive the defense of insufficient service of process by joining it with other arguments or by presenting evidence on the merits of the case. *Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 1556250, at *3 (D. Kan. Apr. 10, 2019). Accordingly, special limited appearances are not required. *Id.*

### A.  Individual capacity claims require service on a defendant as an individual.

"Without personal service in accordance with Rule 4(e), the district court is without jurisdiction to render a personal judgment against a defendant." *Scherer v. United States*, 241 F. Supp. 2d 1270, 1281 (D. Kan. 2003), *aff'd,* 78 F. App'x 687, 690 (10th Cir. 2003). Even if service is properly made on a defendant in his official capacity, service can be improper on that defendant in his individual capacity, requiring dismissal of the individual capacity claims. *Id.* at 1282 (citing *Bartels v. Hecker*, 46 F.3d 1150 (table opinion), 1995 WL24911, at *2 (10th Cir. Jan. 23, 1995)). Under Federal Rule of Civil Procedure 4(e), service on an individual must be made according to a method allowed by state law or by personal delivery to the individual or to an agent authorized to receive service for the individual in their individual capacity. *See also* Fed. R. Civ. P. 4(i)(3) (requiring service on the individual when suing a federal officer in their individual capacity).

Here, the purported service on Dr. Stork-Fury was completed by hand delivery to Ashley Roberts at College Hill Obstetrics & Gynecology, 3233 East 2nd Street, Wichita, KS 67208, according to the return of service filed by Plaintiffs (Doc. 151). Kansas law does not allow service for individual capacity claims to be made by hand delivery on a different individual at an individual's business address. *See* K.S.A. 60-303.  Neither does Rule 4. Therefore, no sufficient service has been made on Defendant Stork-Fury in her individual capacity, and Plaintiffs' Complaint should be dismissed pursuant to Rule 12(b)(5).

**B. The Court should dismiss claims for improper service when they would also be dismissed under Rule 12(b)(6).**

Although courts have discretion to extend the time for a plaintiff to serve a defendant, claims can properly be dismissed when the claims also fail under Rule 12(b)(6). *Wanjiku,* 173 F. Supp. 3d at 1231-32 (citing *Ngiendo v. Soc. Sec. Admin.*, 547 F. App'x 913, 914 (10th Cir. 2013)). Claims can be dismissed on both Rule 12(b)(5) and 12(b)(6) grounds. *Id.* Here, as discussed above, Plaintiffs' claims also fail under Rule 12(b)(6), so the Court should dismiss the Plaintiffs' claims against Dr. Stork-Fury under Rule 12(b)(5) and 12(b)(6).

<u>CONCLUSION</u>

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact, fails to demonstrate subject matter jurisdiction in this Court, it should be dismissed with prejudice as to Dr. Stork-Fury.  Moreover, the Complaint itself reveals that that any purported claim by Plaintiffs against Dr. Stork-Fury is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an

opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted). Finally, the failure to properly serve Dr. Stork-Fury with process provides additional grounds for dismissal under all of the circumstances.

Defendant Dr. Stork-Fury respectfully prays that her motion be granted, and that she be dismissed from this action with prejudice.

Respectfully submitted,

/s/Brian L. White
Brian L. White, SC# 20767
Mark R. Maloney, SC# 14134
Rebecca E. Bergkamp, SC# 28239
Hinkle Law Firm, L.L.C.
1617 N. Waterfront Pkwy., Ste. 400
Wichita, KS  67206-6639
(316) 267-2000 Telephone
(316) 264-1556 Facsimile
bwhite@hinklaw.com mmaloney@hinklaw.com
rbergkamp@hinklaw.com
**Attorneys for Defendant Anna Stork-Fury, M.D.**

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and which was served by placing the same in the U.S. mail, first-class postage prepaid, addressed to the following:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS 67208
cardav01292021@yahoo.com
**Pro se Plaintiffs**

/s/Brian L. White
Brian L. White, SC# 20767
**Attorneys for Defendant Anna Stork-Fury, M.D.**

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP. DOCKET NO.

2012 JUL 25 A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

## IN THE EIGHTEENTH JUDICIAL DISTRICT
## DISTRICT COURT, SEDGWICK COUNTY, KANSAS
## CIVIL DEPARTMENT

CARLA B. DAVIS,               )
              Plaintiff,      )
                              )
vs.                           )     Case No.:
                              )
LISA KRISTAN,                 )     12 C V 2 5 9 7
              Defendant,      )
_____)

PURSUANT TO K.S.A. CHAPTER 60

### PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
### INDEX SHEET, AND EXHIBITS

COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

    1.    That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

    2.    That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

    3.    This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

    4.    On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

    5.    At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



DC18

EXHIBIT
1

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6.    Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

7.    Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8.    There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

9    Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

10    Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

11.    Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12.    Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13.    Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14.    Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

## COUNT 1

15.    Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.    Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.    Operated vehicle in a negligent manner by inattentive driving. The Code of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver whose vehicle, because of his driving error or *negligent inattention*, collides with another vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in violation of this section. (Exhibits E2-E3)

18.    Failed to keep a proper outlook. Defendant was distracted doing other things while driving, which may become known at the time of trial, that caused a porcelain plate to slide under Defendant's brake, causing a car accident.

19.    Failed to maintain control of vehicle.

20.    Failed to secure items in her vehicle.

21.    Failed to use due care in the safety of others.

<u>Damages</u>

22.    Plaintiff's significant and frail medical history made her more susceptible to injuries than a person in good health. Defendant's negligence caused an exacerbation (an increase in the severity of a disease or any of its signs or symptoms) of her pre-existing musculoskeletal injuries as supported by the medical records attached to this pleading.

a.    On January 23, 2003, through no fault of her own, and without her knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

        b.     Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

       23.    Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

       24.    Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

                          *Petition- Page 4-14*

25.     Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.     Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.     Plaintiff did not use as needed assistive devices prior to accident.

28.     Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

a.     August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken. Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment. Plaintiff's detailed injuries and treatments documented in Exhibits 172-190.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

b.      Plaintiff's injuries and pain became more severe. August 9, 2010-

Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,

reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:

Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,

neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to

pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction

and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to

non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-

back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.

Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and

inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in

resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic

Therapies were discontinued due to chiropractic therapies causing a worsening of

Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented

in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical          846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical        739.4- Segmental Dysf. Sacrococcygeal

## REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr.  Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

    c.    September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

## X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

    d.    In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

### PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial
nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic
nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral
region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-
Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic
spine.

### SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations in Vocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011- Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.

> 723.1-Cervicalgia

> 724.2-Lumbago

> 847.0-Sprain/Strain Cervical

29.     Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.     Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.     Plaintiff has an Associate Degree as a Registered Nurse since the year

2001with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health

Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.     Due to pre-existing injuries plaintiff entered occupational retraining in

2009 in order to obtain suitable employment, transitioning from performing skilled

nursing patient care, to management skills. (Exhibits S1-S12)

32.     During 2009 Plaintiff returned to college, and was participating in gainful

activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.     Prior to accident Plaintiff was working as a home care attendant, assisting

the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.     Plaintiff completed a degree in Organizational Management & Leadership

Program at Friend's University July 2010, and was enrolled at Wichita State University

in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the

accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.     A significant lifestyle change has occurred in Plaintiff's life since the

accident. Necessary activities of daily living such as dressing, bathing, squatting to use

toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain,

fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has

painful impingements throughout the spine. Joints in her neck and extremities makes

painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels

to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.    Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.    Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.    Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.    Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21 2015

*Petition -Page 13-14*

CERTIFICATE OF SERVICE

I hereby certify that on the _24th_ day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:


Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires _April 21, 2015_

Carla B. Davis


*PETITION- Page 14-14*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                     Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE, et al

                     Defendants.

Case No. 6:23-CV-1010-JAR-KGG

## DEFENDANT KLENDA AUSTERMAN LLC's MOTION TO DISMISS

Defendant Klenda Austerman LLC ("Klenda") requests this Court to enter an order dismissing Plaintiffs' Complaint as to this Defendant pursuant to Fed. R. Civ. P. 12(b)(6).

Klenda asserts this Motion seeking dismissal of Plaintiffs' Complaint on the following grounds: (1) Plaintiffs have failed to state a claim upon which relief can be granted, and (2) Any and all possible claims against Klenda Austerman LLC are barred by the applicable statutes of limitations and statutes of repose.

Klenda has filed an accompanying memorandum of law in further support of this Motion to Dismiss.

             Respectfully Submitted,

             KLENDA AUSTERMAN LLC

             */s/ Christopher A. McElgunn*
             Christopher A. McElgunn, #13359
             301 N. Main, Ste. 1600
             Wichita, KS  67202-4816
             Telephone: 316-267-0331
             Facsimile:  316-267-0333
             cmcelgunn@klendalaw.com
             *Attorneys for Defendant Klenda Austerman LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 5th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

*/s/ Christopher A. McElgunn*
Christopher A. McElgunn, #13359

29B1379

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and
JALEN DAVIS,

                Plaintiffs,

v.

                Case No. 6:23-CV-1010-JAR-KGG

U.S. DEPARTMENT OF JUSTICE, et al

                Defendants.

## MEMORANDUM IN SUPPORT OF DEFENDANT
## KLENDA AUSTERMAN LLC'S MOTION TO DISMISS

COMES NOW, Defendant Klenda Austerman LLC ("Klenda") and submits this memorandum in support of its motion to dismiss all claims Plaintiffs assert against it. In support of its motion, Klenda states as follows:

### NATURE OF PLAINTIFFS' "CLAIMS" & PLEADINGS

Plaintiffs Carla Davis and Jalen Davis filed a Complaint against various individuals and entities, both private and governmental on January 23, 2023. Plaintiffs assert claims under 42 U.S.C. §1983 and 42 U.S.C. §1985 for "Bodily intrusion without Due Process in Violation of the Fourth, Fifth and 14the Amendments."

Plaintiffs make no factual allegations as to Klenda, and identify no act or omission by Klenda.  Rather, Plaintiffs make a single general allegation:

> Defendant Klenda Mitchell Austerman Zuercher Law Firm (Now: Klenda Austerman) attorneys conduct business with some of the listed defendants and is being sued in their official and individual

capacity with the principle [sic] address 301 N. Main, Suite 1600, Wichita, Kansas 67202.

*Complaint*, ¶ 42. Plaintiffs do not identify a single defendant with whom Klenda "conducted business." Other than the bare allegation of ¶ 42, Plaintiffs do not mention Klenda again in the pleading. This allegation in no way states a claim against Klenda, and renders Plaintiffs' Complaint fatally defective, and subject to dismissal as to Klenda under Fed. R. Civ. Proc. 12(b)(6).

## ARGUMENT & AUTHORITIES

**A.    Plaintiffs' Complaint fails to state a claim against Klenda upon which relief can be granted.**

The standards for granting the present motion to dismiss are as follows:

- In considering a motion seeking dismissal under Fed. R. Civ. Proc. 12(b)(6), the Court does not accept conclusory allegations or legal conclusions, and does not draw unreasonable inferences from allegations. *See Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).

- While Fed. R. Civ. Proc 8(a)(1) requires "a short and plain statement of the claim showing the pleader is entitled to relief in order to give defendant fair notice what the claim is and the grounds upon which it rests," the claim must also be "plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 554-55, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face'").

- In order for a claim to meet the "facial plausibility" standard, a party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations "must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [its] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient." *Id.*

- The fact that Plaintiffs are pursuing this action pro se does not excuse them from these standards. While courts may give pro se pleadings liberal construction and hold them to a more flexible standard than that applied to pleadings prepared and filed by legal counsel, they still must comply with applicable Federal Rules of Civil Procedure. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991). In this case,

2

Plaintiffs' status as pro se litigants does not give them a free pass on satisfying these fundamental pleading requirements.

Even the most relaxed application of these standards will not save Plaintiffs Complaint from dismissal for failure to state a claim against Klenda under Fed. R. Civ. Proc. 12(b)(6). The mere conclusory statement that Klenda "conducted business with some of the listed defendants," with no other factual reference or allegation, fails to state a claim against Klenda under 42 U.S.C. §1983 and 42 U.S.C. §1985, and in fact, is insufficient to state any claim upon which relief of any kind may be granted.

Plaintiffs' single vague and conclusory allegation does not state a §1983 or §1985 claim against Klenda. Under §1983, Plaintiffs must at least allege facts sufficient to show: (1) The deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) Klenda caused such deprivation while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978); *see Beedle v. Wilson,* 422 F.3d 1059 (10th Cir. 2005). Further, Plaintiffs must show that Klenda, by its own actions, participated in the alleged constitutional violation. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Circuit 2018). In addition, Klenda cannot be vicariously liable for the actions of its individual members or employees. Plaintiffs must identify and assert its §1983 claim against Klenda's individual members or employees who Plaintiffs contend acted under color of state law and caused the constitutional violation. *See, e.g., Brown v. Montoya,* 662 F.3d 1152 (10th Cir. 2011)(Section 1983 plaintiffs may sue individual capacity defendants only for money damages, and must be based upon the individual's personal involvement in the alleged constitutional violation); *Shrum v. Cooke*, 60 F.4th 1304 (10th Cir. 2023)(the complaint must "make clear exactly who is alleged to have done what to whom."). Plaintiffs' single allegation as to Klenda fails to satisfy these minimal and essential pleading requirements .

To state a claim under §1985, the Plaintiffs must allege that Klenda was part of a conspiracy to deprive or interfere with Plaintiffs' constitutional rights. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Also, the Plaintiffs must allege the details of the conspiracy with specificity. *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir.1994). Finally, Plaintiffs must also allege the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" that motivated the conspirators' actions. *Tilton,* 6 F.3d at 686. Again, Plaintiffs make no allegations that satisfy these requirements for pleading a  §1985 claim.

Plaintiff not only fails to state a claim under §1983 or §1985, their Complaint contains no allegations that establish or infer Klenda participated in, caused, or contributed to any health care-related injury. Further, Plaintiffs make no allegations or inferences that Klenda committed a tort, intentional or otherwise, causing them injury or damage.

In sum, Plaintiffs have failed to state a claim upon which relief may be granted as to Klenda, and all the other defendants for that that matter. The Court should grant Klenda's requested relief and dismiss the Complaint under Rule 12(b)(6).

**B.     The allegations of Plaintiffs' Complaint establish their "claims" are barred by the expiration of the applicable statutes of limitation and statues of repose.**

In this action, under Rule 12(b)(6), the Court should also dismiss Plaintiffs' "claims" because the allegations of the Complaint establish that any causes of action are time-barred. *See, e.g., Caballero v. Wyandotte Cty. Sheriff's Dep't*, 789 F. Appx. 684, 686 (10th Cir. 2019); *Aldrich v. McCulloch Props, Inc.,* 627 F.2d 1036, 1041 (10th Cir. 1980). Whether considered an attempt to allege claims under 42 U.S.C. § 1983 or 42 U.S.C. § 1985, claims for medical negligence or other claim arising from health care, or an intentional tort, all such claims are time-barred.

First, any §1983 or §1985 cause of action is  subject to the Kansas two-year statute of limitations for personal injury claims, K.S.A. 60-513(a)(4). *See, e.g., Bledsoe v. Jefferson County, KS,* 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017);  *Lyons v. Kyner,* 367 F. Appx. 878, 882 (10th Cir. 2010). ). In the Complaint, the latest alleged act or event occurred in August 2008. *Complaint*, ¶ 70. Thus, August 2008 is the latest date at which a §1983 or §1985 cause of action accrued, and Plaintiffs make no allegation that supports the applicable statute of limitations was tolled. Plaintiffs' attempted §1983 or §1985 claims are time-barred under K.S.A. 60-513(a)(4), and should be dismissed. Further, the claims are outside the ten-year statute of repose imposed under K.S.A. 60-513(b).

 Second, any claim for medical malpractice, or for injury arising out of medical care, that might somehow involve Klenda is time-barred by the two-year statute of limitations imposed under  K.S.A. 60-513(a)(7). According to Plaintiffs' allegations, the latest date any such cause of action could have accrued was August 2008. Therefore, like Plaintiffs' §1983 or §1985 claims, any claims arising out of medical or health care are extinguished under  K.S.A. 60-513(a)(7) and should be dismissed. Further, Kansas law, specifically K.S.A. 60-513(c), applies a four-year statue of repose to claims arising out of a health care provider's rendering of or failure to render

professional services. This action was filed in January, 2023, well beyond the four-year statue of repose, and it should be dismissed on this basis.

Third, any purported claim for intentional tort is subject to the one-year statute of limitations imposed under K.S.A. 60-514. Under this statute, Plaintiffs must bring an action for assault, battery, malicious prosecution, or false imprisonment within one year after the commission of the intentional act. Again, August 2008 is the latest date that any claim could have accrued, and Plaintiff failed to file suit by August 2009, and any such claim should be dismissed.

Finally, Jalen Davis was a minor in August 2008. Under K.S.A. 60-515(a), at best, any claim on his behalf was at subject to an eight-year statute of repose:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a). Again, the allegations of the Complaint establish August 2008 as the latest accrual date for any claim held by Jalen Davis. Since no claim was asserted on his behalf before August 2016, they are extinguished by operation of K.S.A. 60-515(a).

## <u>CONCLUSION</u>

Based upon the foregoing, there is no doubt that the Court should dismiss the Complaint because it fails to state a claim upon which relief may be granted as to Klenda. In addition, the allegations of Complaint reveal that any purported claim accrued no later than August 2008, and the claims as to Klenda are barred by expiration of applicable statutes of limitation and statutes of repose, and should be dismissed. Finally, given the allegations of the Complaint, it is "patently obvious" that Plaintiffs cannot prevail on any claim and the Court should dismiss Klenda from this action with prejudice. *Hall v. Bellmon*, 935 F.2d at 1109– 10 (10th Cir. 1991)

Respectfully Submitted,

KLENDA AUSTERMAN LLC

*/s/ Christopher A. McElgunn*
Christopher A. McElgunn, #13359
301 N. Main, Ste. 1600
Wichita, KS  67202-4816
Telephone: 316-267-0331
Facsimile:  316-267-0333
cmcelgunn@klendalaw.com
*Attorneys for Defendant Klenda Austerman LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of April, 2023, this document was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and a paper copy was served on the Plaintiffs by placing the same in the U.S. mail, addressed as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208

Jalen Davis
901 N. Belmont
Wichita, KS 67208

*/s/ Christopher A. McElgunn*
Christopher A. McElgunn, #13359

29B1369

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CARLA DAVIS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. 23-CV-1010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT | ) | |
| OF JUSTICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS MEDICAL SOCIETY OF SEDGWICK COUNTY
AND CENTRAL PLAINS HEALTH CARE PARTNERSHIP'S
MOTION TO DISMISS**

Defendants Medical Society of Sedgwick County and Central Plains Health Care Partnership, pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss all of Plaintiff's claims against them with prejudice for the reasons stated in the Memorandum in Support of their Motion to Dismiss filed contemporaneously herewith.

Respectfully Submitted,

/s/ Andrew L. Foulston
Katy E. Tompkins, #25581
Andrew L. Foulston, #27688
McDONALD TINKER PA
300 West Douglas Ave., Ste. 500
Wichita, Kansas 67202
T: (316) 263-5851 | F: (316) 263-4677
E: ktompkins@mcdonaldtinker.com
E: afoulston@mcdonaldtinker.com
*Attorneys for Defendants Medical Society of
Sedgwick County and Central Plains Health
Care Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of April 2023, I electronically filed the foregoing **DEFENDANTS MEDICAL SOCIETY OF SEDGWICK COUNTY AND CENTRAL PLAINS HEALTH CARE PARTNERSHIP'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

A copy is also being sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

/s/ Andrew L. Foulston
Andrew L. Foulston, #27688

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS, et al.                )
                                   )
            Plaintiffs,            )
                                   )
-vs-                               )        Case No. 23-CV-1010-JAR-KGG
                                   )
U.S. DEPARTMENT                    )
OF JUSTICE, et al.,                )
                                   )
            Defendants.            )
_____   )

### MEMORANDUM IN SUPPORT OF DEFENDANTS
### MEDICAL SOCIETY OF SEDGWICK COUNTY AND CENTRAL PLAINS
### HEALTH CARE PARTNERSHIP'S MOTION TO DISMISS

Defendants Medical Society of Sedgwick County ("MSSC") and Central Plains

Health Care Partnership ("Central Plains") submit the following Memorandum in

Support of their Motion to Dismiss and, for the reasons set forth herein, respectfully

requests that the Court dismiss plaintiffs Carla and Jalen Davis's claims against

them with prejudice.

### Nature of Matter Before the Court

Plaintiffs Carla and Jalen Davis ("Plaintiffs"), proceeding pro se, filed this

lawsuit against numerous individuals and entities, claiming deprivation of their

rights and conspiracy to interfere with their civil rights under 42 U.S.C. § 1983 and

§ 1985. It appears that Plaintiffs' claims revolve around medical care they received

and interactions with healthcare providers that they had in the mid-2000s, which

they claim resulted in the deprivation of their rights.

As Plaintiffs fail to state any plausible § 1983 or § 1985 claim against MSSC or Central Plains and the statute of limitations would have run on any claim Plaintiffs even theoretically could have against these entities, MSSC and Central Plains respectfully ask that the Court dismiss Plaintiffs' claims against them with prejudice.

## **Statement of Facts**

The following statements of facts, based on the factual allegations of Plaintiffs' Complaint, is submitted and taken to be true for the purposes of this Memorandum only.

In August 2002, Carla Davis was pregnant with her in-utero child Mr. Davis and began receiving OB/GYN care from Clyde Wilson Wesbrook, M.D., at Wichita Clinic P.A. (*Id.*) On October 18, 2002, Ms. Davis told Dr. Wesbrook that she wanted to deliver Mr. Davis at St. Joseph Hospital in Wichita, Kansas. (*Id.* at ¶¶ 57, 60; ECF 1-1 at 8.). Wichita Clinic then "allocated [her] health care services to 'Deliver at Wesley Medical Center' . . . ." (ECF 1 at ¶ 61.) Specifically, Plaintiffs allege that Ms. Davis was "forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for January 23, 2003." (*Id.*) When Ms. Davis arrived at Wesley Medical Center, she was placed "in the hands of indigent and research training programs" without her knowledge. (*Id.* at ¶ 62.) Plaintiffs were then incapacitated with a toxic dose of the drug Fentanyl. (*Id.* at ¶ 63.) Mr. Davis was ultimately born on January 23, 2003. (ECF 1 at ¶¶ 61–66; ECF 1-1 at 3.)

While Ms. Davis was incapacitated, she was raped by Anna Stork-Furry. (ECF 1 at ¶ 64.) Tom Yao also stabbed Ms. Davis deeply in her lower back with a needle, causing severe pain. (*Id.* at ¶ 65.) Plaintiffs were also administered toxic doses of antibiotics and Ms. Davis was administered toxic doses of Bupivacaine and other medications even though these medications were not medically necessary. (*Id.* at ¶ 66.) Plaintiffs allege that Ms. Davis suffered serious injuries due to these alleged bodily intrusions. (*Id.* at ¶ 67-1.)[1]

On possibly February 4, 2004, but more likely February 4, 2005, an unknown device was placed in Ms. Davis's chest blood vessels without her knowledge and consent at Wesley Medical Center. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7.) In addition, Plaintiffs allege that unspecified public officials refused to give them the results of diagnostic testing, Plaintiffs' medical records are in confidential statute, and Plaintiffs are unable to use their health information for any reason. (ECF 1 at ¶ 67-2; ECF 1-1 at 1; ECF 7.) Plaintiffs allege that they are being denied effective medical treatment and the ability to use their medical records for evidence in an auto accident case and in applying for and/or receiving social security benefits. (ECF 1 at ¶¶ 68-2, 72). Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries resulting therefrom that they claim that they have endured. (*Id.* at ¶ 69.) Based on the documents submitted alongside Plaintiff's Complaint, it appears that Plaintiffs' allegations concern a denial of a request for information from Children's Mercy

---

[1]   Plaintiffs' Complaint appears to repeat and contain two sets of paragraphs 67 and 68. (ECF 1 at p. 8–9.) The first set of paragraphs 67 and 68 are herein referred to as paragraphs 67-1 and 68-1, respectively, and the second set are referred to as paragraphs 67-2 and 68-2, respectively.

Hospital that occurred on August 14, 2008, and Wesley Medical Center medical record for Ms. Davis from February 2005 being stamped "CONFIDENTIAL NOT FOR RE-RELEASE." (ECF 1-1 at 1; ECF 8.)

In August 2008, unspecified public officials stole the blood of Mr. Davis at Children's Mercy and prevented him from receiving medical treatment. (ECF 1 at ¶ 70.) Plaintiffs appear to allege that there was an attempted abduction of Mr. Davis by "a U.S. Military Social Worker- Michael Dustin ( Korea) [sic]." (*Id.* at ¶ 70.) Plaintiffs allege that Ms. Davis was falsely accused of child abuse, was investigated, and found innocent. (*Id.* at ¶ 71.)

Plaintiffs filed this lawsuit on January 23, 2023, seeking declaratory relief, injunctive relief, and monetary damages for the above-described allegations. (ECF 1 at p. 9.) In Plaintiffs' Complaint and Civil Cover Sheet, they state they are bringing this case under 42 U.S.C. § 1983 and § 1985. (*Id.* at ¶ 43; ECF 2.) Plaintiffs have brought this case against approximately 40 defendants, including multiple physicians, private and public medical entities, law firms, governmental entities, and former and current government officials. (ECF 1 at ¶¶ 3–42.)

Defendants include the Medical Society of Sedgwick County ("MSSC") and Central Plains Health Care Partnership ("Central Plains"), which are non-profit organizations that assist indigent individuals and support health education programs and research studies. (*Id.* at ¶ 22.) Plainitffs allege that Robert Kenagy, M.D., and David Grainger, M.D., served on the Board of Directors for Central Plains. (*Id.* at ¶¶ 29, 34.) Plaintiffs also allege that Hewitt Goodpasture, M.D.,

served as the President of MSSC from 2002 through 2003. They also allege that Travis Stembridge, M.D., served on the Board of Directors for MSSC.

Plaintiffs have not identified any acts committed by Drs. Kenagy, Grainger, Goodpasture, or Stembridge that resulted in any violation of Plaintiffs' constitutional rights or caused Plaintiffs to suffer any injury. (ECF 1 at p. 1–10; ECF 1-1 at 1–14; ECF 7; ECF 8.) Plaintiffs have also not pleaded any facts showing that either MSSC or Central Plains are a governmental entity, perform any governmental function, or act jointly with any governmental entity. (*Id.*)

## **Arguments and Authorities**

### I.     **Governing Standard**

#### A.     **Failure to state a claim**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face." Under this standard, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility." "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.' Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth. Second, the court must

> determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Cory D. Cline v. Anthony R. Russo*, No. 22-CV-4010-JAR-TJJ, 2023 WL 2375107, at

*1 (D. Kan. Mar. 6, 2023).

In addition, to state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff and what specific legal right the plaintiff believes the defendant violated. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Complaints in which a plaintiff merely broadly claims that their rights "were violated" or that a defendant "infringed" on the plaintiff's rights are also insufficient. *Pahls v. Thomas*, 718 F.3d 1210, 1225–26 (10th Cir. 2008).

### B.   Rule applicable to pro se parties

"A party proceeding pro se is entitled to a liberal construction of his pleadings. However, a pro se party must follow the same rules of procedure that govern other litigants." *Trammell v. Denning*, No. 12-3152-JAR, 2012 WL 5362968, at *1 (D. Kan. Oct. 31, 2012). Further, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *United States v. Dixon*, No. 5:07-CR-40124-JAR, 2021 WL 3129593, at *2 (D. Kan. July 23, 2021). Finally, a party's pro se status does not operate to toll the statute of limitations. *Van Deelen v. City of Eudora*, No. 96-4040-SAC, 1996 WL 707016, at *3 (D. Kan. Nov. 5, 1996)

## II.    Plaintiffs have not pleaded any facts supporting a plausible § 1983 or § 1985 claim against MSSC or Central Plains.

Plaintiffs have sued MSSC and Central Plains in their "official and individual capacity." However, they have not pleaded any facts that show that either Central Plains or MSSC was a governmental entity or performed any governmental action that resulted in any injury to Plaintiffs. Accordingly, Plaintiffs have failed to state a plausible official capacity suit of any kind against MSSC and Centrals Plains as they have not pleaded any facts showing that either entity has any "official capacity" in which they could be sued.

Plaintiffs have also not pleaded facts sufficient to meet the other requirements of stating a § 1983 or § 1985 claim against MSSC or Central Plains. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

Here, Plaintiffs do not make any factual allegations that MSSC or Central Plains ever deprived them of any rights or that MSSC or Central Palins ever acted under color of state law. Plaintiffs also do not make any factual allegations that MSSC or Central Plains ever engaged in any conspiracy or ever interfered with their civil rights at all. Thus, Plaintiffs have clearly failed to even partially meet the basic requirements of stating a plausible § 1983 or § 1985 claim against MSSC or Central Plains.

Additionally, neither § 1983 nor § 1985(3) authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Saviour v. City of Kansas City, Kan.*, No. CIV. A. 90-2430-L, 1992 WL 135019, at *7 (D. Kan. May 15, 1992). Instead, to hold an entity liable under § 1983 or § 1985, a plaintiff must prove (1) the existence of an official policy or custom, (2) a causal relationship between the custom and a violation of the plaintiff's constitutional rights, and (3) requisite state of mind. *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019). Yet Plaintiffs do not make any specific allegations regarding MSSC or Central Plains. They do not allege any facts as to any custom, practice, or policy. They also do not allege any facts linking any custom, practice, or policy to an injury. Thus, Plaintiffs also fail to allege sufficient facts to state a § 1983 or § 1985 claim against MSSC or Central Plains for this reason as well.

Finally, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v.*

*Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Plaintiffs have not pleaded any factual allegations indicating that MSSC or Central Plains had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Thus, Plaintiffs have failed to state a plausible § 1985 claim against MSSC or Central Plains for this reason as well.

Due to the numerous deficiencies in the factual allegations contained in the Complaint, it is clear that Plaintiffs have failed to even approach stating a plausible § 1983 or § 1985 claim against MSSC or Central Plains or even show that MSSC or Central Plains had any connection with any of the alleged events that form the basis of Plaintiffs' lawsuit. The Court should, therefore, dismiss all of Plaintiffs' claims against MSSC and Central Plains with prejudice.

## III.    The statute of limitations has run on Plaintiffs' claims.

The statute of limitations on 42 U.S.C. § 1983 and § 1985 claims in Kansas are governed by the two-year limitations period applicable to personal injury claims provided by Kansas statute, K.S.A. 60-513(a)(4). *Gilmore v. Easter*, No. 22-3181-JWL-JPO, 2022 WL 4289549, at *2 (D. Kan. Sept. 16, 2022). "State law also determines any tolling of the limitations period, although federal law may allow for additional tolling in rare circumstances." *Id.* at *10. In response to the global pandemic of COVID-19, the Kansas Supreme Court suspended the running of all statute of limitations in Kansas from March 19, 2020, to April 15, 2021. *Korgan v. Est. of Hansen by & through Cramer*, No. 21-2567-JWB, 2022 WL 4465074, at *1 (D.

Kan. Sept. 26, 2022). However, even considering the COVID-related and all other applicable tolling to Plaintiffs' claims, their claims are still time-barred.

**A.     Ms. Davis's claims are barred by the statute of limitation.**

When determining when a federal civil rights action accrued, a court must apply federal law. *McRoberts v. Rosas*, No. 21-2470-DDC-TJJ, 2022 WL 4482481, at *4 (D. Kan. Sept. 27, 2022). Under federal law, a "civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. It is not necessary that the plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue." *Abdullah ("Abe") Fattaey v. Kansas State Univ.*, No. 15-9314-JAR-KGG, 2017 WL 347500, at *11 (D. Kan. Jan. 24, 2017).

Here, the alleged events that form the bases of Ms. Davis's claims can be grouped into three timeframes. The first timeframe is August 2002 to January 2003, which encompasses all allegations related to the birth of Mr. Davis and all the medical treatment that Plaintiffs' received in connection with his birth. (ECF 1 at ¶¶ 57, 61–66.) Any injuries Ms. Davis suffered from these alleged events would have been or should have been known to her shortly at the time the events occurred, as she would have been aware of the procedures performed and the effects thereof. Further, the documents filed by Plaintiffs alongside their complaint include pictures of alleged injuries suffered by Ms. Davis. (ECF 1-1 at 13–14.) Assuming the information contained within the pictures is true, these pictures were taken between May 3, 2007, and April 29, 2013. (*Id.* at 14.) Accordingly, at the latest, Ms.

Davis was indisputably aware that she suffered some injury by May 3, 2007. Thus, the statute of limitations on her claims related to events occurring between August 2002 and January 2003, would have run on May 3, 2009, at the latest.

The second set of events occurred in or around February 2005, when an unknown device was allegedly placed in Ms. Davis's chest blood vessels without her knowledge and consent. (ECF 1 at ¶ 68-1; ECF 1-1 at 5; ECF 7; ECF 8.) Again, there are no facts indicating that she was unaware of the placement of the device without her consent, which itself would be an injury, at the time it was placed or shortly thereafter. Therefore, the statute of limitations for claims arising from the alleged events that occurred in or around February 2005 would have run in February 2007 or shortly thereafter.

The final set of events occurred in or around August 2008, when there was an alleged attempt to abduct Mr. Davis, his blood was allegedly taken, and Children's Mercy declined to provide information in response to a request for information from Ms. Davis. (ECF 1 at ¶ 70; ECF 1-1 at 1.) From the face of these allegations, it is clear that Ms. Davis knew or should have known of the alleged abduction attempt and her request for information being declined and any injuries resulting therefrom at the time or shortly after these events occurred. Plaintiffs have also again not pleaded any facts indicating that they were unaware of these events and any injuries therefrom at or near the time they occurred. Accordingly, the limitations period Ms. Davis's claims related to the events that allegedly occurred in or around August 2008 would have ended in August 2010 or shortly thereafter.

As the limitations period for any of Ms. Davis's claims related to the allegations contained in Plaintiffs' Complaint would have expired in 2010, at the latest, her claims in this case are untimely absent any tolling. Plaintiffs have not pleaded any facts supporting the tolling of the statute of limitations as to Ms. Davis's claims. Moreover, as COVID-related tolling did not begin until March 2020, such tolling is also not applicable to Ms. Davis's claims. Therefore, Ms. Davis's claims are time-barred as the limitations period had expired long before Plaintiffs filed their Complaint on January 23, 2023. Accordingly, Ms. Davis's claims should be dismissed with prejudice because her claims are barred by the statute of limitations.

### B.      Mr. Davis's claims are barred by the statute of limitation.

As part of the federal discovery rule regarding the accrual of claims, the knowledge of a claim or injury of a parent is imputed to a minor. *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 274 (3d Cir. 2006); *see also Rice v. U.S.*, No. 96-5175, 1997 WL 353009, at *3 n.6 (10th Cir. 1997). Although this rule usually comes into play in claims under the federal tort claims act, the rule also applies to determining the date that Plaintiffs' claims accrued because the accrual date is controlled by the federal "common law" discovery rule just as the accrual date of FTCA claims are. *See Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) (generally, federal discovery rule applies equally to both FTCA and § 1983 claims).

Because Ms. Davis's knowledge regarding Plaintiffs' claims and injuries is imputed to Mr. Davis, their claims accrue on the same date. Thus, the discussion

above regarding the accrual of Ms. Davis's claims is equally applicable to the accrual of Mr. Davis's claims, and the latest that any of his claims would have accrued would have been in August 2008.

However, unlike Ms. Davis, additional tolling considerations must be given to Mr. Davis's claims as he did not turn eighteen until January 23, 2021. As the forum's state's law governs the tolling of federal civil rights claims, the Kansas statute tolling the statute of limitations period while a plaintiff is under a legal disability, K.S.A. 60-515(a), applies. In relevant part, this statute states:

> [I]f any person entitled to bring an action, . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, . . . such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a).

Pursuant to this statute, the one-year period for Mr. Davis to file his claims after turning eighteen would have begun to run, under normal circumstances, on January 23, 2021, and elapsed on January 23, 2022, exactly one year before Plaintiffs filed suit. *See Smith v. TFI Fam. Servs., Inc.*, No. 17-2235-JWB, 2019 WL 6037380, at *6 (D. Kan. Nov. 14, 2019). Further, even assuming that the COVID-related tolling would have applied to this one-year limitation period, the one-year period would have begun to run on April 15, 2021, and ended on April 15, 2022, also well-before Plaintiffs filed suit.

Accordingly, even assuming all possible tolling of the statute of limitations on Mr. Davis's claims, he still did not file suit on his claims within the applicable limitations periods. Mr. Davis's claims against MSSC and Central Plains should, therefore, be dismissed with prejudice for being time-barred.

## IV. Plaintiffs' claims against MSSC and Central Plains should be dismissed with prejudice.

"Even though pro se parties generally should be given leave to amend, it is appropriate to dismiss without allowing amendment where it is obvious that the plaintiff cannot prevail on the facts she has alleged and it would be futile to give her an opportunity to amend." *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014) (quotation omitted).

Here, Plaintiffs have not provided any indication that they can prevail against MSSC or Central Plains on any claim based on any facts they have alleged or that allowing them leave to amend would be anything but futile. First, Plaintiffs have not provided any indication that any of the elements of a plausible § 1983 or § 1985 claim against MSSC or Central Plains are even partially present. In fact, they have not provided even a shred of a reason to believe that MSSC or Central Plains had any involvement with any of the incidents that form the bases of their claims. Thus, Plaintiffs' claims against MSSC and Central Plains should be dismissed with prejudice as it is patently obvious that they do not even have the beginning of a viable claim against either entity. *See Allen v. Adams*, No. 21-1221-JAR-KGG, 2021 WL 5279642, at *3 (D. Kan. Nov. 12, 2021); *Herlocker v. Loffswold*, No. 16-2300-JAR-TJJ, 2016 WL 5851732, at *3 (D. Kan. Oct. 6, 2016).

Further, even if Plaintiffs could plead facts generally supporting the substantive legal elements of their claims, their claims would still clearly be time-barred as the statute of limitations on Ms. Davis's claims ran, at the latest, in or around August 2010, and the statute of limitations on Mr. Davis's claims ran, at the latest, on April 15, 2022. As Plaintiffs' claims, even if otherwise substantively viable, would be time-barred, their claims against MSSC and Central Plains should be dismissed with prejudice. *See Wilson v. Reid*, 781 F. App'x 789, 793 (10th Cir. 2019); *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1191 (10th Cir. 2014).

Because Plaintiffs clearly do not have any plausible claims against MSSC and, Central Plains even if they did have such a claim, the claim would be time-barred, the Court should not grant Plaintiffs leave to amend but should dismiss their claims against these entities with prejudice.

## <u>Conclusion</u>

For the reasons stated above, MSSC and Central Plains respectfully requests that the Court grant their Motion to Dismiss, dismiss all of Plaintiffs' claims against them with prejudice, and for such other and further relief that the Court finds to be just and equitable.

Respectfully Submitted,

/s/ Andrew L. Foulston
Katy E. Tompkins, #25581
Andrew L. Foulston, #27688
MCDONALD TINKER PA
300 West Douglas Ave., Ste. 500
Wichita, Kansas 67202
T: (316) 263-5851 | F: (316) 263-4677
E: ktompkins@mcdonaldtinker.com
E: afoulston@mcdonaldtinker.com
*Attorneys for Defendants Medical Society and Central Plains*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 6th day of April 2023, I electronically filed the foregoing MEMORANDUM IN SUPPORT OF DEFENDANTS MEDICAL SOCIETY OF SEDGWICK COUNTY AND CENTRAL PLAINS HEALTH CARE PARTNERSHIP'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

A copy is also being sent via United States mail, postage prepaid and properly addressed to Plaintiffs as follows:

Carla Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

Jalen Davis
901 N. Belmont
Wichita, Kansas 67209
*Plaintiff*

/s/ Andrew L. Foulston
Andrew L. Foulston, #27688

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and            )
JALEN DAVIS,              )
          Plaintiffs,     )
vs.                    )     Case No.  6:23-CV-1010-JAR-KGG
U.S. DEPARTMENT OF JUSTICE, et al  )
          Defendants.   )
_____)

## WESLEY MEDICAL CENTER, LLC'S MOTION TO DISMISS

Defendant Wesley Medical Center, LLC ("Wesley"), through attorney Justen P. Phelps of

Gibson Watson Marino LLC, respectfully submits this motion requesting that the court dismiss this

action for the reasons set forth in the accompanying memorandum in support.

WHEREFORE, Wesley respectfully requests this court grant its motion and dismiss this

action in its entirety with prejudice.

Respectfully submitted,

GIBSON WATSON MARINO LLC

By: _s/_ Justen P. Phelps_____
Justen P. Phelps, #22670
GIBSON WATSON MARINO LLC
301 N. Main, Suite 1300
Wichita, KS 67202
T: (316) 264-7321
F: (316) 264-8614
justen@gwmks.com
*Attorneys for Defendant Wesley Medical*
*Center, LLC*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 7th day of April, 2023, the foregoing was electronically filed
with the Clerk of the U.S. District Court using the CM/ECF system, which will send notice of
electronic filing to all registered attorneys of record.  Additionally, it was served by placing the
same in the U.S. mail, first-class postage prepared to the following:

Carla Davis          cardav01292021@yahoo.com
Jalen Davis

901 N. Belmont
Wichita, KS 67208
***Pro Se Plaintiffs***

s/ Justen P. Phelps
Justen P. Phelps, #22670
*Attorneys for Wesley Medical Center*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and    )
JALEN DAVIS,      )
    Plaintiffs,   )
vs.          )  Case No.  6:23-CV-1010-JAR-KGG
U.S. DEPARTMENT OF JUSTICE, et al )
    Defendants.  )
_____)

**MEMORANDUM IN SUPPORT OF
<u>WESLEY MEDICAL CENTER, LLC'S MOTION TO DISMISS</u>**

Defendant Wesley Medical Center LLC ("Wesley"), through attorney Justen P. Phelps of

Gibson Watson Marino LLC, submits this Memorandum in Support of its Motion to Dismiss.

Defendant requests that the Court dismiss this action with prejudice. In support, Wesley states:

<u>**INTRODUCTION**</u>

For purposes of this Motion to Dismiss only, the following facts, taken from Plaintiff's

Complaint, are assumed to be true.

In August 2002, Plaintiff Carla Davis was pregnant with her in-utero child, Plaintiff Mr.

Davis, and began receiving OB/GYN care from a doctor by the name of Clyde Wilson

Wesbrook, M.D. (Doc. 1 at p. 7). On October 18, 2002, Ms. Davis told Dr. Wesbrook that she

wanted to deliver Mr. Davis at St. Joseph Hospital in Wichita, Kansas. (*Id*. at p. 8). Wichita

Clinic then "allocated [her] health care services to Deliver at Wesley Medical Center." (*Id*.).

Specifically, Plaintiffs allege that Ms. Davis was "forced to go to Wesley Medical Center under

the disguise of a scheduled induction of labor scheduled for January 23, 2003." (*Id*.). When Ms.

Davis arrived at Wesley Medical Center, she was placed "in the hands of indigent and research

training programs" without her knowledge. (*Id*.). Plaintiffs were then incapacitated with a toxic

dose of the drug Fentanyl. (*Id*.). Defendant Anna Stork-Fury performed some form of procedure

that required her to insert her "pre-gloved" hands into Ms. Davis's vagina. (*Id.*). She was holding

something in her hand at the time of the procedure. (*Id.*). Following the procedure, Ms. Davis

was treated for "infectious diseases of [her] entire body." (*Id.*).

Defendant Tom Yao "stabbed [Ms. Davis] deeply in [her] lower back with a needle."

(*Id.*). Following that, Ms. Davis was "administered toxic doses of antibiotics, when [she] did not

have an infection." (*Id.*). Additionally, she was "administed (sic) toxic doses of Bupivicaine and

other drugs without a medically necessary reason." (*Id.*). Mr. Davis was ultimately born on

January 23, 2003. (*Id.*).

<u>**Argument and Authorities**</u>

### I.    Standard of Review

"A pro se litigant's pleadings are to be construed liberally and held to a less

stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106,

1110 (10th Cir.1991). Even so, the Tenth Circuit has "repeatedly insisted that *pro se* parties

follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux

& Janer,* 425 F.3d 836, 840 (10th Cir.2005)

Federal Rule of Civil Procedure 12(b)(6) governs dismissal of actions for failure to state a

claim upon which relief may be granted. Interpreting Federal Rule of Civil Procedure 12(b)(6), a

series of U.S. Supreme Court decisions has stressed the need to plead *facts*, not mere

conclusions, under the notice pleading standard. See *Ashcroft v. Iqbal,* 129 S.Ct. 1937 (2009);

*Erikson v. Pardus*, 551 U.S. 89 (2007); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "To

survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is **plausible** on its face." *Iqbal,* 556 U.S. at

678 (emphasis added). The court must not "weigh potential evidence that the parties might

present at trial, but ... assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted." *Cohon v. New Mexico Dept. of Health,* 646 F.3d 717,

724 (10th Cir.2011) (interior quotations omitted). A plaintiff must "nudge [her] claims across the

line from conceivable to plausible" in order to survive a motion to dismiss. *Twombly,* 550 U.S.

544.

Plausibility requires that the allegations of a complaint should "raise a reasonable

expectation that discovery will reveal evidence" supporting the elements of the claims,

*Twombly,* 550 U.S. at 556, and "allo[w] the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged," *Iqbal,* 556 U.S. at 678. "Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility of entitlement to relief." *Id.* "Determining whether a

complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 129 S.Ct. at 1949.

The Tenth Circuit has elaborated the plausibility standard:

> we have concluded the *Twombly/Iqbal* standard is a middle ground between
> heightened fact pleading, which is expressly rejected, and allowing complaints that
> are no more than labels and conclusions or a formulaic recitation of the elements of
> a cause of action, which the Court stated will not do.

*Khalik v. United Airlines,* 671 F.3d 1188, 1191 (10th Cir.2012) (internal citations omitted).

With that being said, the only allegations in Plaintiffs' Complaint that have anything to

do with Wesley or conduct occurring at Wesley are the following paragraphs, which for purposes

of this Motion to Dismiss are assumed to be true:

> 23.      Defendant WESLEY MEDICAL CENTER is a public hospital housing
> indigent programs and KU School of Medicine teaching Programs with the

Resident Agent: C T Corporation System, 112 SW 7th Street, Suit 3C, Topeka, Kansas 66603.

61.    Without my knowledge and consent on December 10, 2002, Wichita Clinic allocated my health care services to 'Deliver at Wesley medical Center" I was forced to go to Wesley Medical Center under the disguise of a scheduled induction of labor scheduled for January 23, 2003.

62.    When I arrived at Wesley medical Center I did not know that I was placed in the hands of indigent and research training programs.

63.    On January 23, 2003, my in-utero child and I was incapacitated with toxic does of the drug Fentanyl.

64.    I was raped when Anna Stork-Furry after I was incapacitated, penetrated my vagina without a necessary medical reason. Her hands were pre-gloved when she came into the room, and her hand were cupped holding something in it. I was unable to question what was in her hand due to the incapacitation. Later was treated for infectious diseases of my entire body.

65.    Tom Yao, stabbed me deeply in my lower back with a needle, causing severe pain.

66.    My medical billing shows that my in-utero child and I was administered toxic doses of antibiotics, when I did not have an infection. I was administed (sic) toxic doses of Bupivicaine and other drugs without a medically necessary reason.

67.    I suffered serious injuries as a result of the bodily intrusions.

68.    On February 4, 2004 at Wesley Medical Center an unknown device was placed in my chest blood vessels with my knowledge and consent.

(Doc. 1 at pp. 4 and 8). As a result of these allegations, Plaintiffs claim their constitutional rights

under the fourth, fifth, and fourteenth amendments have been violated, and seem to seek

recovery under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

Here, Plaintiffs have not nudged their claims from "possible" to "plausible" with regard

to Wesley. None of these allegations establish plausible claims against Wesley because Wesley

was not a state actor and there is no allegation that Wesley conspired with racially motivated

animus. Additionally, Plaintiffs claims are time barred under the applicable statute of limitations.

## II.   Plaintiffs' claims must be dismissed because Wesley is not a state actor and did not conspire with racially motivated animus.

Plaintiffs' claims against Wesley under 42 U.S.C. § 1983 should be dismissed because Wesley cannot be considered a state or governmental actor. It is a well-established principal that 42 U.S.C. § 1983 claims are only available when there is an alleged deprivation of constitutional rights by persons acting under color of state law:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. *See O'Connor v. St. John's Coll*., 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

"The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage." *Carey v. Cont'l Airlines, Inc.*, 823 F.2d 1402, 1404 (10th Cir. 1987). In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982), the United States Supreme Court held the action under color of state law necessary to establish a section 1983 suit is equivalent to the "state action" necessary to establish a violation of the Fourteenth Amendment. Under the state action doctrine, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Id*. at 937.

To show a plausible claim under 42 U.S.C. § 1983, Plaintiffs must allege facts showing Wesley was a "state actor." *Lugar*, 457 U.S. at 937.  Indeed, to establish a colorable claim under

42 U.S.C. § 1983, "the party charged with the deprivation must be a person who may fairly be said to be a state actor," either "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id*.

There is no allegation showing Wesley to be a state actor. Plaintiffs do not allege that Wesley is a state official or governmental entity. Indeed, such an allegation would be demonstrably false. Neither do Plaintiffs allege that Wesley acted in connection with state officials or that the actions alleged could be chargeable to the state. In fact, all allegations made against Wesley, even if assumed completely true, show no constitutional deprivations.

Not only are there no specific facts showing Wesley was acting under color of state law, but there are no allegations at all showing Wesley to have acted under color of state law. The complaint falls far short of alleging plausible claims against Wesley under 42 U.S.C. § 1983. Wesley was not a state actor, the complaint does not allege Wesley was a state actor, and thus no claim can be maintained against Wesley under 42 U.S.C. § 1983.

Similarly, Plaintiffs have not stated any colorable claims under 42 U.S.C. § 1985. To state a claim under section 1985, a plaintiff must show: (i) a conspiracy, motivated by racially discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom. *See Paris v. Sw. Bell Tel. Co.*, 94 F. App'x 810, 815 (10th Cir. 2004) (unpublished); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). "Conclusory allegations that the defendants acted in concert or conspired, without specific factual allegations to support such assertions, are insufficient to state a claim under § 1985(3)." *Martinez v. Martinez*, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at * 12 (D.N.M. Mar. 30, 2010). At a minimum, a section

1985 claim requires "some racial, or perhaps otherwise class [] based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009).

Again, not only are there no allegations at all showing that Wesley was involved in any sort of conspiracy, but there is also no allegation that Wesley's actions were motivated by any racial animus. Indeed, there are not even conclusory allegations alleging such. Instead, Plaintiffs state a bizarre set of facts, largely disconnected, for alleged health care performed on Plaintiffs back in 2003. There is no allegation that there was a conspiracy based on Plaintiffs' race. Due to the clear lack of these factual allegations, Plaintiffs' claims against Wesley must be dismissed.

### III.   Plaintiffs' claims against Wesley are time barred.

Plaintiffs' claims are barred by the statute of limitations because all allegations made against Wesley are from facts that allegedly occurred between December of 2002 and January of 2003, and no applicable tolling can save the claims. Typically, claims under 42 U.S.C. § 1983 of the nature alleged in Plaintiffs' complaint are governed by the state's tort statute of limitations. *Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) ("Because plaintiff's § 1983 claims arose in Kansas, the court applies Kansas's two-year statute of limitations for personal injury actions to his claims. *See* Kan. Stat. Ann. § 60–513(a)(4)."). In Kansas, K.S.A. 60–513 prescribes a two-year statute of limitations.

Federal law determines when a section 1983 claim accrues, but the statute of limitations comes from the relevant state's personal-injury statute and any tolling also generally comes from state law. *See Carbajal v. McCann*, 808 F. App'x 620, 633 (10th Cir. 2020) (citing *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)). Section 1983 claims accrue, for the purpose of the statute of limitations, "when the plaintiff knows or has reason to know of the injury which

is the basis of his action." *Johnson v. Johnson Cnty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).

All of the alleged conduct of Wesley occurred on or before January 23, 2003, which is when Mr. Davis was born at Wesley. (*See* Doc. 1 at p. 8). There are no allegations that would support any tolling under the applicable statute of limitations. Indeed, the last alleged act to have occurred at all in the Plaintiffs' complaint is alleged to have occurred in August of 2008. Even being extremely generous in applying the statute of limitations to Plaintiffs' claims, Plaintiffs have filed this lawsuit over a decade too late. Ms. Davis had knowledge of all of the facts giving rise to this lawsuit at least by August of 2008, and yet this lawsuit was not brought until January 23, 2023. Accordingly, Ms. Davis's claims against Wesley should be dismissed.

Under the set of facts applicable to Wesley, it is doubtful that Mr. Davis makes any claim at all against Wesley. Notwithstanding, the knowledge of a claim or injury of a parent is imputed to a minor. *Miller v. Philadelphia Geriatric Ctr.*, 463 F.3d 266, 274 (3d Cir. 2006). That being said, Kansas tolls the statute of limitation for individuals who are under legal disability. K.S.A. 60-515(a) states that:

> [I]f any person entitled to bring an action, . . . at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, . . . such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

If there was any sort of claim being made against Wesley for alleged injuries related to Mr. Davis's birth on January 23, 2003, then those would have clearly expired on January 23, 2011, pursuant to K.S.A. 60515(a).

Even if the Court were to assume otherwise and consider Mr. Davis's claims to have been tolled until he turned eighteen, which occurred on January 23, 2021, the statute of limitations

would still have run.  That would be true even when factoring in the tolling of the statute of limitations provided for in response to COVID-19. The Kansas Supreme Court suspended the running of all statute of limitations in Kansas from March 19, 2020, to April 15, 2021. *Korgan v. Est. of Hansen by & through Cramer*, No. 21-2567-JWB, 2022 WL 4465074, at *1 (D. Kan. Sept. 26, 2022).  Even assuming the statute of limitations were tolled as to Mr. Davis's (likely non-existent) claims against Wesley until April 15, 2021, pursuant to K.S.A. 60-515(a), Mr. Davis's claims would have been required to have been filed by April 15, 2022. This lawsuit wasn't filed until January 23, 2023. Thus, Mr. Davis's claims are clearly barred by the applicable statute of limitations.

## <u>CONCLUSION</u>

For the reasons stated above, Wesley requests that the Court dismiss Plaintiffs' complaint with prejudice. Plaintiffs have not stated plausible claims against Wesley under 42 U.S.C. § 1983 because there are no allegations that Wesley was a state actor or acted under color of state law. Plaintiffs have similarly not stated plausible claims against Wesley under 42 U.S.C. § 1985 because there are no allegations that Wesley conspired with others to deprive Plaintiffs of their constitutional rights based on racial animus. Finally, Plaintiffs claims against Wesley must be dismissed pursuant to applicable statute of limitations because Ms. Davis is over a decade too late in filing this lawsuit and Mr. Davis is also time barred from bringing his claim.

GIBSON WATSON MARINO LLC

By <u>/s/ Justen P. Phelps</u>
Justen P. Phelps, #22670
301 N. Main, Suite 1300
Wichita, KS 67202
T: (316) 264-7321
F: (316) 264-8614

justen@gwmks.com
***Attorney for Defendant Wesley Medical Center***

## CERTIFICATE OF SERVICE

I do hereby certify that on this 7th day of April, 2023, the foregoing was electronically filed with the Clerk of the U.S. District Court using the CM/ECF system, which will send notice of electronic filing to all registered attorneys of record. Additionally, it was served by placing the same in the U.S. mail, first-class postage prepared to the following:

Carla Davis                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro Se Plaintiffs***


 /s/ *Justen P. Phelps*
Justen P. Phelps, #22670
*Attorneys for Wesley Medical Center*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| CARLA DAVIS and )  | |
| JALEN DAVIS,                    )  | |
| Plaintiffs,        )  | |
| vs.                                     )  | Case No. 6:23-CV-1010-JAR-KGG |
| )  | |
| U.S. DEPARTMENT OF JUSTICE, et al )  | |
| Defendants.         )  | |

**DEFENDANT STEWART DISMUKE, M.D.'S**
**MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT**

**COMES NOW,** the Defendant, Stewart Dismuke, M.D., in his individual capacity, and

hereby moves the Court, pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs'

civil complaint with prejudice.  In support of this motion, the Defendant submits a Memorandum

in Support of his Motion to Dismiss which is hereby incorporated into and made a part of this

motion by reference.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, and Wichita Center for Graduate*
*Medical Education, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                          cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*

/s/ Chris S. Cole
Chris S. Cole, #16343
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, and Wichita Center for Graduate*
*Medical Education, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS and | ) | |
| JALEN DAVIS, | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | **Case No. 6:23-CV-1010-JAR-KGG** |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al | ) | |
| **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT STEWART DISMUKE, M.D.'S MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Stewart Dismuke, M.D. and hereby submits this memorandum brief in support of his motion pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Complaint identifies more than forty defendants.  The defendants include a variety of federal, state, county and municipal agencies and officials, numerous health care providers, and two law firms.  The Complaint states that Plaintiffs bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes approximately one page of "Statement of Facts."  In that section, Plaintiffs describe federal funding of efforts to protect the nation from bioterrorism and enactment of federal legislation on that subject in 2002, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state and local levels.  Finally, Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was pregnant in 2002 with her son Jalen Davis, that she received pre-natal care from an obstetrician

and medical clinic in Wichita, and finally, that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments."  In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January, 2003. Plaintiffs allege that in 2002 Carla Davis had told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center, and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor.  (Doc. 1, ¶¶ 60, 61).  Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases;  that Carla was stabbed deeply in the back with a needle by Tom Yao, causing severe pain;  that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions.  (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February, 2004.  (Doc. 1, ¶ 68).  This was likely meant to be February, 2005, as a medical record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain.  (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to obtain health care, their ability make social security benefit claims, and in prosecuting an auto

accident injury claim.  (Doc. 1 at ¶67 (2) - ¶(2)).  Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008; that Carla Davis was falsely accused of child abuse, but found innocent; and of an attempted abduction of Jalen by a social worker. (Doc. 1, ¶¶ 70-71).  Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries  resulting therefrom. (*Id*. at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

## ARGUMENTS AND AUTHORITIES

Defendant Dismuke is entitled to dismissal of Plaintiffs' claims with prejudice on several bases.  First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against Defendant Dismuke upon which relief can be granted.  Second, pursuant to Rule 12(b)(1), as a result of the lack of specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court.  Third, dismissal pursuant to Rule 12(b)(6) is appropriate because the Complaint reveals on its face that the statute of limitations on any purported claims against the Defendant has long ago expired.

The only mention of Dr. Dismuke in Plaintiffs' Complaint is in paragraphs 28, which reads as follows:

> Defendant STEWART E. DISMUKE m.d. 2002-2003 Dean-KU School Of Medicine-Wichita, Board of Directors for Wichita Center for Graduate Medical Education, Board of Directors for United way of the Plains.  He is sued in his official and individual capacity with the principle address 1010 N. Kansas, Wichita, Kansas 67214

(Doc. 1 at 5).

While Plaintiffs purport to assert claims against Dr. Dismuke in both his official and

individual capacities, they fail to specify the official capacity of Dr. Dismuke.  Defendant presumes that the official capacity claim refers to his role as Dean of the KU School of Medicine, as it is the only entity mentioned which is an arm of the state.  Any such official capacity claim would actually be a claim against KU School of Medicine, as "[a] suit against a state official in his or her official capacity. . . is no different than a suit against the State itself."  *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services,* 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.3d.2d 45 (1989)).  ". . .an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity."  *Kentucky v. Graham,* 473 U.S. 159, 165-66 (citing *Brandon v. Holt,* 469 U.S. 464, 471-72 (1985)).

The KU School of Medicine is separately named as a defendant, and has itself separately responded to Plaintiffs' Complaint through its counsel.  (See Doc. 113 and Doc. 117).  While Defendant Dismuke believes the principles discussed in this motion are equally dispositive of any official capacity suit against him, this motion concerns Plaintiffs' claims against Dr. Dismuke in his individual capacity.  Counsel for Dr. Dismuke does not represent the KU School of Medicine.

## I.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.   Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint.  *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).  The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court.  *Id.* at 1257.

Plaintiffs are proceeding pro se. [A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Garrett v.*

*Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  However, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure.  *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence  of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The claim must be "*plausible on its face*."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A plaintiff's complaint must include more than labels, legal conclusions, and formulaic

recitations of the cause of action's elements.  *Id*. at 545.  To state a claim, a "complaint must contain sufficient factual matter, accepted as  true, to 'state a claim that relief is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp.  v.  Twombly*, 550 U.S. at 570).

"A claim has facial  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable  inference that the defendant is liable for the misconduct alleged." *Id*.  The Tenth Circuit has further clarified this  standard by holding that the "mere metaphysical possibility that some plaintiff could prove some  set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason  to  believe  that  this  plaintiff  has  a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added);  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or § 1985 claim against Dr. Dismuke. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the  United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to  interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient  to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983  claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17,

6

2022).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994).

**B.   There Are Insufficient Allegations in Plaintiffs' Complaint to State a Claim Against This Defendant.**

Plaintiffs' Complaint fails to meet the above-stated standards. There is complete lack of any allegation of conduct by Dr. Dismuke in the Plaintiffs' Complaint, beyond identifying him as Dean of the KU School of Medicine in 2002 – 2003, and as having been on the boards of Wichita Center for Graduate Medical Education and United Way of the Plains. There are no allegations actually indicating Dr. Dismuke's involvement in any of the events described in the statements of fact in Plaintiffs' Complaint. Similarly, there are no allegations in the Claim for Relief portion of the Complaint indicating any involvement by Dr. Dismuke in any of the purported constitutional violations. Simply put, beyond having been identified among the many defendants in the suit, Dr. Dismuke is never again mentioned in the Complaint. As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief against him.

Plaintiffs do not identify acts or omissions of Dr. Dismuke at all in their Complaint, much less state how any alleged act or omission of Dr. Dismuke has any relation to their constitutional claims. Thus, Plaintiffs have failed to state a plausible § 1983 against Dr. Dismuke in his individual capacity by failing to allege personal involvement by Dr. Dismuke in the claimed deprivation of their rights. Plaintiffs' Complaint also includes no allegation of conduct

under color of state law.

Plaintiffs have also not pleaded any factual allegations indicating that Dr. Dismuke had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Moreover, conspiracy claims must be pled with specificity, rather than by a mere conclusory allegation, which is the most that can be said of the Plaintiffs' Complaint. Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr. Dismuke for these reasons as well.

To the extent the complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that Dr. Dismuke had, or could have had, any involvement in those matters. There is no allegation in the complaint that Dr. Dismuke possesses any medical records of these Plaintiffs. Certainly, there is no allegation that Plaintiffs have ever requested medical records from Dr. Dismuke, or that such a request (futile as it might be) was refused. There is clearly no basis to infer that Dr. Dismuke has acted in any manner that could serve as the basis for the constitutional claims asserted.

Plaintiffs' complaint should therefore be dismissed as to Dr. Dismuke for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS ACTUALLY BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE, ENTITLING DEFENDANT TO A DISMISSAL PURSUANT TO RULE 12(b)(1).

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the complete lack of a federal claim means the district court lacks federal question

jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law, then the purported § 1983 claim does not support the district court's exercise of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law. Thus, the purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim. But, Plaintiffs do not allege a motive based on racial or class-based discrimination. Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction in on the plaintiff. Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this court to find

existence of subject matter jurisdiction.  First, as discussed above, there is a complete absence of factual allegations of any action on the part of Dr. Dismuke.  Beyond that, there is no allegation of any specific action purported to have been taken under color of state law, or any alleged discriminatory motive.  Given the overall implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories.  (See Doc. 101 at 6-7).  The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction.  The circumstances of the Plaintiffs' complaint in this action urges the same result.

### III.   PLAINTIFFS' COMPLAINT DEMONSTRATES THAT ANY CLAIMS WHICH PLAINTIFFS ATTEMPT TO ASSERT ARE BARRED BY EXPIRATION OF THE STATUTES OF LIMITATIONS AND THE STATUTE OF REPOSE.

Even if Plaintiffs were able to state claims against this Defendant, Plaintiffs' claims are plainly time-barred.  While the complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises.  And, it is clear that more than a decade has passed since those events occurred.  As to Dr. Dismuke, whose only mention in the Complaint is that in 2002 - 2003 he was Dean of the KU School of Medicine and held positions in two non-governmental entities, approximately 20 years have passed since any possible involvement of Dr. Dismuke.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon  has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413

(10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  The  plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at  1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two-year statute of limitations. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal  injury actions to his claims), *aff'd in part, dismissed in part  sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019).  The same is true for Plaintiffs'  1985 claims.  *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's  two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert a claim arising out of medical care by Defendant Dismuke or others, such claims are also subject to a two-year limitations period.  See K.S.A. 60-513(a)(7)(establishing a two year limitations period on actions arising out of the rendering or failure to render professional services).  In addition, K.S.A. 60-513(c) establishes a four-year statute of repose applicable to claims arising out of the rendering or failure to render professional services by a health care provider.  *Marzolf v. Gilgore,* 914 F. Supp. 2d 450, 452 (D. Kan. 1996). While the two-year limitations period established by K.S.A. 513(a)(7) may not begin running until the fact of injury becomes reasonably ascertainable, "in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(c).  As the Court has noted, this language is "unmistakably plain" and includes no tolling language of any kind.  *Marzolf,* 914 F. Supp. 2d at 453.  While Plaintiffs' complaint includes no specific factual allegation of this Defendant's involvement in their health care, the Complaint certainly does include factual allegations involving health care provided to Plaintiffs in 2002 -

2003, and asserts that Dr. Dismuke was Dean of the KU School of Medicine in 2002-2003.  Thus, to the extent Plaintiffs' claims against Defendant arise out of professional services as a health care provider, such claims are clearly subject to a two-year limitations period, and the four-year statute of repose established by K.S.A. 60-513(c).  The medical events alleged by Plaintiffs occurred from roughly 2002 to 2008, with the only mention of Dr. Dismuke in the Complaint referencing his status in 2002-2003.  This action was filed in January, 2023, clearly well beyond the applicable two-year limitations period, and beyond the expiration of the four-year statute of repose.

Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the limitations period on his claim has also clearly expired.  K.S.A. 60-515(a) establishes an eight-year statute of repose that is applicable to any claim that might arguably be disclosed in Plaintiffs' Complaint.  K.S.A. 60-515(a) provides as follows:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that <u>no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.</u>

K.S.A. 60-515(a) (emphasis added).  This statute expressly prohibits any action commenced "more than 8 years after the time of the act giving rise to the cause of action," using the same clear language applied in *Marzolf*.  As a statute of repose, K.S.A. 60-515(a) applies notwithstanding any disability arising from Jalen Davis's status as a minor.   Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from 2002 to 2008, considerably more than 8 years prior to the filing of Complaint in this case.  As such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the eight-year statute of repose in K.S.A. 60-515(a).

If there were any question of the timing of the events complained of in this action, one

need only look to a prior lawsuit filed by Carla Davis in 2012. The petition in that auto accident lawsuit was filed July 25, 2012. (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV 2597). As it is a matter of public record, this Court may take judicial notice of it. *Hastey on behalf of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020). As can be seen at pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the complaint in the present action, including that in 2003 she experienced a deep stabbing into her spine, that multiple toxic agents were administered without her knowledge, that as a result she experienced medical conditions due to unsafe medical procedures, and that social security benefits had been denied to her in 2006. (Exhibit 1 at 3-4). She further alleged in the 2012 petition, related to those conditions which pre-existed her auto accident, that she had hidden injuries that were never communicated to her. (Id. at 5). Clearly, not only did the events alleged in Plaintiffs' current Complaint occur more than a decade ago, but they were known to Mrs. Davis for more than a decade prior to filing of the present action.

In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations. As such, permitting Plaintiffs' claims against these defendants would be futile, and a waste of judicial resources.

## CONCLUSION

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed with prejudice as to this Defendant. Moreover, the Complaint itself reveals that any purported claim by Plaintiffs against this Defendant is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).

Defendant respectfully prays that his motion be granted, and he be dismissed from this action with prejudice.


Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958     Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, and Wichita Center for Graduate*
*Medical Education, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                                                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro se plaintiffs***


/s/ Chris S. Cole
Chris S. Cole, #16343
***Attorneys for Clark Shultz, the Kansas***
***Health Care Stabilization Fund, Brenda Kallemeyn,***
***Stewart E. Dismuke,  and Wichita Center for Graduate***
***Medical Education, Inc.***

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP DOCKET NO.

2012 JUL 25  A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY _____

**IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT**

CARLA B. DAVIS,                    )
      Plaintiff,            )
vs.                                )
               )
LISA KRISTAN,                      )
      Defendant,            )
_____)

Case No.:

**12CV2597**

PURSUANT TO K.S.A. CHAPTER 60

**PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
INDEX SHEET, AND EXHIBITS**

      COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

      1.     That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

      2.     That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

      3.     This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

      4.     On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

      5.     At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



EXHIBIT
**1**
Vol. I-451

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6.      Impact was sudden, making it impossible for Plaintiff to
prepare and protect her body from this violent impact.

7.      Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8.      There were no adverse weather conditions or other circumstance to
prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept
the proper outlook. (Exhibit A1)

9      Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-
$1,901.47. (Exhibits B1-B4)

10      Defendant's insurer, State Farm settled only $ 945.72 in damages to
Plaintiff's automobile. (Exhibit B5-B7)

11.      Defendant admitted liability at accident scene, as documented in Motor
Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's
injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12.      Defendant was cited with *inattentive driving*, in violation of Section
11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13.      Plaintiff sent Defendant's insurance carrier a settlement demand letter to
try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14.      Plaintiff and Defendant's insurance carrier were unable to reach a
settlement agreement. (Exhibits F17-F21)

<u>COUNT 1</u>

15.      Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.　　Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.　　Operated vehicle in a negligent manner by inattentive driving. The Code of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver whose vehicle, because of his driving error or *negligent inattention*, collides with another vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in violation of this section. (Exhibits E2-E3)

18.　　Failed to keep a proper outlook. Defendant was distracted doing other things while driving, which may become known at the time of trial, that caused a porcelain plate to slide under Defendant's brake, causing a car accident.

19.　　Failed to maintain control of vehicle.

20.　　Failed to secure items in her vehicle.

21.　　Failed to use due care in the safety of others.

### Damages

22.　　Plaintiff's significant and frail medical history made her more susceptible to injuries than a person in good health. Defendant's negligence caused an exacerbation (an increase in the severity of a disease or any of its signs or symptoms) of her pre-existing musculoskeletal injuries as supported by the medical records attached to this pleading.

　　　　a.　　On January 23, 2003, through no fault of her own, and without her knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

         b.       Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

       23.     Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

       24.     Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

*Petition- Page 4-14*

25.    Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.    Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.    Plaintiff did not use as needed assistive devices prior to accident.

28.    Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

a.    August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken. Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment.  Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

     b.     Plaintiff's injuries and pain became more severe. August 9, 2010-
Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,
reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:
Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,
neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to
pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction
and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to
non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-
back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.
Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and
inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in
resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic
Therapies were discontinued due to chiropractic therapies causing a worsening of
Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented
in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical          846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical        739.4- Segmental Dysf. Sacrococcygeal

## REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr.  Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

c.      September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

d.      In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

## PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

## SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations inVocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011-  Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.
>
> 723.1-Cervicalgia
>
> 724.2-Lumbago
>
> 847.0-Sprain/Strain Cervical

29.    Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.    Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.    Plaintiff has an Associate Degree as a Registered Nurse since the year 2001 with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.    Due to pre-existing injuries plaintiff entered occupational retraining in 2009 in order to obtain suitable employment, transitioning from performing skilled nursing patient care, to management skills. (Exhibits S1-S12)

32.    During 2009 Plaintiff returned to college, and was participating in gainful activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.    Prior to accident Plaintiff was working as a home care attendant, assisting the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.    Plaintiff completed a degree in Organizational Management & Leadership Program at Friend's University July 2010, and was enrolled at Wichita State University in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.    A significant lifestyle change has occurred in Plaintiff's life since the accident. Necessary activities of daily living such as dressing, bathing, squatting to use toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain, fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has painful impingements throughout the spine. Joints in her neck and extremities makes painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.    Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.    Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.    Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.    Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

*Petition -Page 13-14*

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:


Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

Carla B. Davis


*PETITION- Page 14-14*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS and | ) | |
| JALEN DAVIS, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 6:23-CV-1010-JAR-KGG |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al | ) | |
| Defendants. | ) | |

## DEFENDANT WICHITA CENTER FOR GRADUATE MEDICAL EDUCATION, INC.'S MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Wichita Center for Graduate Medical Education, Inc., and hereby moves the Court, pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support of this motion, the Defendant submits a Memorandum in Support of its Motion to Dismiss which is hereby incorporated into and made a part of this motion by reference.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**


/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, and Wichita Center for Graduate*
*Medical Education, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 10th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                         cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*

                     /s/ Chris S. Cole
                     Chris S. Cole, #16343
                     *Attorneys for Clark Shultz, the Kansas*
                     *Health Care Stabilization Fund, Brenda Kallemeyn,*
                     *Stewart E. Dismuke,  and Wichita Center for Graduate*
                     *Medical Education, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS and              )
JALEN DAVIS,                )
            **Plaintiffs,**     )
vs.                    )     **Case No. 6:23-CV-1010-JAR-KGG**
                    )
U.S. DEPARTMENT OF JUSTICE, et al )
             **Defendants.**   )

## MEMORANDUM IN SUPPORT OF DEFENDANT WICHITA CENTER FOR GRADUATE MEDICAL EDUCATION, INC.'S MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Wichita Center for Graduate Medical Education, Inc. (hereinafter "WCGME") and hereby submits its memorandum brief in support of its motion pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Complaint identifies more than forty defendants.  The defendants include a variety of federal, state, county and municipal agencies and officials, numerous health care providers, and two law firms.  The Complaint states that Plaintiffs bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes approximately one page of "Statement of Facts."  In that section, Plaintiffs describe federal funding of efforts to protect the nation from bioterrorism and enactment of federal legislation on that subject in 2002, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state and local levels.  Finally,

Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was pregnant in 2002 with her son Jalen Davis, that she received pre-natal care from an obstetrician and medical clinic in Wichita, and finally, that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments." In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January, 2003. Plaintiffs allege that in 2002 Carla Davis had told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center, and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor. (Doc. 1, ¶¶ 60, 61). Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases; that Carla was stabbed deeply in the back with a needle by Tom Yao, causing severe pain; that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions. (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February, 2004. (Doc. 1, ¶ 68). This was likely meant to be February, 2005, as a medical record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain. (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results

and medical records, interfering with their ability to use their health information, their ability to

obtain health care, their ability make social security benefit claims, and in prosecuting an auto

accident injury claim.  (Doc. 1 at ¶67 (2) - ¶(2)).  Plaintiffs also claim that public officials stole the

blood of Jalen Davis at Children's Mercy Hospital in 2008; that Carla Davis was falsely accused

of child abuse, but found innocent; and of an attempted abduction of Jalen by a social worker.

(Doc. 1, ¶¶ 70-71).  Plaintiffs allege that unspecified public officials and their  cooperators are

concealing the unlawful bodily intrusions and serious injuries  resulting therefrom. (*Id*. at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the

constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that

Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

<u>**ARGUMENTS AND AUTHORITIES**</u>

Defendant WCGME is entitled to dismissal of Plaintiffs' claims with prejudice on several

bases. First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against WCGME

upon which relief can be granted.  Second, pursuant to Rule 12(b)(1), as a result of the lack of

specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject

matter jurisdiction in this court.  Third, dismissal pursuant to Rule 12(b)(6) is appropriate because

the Complaint reveals on its face that the statute of limitations on any purported claims against this

Defendant has long ago expired.

WCGME is identified as a party in paragraph 26 of Plaintiffs' Complaint, which reads as

follows:

> Defendant KANSAS UNIVERSITY SCHOOL OF MEDICINE-WICHITA
> a government agency and its non-profit corporation WICHITA CENTER
> FOR GRADUATE MEDICAL EDUCATION, INC. both with the principle
> business address 1010 N. Kansas, Wichita, Kansas 67214

(Doc. 1 at 4-5).  The only other mention of WCGME in the Complaint is in the description of

3

defendant Stewart Dismuke, M.D., in which he is described as a board member of WCGME (among other positions he held with United Way and Kansas University School of Medicine). (Doc. 1 at ¶ 28).  There are no allegations describing any conduct or action by WCGME, or by Dr. Dismuke, anywhere in the Complaint.

## I.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.  Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint.  *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).  The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court.  *Id.* at 1257.

Plaintiffs are proceeding pro se. [A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  However, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure.  *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of

any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The claim must be "*plausible on its face*."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements.  *Id*. at 545.  To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C.*

*v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519

F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or §

1985 claim against WCGME. The basic requirements for stating § 1983 and § 1985 claims are

well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right,
> privilege, or immunity secured by the U.S. Constitution or laws of the United
> States (2) that was caused by a person while acting under color of state law.
> *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must,
> at a minimum, allege a conspiracy to interfere with civil rights, among other
> elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing
> § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy
> are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor
> v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3)
> conspiracy claims cannot stand on vague and conclusory allegations; but
> rather, must be pled with some degree of specificity."); *see also Hunt v.
> Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of
> conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17,

2022).

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

And, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously

discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603,

605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v.

Bennett,* 17 F.3d 1263, 1266 (10th Cir. 1994).

**B.    There Are Insufficient Allegations in Plaintiffs' Complaint to State a Claim
Against This Defendant.**

Plaintiffs' Complaint fails to meet the above-stated standards. There is complete lack of

any allegation of conduct by WCGME in the Plaintiffs' Complaint, beyond identifying it as a non-

6

profit corporation associated with the Kansas University School of Medicine-Wichita.  There are no allegations actually indicating any involvement by WCGME in any of the events described in the statements of fact in Plaintiffs' Complaint.  Similarly, there are no allegations in the Claim for Relief portion of the Complaint indicating any involvement by WCGME in any of the purported constitutional violations.  Simply put, beyond having been identified among the many defendants in the suit, WCGME is never again mentioned in the Complaint.  As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief against WCGME.

Plaintiffs do not identify any acts or omissions by WCGME at all in their Complaint, much less state how any alleged act or omission of WCGME has any relation to their constitutional claims.  Thus, Plaintiffs have failed to state a plausible § 1983 against WCGME by failing to allege involvement by WCGME in the claimed deprivation of their rights.  Plaintiffs' Complaint also includes no allegation of conduct under color of state law.

Plaintiffs have also not pleaded any factual allegations indicating that WCGME had a racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that they are members of a protected class at all. Moreover, conspiracy claims must be pled with specificity, rather than by a mere conclusory allegation, which is the most that can be said of the Plaintiffs' Complaint.  Thus, Plaintiffs have failed to state a plausible § 1985 claim against WCGME for these reasons as well.

To the extent the complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that WCGME had, or could have had, any involvement in those matters.  There is no allegation in the complaint that WCGME possesses any medical records of these Plaintiffs.  There is no also allegation that Plaintiffs have ever requested medical records from WCGME, or that such a request (futile as it might be) was refused.  There

is clearly no basis to infer that WCGME has acted in any manner that could serve as the basis for the constitutional claims asserted.

Plaintiffs' complaint should therefore be dismissed as to WCGME for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS ACTUALLY BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE, ENTITLING DEFENDANT TO A DISMISSAL PURSUANT TO RULE 12(b)(1).

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'" *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law, then the purported § 1983 claim does not support the district court's exercise of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner*

8

*v. Cockrell*, 756 F. App'x  482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law.  Thus, the  purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit.   Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim.  But, Plaintiffs do not allege a motive based on racial or class-based discrimination.  Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction in on the plaintiff.  Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this court to find existence of subject matter jurisdiction.  First, as discussed above, there is a complete absence of factual allegations of any action on the part of WCGME.  Beyond that, there is no allegation of any specific action purported to have been taken under color of state law, or any alleged discriminatory motive.  Given the overall implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories.  (See Doc. 101 at 6-7).  The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction.  The circumstances of the Plaintiffs' complaint in this action urges the same result.

### III.  PLAINTIFFS' COMPLAINT DEMONSTRATES THAT ANY CLAIMS WHICH PLAINTIFFS ATTEMPT TO ASSERT ARE BARRED BY EXPIRATION OF THE STATUTES OF LIMITATIONS AND THE STATUTE OF REPOSE.

Even if Plaintiffs were able to state claims against this Defendant, Plaintiffs' claims are plainly time-barred.  While the complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises.  And, it is clear that more than a decade has passed since those events occurred.

WCGME is described in the Complaint as a non-profit corporation, associated with the Kansas University School of Medicine in Wichita.  While no date is referenced in the Complaint's identification of WCGME itself, all of the descriptions of medical care to Plaintiffs in the Complaint refer to the time period from late 2002 to 2008.  References to other defendants with some relationship to the Kansas University School of Medicine or WCGME fall into this time frame: Defendant Stewart Dismuke, M.D. is described as the 2002-2003 Dean of the Kansas University School of Medicine and member of the Board of Directors of WCGME (Doc. 1 at ¶28); Defendant Travis Stembridge, M.D. is described as the Kansas University School of Medicine OB/GYN program director in 2003 (Doc. 1 at ¶ 35); and several defendants (Anna Stork-Fury, M.D., Brenda Kallemeyn, M.D. and Tom Yao, M.D.) are described as Kansas University School of Medicine students in 2003 (Doc. 1 at ¶¶ 37, 38 and 39).  The only inference which can be reached from Plaintiffs' Complaint is that WCGME's status as a named defendant is related to the time period of 2002 – 2008, and most likely the narrower time frame of 2002 - 2003.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir.

1980)). The plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at 1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two-year statute of limitations. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal injury actions to his claims), *aff'd in part, dismissed in part sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019). The same is true for Plaintiffs' 1985 claims. *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

K.S.A. 40-3401(f) defines who is a "health care provider." Included in the definition is: "a nonprofit corporation organized to administer the graduate medical education programs of community hospitals or medical care facilities affiliated with the university of Kansas school of medicine. . . ," which clearly describes WCGME. To the extent Plaintiffs purport to assert a claim arising out of medical care by this Defendant or others, such claims are also subject to a two-year limitations period. See K.S.A. 60-513(a)(7)(establishing a two year limitations period on actions arising out of the rendering or failure to render professional services). In addition, K.S.A. 60-513(c) establishes a four-year statute of repose applicable to claims arising out of the rendering or failure to render professional services by a health care provider. *Marzolf v. Gilgore,* 914 F. Supp. 2d 450, 452 (D. Kan. 1996). While the two-year limitations period established by K.S.A. 513(a)(7) may not begin running until the fact of injury becomes reasonably ascertainable, "in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(c).

As the Court has noted, this language is "unmistakably plain" and includes no tolling

language of any kind. *Marzolf,* 914 F. Supp. 2d at 453. While Plaintiffs' complaint includes no specific factual allegation of this Defendant's involvement in their health care, the Complaint certainly does include factual allegations involving health care provided to Plaintiffs between 2002 and 2008. Thus, to the extent Plaintiffs' claims against Defendant arise out of professional services as a health care provider, such claims are clearly subject to a two-year limitations period, and the four-year statute of repose established by K.S.A. 60-513(c). The medical events alleged by Plaintiffs occurred from roughly 2002 to 2008. This action was filed in January, 2023, clearly well beyond the applicable two-year limitations period, and beyond the expiration of the four-year statute of repose.

Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the limitations period on his claim has also clearly expired. K.S.A. 60-515(a) also establishes an eight-year statute of repose that is applicable to any claim that might arguably be disclosed in Plaintiffs' Complaint. K.S.A. 60-515(a) provides as follows:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that <u>no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.</u>

K.S.A. 60-515(a) (emphasis added). This statute expressly prohibits any action commenced "more than 8 years after the time of the act giving rise to the cause of action," using the same clear language applied in *Marzolf.* As a statute of repose, K.S.A. 60-515(a) applies notwithstanding any disability arising from Jalen Davis's status as a minor. Here, the health care related facts asserted in the Plaintiffs' Complaint occurred considerably more than 8 years prior to the filing of Complaint in this case. As such, the Complaint clearly reveals that Plaintiffs' claims have long

12

been barred by the eight-year statute of repose in K.S.A. 60-515(a).

 If there were any question of the timing of the events complained of in this action, one need only look to a prior lawsuit filed by Carla Davis in 2012.  The petition in that auto accident lawsuit was filed July 25, 2012.  (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV 2597).  As it is a matter of public record, this Court may take judicial notice of it.  *Hastey on behalf of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020).  As can be seen at pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the complaint in the present action, including that in 2003 she experienced a deep stabbing into her spine, that multiple toxic agents were administered without her knowledge, that as a result she experienced medical conditions due to unsafe medical procedures, and that social security benefits had been denied to her in 2006.  (Exhibit 1 at 3-4).  She further alleged in the 2012 petition, related to those conditions which pre-existed her auto accident, that she had hidden injuries that were never communicated to her.  (Id. at 5).  Clearly, not only did the events alleged in Plaintiffs' current Complaint occur more than a decade ago, but they were known to Mrs. Davis for more than a decade prior to filing of the present action.

In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations.  As such, permitting Plaintiffs' claims to proceed would be futile, and a waste of judicial resources.

## **<u>CONCLUSION</u>**

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed with prejudice as to this Defendant.  Moreover, the Complaint itself reveals that any purported claim

13

by Plaintiffs against this Defendant is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).

Defendant respectfully prays that his motion be granted, and he be dismissed from this action with prejudice.

**Submitted by:**

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Chris S. Cole_____
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:   316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, and Wichita Center for Graduate*
*Medical Education, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                    cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro se plaintiffs***


/s/ Chris S. Cole
Chris S. Cole, #16343
***Attorneys for Clark Shultz, the Kansas***
***Health Care Stabilization Fund, Brenda Kallemeyn,***
***Stewart E. Dismuke, and Wichita Center for Graduate***
***Medical Education, Inc.***

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP DOCKET NO.

2012 JUL 25   A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

## IN THE EIGHTEENTH JUDICIAL DISTRICT
## DISTRICT COURT, SEDGWICK COUNTY, KANSAS
## CIVIL DEPARTMENT

CARLA B. DAVIS,                    )
      Plaintiff,             )
vs.                                )
                              )   Case No.:
LISA KRISTAN,                      )
      Defendant,             )   1 2 C V 2 5 9 7
_____ )

PURSUANT TO K.S.A. CHAPTER 60

### PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
### INDEX SHEET, AND EXHIBITS

      COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

    1.     That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

    2.     That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

    3.     This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

    4.     On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

    5.     At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



D C 1 8

EXHIBIT
1
Vol. I 482

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

      6.      Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

      7.      Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

      8.      There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

      9      Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

      10      Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

      11.      Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

      12.      Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

      13.      Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

      14.      Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

<u>COUNT 1</u>

      15.      Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.     Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.     Operated vehicle in a negligent manner by inattentive driving. The Code of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver whose vehicle, because of his driving error or *negligent inattention*, collides with another vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in violation of this section. (Exhibits E2-E3)

18.     Failed to keep a proper outlook. Defendant was distracted doing other things while driving, which may become known at the time of trial, that caused a porcelain plate to slide under Defendant's brake, causing a car accident.

19.     Failed to maintain control of vehicle.

20.     Failed to secure items in her vehicle.

21.     Failed to use due care in the safety of others.

### Damages

22.     Plaintiff's significant and frail medical history made her more susceptible to injuries than a person in good health. Defendant's negligence caused an exacerbation (an increase in the severity of a disease or any of its signs or symptoms) of her pre-existing musculoskeletal injuries as supported by the medical records attached to this pleading.

a.      On January 23, 2003, through no fault of her own, and without her knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

   b.  Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

  23.  Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

  24.  Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

      *Petition- Page 4-14*

25.    Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.    Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.    Plaintiff did not use as needed assistive devices prior to accident.

28.    Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

a.    August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken.  Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment.  Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

   b.    Plaintiff's injuries and pain became more severe. August 9, 2010-

Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,

reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:

Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,

neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to

pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction

and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to

non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-

back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.

Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and

inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in

resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic

Therapies were discontinued due to chiropractic therapies causing a worsening of

Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented

in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical                    846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical            739.4- Segmental Dysf. Sacrococcygeal

## REFERRAL:

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr.  Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

       c.      September 23, 2010-Dr. Steven J. Gould.-Chiropractic Radiologist

### X RAY FINDINGS (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

       d.      In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from Olu Osunsanmi PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

## PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

## SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations inVocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:

(Exhibit O17)

June 6, 2011-  Based on Motor Vehicle Induced Medical Problems:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

> -Remarkable functional limitation, walking with limp.
> - Oswestry Back Index indicates severe disability with 76% Ranking.
> -Arthrokinetic measurement-diversion from normal in age group.
> -Can not tolerate objects above shoulder, squat, kneel or stand for a
> -reasonable amount of time.
> -Twisting and head rotation provoked pain.
> -Weight handling was less than 5 pounds on level surfaces.
> -Constant segmental pain in cervical and lumbar spinal segments.
> -Difficulty getting out of bed.
> -Increased dependency on assistance for functional activities of daily
> living
> -Patient is disabling and need help.
>
> 723.1-Cervicalgia
>
> 724.2-Lumbago
>
> 847.0-Sprain/Strain Cervical

29.     Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.    Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.    Plaintiff has an Associate Degree as a Registered Nurse since the year 2001 with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.    Due to pre-existing injuries plaintiff entered occupational retraining in 2009 in order to obtain suitable employment, transitioning from performing skilled nursing patient care, to management skills. (Exhibits S1-S12)

32.    During 2009 Plaintiff returned to college, and was participating in gainful activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.    Prior to accident Plaintiff was working as a home care attendant, assisting the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.    Plaintiff completed a degree in Organizational Management & Leadership Program at Friend's University July 2010, and was enrolled at Wichita State University in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.    A significant lifestyle change has occurred in Plaintiff's life since the accident. Necessary activities of daily living such as dressing, bathing, squatting to use toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain, fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has painful impingements throughout the spine. Joints in her neck and extremities makes painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.     Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.     Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.     Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.     Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

**WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

*Petition -Page 13-14*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July 2012 a true and correct copy of the above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly addressed to:

Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

Carla B. Davis

*PETITION- Page 14-14*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARLA DAVIS and )
JALEN DAVIS, )
 )
        Plaintiffs, )
 )
vs. ) Case No. 6:23-cv-1010-JAR-KGG
 )
U.S. DEPARTMENT OF JUSTICE, *et al.*, )
 )
        Defendants. )
_____)

**DEFENDANT FOULSTON SIEFKIN LLP'S
MOTION TO DISMISS**

Defendant Foulston Siefkin LLP hereby moves the Court, pursuant to Fed. R. Civ. P.

12(b)(6), for an Order dismissing Plaintiffs' Complaint with prejudice.  A Memorandum in

Support of this Motion to Dismiss is being filed contemporaneously herewith and is incorporated

herein by reference.

Respectfully submitted,


*s/Jeffery A. Jordan*
Jeffery A. Jordan, KS #12574
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
T: 316-291-9513|F: 316-267-6345
jjordan@foulston.com
*Attorneys for Defendant, Foulston Siefkin LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record, and that a true and correct copy was served on the *pro se* Plaintiffs by placing the same in the United States mail, postage prepaid, properly addressed as follows:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro Se Plaintiffs*

*s/Jeffery A. Jordan*
Jeffery A. Jordan, KS #12574

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OFKANSAS

CARLA DAVIS and
JALEN DAVIS,

                        Plaintiffs,

v.

U.S. DEPARTMENT OF JUSTICE, et al

                      Defendants.

Case No. 6:23-cv-1010-JAR-KGG

---

### MEMORANDUM IN SUPPORT OF DEFENDANT
### FOULSTON SIEFKIN LLP'S MOTION TO DISMISS

### <u>NATURE OF PLAINTIFFS' "CLAIMS" & PLEADINGS</u>

Plaintiffs Carla Davis and Jalen Davis filed a Complaint against various individuals and entities, both private and governmental, on January 23, 2023. Plaintiffs assert claims under 42 U.S.C. §1983 and 42 U.S.C. §1985 for "Bodily intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments."

Plaintiffs make no factual allegations as to Foulston at all and identify no act or omission by Foulston that could conceivably give rise to a claim. Rather, Plaintiffs make only a single statement identifying "Defendant FOULSTON SIEFKIN LAW FIRM" as a party to the case as follows:

> Defendant FOULSTON SIEFKIN LAW FIRM attorneys conducts business with
> most of the listed defendants and is and is being sued in their official and
> individual capacity with the principle [sic] address Commerce Bank Center 1551
> N. Waterfront, Wichita, Kansas, Suite 100, Wichita, Kansas 67206"

*Complaint*, ¶ 41. Plaintiffs do not identify a single defendant with whom Foulston "conducted

business," the nature of the business (presumably legal services), or who at Foulston provided

those services. Other than the bare allegation of ¶ 41, Plaintiffs do not mention Foulston again in

the pleading. This allegation in no way states a claim against Foulston, and renders Plaintiffs'

Complaint fatally defective and subject to dismissal as to Foulston under Fed. R. Civ. Proc.

12(b)(6).

## **ARGUMENT & AUTHORITIES**[1]

A.   **Plaintiffs' Complaint fails to state a claim against Foulston upon
which relief may be granted.**

The standards for granting the present motion to dismiss have been briefed to this Court

in numerous motions to dismiss previously filed by other defendants. Briefly stated here:

- In considering a motion seeking dismissal under Fed. R. Civ. Proc.
  12(b)(6), the Court does not accept conclusory allegations or legal
  conclusions, and does not draw unreasonable inferences from allegations.
  *See Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000).

- While Fed. R. Civ. Proc 8(a)(1) requires "a short and plain statement of
  the claim showing the pleader is entitled to relief in order to give defendant
  fair notice what the claim is and the grounds upon which it rests," the claim
  must also be "plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550
  U.S. 544, 554-55, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678
  (2009) (a "complaint must contain sufficient factual matter, accepted as
  true, to 'state a claim that relief is plausible on its face'").

---

[1] Foulston has, with permission, copied significant portions of other briefs previously filed in this matter.

- In order for a claim to meet the "facial plausibility" standard, a party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The allegations "must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [its] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient." *Id.*

- The fact that Plaintiffs are pursuing this action *pro se* does not excuse them from these standards. While courts may give *pro se* pleadings liberal construction and hold them to a more flexible standard than that applied to pleadings prepared and filed by legal counsel, they still must comply with applicable Federal Rules of Civil Procedure. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

In this case, Plaintiffs' status as *pro se* litigants does not give them a free pass on satisfying these fundamental pleading requirements.

Even the most relaxed application of these standards will not save Plaintiffs' Complaint from dismissal for failure to state a claim against Foulston under Fed. R. Civ. Proc. 12(b)(6). The mere conclusory statement that Foulston "conducted business with some of the listed defendants," with no other factual reference or allegation, fails to state a claim against Foulston under 42 U.S.C. §1983 and 42 U.S.C. §1985, and in fact, is insufficient to state any claim upon which relief of any kind may be granted.

Under §1983, Plaintiffs must at least allege facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States, and (2) Foulston caused such deprivation while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978); *see Beedle v. Wilson,* 422 F.3d 1059 (10th Cir. 2005). To state a claim under §1985, the Plaintiffs must allege that Foulston was part of a conspiracy to deprive or interfere with Plaintiffs' constitutional rights. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Also, the Plaintiffs must allege the details of the conspiracy with specificity.

3

*Hunt v. Bennett,* 17 F.3d 1263, 1266 (10th Cir.1994). Finally, Plaintiffs must also allege the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" that motivated the conspirators' actions. *Tilton,* 6 F.3d at 686. Again, Plaintiffs make no allegations that satisfy these requirements for pleading any claim against Foulston under any theory.

Foulston, as a private law firm, is not a governmental agency or entity and does not act under "color of state law" in its private representation of clients. Plaintiffs cannot show that Foulston, by its own actions, participated in any alleged constitutional violation. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Circuit 2018). Additionally, neither §1983 nor §1985(3) authorize liability under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013); *Saviour v. City of Kansas City, Kan.*, No. CIV. A. 90-2430- L, 1992 WL 135019, at *7 (D. Kan. May 15, 1992). Instead, to hold an entity liable under §1983 or §1985, a plaintiff must prove: (1) the existence of an official policy or custom, (2) a causal relationship between the custom and a violation of the plaintiff's constitutional rights, and (3) requisite state of mind. *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019). Again, Plaintiffs do not make any allegations regarding Foulston. They do not allege any facts as to any custom, practice, or policy. They also do not allege any facts linking any custom, practice, or policy to an injury. Thus, Plaintiffs also fail to allege sufficient facts to state a §1983 or §1985 claim against Foulston for this reason as well.

In sum, Plaintiffs have failed to state a claim upon which relief may be granted as to Foulston. The Court should grant Foulston's requested relief and dismiss the Complaint under Rule 12(b)(6).

**B.    The allegations of Plaintiffs' Complaint establish their "claims" are barred by the expiration of the applicable statutes of limitation.**

Numerous parties have already briefed the statutes of limitation issues that bar Plaintiffs' claims based upon the face of the pleadings. Foulston incorporates herein the arguments in the memorandums filed in support of these motions as set forth in Docket Number 116 at pp. 9-13 and Docket Number 205 at pp. 10-13 and including Exhibit 1 as representatives of the arguments and mandating that this case be dismissed with prejudice as barred by the applicable statutes of limitation as a matter of law.

## **CONCLUSION**

Based upon the foregoing, there is no doubt that the Court should dismiss the Complaint because it fails to state a claim upon which relief may be granted as to Foulston. In addition, the allegations of the Complaint reveal that any purported claim accrued no later than August 2008, and the claims as to Foulston are barred by expiration of applicable statutes of limitation and should be dismissed. Finally, given the allegations of the Complaint, it is "patently obvious" that Plaintiffs cannot prevail on any claim against Foulston, and the Court should dismiss Foulston from this action with prejudice. *Hall v. Bellmon*, 935 F.2d at 1109– 10 (10th Cir. 1991).

Respectfully submitted,

*s/Jeffery A. Jordan*
Jeffery A. Jordan, KS #12574
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas 67206-4466
T: 316-291-9513|F: 316-267-6345
jjordan@foulston.com
*Attorneys for Defendant, Foulston Siefkin LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record, and that a true and correct copy was served on the *pro se* Plaintiffs by placing the same in the United States mail, postage prepaid, properly addressed as follows:

Carla Davis
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro Se Plaintiffs*
.

*s/Jeffery A. Jordan*
Jeffery A. Jordan, KS #12574

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARLA DAVIS and )<br>JALEN DAVIS, )<br> Plaintiffs, )<br>vs. )<br> )<br>U.S. DEPARTMENT OF JUSTICE, et al )<br> Defendants. ) | Case No. 6:23-CV-1010-JAR-KGG |

### DEFENDANT CLYDE WILSON WESBROOK, M.D.'S
### MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Clyde Wilson Wesbrook, M.D., in his individual capacity, and hereby moves the Court, pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support of this motion, the Defendant submits a Memorandum in Support of his Motion to Dismiss which is hereby incorporated into and made a part of this motion by reference.

Submitted by:

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**


/s/ Chris S. Cole
Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958   Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, Clyde Wilson Wesbrook and Wichita*
*Center for Graduate Medical Education, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                          cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
*Pro se plaintiffs*

/s/ Chris S. Cole_____
Chris S. Cole, #16343
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke,  Clyde Wilson Wesbrook and*
*Wichita Center for Graduate Medical Education, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CARLA DAVIS and | ) | |
| JALEN DAVIS, | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | **Case No. 6:23-CV-1010-JAR-KGG** |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, et al | ) | |
| **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF
### DEFENDANT CLYDE WILSON WESBROOK, M.D.'S
### MOTION TO DISMISS PLAINTIFFS' CIVIL COMPLAINT

**COMES NOW,** the Defendant, Clyde Wilson Wesbrook, M.D. and hereby submits this memorandum brief in support of his motion pursuant to Rule 12(b)(1) and 12(b)(6), for an order dismissing Plaintiffs' civil complaint with prejudice.  In support, Defendant states as follows:

### INTRODUCTION

Plaintiffs' Complaint identifies more than forty defendants.  The defendants include a variety of federal, state, county and municipal agencies and officials, numerous health care providers, and two law firms.  The Complaint states that Plaintiffs bring their action pursuant to 42 U.S.C. 1983 and 42 U.S.C. 1985.

Following a lengthy identification of each of the parties to the lawsuit, Plaintiffs' Complaint includes approximately one page of "Statement of Facts."  In that section, Plaintiffs describe federal funding of efforts to protect the nation from bioterrorism and enactment of federal legislation on that subject in 2002, and that the State of Kansas received federal funding for such purposes.  Plaintiffs also set forth allegations of involvement by various public officials in events related to these bioterrorism preparedness activities at federal, state and local levels.  Finally, Plaintiffs' Statement of Facts asserts that Carla Davis had private health insurance, that she was

pregnant in 2002 with her son Jalen Davis, that she received pre-natal care from Dr. Wesbrook in 2002, and finally, that Carla Davis made health care choices for herself that did not get fulfilled (Doc. 1, ¶¶ 55 – 57).

Thereafter, Plaintiffs purport to assert a single claim for relief, titled "Bodily Intrusion without Due Process in Violation of the Fourth, Fifth and 14th Amendments."  In this section of the Complaint (paragraphs 58 through 74), Plaintiffs allege events regarding health care associated with Carla Davis's pregnancy with Jalen Davis in 2002, and Jalen's birth in January, 2003. Plaintiffs allege that in 2002 Carla Davis had told her obstetrician she wanted to deliver at St. Joseph hospital, but that in 2003 she was forced to deliver at Wesley Medical Center, and was admitted there on January 23, 2003 "under the disguise" of a scheduled induction of labor.  (Doc. 1, ¶¶ 60, 61).  Plaintiffs allege that during this hospitalization, they were incapacitated by toxic doses of Fentanyl; that while so incapacitated Carla was raped by Anna Stork-Fury, who with gloved hands, penetrated her vagina without medical reason; that Carla was later treated for infectious diseases;  that Carla was stabbed deeply in the back with a needle by Tom Yao, causing severe pain;  that Carla and Jalen were administered toxic doses of antibiotics, when she did not have an infection; and that they suffered personal injuries as a result of the bodily intrusions.  (Doc. 1, ¶¶ 63-67).

The Complaint includes allegations that an unknown device was placed in Carla's chest blood vessels in February, 2004.  (Doc. 1, ¶ 68).  This was likely meant to be February, 2005, as a medical record filed by Plaintiffs with their Complaint reflects that Carla Davis underwent heart catheterization on February 2, 2005, following complaints of chest pain.  (Doc 1-1, p. 5 of 14).

Plaintiffs allege a refusal of public officials to provide Plaintiffs with diagnostic test results and medical records, interfering with their ability to use their health information, their ability to

obtain health care, their ability make social security benefit claims, and in prosecuting an auto accident injury claim. (Doc. 1 at ¶67 (2) - ¶(2)). Plaintiffs also claim that public officials stole the blood of Jalen Davis at Children's Mercy Hospital in 2008; that Carla Davis was falsely accused of child abuse, but found innocent; and of an attempted abduction of Jalen by a social worker. (Doc. 1, ¶¶ 70-71). Plaintiffs allege that unspecified public officials and their cooperators are concealing the unlawful bodily intrusions and serious injuries resulting therefrom. (*Id.* at ¶ 69.)

The Complaint then includes conclusory allegations that the Defendants violated the constitution due to the fact that Plaintiffs' medical records are in a confidential status, and that Defendants' actions were willful or showed reckless disregard for Plaintiffs. (Doc. 1 at ¶¶ 72, 73).

## ARGUMENTS AND AUTHORITIES

Defendant Wesbrook is entitled to dismissal of Plaintiffs' claims with prejudice on several bases. First, pursuant to Rule 12(b)(6), Plaintiffs' Complaint fails to state a claim against Defendant Wesbrook upon which relief can be granted. Second, pursuant to Rule 12(b)(1), as a result of the lack of specific allegations and the implausible nature of the claim, Plaintiffs cannot establish subject matter jurisdiction in this court. Third, dismissal pursuant to Rule 12(b)(6) is appropriate because the Complaint reveals on its face that the statute of limitations on any purported claims against the Defendant has long ago expired.

Plaintiffs' Complaint identifies Dr. Wesbrook in paragraph 30, which reads as follows:

> Defendant CLYDE WILSON WESBROOK m.d. (OB/GYN) a Wichita Clinic P.A. Stock Holder had a contract with plaintiffs for medical services starting August of year 2002. He is sued in his official and individual capacity with the principle address 702 E. 9th Street, Winfield, Kansas 67156.

(Doc. 1 at 5).

While Plaintiffs purport to assert claims against Dr. Wesbrook in both his official and

3

individual capacities, they fail to specify any official capacity of Dr. Wesbrook.  They do not describe him with reference to any public entity or agency.  The only reference to another entity in the description of Dr. Wesbrook is to the Wichita Clinic, P.A., a private entity.  As such, there is no basis for any "official capacity" claim reflected in the Complaint.

The Wichita Clinic, P.A., n/k/a Ascension Medical Group Via Christi, P.A. (see Doc. 1 at 4, paragraph 25) is separately named as a defendant, and has itself separately responded to Plaintiffs' Complaint through its counsel.  (See Doc. 109).  While Defendant Wesbrook believes the principles discussed in this motion are equally dispositive of any purported "official capacity" suit against him, this motion concerns Plaintiffs' claims against Dr. Wesbrook in his individual capacity.

## I.       PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.       Legal Standards Applicable to Motion to Dismiss for Failure to State a Claim.

When reviewing a motion to dismiss, the Court is not required to accept conclusory allegations, unwarranted inferences, or legal conclusions in a complaint.  *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). The Court does not defer to allegations in the complaint that constitute legal questions, because those issues are within the purview of the Court.  *Id.* at 1257.

Plaintiffs are proceeding pro se. [A] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with

4

pleading requirements.

*Id.* at 1110; *see also Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  However, it is not the proper function of the district court to assume the role of the advocate for the pro se litigant.  *See Hall*, 935 F.2d at 1110.

A pro se litigant must comply with the Federal Rules of Civil procedure.  *See Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994) ("[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)("This court has repeatedly insisted that pro se parties 'follow the same rules of procedure that govern other litigants.'"), *quoting Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).  "Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Nor is the court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of N.M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Rule 8(a)(1) of the Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The claim must be "*plausible on its face*."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added).  A plaintiff's complaint must include more than labels, legal conclusions, and formulaic recitations of the cause of action's elements.  *Id.* at 545.  To state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim that relief is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Tenth Circuit has further clarified this standard by holding that the "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a *reasonable likelihood* of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis added); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

In this case, Plaintiffs were also required to plead facts sufficient to state a § 1983 or § 1985 claim against Dr. Wesbrook. The basic requirements for stating § 1983 and § 1985 claims are well-established:

> To state a § 1983 claim, a plaintiff must allege (1) a deprivation of a right, privilege, or immunity secured by the U.S. Constitution or laws of the United States (2) that was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155- 57 (1978). A § 1985 claim must, at a minimum, allege a conspiracy to interfere with civil rights, among other elements. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (discussing § 1985(3)). Boilerplate allegations of constitutional violations and conspiracy are insufficient to state a claim under either § 1983 or § 1985. See *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 141 (10th Cir. 2008) ("Section 1985(3) conspiracy claims cannot stand on vague and conclusory allegations; but rather, must be pled with some degree of specificity."); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

*Yankey v. Brasser*, No. 22-1036-JWB-ADM, 2022 WL 1272131, at *3 (D. Kan. Feb. 17, 2022).

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). And, a § 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Allen v. Briggs*, 331 F. App'x 603, 605 (10th Cir. 2009). Moreover, specific details of conspiracy must be pled. See *Hunt v. Bennett,* 17

F.3d 1263, 1266 (10th Cir. 1994).

**B.    There Are Insufficient Allegations in Plaintiffs' Complaint to State a Claim Against This Defendant.**

Plaintiffs' Complaint fails to meet the above-stated standards.   After identifying Dr. Wesbrook as a defendant in paragraph 30 of the complaint, the only other mentions of Dr. Wesbrook in the complaint are in paragraphs 56 and 60.  Paragraph 56 of the Complaint states:

> "On August 20, 2002, Carla Davis was pregnant with her in utero child Jalen Davis and made a contract with Wichita Clinic P.A. for OG/GYN care with Clyde Wilson Wesbrook, M.D., because she had a trust in him as he had delivered a previous child of Carla Davis."

(Doc. 1 at 7).  Paragraph 60 of the Complaint states:

> On October 18, 2022, the pregnant Carla Davis told her contracted health care providers Wichita Clinic, P.A. and stock holder Clyde Wilson Wesbrook, "Wants to deliver at St. Joe."  Meaning St Joseph Hospital in Wichita Kansas.

(Doc. 1 at 8).

The 2022 date in paragraph 60 is clearly a typographical error, and is just as clearly intended to refer to 2002.  In this regard, among the exhibits to Plaintiffs' Complaint is a Wichita Clinic P.A. record on which Plaintiffs have identified an October 18, 2002 entry which states "Wants to deliver at St. Jo."  (Doc 1-1 at 8 of 14).  That same record also includes a later entry dated December 10, 2002, which states: "Deliver at WMC Hosp."  (Doc 1-1 at 8 of 14).  Plaintiffs then go on to allege in paragraph 61 that, without plaintiff's consent, Wichita Clinic allocated her care to Wesley Medical Center, and that she was forced to go to Wesley under the disguise of a scheduled induction of labor on January 23, 2003.  (Doc. 1 at 8).   Both the exhibit itself, and the context of paragraph 60 describing events leading up to her delivery in 2003 make it certain that the allegation was meant to refer to the year 2002, not 2022.

There are no other specific references to Dr. Wesbrook in the Complaint, which goes on to

allege certain events of the January 2003 hospitalization, with references to other defendants.

Plaintiffs then allege subsequent health care events in 2004 through 2008, unrelated to her labor

and delivery in January 2003. There is no allegation that Dr. Wesbrook was involved in Carla

Davis' care during the hospitalization in January 2003, or any events of her health care thereafter.

Similarly, there are no allegations in the Claim for Relief portion of the Complaint indicating any

involvement by Dr. Wesbrook in any of the purported constitutional violations.   In summary, the

allegations in the complaint regarding Dr. Wesbrook are that Carla Davis had a contract for

medical services with him starting in August 2002;  that he was a stock holder in the Wichita

Clinic, P.A.;  and that in October 2002 Carla Davis told him she wanted to deliver her baby at St.

Joseph Hospital.   None of the events actually assert any allegedly wrongful conduct by Dr.

Wesbrook.   As such, it is clear that the Plaintiffs' Complaint fails to state any claim for relief

against him.

Plaintiffs do not state how any alleged act or omission of Dr. Wesbrook has any relation

to their constitutional claims. Thus, Plaintiffs have failed to state a plausible § 1983 against Dr.

Wesbrook by failing to allege personal involvement by Dr. Wesbrook  in the  claimed

deprivation of their rights.  Plaintiffs' Complaint also includes no allegation of conduct under

color of state law.

Plaintiffs have also not pleaded any factual allegations indicating that Dr. Wesbrook had a

racial or class-based discriminatory animus against them. In fact, Plaintiffs have not pleaded that

they are members of a protected class at all.   Moreover, conspiracy claims must be pled with

specificity, rather than by a mere conclusory allegation, which is the most that can be said of the

Plaintiffs' Complaint.   Thus, Plaintiffs have failed to state a plausible § 1985 claim against Dr.

Wesbrook for these reasons as well.

To the extent the Complaint in this action involves allegations of refusal to release Plaintiffs' medical records, there is no basis to infer that Dr. Wesbrook had any involvement in those matters.  There is no allegation in the Complaint that Plaintiffs have ever requested medical records from Dr. Wesbrook, or that such a request was refused.  There is clearly no basis to infer that Dr. Wesbrook has acted in any manner that could serve as the basis for the constitutional claims asserted.

Plaintiffs' Complaint should therefore be dismissed as to Dr. Wesbrook for failure to state a claim upon which relief can be granted.

## II.   NO FEDERAL QUESTION HAS ACTUALLY BEEN RAISED, SO THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS CASE, ENTITLING DEFENDANT TO A DISMISSAL PURSUANT TO RULE 12(b)(1).

Although the absence of a valid cause of action does not normally implicate subject-matter jurisdiction, the absence of an *arguable* claim does. *Steel Co. v. Citizens for a Better Env't*, 523 U.S.  83, 89 (1998). When the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy," then the  complete lack of a federal claim means the district court lacks federal question jurisdiction. *Id.*; *see also* 28 U.S.C. §§ 1331, 1343 (only providing jurisdiction if an action arising under federal law is  presented). "[C]onstitutional insubstantiality for this purpose has been equated with such concepts as  'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit.'"  *Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015). If plaintiffs purport to bring a claim under § 1983 but  do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law, then the purported § 1983 claim does not support the district court's exercise  of federal jurisdiction over the lawsuit. *Olsen v. Aebersold*, 71 F. App'x 7, 9 (10th Cir. 2003).

Similarly, if Plaintiffs purport to bring a claim under § 1985(3) but do not allege a motive based on racial or class-based discrimination – as is required for a § 1985(3) claim, *Warnick v. Cooley*, 895 F.3d 746, 754 (10th Cir. 2018) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) – then the purported § 1985 claim fails to provide a basis for federal jurisdiction. *Tiner v. Cockrell*, 756 F. App'x 482, 483 (5th Cir. 2019).

Here, Plaintiffs purport to bring a claim under § 1983 but do not identify a federal right that Defendant invaded, nor allege facts showing that Defendant acted under color of state law. Thus, the purported § 1983 claim does not support this Court's exercise of federal jurisdiction over this lawsuit. Plaintiffs do not allege that an officer was prevented from performing duties (*see* § 1985(1)) or that the due course of justice was obstructed (*see* § 1985(2)), so Plaintiffs appear to be relying on a deprivation of rights or privileges under subsection (3) for their § 1985 claim. But, Plaintiffs do not allege a motive based on racial or class-based discrimination. Thus, the purported § 1985(3) claim again fails to provide a basis for federal jurisdiction.

Of course, the burden of establishing subject-matter jurisdiction in on the plaintiff. Here, Plaintiffs have failed to present sufficient allegations in their Complaint to allow this court to find existence of subject matter jurisdiction. First, as discussed above, there is but a scintilla of factual allegations of any action on the part of Dr. Wesbrook. There is no allegation of any specific action purported to have been taken under color of state law, or any alleged discriminatory motive. Given the overall implausibility of the Plaintiffs' claims, there is no basis from which this court can find subject matter jurisdiction exists.

In their Memorandum in Support of their Motion to Dismiss (Doc. 101), the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases where, like here, the allegations are implausible, devoid of merit, and express wild conspiracy theories. (See Doc.

101 at 6-7).  The allegations in the present complaint are of just such a nature, and Courts have dismissed such actions for lack of subject matter jurisdiction.  The circumstances of the Plaintiffs' complaint in this action urges the same result.

### III.   PLAINTIFFS' COMPLAINT DEMONSTRATES THAT ANY CLAIMS WHICH PLAINTIFFS ATTEMPT TO ASSERT ARE BARRED BY EXPIRATION OF THE STATUTES OF LIMITATIONS AND THE STATUTE OF REPOSE.

Even if Plaintiffs were able to state claims against this Defendant, Plaintiffs' claims are plainly time-barred.  While the complaint lacks clarity in many respects, it does reflect the timing of the events from which Plaintiffs' lawsuit arises.  And, it is clear that more than twenty years passed since any events alleged to involve Dr. Wesbrook.  Moreover, all of the health care described in the Complaint occurred more than a decade ago.

"[A]lthough a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyo. Med. Ctr., Inc.*, 524 F. App'x 411, 413 (10th Cir. 2013) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).  The  plaintiff then "has the burden of establishing a factual basis for tolling the statute." *Aldrich*, 627 F.2d at  1041 n.4.

Plaintiffs' purported constitutional claims are subject to a two-year statute of limitations. *See Bledsoe v.  Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (applying Kansas's two-year statute of limitations to section 1983 claims for personal  injury actions to his claims), *aff'd in part, dismissed in part  sub nom., Bledsoe v. Vanderbilt*, 934 F.3d 1112 (10th Cir. 2019).  The same is true for Plaintiffs'  1985 claims.  *See Lyons v. Kyner*, 367 F. App'x 878, 882 (10th Cir. 2010) ("[W]e apply Kansas's  two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

To the extent Plaintiffs purport to assert a claim arising out of medical care by Defendant Wesbrook or others, such claims are also subject to a two-year limitations period.  See K.S.A. 60-513(a)(7)(establishing a two year limitations period on actions arising out of the rendering or failure to render professional services).  In addition, K.S.A. 60-513(c) establishes a four-year statute of repose applicable to claims arising out of the rendering or failure to render professional services by a health care provider.  *Marzolf v. Gilgore,* 914 F. Supp. 2d 450, 452 (D. Kan. 1996).  While the two-year limitations period established by K.S.A. 513(a)(7) may not begin running until the fact of injury becomes reasonably ascertainable, "in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."  K.S.A. 60-513(c).  As the Court has noted, this language is "unmistakably plain" and includes no tolling language of any kind.  *Marzolf,* 914 F. Supp. 2d at 453.

The only allegations in Plaintiffs' Complaint regarding this Defendant involve their health care in 2002, and possibly early 2003.  Thus, to the extent Plaintiffs' claims against Defendant arise out of professional services as a health care provider, such claims are clearly subject to a two-year limitations period, and the four-year statute of repose established by K.S.A. 60-513(c).  The medical events alleged by Plaintiffs occurred from roughly 2002 to 2008, with the only references to Dr. Wesbrook in the Complaint being in 2002.  This action was filed in January, 2023, clearly well beyond the applicable two-year limitations period, and beyond the expiration of the four-year statute of repose.

Even taking into account that Jalen Davis was a minor at the time of the events alleged in the Complaint, the limitations period on his claim has also clearly expired.  K.S.A. 60-515(a) establishes an eight-year statute of repose that is applicable to any claim that might arguably be disclosed in Plaintiffs' Complaint.  K.S.A. 60-515(a) provides as follows:

> If any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age. . ., such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such actions shall be commenced by or on behalf of any person under the disability more than 8 years after the time of the act giving rise to the cause of action.

K.S.A. 60-515(a) (emphasis added).  This statute expressly prohibits any action commenced "more than 8 years after the time of the act giving rise to the cause of action," using the same clear language applied in *Marzolf.*  As a statute of repose, K.S.A. 60-515(a) applies notwithstanding any disability arising from Jalen Davis's status as a minor.   Here, the health care related facts asserted in the Plaintiffs' Complaint span a period of time from 2002 to 2008, considerably more than 8 years prior to the filing of Complaint in this case.  As such, the Complaint clearly reveals that Plaintiffs' claims have long been barred by the eight-year statute of repose in K.S.A. 60-515(a).

Finally, if the Complaint can somehow be read as stating a claim for breach of contract, any such claim is barred under either K.S.A. 60-511(1) (five year statute of limitations for written contracts) or K.S.A. 60-512(1) (three year statute of limitations for contracts not in writing). Generally a cause of action for breach of contract accrues when plaintiff "could have filed and prosecuted his action to a successful conclusion."  *Pizel v. Zuspann,* 247 Kan. 54, 76, 795 P.2d 42 (1990).  "In most contract cases, that means the cause of action accrues when the contract is breached." *Edward Kraemer & Sons, Inc. v. City of Overland Park,* 19 Kan. App. 2d 1087, 1091, 880 P.2d 789 (1994) (citing *Price, Administrator v. Holmes,* 198 Kan. 100, 106, 422 P.2d 976 (1967).  For reasons discussed above, any breach here occurred well over five years before the suit was filed.

 If there were any question of the timing of the events complained of in this action, one need only look to a prior lawsuit filed by Carla Davis in 2012.  The petition in that auto accident

lawsuit was filed July 25, 2012.  (Exhibit 1, Petition in Sedgwick County, Kansas case number 12 CV 2597).  As it is a matter of public record, this Court may take judicial notice of it.  *Hastey on behalf of YRC Worldwide, Inc. v. Welch,* 449 F. Supp. 3d 1053, 1060 (D. Kan. 2020).  As can be seen at pages 3-4 of that petition, Ms. Davis alleged, in 2012, some of the very same events set forth in the complaint in the present action, including that in 2003 she experienced a deep stabbing into her spine, that multiple toxic agents were administered without her knowledge, that as a result she experienced medical conditions due to unsafe medical procedures, and that social security benefits had been denied to her in 2006.  (Exhibit 1 at 3-4).  She further alleged in the 2012 petition, related to those conditions which pre-existed her auto accident, that she had hidden injuries that were never communicated to her.  (Id. at 5).  Clearly, not only did the events alleged in Plaintiffs' current Complaint occur more than a decade ago, but they were known to Mrs. Davis for more than a decade prior to filing of the present action.

In summary, it is clear that any claims Plaintiffs purport to assert herein are barred by expiration of the statutes of limitations.  As such, permitting Plaintiffs' claims against these defendants would be futile, and a waste of judicial resources.

## CONCLUSION

Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, and in fact fails to demonstrate subject matter jurisdiction in this court, it should be dismissed with prejudice as to this Defendant.  Moreover, the Complaint itself reveals that any purported claim by Plaintiffs against this Defendant is barred by expiration of the applicable limitations period and the statute of repose, and permitting the case to proceed would be futile.

Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his complaint, a court may dismiss sua sponte

"when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Hall v. Bellmon*, 935 F.2d at 1109–10 (10th Cir. 1991) (citations omitted).

Defendant respectfully prays that his motion be granted, and he be dismissed from this action with prejudice.

**Submitted by:**

**WOODARD, HERNANDEZ, ROTH & DAY, LLC**

/s/ Chris S. Cole

Chris S. Cole, #16343
245 N. Waco, Suite 260
P.O. Box 127
Wichita, KS 67201-0127
316/ 263-4958    Fax:  316/ 263-0125
ccole@woodard-law.com
*Attorneys for Clark Shultz, the Kansas*
*Health Care Stabilization Fund, Brenda Kallemeyn,*
*Stewart E. Dismuke, Clyde Wilson Wesbrook and Wichita*
*Center for Graduate Medical Education, Inc.*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of April, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to all parties of record and which was served by placing the same in the U.S. mail, first-class postage prepaid to the following:

Carla Davis                                              cardav01292021@yahoo.com
Jalen Davis
901 N. Belmont
Wichita, KS 67208
***Pro se plaintiffs***


/s/ Chris S. Cole
Chris S. Cole, #16343
***Attorneys for Clark Shultz, the Kansas***
***Health Care Stabilization Fund, Brenda Kallemeyn,***
***Stewart E. Dismuke,  Clyde Wilson Wesbrook and***
***Wichita Center for Graduate Medical Education, Inc.***

16

Carla B. Davis
901 N. Belmont
Wichita, Kansas 67208
316-691-8804

FILED
APP. DOCKET NO.

2012 JUL 25  A 11: 04

CLERK OF DIST COURT
18TH JUDICIAL DISTRICT
SEDGWICK COUNTY, KS
BY

**IN THE EIGHTEENTH JUDICIAL DISTRICT
DISTRICT COURT, SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT**

CARLA B. DAVIS,                    )
      Plaintiff,                  )
vs.                                )     Case No.:
                                   )
LISA KRISTAN,                      )     **1 2 C V 2 5 9 7**
      Defendant,                  )
_____)

PURSUANT TO K.S.A. CHAPTER 60

### PETITION, DEMAND FOR JURY TRIAL, EXHIBITS
### INDEX SHEET, AND EXHIBITS

      COMES NOW the Plaintiff, Carla B. Davis, and for her cause of action against

the Defendant, Lisa Kristian alleges and states:

    1.     That Plaintiff is a resident of Wichita, Kansas. (Exhibit A3)

    2.     That Defendant Lisa Kristian is a resident of Wichita, Kansas, and can be

served at last known address of 1717 S. Cypress Street, Apt. 413, Wichita, Kansas,

67207. (Exhibit A3)

    3.     This action arises from a car accident which occurred on July 26, 2010 on

southbound Webb Road, near Douglas Street. (Exhibit A1-A9)

    4.     On July 26, 2010 the Plaintiff was carefully and prudently stopped for

red light in her motor vehicle facing southbound on Webb Road. (Exhibit A1, A5, A9)

    5.     At the same time, a motor vehicle operated by Defendant was traveling

southbound on Webb Road. Without notice, Defendant smashed into the

*Petition-Page 1-14*



**EXHIBIT**

**1**

Vol. I 522

rear end of Plaintiff's vehicle, causing a car accident. (Exhibits A1-A2, A7)

6. Impact was sudden, making it impossible for Plaintiff to prepare and protect her body from this violent impact.

7. Posted speed limit for Webb Road is 40 mph. (Exhibit A6)

8. There were no adverse weather conditions or other circumstance to prevent the Defendant from seeing the Plaintiff's vehicle, if Defendant had actually kept the proper outlook. (Exhibit A1)

9 Damage to Plaintiff's vehicle rear end was estimated between $1,001.95-$1,901.47. (Exhibits B1-B4)

10 Defendant's insurer, State Farm settled only $ 945.72 in damages to Plaintiff's automobile. (Exhibit B5-B7)

11. Defendant admitted liability at accident scene, as documented in Motor Vehicle Accident Report (Exhibit A5, A7), and Defendant's insurer accepted Plaintiff's injury claim. (ExhibitC1-C3) also "Admitted Liability" 106.04 Civil PIK 4th (Exhibit D1)

12. Defendant was cited with *inattentive driving*, in violation of Section 11.38.175 of the Code of the City of Wichita. (Exhibits E1-E3)

13. Plaintiff sent Defendant's insurance carrier a settlement demand letter to try and settle this matter prior to any initiation of a law suit. (Exhibits F1-F16)

14. Plaintiff and Defendant's insurance carrier were unable to reach a settlement agreement. (Exhibits F17-F21)

<u>COUNT 1</u>

15. Plaintiff hereby incorporates by reference all the facts and allegations in

*Petition- Page 2-14*

paragraphs 1-14 and further alleges that Defendant:

16.     Failed to follow traffic laws as outlined in the Code of the City of Wichita.

17.     Operated vehicle in a negligent manner by inattentive driving. The Code

of the City of Wichita, Section 11.38.175 defines inattentive driving as, " any driver

whose vehicle, because of his driving error or *negligent inattention*, collides with another

vehicle, a person or fixed object, shall be deemed guilty of inattentive driving and in

violation of this section. (Exhibits E2-E3)

18.     Failed to keep a proper outlook. Defendant was distracted doing other

things while driving, which may become known at the time of trial, that caused a

porcelain plate to slide under Defendant's brake, causing a car accident.

19.     Failed to maintain control of vehicle.

20.     Failed to secure items in her vehicle.

21.     Failed to use due care in the safety of others.

Damages

22.     Plaintiff's significant and frail medical history made her more susceptible

to injuries than a person in good health. Defendant's negligence caused an exacerbation

(an increase in the severity of a disease or any of its signs or symptoms) of her pre-

existing musculoskeletal injuries as supported by the medical records attached to this

pleading.

a.     On January 23, 2003, through no fault of her own, and without her

knowledge and consent, Plaintiff acquired the following: Deep needle stabbing in

her lumbar spine, known (Exhibits G1-G14) and unknown multiple toxic agents were

*Petition -Page 3-14*

administered without Plaintiff's knowledge and consent (Exhibit H1-H4, W1-W4),

causing damage and degenerative processes due to an immune response, and chronic

inflammatory responses, and improper and unsafe medical techniques and procedures.

    b.  Prior to the July 26, 2010 accident, Plaintiff had the following pre-

existing multiple system complications (Exhibits I1-I71):

| | |
|---|---|
| Immune System- | Chronic inflammation, auto antibodies, chronic infections. |
| Neurological- | Motor Deficits-Weakness, Sensory Deficits-Numbness, Paresthesias, saddle anesthesia |
| Cardiovascular- | Enlarged heart, Cardiac dysrhythmias |
| Genitourinary- | Urinary retention w/ Foley catheter insertion. Current use of trigger voiding techniques. Incontinence, chronic infections, sexual dysfunction, and infertility. |
| Gastrointestinal- | Constipation and incontinence |
| Respiratory- | Chest muscle weakness and tightness producing difficulty breathing. Chronic lung infections with coughing blood, Pulmonary Hypertension. |
| Musculoskeletal- | Skeletal muscles damage, hip, lower back pain with disc injury. Right hand and wrist injury in 1990's- Work Compensation Claim. Plaintiff has made request for these records on July 24, 2012. Will add to Exhibits when documents are received. (Exhibits Y23-Y24) |

   23.  Plaintiff received chiropractic treatment with x- rays from John Dopps in

2004 for positive disc and subluxation of lumbar and thoracic spines with a

need for report. (Exhibit J1-J2)

   24.  Due to pre-existing injuries Plaintiff applied for Social Security Benefits

in fall of 2005, and was denied in 2006. (Exhibits K9-K9)

*Petition- Page 4-14*

25.    Plaintiff was seen by multiple medical professions for the above pre-existing injuries, but no medical diagnosis has been made to date. Plaintiff has hidden injuries that were never communicated to her.

26.    Plaintiff was not in any active medical treatment for her pre-existing injuries at time of the accident on July 26, 2010.

27.    Plaintiff did not use as needed assistive devices prior to accident.

28.    Due to the accident on July 26, 2010, Plaintiff's pre-existing condition became severely symptomatic and suffered the following injuries as reported by the following medical professionals:

a.    August 1, 2010-Jacob Reed M.D- Via Christi St. Joseph Medical Center E.R. in Wichita, Kansas treated Plaintiff as a High Level 4- Severe Medical Case in acute distress due to motor vehicle accident. Plaintiff had difficulty walking, with severe pain at a level 10 to the head, neck, lower back, bilateral legs with ambulation. Plaintiff had mild brain injury, and was oriented X 2 with the inability to remember her last name. C. T Scan and X rays taken.  Plaintiff was prescribed anti-inflammatory Ibuprofen for pain and home instructions for minor head injury, neck injury, low back pain exercises. Plaintiff's pain and suffering was not resolved with this treatment.  Plaintiff's detailed injuries and treatments documented in Exhibits I72-I90.

959.01-Head Injury

759.09-Neck Injury

847.0- Sprains/Strains Neck

*Petition -Page 5-14*

723.1-Cervicalgia, pain in neck

847.2-Sprain of lumbar

782.0-Numbness, Tingling, Parasthesia

722.52-Degeneration of Lumbar Sacral Intervertebral disc

b.      Plaintiff's injuries and pain became more severe. August 9, 2010-
Plaintiff saw Dr. Shirley Saggerty at Lakewood Chiropractic in Wichita, Kansas,
reported: Severe pain level of 10 with elevated blood pressure: 170/110. Pain Types:
Radiating, headaches, burning, stabbing, sharp electrical.  Injury and Pain Sites: head,
neck, shoulders, back, chest, hips, and legs. Right and Left leg Sciatica worsened due to
pre-existing, with inability to stand on right heel. Grinding of L5/S1 lower back, friction
and bones rubbing. Plaintiff limited in physical activities and exercise regime limited to
non-weight bearing exercises such as swimming and water aerobics. Due to neck, mid-
back, and low back, pain from auto accident Plaintiff is unable to perform daily activities.
Plaintiff walks with a limp, and has hip and shoulder pain, along with edema and
inflammatory pain all over Plaintiff's body.  Chiropractic treatment was unsuccessful in
resolving Plaintiff's pain and treatment caused plaintiff more pain. Chiropractic
Therapies were discontinued due to chiropractic therapies causing a worsening of
Plaintiff's injuries, spasms, and severe pain. Detailed injuries and treatments documented
in Exhibits L1-L102.

| | |
|---|---|
| 784.0-Headache | 847.2-Sprain/Strain Lumbar |
| 739.3-Segmental Dysf.Lumbar | 739.3-Segmental Dysf. Lumbar |
| 739.0-Segmental Dysf .Cerv-Occipital | 846.0-Sprain/ Strain Lumbosacral |

*Petition- Page 6-14*

847.0-Sprain/Strain Cervical              846.9- Sprain/Strain Sacroiliac

739.1-Segmental Dysf. Cervical      739.4- Segmental Dysf. Sacrococcygeal

<u>REFERRAL:</u>

September 2010-Pedro Murati M.D.-Physiatrist, Wichita, Kansas
(Exhibits L54-L55, L58, L64, -L65, L68-L69, L72, L76, L78, L88, L90, L92)

-E.R and chiropractic medical records released to Dr.Murati during 10/2010.

-Reception of medical records confirmed. Plaintiff waiting for initial appointment
to be scheduled to see Dr. Murati.

-November 14, 2011- Written communication of injuries and pain from Plaintiff
to Dr. Murati. Still awaiting initial appt. to be scheduled with his office. (Exhibit
M1)

-November 21, 2011- After review of Plaintiff's medical records, Dr. Murati
refused to see Plaintiff as a new patient due to medical records showing that her injuries
were from a personal injury case. (Exhibit M2)

      c.      September 23, 2010-<u>Dr. Steven J. Gould.-Chiropractic Radiologist</u>

<u>X RAY FINDINGS</u> (Exhibit N1)

-Cervical/ thoracic Spondylosis
-Discogenic Spondylosis-Lumbar L4/L5, L5/S1
-Decreased ROM of Cervical spine
-Static Spinal Posterial Change
-Muscle Spasms

      d.      In a desperate need for pain management due to the increase in the

severity of her injuries, patient sought physical therapy treatment on February 3, 2011,

from <u>Olu Osunsanmi</u> PT, DPT (License # 11-02151) Orthopedic and Manual Physical

Therapist-Senior Assessment Specialist. After review of medical records and assessment

of Plaintiff, documented that Plaintiff has exacerbation of pre-existing musculo-skeletal

injury (Exhibit O1).  Since motor vehicle accident, Plaintiff have been seeing multiple

*Petition -Page 7-14*

health care workers, but continues to complaint of pains limiting functional and

vocational activities. Specific Injury: Multiple Spinal Segmental Painful Syndrome.

Shoulder/hip pain. Plaintiff walking with limping gait and considerable adaptations

(Exhibit O2). Considerable restrictions in cervical range of motions with pain

productions. Radiating severe pains and tightness in cervical and lumbar spines. Impaired

Joint Mobility, Impaired Motor Function, Impaired Muscle Performance, Impaired ROM

associated with Connective Tissue Dysfunction. Significant Cervical region symptoms

that limits daily function and recreational activities. Severe difficulty tolerating supine or

sleeping activities.

### PHYSICAL THERAPY TREATMENTS:

-Neuro Mobilization to reduce muscle spasms along the Cervical Plexis and medial/radial nerves.
-Neuro Stretching of deep neck muscles to release tension along nerve root.
-Biasing Peroneal distributions to treat sciatic nerves. -Neuro mobilization to sciatic nerve along peroneal distribution.
-Core stabilization to restore Transverse Abdominals and flexibility of lumbar-sacral region.
-Restore flexibility by stretching Cervical/Thoracic Muscles.
-Eccentric/Isometric exercises to stimulate strength of Deep Cervical Plexis and Lumbar-Sacral stabilizers.
-Exercises to promote ROM of hips/gleno humeral junctions.
-Mechano-receptors facilitary activities of cervical thoracic junctions and mid thoracic spine.

### SPECIAL  TESTINGS REVEAL:

-Nerve irritations.
-Positive with pain- Neurotension test, Slump test (lumbar), Quadrant test (L-Spine).
-Special process dysfunction.
-Remarkable fear/avoidance behavior.
-Straight Leg Raise -Positive with Pain

 Plaintiff was instructed on Home Exercise Program to engage in strengthening exercises,

manage pain, enhance flexibility/stabilization,and reduce muscle spasms. Plaintiff has

*Petition -Page 8-14*

severe limitations inVocational Demands and Working. Patient is disabling and need

help. Oswestry Back Index indicates severe disability with 76% Ranking. Plaintiff's

detailed injuries, treatment, and functional capacity summary documented in Exhibits

O1-O17.

<u>FUNCTION CAPACITY EVALUATION: PHYSICAL EVALUATION SUMMARY:</u>

(Exhibit O17)

June 6, 2011-  <u>Based on Motor Vehicle Induced Medical Problems</u>:

Including chronic low back pain, bilateral shoulder pain, and cervical spine pain,

assessment of joint motions, muscle functions, physical limitations, pain and current

conditioning status:

>-Remarkable functional limitation, walking with limp.
>- Oswestry Back Index indicates severe disability with 76% Ranking.
>-Arthrokinetic measurement-diversion from normal in age group.
>-Can not tolerate objects above shoulder, squat, kneel or stand for a
>-reasonable amount of time.
>-Twisting and head rotation provoked pain.
>-Weight handling was less than 5 pounds on level surfaces.
>-Constant segmental pain in cervical and lumbar spinal segments.
>-Difficulty getting out of bed.
>-Increased dependency on assistance for functional activities of daily
>living
>-Patient is disabling and need help.

>723.1-Cervicalgia

>724.2-Lumbago

>847.0-Sprain/Strain Cervical

29.    Medical records for the July 26, 2010 accident were released to all treating

medical professions and both insurance carriers. (Exhibits Q1-Q7)

*Petition -Page 9-14*

30.     Injury chart of the spine is attached to this petition. (Exhibit P1-1).

31.     Plaintiff has an Associate Degree as a Registered Nurse since the year 2001 with diverse specialties such as: Cardiac Nursing, Nursing Educator, Home Health Case Manager, Health Program Developer, and ICD-9 Coding. (Exhibit R1)

32.     Due to pre-existing injuries plaintiff entered occupational retraining in 2009 in order to obtain suitable employment, transitioning from performing skilled nursing patient care, to management skills. (Exhibits S1-S12)

32.     During 2009 Plaintiff returned to college, and was participating in gainful activity until her vehicle was violently rear ended by the Defendant. (Exhibits S1-S12)

33.     Prior to accident Plaintiff was working as a home care attendant, assisting the frail elderly and physically disabled with activities of daily living. (Exhibit T1-T2)

34.     Plaintiff completed a degree in Organizational Management & Leadership Program at Friend's University July 2010, and was enrolled at Wichita State University in the Criminal Justice Program. Due to her debilitating injuries and severe pain from the accident, Plaintiff has lost out on a career opportunity. (Exhibit S1-S12, U1-U3)

35.     A significant lifestyle change has occurred in Plaintiff's life since the accident. Necessary activities of daily living such as dressing, bathing, squatting to use toilet, walking, sitting, writing, all supine activities, and standing causes her severe pain, fatigue, and misery. Her back has a constant painful knot feeling, it grinds, and has painful impingements throughout the spine. Joints in her neck and extremities makes painful, loud, and embarrassing popping sounds. Plaintiff must uses a chair with wheels to sit and prepare meals. Neck and head position required for reading, and body positions

*Petition -Page 10-14*

required for playing board games on floor, causes severe pain. Walking with a limping gait has caused much embarrassment to her. She is limited in her personal dress options, such as inability to wear high heel shoes as previous. Special foot wear is required to manage spinal pain. Sleep disturbances due to severe pain and frequent position changes has caused much suffering.

36.     Plaintiff's injuries has made her dependant on family members to perform household chores she previously could perform and assisting her with getting out of bed. Inability to stand on heel has increased fall risks. Plaintiff has to hold on to objects and uses assistive devices as she needs for support to prevent falls with activities that require extensive time and length, since the accident.

37.     Electrical shock pain, numbness, and weakness in Plaintiff's legs causes her to stumble and have trouble getting out of bed. Her blood pressure elevation, chest muscle pain, persistent headaches, and dizzy episodes have become more frequent and worse since the accident. Her family has to perform physical therapy exercises on her daily, and throughout the day, to help her cope with severe pain in her occipital head region, neck, shoulders, entire back, and sacral areas that's debilitating and puts her on bed rest.

38.     Plaintiff has ongoing headaches, tight muscles, muscle spasms, radiating pain and increased inflammatory pain to back of head, neck and lower back areas, edema, decreased range of motion, and limitation of mobility

39.     Plaintiff is restricted in participating in hobbies she enjoys such as shopping that requires extensive walking, and sporting activities she previously enjoyed

*Petition -Page 11-14*

prior to the accident such as high impact aerobics.

40.     Prior to the accident on July 26, 2010, Plaintiff played an important financial role in helping support her family. Pain and suffering forced Plaintiff to drop out of occupational retraining courses in 2011. The accident caused by Defendant has lead to a devastating effect on Plaintiff's body, life, and career.

41.     Due to injuries and severe pain from accident, Plaintiff has been unable to work, return to her schooling, and participate in her pervious daily necessary and recreational activities as supported by the medical evidence.

42.     Plaintiff has the right to be the way she was prior to the accident, but Plaintiff, has not, and cannot be the way she was prior to the accident due to the negligence of the Defendant.

43.     Plaintiff has a severe back disability with 76% ranking, and is entitled to recover for such increased suffering, disfigurement, permanent disability, and loss for herself, and the losses her family is experiencing as authorized under the Kansas Automobile injury Reparations Act in K.S.A. 40-3117.

44.     173.43 Civil PIK 4th authorizes, "if the Plaintiff had a pre-existing physical ailment, defect, or disability and you find this condition was aggravated or made active causing increased suffering or disability, then the Plaintiff is entitled to recover for such increased suffering and disability.

45.     All of Plaintiff's personal injury damages of: Past medical expenses ($9,718.40) (Exhibits X1-X12), economic losses (Exhibits T1-T2, Y1-Y18),

*Petition -Page 12-14*

noneconomic losses, loss or impairment of services, and increased suffering and

disability allowed with the authorization of 171.02 and 171.06 Civil PIK 4th- (Exhibit

after the accident, were, and will be due solely to and by reason to Defendant's

carelessness and negligent inattention in following traffic laws.

   **WHEREFORE,** Plaintiff prays for judgment against the Defendant for her

monetary claim for actual damages of $409,658.40, subject to increase as discovery

progresses.

Submitted by:

Carla B. Davis
Self Presenting
901 N. Belmont
Wichita, Kansas, 67208
316-691-8804

## DEMAND FOR TRIAL BY JURY

   Comes now the Plaintiff and demands this case be set for trial by jury of twelve

(12) persons.

Carla B. Davis

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21 2015

*Petition -Page 13-14*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the _24th_ day of July 2012 a true and correct copy of the

above and foregoing **PETITION, DEMAND FOR JURY TRIAL, EXHIBITS**

**INDEX SHEET, AND EXHIBITS** was placed in the U.S. mail, postage, and properly

addressed to:


Lisa Kristian
1717 S. Cypress Street, Apt. 413
Wichita, Kansas, 67207.

Julie D Scott
Notary Public State of Kansas
My Apt Expires April 21, 2015

Carla B. Davis

*PETITION- Page 14-14*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARLA DAVIS, *et al.*,              )
                                    )
                    Plaintiffs,     )
                                    )
v.                                  )         Case No.: 23-1010-JAR-KGG
                                    )
UNITED STATES DEPARTMENT            )
OF JUSTICE, *et al.*,               )
                                    )
                    Defendants.     )
_____ )

## <u>SHOW CAUSE ORDER</u>

Plaintiffs Carla Davis and Jalen Davis filed their federal court Complaint on

January 23, 2023, against more than 40 Defendants requesting injunctive and

declaratory relief (and possible monetary damages) for alleged violations of

Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution. (*See generally* Doc. 1.) To date, all but three

Defendants have moved to dismiss – Defendants Tom Yao, James Michael Moser,

and Gerard Bassell.

Summons and/or alias summons were issued and returned as to these three

remaining Defendants. (Docs. 40, 76, and 153 as to Defendant Yao; Docs. 25, 74,

and 147 as to Defendant Moser; and Docs. 37 and 42 as to Defendant Bassell.) As

1

discussed herein, however, the Court has concerns as to whether service was properly effectuated on these three Defendants.

Fed.R.Civ.P. 4(e) governs service on an individual within a U.S. judicial district.  That subsection states that an individual may be served in a U.S. judicial district by

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

*Id*.  Because this District Court is located in Kansas, Plaintiffs may follow Kansas law for serving the summons.  (*Id*.)  Because the Defendants at issue are alleged to be located in California (Yao), Ohio (Moser), and Nevada (Bassell) and service was attempted on them in each of the three listed states, service may be made following the law of those states as well.

2

Pursuant to Kansas law, service of process may be made on a party outside the state if the party is domiciled in this state or the party "has submitted to the jurisdiction of the courts of this state, such service provides personal jurisdiction over that party … ."  K.S.A. §60-308(a).  A person submits to jurisdiction in Kansas if, among other events, they do any of the following in Kansas:  transact business, commit a tortious act, own, use, or possess real estate, act "as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business in this state … ."  K.S.A. §60-308(b).

Under Kansas law, service may be made "[i]n the same manner as service within this state, by an officer authorized to serve process in this state or in the state where the party is served; or (B) by a party or the party's attorney pursuant to subsection (c) of K.S.A. §60-303."  *Id.*  Allowable methods of service include return receipt delivery, personal/residential service, or acknowledgment by the party served.[1]  K.S.A. §60-303.  Return receipt delivery service occurs by "certified mail, priority mail, commercial courier service [such UPS delivery person(s) used as to the three Defendants at issue], overnight delivery service or other reliable personal delivery service to the party addressed," evidenced by written or electronic receipt "showing to whom delivered, the date of delivery, the

---

[1] Other means are available for service for garnishments, inapplicable to the present situation.

address where delivered and the person or entity effecting delivery." K.S.A. §60-303(c).

After return receipt deliver service occurs, the party "must execute and file a return of service ... stat[ing] the nature of the process, to whom delivered, the date of delivery, the address where delivered and the person or entity effecting delivery." *Id.* The return "must include a copy of the return receipt evidencing delivery." *Id.* If the delivery is returned indicating service was refused, the serving party

> may send a copy of the process and [Complaint] … by first-class mail, postage prepaid, addressed to the party to be served, or may elect other methods of service. If mailed, service is considered to be obtained three days after the mailing. Mailing must be evidenced by a certificate filed with the clerk. If the unopened envelope sent by first-class mail is returned as undelivered for any reason, service is not obtained and the [serving party] must file an amended certificate with the clerk indicating nondelivery. Mere failure to claim the sealed envelope sent by return receipt delivery is not refusal of service within the meaning of this subsection.

*Id.* As discussed regarding particular summonses below, there is no indication Plaintiffs attempted to send the summons and Complaint by first-class mail following refusal of acceptance.

Kansas law also allows for personal and residential service. K.S.A. §60-303(d). To effect service under this method, the serving party may file a written request for personal or residential service with the clerk. Thereafter, "[p]ersonal

4

service is effected by delivering or offering to deliver a copy of the process and [Complaint] or other document to the person to be served." *Id*.  Residential service is effected "by leaving a copy of the process and [Complaint] or other document at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." *Id*.  If personal or residential service cannot be completed, "service is effected by leaving a copy of the process and [Complaint] or other document at the individual's dwelling or usual place of abode and mailing to the individual by first-class mail, postage prepaid, a notice that the copy has been left at the individual's dwelling or usual place of abode."  As discussed regarding particular summonses below, there is no indication Plaintiffs attempted to leave a copy of the summons and Complaint at the Defendants' dwellings and thereafter mailing a notice by first-class mail.

Personal or residential process "must be made by a sheriff within the sheriff's county, by the sheriff's deputy, by an attorney admitted to the practice of law in Kansas, by a person licensed as a private detective pursuant to K.S.A. 75-7b01 *et seq*., … or by a person appointed as a process server by a judge or clerk of the district court." *Id*.  Plaintiffs used UPS delivery in their attempts to effect residential or personal service as to these three Defendants, not an individual authorized under K.S.A. §60-303(d)(3).  When the person attempting to be served (or their authorized agent) refuses to accept process, "the offer of the duly

5

authorized process server to deliver the process, and the refusal, is sufficient service of process." *Id.*

The time limit to effect service is governed by Fed.R.Civ.P. 4(m), which provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." That period may be extended upon a showing of good cause for the failure to complete service in a timely manner. *Id.* As stated above, the Complaint was filed on January 23, 2023 (Doc. 1), meaning the ninety days for service to be timely effectuated on these three Defendants has passed.

Within the context of these rules, the Court will review the summons returns for these three Defendants. Each will be discussed in turn, including the law of the relevant other states, where applicable.

### A.   Tom Yao

Plaintiffs have returned three summonses for Defendant Yao – Docs. 40, 76, and 153. All of the summonses identified Defendant Yao as a medical student at the Kansas University School of Medicine, Wichita Anesthesia Program with a "principal address" of 17130 Van Buren Blvd #311, Riverside, CA  92504-5905. (Doc. 40, at 1.) They also indicate Defendant Yao is being sued in is "official and individual capacity … ." (*Id.*) As an initial matter, Plaintiffs have failed to

establish any type of "official capacity" in which they may sue this Defendant as a

medical student.

The original summons for Defendant Yao was served on Kansas Attorney

General Kris Kobach on January 31, 2023, and filed on February 10, 2023.  (*See*

Doc. 40, at 2.)  Serving the summons for Defendant Yao, a medical student

apparently residing in California, in his individual capacity on the Kansas Attorney

General is clearly improper to effectuate service.

The second and third attempts at service on Defendant Yao took place in

California.  Pursuant to California law,

> [a] summons may be served by personal delivery
> of a copy of the summons and of the complaint to the
> person to be served. Service of a summons in this manner
> is deemed complete at the time of such delivery.
> The date upon which personal delivery is made
> shall be entered on or affixed to the face of the copy of
> the summons at the time of its delivery. However, service
> of a summons without such date shall be valid and
> effective.

Cal. Civ. Proc. Code § 415.10.

Plaintiffs' second attempt to serve the summons on Defendant Yao occurred

on February 10, 2023, and filed with the Court on February 21, 2023.  (*See* Doc.

76, at 2.)  That summons was delivered by the United Parcel Service to the 17130

Van Buren Blvd address in Riverside, California, which is indicated to be a

residential address.  (*Id*., at 1-2.)  The return summons indicates that service was

refused.  (*Id.*, at 2-3.)  There is no indication, however, that the delivery was in fact

presented to Defendant Yao or that he was the person who refused it.  Rather, the

summons that was returned to the Court (unexecuted), indicates that the delivery

was made to the front desk at that address to an individual named "Brianna."  (*Id.*)

This attempt did not effectuate service under California or Kansas law.

California law also allows for substitute service if attempts at personal

service are unsuccessful.  "The plaintiff may effect substitute service of a summons

and complaint by leaving a copy of the documents at the defendant's 'usual place

of business' with a person at least 18 years old who is 'apparently in charge of his

or her office [or] place of business,' and [then] mailing a copy of the documents to

the same place."  ***Rodriguez***, 187 Cal. Rptr. 3d, at 232 (quoting Cal Civ. Proc.

Code § 415.20, subd. (b).)

As for the third attempt at service (Doc. 153), the returned summons

indicates that the papers were "delivered" to "Tom Yao MD" at Riverside

Community Hospital, 445 Magnolia Avenue in Riverside, California.  (*Id.*, at 2.)

This occurred on March 14, 2023, and was filed with the Court on March 15, 2023.

(*Id.*)  The shipment details, however, indicate that the delivery was signed for by a

person named "Liza," not Defendant Yao.  (*Id.*, at 2.)

Pursuant to California law, a plaintiff "may serve individual defendants

through substitute service," such as the defendants' usual place of business, "when

they cannot be personally served with reasonable diligence." ***Rodriguez v. Cho***, 187 Cal. Rptr. 3d. 227, 232 (citing Cal. Civ. Proc. Code § 415.20, subd. (b) and ***American Express Centurion Bank v. Zara***, 131 Cal.Rptr.3d 99, 103). "Two or three attempts to personally serve a defendant at a proper place ordinarily qualifies as 'reasonable diligence. '" ***American Express Centurion Bank***, 131 Cal.Rptr.3d, at 103.) The Court notes that Plaintiffs only attempted service on Defendant Yao at his residence on one occasion (Doc. 76) before attempting to serve him elsewhere. Thus, Plaintiffs did not exercise reasonable diligence before attempting substitute service.

Even assuming Plaintiffs had exercised reasonable diligence before trying to serve Yao at his usual place of business, this service was still improper under California law. "The plaintiff may effect substitute service of a summons and complaint by leaving a copy of the documents at the defendant's 'usual place of business' with a person at least 18 years old who is 'apparently in charge of his or her office [or] place of business,' and [then] mailing a copy of the documents to the same place." ***Rodriguez***, 187 Cal. Rptr. 3d, at 232 (quoting Cal Civ. Proc. Code § 415.20, subd. (b).)

There is no indication that "Liza" – the person who signed for the delivery – was at least18 years old or "apparently in charge" of this place of business. Further, there is no indication that Plaintiffs subsequently mailed a copy of the

documents to Defendant Yao at Riverside Community Hospital.  This attempt also fails to comply with Kansas law as there is no provision for service at the recipient's place of business and no subsequent first-class mailing was attempted. The Court, therefore, cannot establish that Plaintiffs have effectuated service on Defendant Yao pursuant to Fed.R.Civ.P. 4(e), Kansas law, and/or California law within 90 days of filing the Complaint, as required by Fed.R.Civ.P. 4(m).

**B.    James Michael Moser, MD**

Plaintiffs have returned to the Court three summonses for Defendant Moser – Docs. 25, 74, and 147.  All three summonses identified Defendant Moser as the "State of Kansas lead physician of public health, Executive Director of Kansas Health Preparedness and Response to Bioterrorism program/Chairman of Kansas Bioterrorism Coordinating Counsel."  (Doc. 25, at 1.)  The summonses indicate Defendant Moser is sued in his official and individual capacity.  (*Id*.)  He is identified as an M.D. of pediatrics who is or was the "State of Kansas lead physician of public health, Executive Director of Kansas Health Preparedness and response to Bioterrorism program/Chairman of Kansas Bioterrorism Coordinating Counsel sued in his official and individual capacity … ."  (*Id*.)  His address is listed as the Kansas Department of Health and Environment ("KDHE") on 1000 SW Jackson, #300, Topeka, Kansas  66612.  (*Id*.)

As to the first summons, Plaintiffs attempted to serve Defendant Moser via the office of the Kansas Attorney General.  (Doc. 25, at 2.)  The Court takes judicial notice that Dr. James Moser has not held the position alleged with he State of Kansas.  There is no indication that this Defendant would be represented by the Kansas Attorney General.  Thus, service was not effectuated by delivering the summons and Complaint to the Attorney General's office.

Plaintiffs' next attempt at serving Defendant Moser was addressed to "James Michael Moser MD" at the KDHE Division of Health on 1000 SW Jackson Street in Topeka, Kansas.  The delivery was signed for by a person identified as "STRAIT" on the delivery notification.  (Doc. 74, at 2.)  As stated above, however, Dr. James Moser has not held a position with the State of Kansas – at the KDHE or otherwise.  The Court has no indication that Defendant Moser can be served at the KDHE offices.  The Court, therefore, cannot establish that Plaintiffs have effectuated service on Defendant Moser pursuant to §60-303(c).

The final attempt at serving Defendant Moser was made at a residential address in Akron, Ohio.  (Doc. 147, at 2.)  The delivery was returned to sender, with the stated reason for return indicated as "receiver did not want, refused delivery."  (*Id.*, at 3, 6.)

Refusal of service under Ohio law is governed by Rule 4.6 of the Ohio Rules of Civil Procedure.  Subsection (C) of that Rule states:

If attempted service of process by United States certified or express mail or by commercial carrier service within or outside the state is refused, and the certified or express mail envelope or return of the commercial carrier shows such refusal, or the return of the person serving process by personal service within or outside the state or by residence service within the state specifies that service of process has been refused, the clerk shall forthwith notify the attorney of record or, if there is no attorney of record, the party at whose instance process was issued and enter the fact and method of notification on the appearance docket. **If the… serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by United States ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk.** Answer day shall be twenty-eight days after the date of mailing as evidenced by the certificate of mailing. The clerk shall endorse this answer date upon the summons which is sent by ordinary mail. Service shall be deemed complete when the fact of mailing is entered of record. Failure to claim United States certified or express mail or commercial carrier service is not refusal of service within the meaning of this division. This division shall not apply if any reason for failure of delivery other than 'Refused' is also shown on the United States certified or express mail envelope.

Ohio R. Civ. Pro. 4.6(C) (emphasis added).

Plaintiffs have not complied with this Rule as there has been no written request for mail service to Defendant Moser at this Ohio residential address, even assuming what is listed is his actual residential address. The Court, therefore,

cannot establish that Plaintiffs have effectuated service on Defendant Moser pursuant to Fed.R.Civ.P. 4(e), Kansas law, and/or Ohio law within 90 days of filing the Complaint, as required by Fed.R.Civ.P. 4(m).

## C.   Gerard Bassell, MD

Plaintiffs have returned two summonses for Defendant Gerard Bassell, MD – Docs. 37 and 42.  Both summonses identified Defendant Bassell as the "KU School of Medicine Anesthesia Program Director" who is being sued in his official and individual capacities.  (*Id.*)  The address listed on both subpoenas is 213 N Stephanie Street, Suite G, #348, Henderson, Nevada 89074.  (*Id.*)

With the first summons, Plaintiffs attempted to serve Defendant Bassell – as the Anesthesia Program Director for the KU medical school – via the office of the Kansas Attorney General.  (Doc. 37, at 2.)  Not all agencies have the legal capacity to sue or be sued.  ***Lindenman v. Umscheid, et al.***, 255 Kan. 610, 628, 875 P.2d 964 (1994) (holding that the Kanas City, Kansas – Wyandotte County Department of Health has no capacity to sue or be sued).  In fact, "[s]ubordinate government agencies, in the absence of statutory authorization, ordinarily do not have the capacity to sue or be sued."  *Id.* (citing ***Hopkins v. State***, 237 Kan. 601, 606, 702 P.2d 311 (1985)).

Simply stated, the KU School of Medicine, Department of Anesthesia does <u>not</u> have the capacity to sue or be sued.  Thus, no official capacity claim exists

against Defendant Bassell and the issue of effecting service on Defendant Bassell with the Kansas Attorney General's office is moot.

The second attempt to serve Defendant Bassell (Doc. 42) indicates that the papers were "delivered" to "Gerald Bassell" at 213 N. Stephanie St., Suite G, #348, in Henderson, Nevada on February 10, 2023, which was filed with the Court on February 13, 2023. (*Id.*, at 2.)  The address on Plaintiffs' summons appears to be for a United Parcel Service store in Henderson, Nevada, not an address associated with Defendant Bassell.  Further, the delivery receipt filed with the Court indicates that the delivery was "Signed By:  UPS STORE," rather than identifying the person who signed.  (*Id.*)

Under Nevada law, if a defendant does not voluntarily appear, the plaintiff is responsible for "obtaining a waiver of service under Rule 4.1, if applicable; or having the summons and complaint served" in a timely manner and pursuant to Nev.R.Civ.P. Rule 4.2, 4.3, or 4.4.  Nev.R.Civ.P. 4(c)(1).  Rules 4.2(a) is applicable to this situation and states that service may be made on an individual:

> (1) by delivering a copy of the summons and complaint to the individual personally;
>
> (2) by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with a person of suitable age and discretion who currently resides therein and is not an adverse party to the individual being served; or

(3) by delivering a copy of the summons and complaint
to an agent authorized by appointment or by law to
receive service of process.

Nev. R. Civ. P. 4.2(a).  Based on the above, the Court cannot establish that

Plaintiffs have effectuated service on Defendant Moser pursuant to Fed.R.Civ.P.

4(e), Kansas law, and/or Nevada law within 90 days of filing the Complaint, as

required by Fed.R.Civ.P. 4(m).

### Conclusion

More than 90 days have now passed since Plaintiffs filed their Complaint.

The Court's docket contains no indication that Plaintiffs have properly served

Defendants Yao, Moser, and Bassell with a summons and a copy of the Complaint.

Accordingly, the Court orders Plaintiffs to show cause in writing **within three (3)**

**weeks of receipt of this Order**, why the Court should not **recommend to the**

**District Court** that the claims against Defendants Yao, Moser, and Bassell be

**dismissed, without prejudice**, pursuant to Fed.R.Civ.P. 4(e) and (m) and all

applicable state laws.

IT IS SO ORDERED.

Dated this 2nd day of May, 2023, at Wichita, Kansas.

/s KENNETH G. GALE
HON. KENNETH G. GALE
U.S. MAGISTRATE JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CARLA DAVIS and                         )
JALEN DAVIS                             )
             Plaintiffs,         )
                              )
v.                                      )     6:23-CV-1010-JAR-KGG
                              )
U.S. DEPARTMENT OF JUSTICE, et al,       )
                              )
             Defendants.         )

**MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6).**

COMES NOW, the Defendant, James Michael Moser, MD, in his individual and official

capacity, by and through counsel, Katelyn Radloff, files this motion to file this motion to dismiss all

of the Plaintiffs' claims against this Defendant for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1)

or for failure to state a plausible claim under Rule 12(b)(6).  In support of this motion, the Defendant

submits a Memorandum in Support of the Motion to Dismiss which is hereby incorporated into and

made a part of this Motion by reference.

                                        Respectfully submitted,

                                        */s/ Katelyn Radloff*_____
                                        Katelyn Radloff, #27430
                                        Kansas Department of Health and Environment
                                        1000 SW Jackson, Suite 560
                                        Topeka, Kansas 66612
                                        Tel: (785) 296-0088
                                        Fax: (785) 559-4272
                                        Katelyn.Radloff@ks.gov
                                        ***Attorney for Michael James Moser, Janet
Stanek, Gianfranco Pezzino, and the Kansas
Department of Health and Environment.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May 2023 a true and correct copy of the above and foregoing was filed with the Clerk of Court via CM/ECF which will send notification of such filing to the following:

Any Party or Counsel who has entered an appearance; and

And a copy was sent via United States mail, postage prepaid and properly addressed to Plaintiff as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

Jalen Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CARLA DAVIS and                          )
JALEN DAVIS                              )
                    Plaintiffs,          )
                                         )
v.                                       )          6:23-CV-1010-JAR-KGG
                                         )
U.S. DEPARTMENT OF JUSTICE, et al.,      )
                                         )
                    Defendants.          )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

COMES NOW, the Defendant, James Michael Moser, MD, in his individual and official capacity, and submits this memorandum in support of Defendant's motion to dismiss all of Plaintiffs' claims against Defendant pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or 12(b)(6) for failure to state a claim.

**OVERVIEW**

On January 23, 2023, Plaintiffs Carla Davis and Jalen Davis filed a Complaint against Defendant, and numerous other government agencies, individuals, and entities.  Plaintiffs allege in their Complaint that Plaintiffs' action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.  Plaintiffs state in their Complaint that they are "seeking injunctive and declaratory relief together with money damages against defendants for past and ongoing violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution." Compl. 1, ¶ 43.  Plaintiffs fail to allege any facts indicating Defendant, James Michael Moser, MD, harmed Plaintiffs.  Indeed, Plaintiffs make no factual allegations against Dr. Moser and the only mention of Dr. Moser is in Plaintiffs' listing of the parties.

Plaintiffs begin their factual allegations by recounting events occurring after September

11, 2001 related to Bioterrorism Preparedness, including alleging that "[o]n July 31, 2022 Sedgwick County Commissioners approved a contract with KDHE providing implementation of bioterrorism planning and preparedness." *Id.* Plaintiff Carla Davis then alleges on August 20, 2022 she was "pregnant with her in utero child Jalen Davis and made a health services contract with Wichita Clinic P.A. for OG/GYN care with Clyde Wilson Wesbrook M.D." *Id.* at ¶ 56. Plaintiff Carla Davis further alleges on October 18, 2022, "Carla Davis made health care choices for herself that did not get fulfilled, and there has been ongoing violations of the rights of herself and her the in utero child, now an adult by the name of Jalen Davis." *Id.* at ¶ 57. Plaintiffs then make a series of allegations related to Plaintiff Carla Davis' pregnancy and subsequent delivery at Wesley Medical Center. *Id.* at ¶ 60-67. Plaintiff Carla Davis further alleges an unknown device was placed in her chest blood vessels at Wesley Medical Center on February 4, 2004. *Id.* at ¶ 68. Plaintiff Carla Davis then alleges in 2008, "public officials stole the blood of Jalen Davis at Children's mercy Hospital and prevent him from receiving medical treatment." *Id.* at ¶ 70. Plaintiffs then allege that Plaintiff Carla Davis was falsely accused of child abuse and denied access to her and Jalen Davis' medical records. *Id.* at ¶ 71-72.

### ARGUMENT AND AUTHORITIES

### I.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted). Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship. 28 U.S.C. § 1331; 28 U.S.C. § 1332. "A court lacking jurisdiction cannot render judgment but must dismiss the cause

at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

A.    **Plaintiffs' Claims Are So Completely Devoid of Merit That This Court Lacks Subject Matter Jurisdiction To Consider Them.**

Plaintiffs' claims are so insubstantial, implausible, remote in time that this court lacks subject matter jurisdiction to consider them. *See Olsen v. Aebersold,* 71 F. App'x 7, 9 (10th Cir. 2003). In their Amended Memorandum in Support of their Motion to Dismiss, the Federal Defendants cite a number of unpublished decisions reflecting dismissal of cases for lack of jurisdiction where allegations were deemed to be implausible, frivolous, or insubstantial. (*See* Doc. 101 at 6-7). The allegations in the present complaint are of just such a nature and accordingly Plaintiffs' complaint should be dismissed for lack of subject matter jurisdiction.

B.    **This Court lacks Subject Matter jurisdiction as state officials are immune from suit under the Eleventh Amendment.**

Defendant, Dr. Moser, asserts that the court lacks subject matter jurisdiction over the claims asserted by the Plaintiffs because he is immune from suit under the Eleventh Amendment. The "Eleventh Amendment immunity's primary purpose is to accord states the respect owed them as joint sovereigns," by granting immunity to nonconsenting states to suits in federal court. *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). "Eleventh Amendment immunity applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Id.* (citations omitted).

Three exceptions exist to a state's sovereign immunity:

First, a party may sue a state in federal court notwithstanding the Eleventh Amendment if the state consents to suit. *Id.* at 1286. Second, a party may sue a state if Congress has abrogated the state's sovereign immunity in a clear and unequivocal manner pursuant to a valid exercise of its power. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Finally, under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a party may sue individual state officers in federal court in their official capacity for prospective injunctive relief. *See Hill,* 478 F.3d at 1255–56.

*Smith v. Kansas*, 574 F. Supp. 2d 1217, 1219-20 (D. Kan. 2008).

Here, the State of Kansas has not waived immunity, and the "Supreme Court has previously held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195–96 (10th Cir. 1998) (citing *Quern v. Jordan*, 440 U.S. 332, 338–40 (1979)). Eleventh Amendment immunity bars Plaintiffs' 42 U.S.C. §§ 1983 and 1985 claims against Defendant KDHE as KDHE is an Agency of the State of Kansas.  *See id.* (holding that Eleventh Amendment immunity barred plaintiffs' §§ 1981, 1983, and 1985 claims "against Kansas and its state agencies in the federal courts").

Eleventh Amendment immunity applies to Dr. Moser when sued in their official capacities, as "a suit against a state official in his or her official capacity … is no different than a suit against the State itself." *Cosgrove v. Kansas Dept. of Social and Rehabilitative Services*, 744 F. Supp. 2d 1178, 1189 (D. Kan. 2010) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).  Further Plaintiffs' complaint fails to seek proper prospective injunctive relief against Dr. Moser because the Complaint alleges no actions on his part, and certainly none that are unconstitutional such as to invoke *Ex parte Young*.  Therefore, Dr. Moser is entitled to dismissal of the claims asserted against him in his official capacity based on Eleventh Amendment Immunity.

This Court lacks subject matter jurisdiction as Dr. Moser is immune from suit under the

Eleventh Amendment. Accordingly, Plaintiffs' Complaint against Dr. Moser should be dismissed for lack of subject matter jurisdiction.

## II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs must set forth a complaint that contains a short and plain statement of the claim showing that the pleader is entitled to relief.  Further, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

Additionally, a Complaint must allege sufficient facts to make it clear who did what to whom. To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff and what specific legal right the plaintiff believes the defendant violated. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  Complaints in which plaintiffs assert that their rights "were violated" or that defendants "infringed" on his rights are insufficient. *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2008).

In considering a motion to dismiss, a court "can choose to begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of the truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 557). Therefore, allegations which are "no more than conclusions are not entitled to an assumption of truth." *Id.* (citing *Twombly*, 550 U.S. at 557).  Although the court must assume that the complaint's factual allegations are true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal* at 678. "The tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs' complaint contains no allegations of against Dr. Moser in his official or individual capacity. Indeed, the Complaint contains no allegations indicating that he was in any way involved in any of the events described in the statements of fact in Plaintiffs' complaint. Similarly, there are no allegations in the Claim for Relief portion of their Complaint indicating any involvement by Dr. Moser in any of the purported constitutional violations.  Beyond having been identified among the many defendants in the suit, Dr. Moser is not mentioned again in the Complaint in either his official or individual capacity. Plaintiffs have failed to state a claim against Dr. Moser in his official capacity and any claims against Dr. Moser individually must also be dismissed due to failure to state a claim.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' purported claims in their Complaint that allegedly relate to the actions of Dr. Moser are barred by the statute of limitations.  The 42 U.S.C. §§ 1983 and 1985 claims asserted by Plaintiffs are subject to a two-year statute of limitations. *See Lyons v. Kyner*, 367 F. App'x 878,

882 (10th Cir. 2010) ("[W]e apply Kansas's two-year statute of limitations for personal injury actions to Lyons's § 1983 claim and his § 1985(3) claim.").

## <u>CONCLUSION</u>

As Plaintiffs' Complaint fails to demonstrate subject matter jurisdiction in this court and fails to state a claim upon which relief can be granted, it should be dismissed with prejudice as to this Defendant. Moreover, the Complaint is barred by the statutes of limitations.

Respectfully submitted,

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, Kansas 66612
Tel: (785) 296-0088
Fax: (785) 559-4272
Katelyn.Radloff@ks.gov
***Attorney for Michael James Moser, Janet Stanek, Gianfranco Pezzino, and the Kansas Department of Health and Environment***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May 2023 a true and correct copy of the above and foregoing was filed with the Clerk of Court via CM/ECF which will send notification of such filing to the following:

Any Party or Counsel who has entered an appearance; and

And a copy was sent via United States mail, postage prepaid and properly addressed to Plaintiff as follows:

Carla Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

Jalen Davis
901 N. Belmont
Wichita, KS 67208
**Plaintiffs Pro Se**

*/s/ Katelyn Radloff*
Katelyn Radloff, #27430